**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BEN & JERRY'S HOMEMADE, INC.,            )<br>                                                                   )<br>                          Plaintiff,           )<br>            v.                                                   )<br>                                                                   )<br>UNILEVER PLC AND CONOPCO, INC.  )<br>                                                                   )<br>                          Defendants.       )<br>                                                                   ) | Case No. _____ |

**COMPLAINT**

Plaintiff Ben & Jerry's Homemade, Inc. ("Ben & Jerry's," the "Company," or the "Plaintiff"), by and through its undersigned attorneys, as and for its complaint (the "Complaint") against defendants Conopco, Inc. ("Conopco") and Unilever PLC ("Unilever," and together with Conopco, "Unilever" or "Defendants"), hereby alleges upon knowledge as to itself and its own acts, and upon information and belief as to all other matters, as follows:

**INTRODUCTION**

1.      This dispute centers on Unilever's failure to adhere to its contractual obligations vis-a-vis the parties' Merger Agreement, Settlement Agreement, and Settlement Amendment. Specifically, Unilever has repeatedly failed to recognize and respect the Independent Board's primary responsibility over Ben & Jerry's Social Mission and Brand Integrity, including threatening Ben & Jerry's personnel should the company speak regarding issues which Unilever prefers to censor. The Independent Board initiates this litigation to protect Ben & Jerry's three-part mission from Unilever's unilateral erosion and to safeguard the company from Unilever's repeated overreaches.

1

**PARTIES**

2. Plaintiff Ben & Jerry's Homemade, Inc. is a Vermont corporation with its principal place of business in Burlington, Vermont.

3. Defendant Conopco, Inc. is a New York corporation headquartered in Englewood Cliffs, New Jersey.

4. Defendant Unilever PLC is a United Kingdom public limited company headquartered in London, England.

**PERSONAL JURISDICTION AND VENUE**

5. This Court has personal jurisdiction over Unilever because Unilever has consented to personal jurisdiction in any federal court located in the State of New York under Section 14 of the Settlement Agreement with respect to the claims being brought in this Complaint.

6. This Court has personal jurisdiction over Conopco because Conopco has consented to personal jurisdiction in any federal court located in the State of New York under Section 14 of the Settlement Agreement with respect to the claims being brought in this Complaint. Conopco is also subject to the general personal jurisdiction of this Court as a domestic corporation. *See* N.Y. C.P.L.R. § 301.

7. Venue lies within this District pursuant to Section 14 of the Settlement Agreement. On information and belief, venue also lies in this District under 28 U.S.C. § 1392(b)(2) because Defendants conduct, transact, and/or solicit substantial business in New York.

**SUBJECT MATTER JURISDICTION**

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties and the matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars.

## FACTUAL BACKGROUND

I. **Unilever Has Breached the Parties' Merger and Settlement Agreements by Inappropriately Halting Ben & Jerry's Social Mission.**

    A. **Under the Merger and Settlement Agreements, The Independent Board Holds Primary Responsibility Over Ben & Jerry's Social Mission and Brand Integrity.**

9. Social justice and human rights are core to Ben & Jerry's DNA. For over four decades, the company has pursued its unique Social Mission via its public, progressive stances on issues such as migrant justice, LGBTQ+ rights, Black Lives Matter, GMO labeling, and a variety of other economic and social causes affecting historically marginalized communities. Consistent with its decades-long history of supporting peace and human rights, in July 2020, Ben & Jerry's Independent Board unanimously passed a resolution that instructed company management to develop a plan to end all distribution of Ben & Jerry's products in Israeli-only settlements in the Occupied Palestinian Territory. Unilever's appointee to the Independent Board voted in favor of the resolution. Approximately one year later, in July 2021, Ben & Jerry's announced to the public that it would be ending sales of its products in the area, with Unilever concurrently issuing a press release declaring that it had "*always recognised the right* of the brand and its independent Board to take decisions about its social missions."[1]

10. On June 23, 2022, Unilever announced that it had sold Ben & Jerry's intellectual property in Israel and the Occupied Palestinian Territory to a distributor who would continue sales in the settlements. The Independent Board—who had not consented to nor been consulted about the sale—initiated litigation within a matter of days, alleging that Unilever's actions constituted breaches of the parties' 2000 Merger Agreement, which cemented "primary responsibility" over Ben & Jerry's Social Mission and Brand Integrity with the Independent Board.

---

[1] Exhibit 1 (Unilever Statement on Ben & Jerry's Decision) at 2.

11. The parties negotiated for several months thereafter. A primary objective of the Independent Board was to enshrine guardrails preventing any dilution of the company's Social Mission and Brand Integrity.

12. Following over six months of negotiations, in December 2022, Ben & Jerry's and Unilever ultimately entered into a Settlement Agreement, which was expressly conditioned on Unilever respecting the Independent Board's authority over Ben & Jerry's Social Mission and Brand Integrity. Per Section 2(b) of the Settlement Agreement, Unilever must "[r]espect and acknowledge the Ben & Jerry's Independent Board's primary responsibility over Ben & Jerry's Social Mission and Essential Brand Integrity" and "work in good faith with the Independent Board to ensure that both are protected and furthered."[2] Unilever has breached these contractual obligations.

### B. Unilever Has Repeatedly Halted Ben & Jerry's Social Mission in Direct Contravention of the Settlement Agreement.

13. Mere months after the parties entered the Settlement Agreement, Unilever had already begun its efforts to undermine it. Specifically, during the ongoing humanitarian crisis in Gaza, which has claimed the lives of over 18,000 innocent Palestinian children, Ben & Jerry's has on four occasions attempted to publicly speak out in support of peace and human rights. Despite its contractual commitment to "[r]espect and acknowledge" the Independent Board's primary responsibility over Ben & Jerry's Social Mission and Essential Brand Integrity, *Unilever has silenced each of these efforts*.

14. *First*, in December 2023, approximately two months into the humanitarian crisis, the Independent Board alongside Ben & Jerry's management informed Unilever that Ben & Jerry's would be issuing the following statement: "Ben & Jerry's calls for peace and a permanent and

---

[2] Exhibit 2 (Settlement Agreement) at 1.

4

immediate ceasefire." By this time, over 140 countries around the world (including England, France, and Canada), Doctors Without Borders, and the Pope had also called for a ceasefire. In response, Unilever threatened to ***dismantle the Independent Board*** and ***sue the board members individually*** if Ben & Jerry's—with its decades-long motto of "peace, love, & ice cream"—issued the statement supporting "peace" and a "ceasefire." These threats were coupled with personal calls from Peter ter Kulve and Jeff Eglash (Unilever's President of Ice Cream and Global Head of Litigation), who attempted to intimidate Ben & Jerry's personnel with professional reprisals if the company issued the ceasefire statement.

15. *Second*, approximately five months later, in May 2024, Ben & Jerry's social activism managers in Europe sought to release the following statement in support of the safe passage of Palestinian refugees:



16. This statement was consistent with Ben & Jerry's long history of supporting safe passage for refugees from multiple countries, including Rwanda, Afghanistan, and Ukraine, among

5

others. In fact, Ben & Jerry's showcases a statement titled "the Rights and Dignity of Refugees and Asylum Seekers" under the "Issues We Care About" section of the company's website. Nevertheless, Unilever prevented Ben & Jerry's social activism managers from publishing the statement, without the Independent Board's knowledge or consent.

17. In June 2024, after the Independent Board became aware of Unilever's inappropriate muzzling, Ben & Jerry's Chairwoman, Anuradha Mittal, wrote to Mr. ter Kelve emphasizing Ben & Jerry's "long history of work on refugee rights," including supporting safe passage for refugees from multiple countries. The Chairwoman continued: "Safe passage is the right of every single person from every single country; to single out Gazan refugees' right to safe passage is discriminatory and contravenes international human rights and humanitarian laws, not to mention Unilever's stated commitment to human rights principles in general. This work also falls squarely under the Merger Agreement which grants the Board primary decision-making authority."

18. On July 1, 2024, Mr. ter Kulve responded: "[T]o my understanding the communications team initially reviewed [the statement] and was concerned about the timing of it – it coincided with the Iranian missile attack on Israel. When the matter was escalated to me, I expressed concerns about the continued perception of antisemitism that is a persistent issue. It was my judgment that in light of the timing and nature of the post it, it was not an appropriate message at this time." Disturbed that Mr. ter Kulve would intentionally create a false equivalency between calling for the safe passage of Gazan refugees and antisemitism, Ms. Mittal wrote on July 7, 2024: "[O]ther than your clairvoyant intuition, could you please point to any objective data point—such as a market study or third-party evaluation—that objectively confirmed your

6

unilateral judgment that calling for safe passage of all refugees, including from Gaza will be viewed as antisemitism?" To this day, Mr. ter Kulve has never provided any such evidence.

19.     *Third*, in June 2024, as college campuses around the country were protesting the civilian deaths and humanitarian catastrophe in Gaza, Ben & Jerry's management and the Independent Board aligned on issuing a public statement supporting the protesters' First Amendment rights. Ben & Jerry's has a long history of supporting such discourse, including a post titled "Silence is NOT an Option" regarding the murder of George Floyd, which remains live on Ben & Jerry's website. When Ben & Jerry's management informed Unilever that they would be publishing the statement supporting the protesters' rights, Jeffery Eglash (Unilever Global Head of Litigation) barred its release.

20.     *Fourth*, on September 25, 2024, Senator Bernie Sanders issued the following tweet:



21. In conjunction with Senator Sander's post, Ben & Jerry's management and the Independent Board agreed on releasing the following statement:

> We Support the Sanders Resolution. As the one-year anniversary of October 7th approaches, with tens of thousands of innocent Palestinian civilians killed and dozens of Israeli hostages still held, we believe in providing critical humanitarian aid, not in sending more weapons. We urge you to join us in calling on the Senate to pass the Sanders Resolution and halt an additional $20 billion in military aid to Israel.

22. On September 25, 2024, Ms. Mittal wrote to Ben & Jerry's CEO requesting publication of the statement as approved by the Independent Board, the entity with "primary responsibility" over Ben & Jerry's Social Mission. The Chair followed up on September 29, 2024 requesting a status update. The following day, Ms. Mittal was informed that Mr. ter Kulve had unilaterally vetoed the statement in what amounted to Unilever's fourth act of censoring Ben & Jerry's social mission in less than a six-month span.

23. As the aforementioned conduct underscores, Unilever has demonstrated a pattern and practice of usurping the Independent Board's authority, while concurrently stymieing Ben & Jerry's Social Mission and Brand Integrity.

## II. Unilever Has Breached the Parties' Settlement Agreement by Blocking Donations to Jewish Voice for Peace and the Council on American Islamic Relations.

### A. Per the Settlement Agreement, the Chair of the Independent Board Designates Donation Recipients.

24. As another condition to the Settlement Agreement, Unilever must make a total of $5 million in payments to Ben & Jerry's for disbursement to human rights and humanitarian organizations. Per Section 2(g) of the Settlement Agreement:

> Unilever will make two $2,500,000 payments to Ben & Jerry's Homemade Inc. (totaling $5,000,000). The first payment will occur in 2023 and the second payment in 2024. Under no circumstances will the first payment be made later than July 30, 2023, or the second payment be made later than July 30, 2024. The Chair of the Independent Board in good faith consultation with Unilever will determine to which

8

humanitarian and human rights organizations the funds will be disbursed. Unilever's consent will not be unreasonably withheld.

25. Per the plain terms of the Settlement Agreement, the Chair of Ben & Jerry's Independent Board is to "determine" the donation recipients. It is a breach of contract for Unilever to unreasonably object to the Chair's designees or fail to engage the Chair in good faith.

### B. Unilever Has Unreasonably Blocked Ben & Jerry's from Donating to Jewish Voice for Peace and the Council on American-Islamic Relations.

26. On June 7, 2024, Ben & Jerry's Chairwoman provided Maria Varsellona—Unilever's Chief Legal Officer—a list of her designees, which included Jewish Voice for Peace and the San Francisco-Bay Area Chapter of the Council on American-Islamic Relations (CAIR-SFBA), among others. This initial correspondence led to a two-month-long negotiation process over the designees.

27. On multiple occasions, the Chair requested any objections Unilever had to the groups in writing. After initially refusing, Unilever finally provided its written objections on August 16, 2024 via a chart of grievances which simply regurgitated offensive stereotypes regarding each of the Chair's designees. These objections were riddled with inconsistencies. For example, despite expressly agreeing to donate to "human rights organizations" in the parties' Settlement Agreement, each of Unilever's objections boiled down to the same issue: the organizations were advocating for human rights, namely Palestinian human rights. As an illustration, Unilever's objection to donations for *Jewish Voice for Peace* was that the group was too critical of the Israeli government. Unilever's asserted objections were inconsistent with its own public Human Rights Policy which states that "[b]usinesses *must not support any actions,*

9

*directly or indirectly*, which impinge upon human rights defenders' right to *freedom of expression*, association, or assembly."[3]

28. Unilever's pretext for blocking the donations was that it allegedly seeks to remain "neutral" on the Palestinian-Israeli conflict. Unilever's actions, however, belie its assertions of neutrality. For example, following October 7, Unilever publicly made a 500,000 Euro donation to Magen David Adom, an Israeli organization which acts as an auxiliary service to the Israeli Defense Forces (IDF). Magen David Adom has appointed to head its rabbinical committee Rabbi Schmuel Eliyahu, who has been repeatedly criticized for his "racist statements and extremist views." Mr. Eliyahu has called on Jews "not to rent apartments to Arabs" and for the indiscriminate bombing of Palestinians ("If they don't stop after we kill 100, then we must kill a thousand. And if they do not stop after 1,000 then we must kill 10,000. If they still don't stop we must kill 100,000, even a million"). As Rabbi Rick Jacobs, President of the Union for Reform Judaism, has described: "Rabbi Shmuel [sic] Eliyahu is well known for his racist views which most Jews and supporters of Israel find offensive and which the Israeli Supreme Court strongly condemned."[4] He further described Rabbi Eliyahu as a "purveyor of hatred towards Arabs."[5] Most recently, Rabbi Eliyahu has called for the nuking of Gaza.[6]

29. Moreover, Unilever has not remained "neutral" in other contexts. For example, Unilever's website contemporaneously showcases its position on the Ukraine/Russia conflict:

---

[3] *See* Unilever Principles in Support of Human Rights Defenders (https://www.unilever.com/files/a9ee0484-3dad-4f48-9f0b-69cea560ebba/unilever-principles-in-support-of-human-rights-defenders-sept-2023.pdf) at 7.

[4] Exhibit 3 (Sam Sokol, *Israeli Rabbi Accused of Racism Says Barred From U.S. by 'anti-Zionists'*, HAARETZ (May 31, 2022)) at 2.

[5] *Id.*

[6] Exhibit 4 (*Rabbi Backs Remark by his Son, a Far-right Minister, that Nuking Gaza is an Option*, TIMES OF ISRAEL (Nov. 14, 2023)) at 1-2.

10

Unilever "continue[s] to condemn the war in Ukraine as a ***brutal and senseless act by the Russian state***."[7] In support of this position, Unilever "ceased all imports and exports of [its] products into and out of Russia . . . stopped all media and advertising spend . . . [and] ceased all capital flows into and out of the country."[8]

30. On August 28, 2024, Ms. Mittal provided the following response to Unilever's objections chart: "We have provided ample evidence of Unilever taking sides in both this conflict and others completely negating your assertions, including the head rabbi of David Magen Adom calling for a nuclear bomb to drop on Gaza. It is disappointing that you attempt to portray Palestinian human rights as a 'needless dispute' . . . . We have reviewed your 'evidence' and find your objections to be riddled with caricatures and stereotypes. There is nothing unreasonable with promoting basic human rights for Palestinians." Ms. Varsellona never responded.

**III.    Unilever Has Failed to Adhere to Its Contractual Payment Obligations to Indigenous Palestinian Farmers.**

   **A.    Per the Parties' Settlement Amendment, Unilever Is to Disburse $20 Million to Canaan Fair Trade Over the Next 10 Years.**

31. On August 30, 2023, the Parties negotiated a Settlement Agreement Amendment. Per the Amendment, Unilever "will make payments totaling $2 million USD annually to Canaan Fair Trade ('Canaan'), directly or through a third party, for the use of Palestinian almonds (or for the direct benefit of Palestinian almond farmers), for at least ten years. . . . . Payments to Canaan will be verified by auditors selected by the Independent Board and reported on an annual basis in SEAR. Confirmation of payments made hereunder will be sent to the Chair of the Independent Board quarterly."[9] Canaan has sourced ingredients for Ben & Jerry's products for nearly a decade,

---

[7] Exhibit 5 (Unilever Statement on the War in Ukraine) at 2.

[8] *Id.*

with its almonds being recognized for their high quality alongside the company's promotion of values-led sourcing and fair trade.

### B. Unilever Has Failed to Adhere to Its Contractually Mandated Reporting Requirements While Scapegoating Its Former Executives.

32. Per the plain terms of the Settlement Amendment, "[c]onfirmation of payments made" to Canaan "will be sent to the Chair of the Independent Board quarterly." The end of the first quarter occurred on March 31, 2024. Unilever failed to provide such confirmation.

33. Instead, on April 2, 2024, Mr. ter Kulve wrote to Ben & Jerry's Chairwoman that he "[h]ad not been briefed on this yet and will investigate what the status of this agreement is. Who is this Canaan group could not find when I googled?"

34. As Ms. Mittal pointed out in her response, Mr. ter Kulve's ignorance was eye-popping: "We have had a nearly-**decade long** commitment with Canaan. **As referenced in the language of the Settlement Amendment**, they are a supplier of fair-trade ingredients from Palestinian farmers: https://canaanpalestine.com/." (emphasis added).

35. On April 11, 2024, Ms. Mittal and Mr. ter Kulve had a telephone conference to further discuss the issue. During the call, Mr. ter Kulve lamented the Settlement Amendment as a bad agreement, badmouthing his predecessor, Matt Close. When Ms. Mittal pointed out that the Settlement Amendment involved a multi-month negotiation process and review by multiple Unilever executives, Mr. ter Kulve was at a loss for excuses.

36. In addition to attempting to renegotiate the parties' agreement, Unilever has unilaterally added hurdles to Cannan's receipt of the funds, conditions which do not appear in the Settlement Amendment. These extracontractual conditions highlight Unilever's chronic overreach and disregard of the parties' agreement.

---

[9] Exhibit 6 (Settlement Agreement Amendment) at 1.

12

## CAUSES OF ACTION:

### COUNT I:  BREACH OF CONTRACT

37.　Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

38.　Plaintiff and Defendant entered into the Settlement Agreement in December 2022. Per Section 2(b) of the Settlement Agreement, Unilever must "[r]espect and acknowledge the Ben & Jerry's Independent Board's primary responsibility over Ben & Jerry's Social Mission and Essential Brand Integrity" and "work in good faith with the Independent Board to ensure that both are protected and furthered."  Defendants have breached this provision by threatening to dismantle the Independent Board, sue Board members, and intimidate Ben & Jerry's personnel.  Defendants' breaches also include censoring Ben & Jerry's from publicly voicing support for peace and refugee rights.  Defendants' actions are unreasonable, hindering Ben & Jerry's Social Mission and tarnishing its Brand Integrity, areas over which the Independent Board retains primary responsibility.  Unilever's inappropriate actions consequently also constitute breaches of the Merger Agreement, which establishes the Independent Board's primary responsibility over these areas.

39.　Subject to Section 2(g) of the Settlement Agreement, the "Chair of the Independent Board in good faith consultation with Unilever will determine to which humanitarian and human rights organizations the funds will be disbursed. Unilever's consent will not be unreasonably withheld." Subject to Section 2(b) of the Settlement Agreement, Unilever is obligated to "[r]espect and acknowledge the Ben & Jerry's Independent Board's primary responsibility over Ben & Jerry's Social Mission and Essential Brand Integrity" and agreed "to work in good faith with the Independent Board to ensure that both are protected and furthered."  Defendants have breached

13

these provisions by preventing Ben & Jerry's from donating to the Chair's designees, including CAIR-SFBA and Jewish Voice for Peace, among others.

40. Moreover, per the 2023 Settlement Amendment, Unilever "will make payments totaling $2 million USD annually to Canaan Fair Trade ('Canaan'), directly or through a third party, for the use of Palestinian almonds (or for the direct benefit of Palestinian almond farmers), for at least ten years. . . . . Payments to Canaan will be verified by auditors selected by the Independent Board and reported on an annual basis in SEAR. Confirmation of payments made hereunder will be sent to the Chair of the Independent Board quarterly." Defendants have breached the Settlement Amendment by failing to abide by the quarterly reporting requirements, by failing to make payments in compliance with the Amendment's requirements, and by unilaterally erecting extracontractual hurdles.

## PRAYER FOR RELIEF

**WHEREFORE**, Ben & Jerry's respectfully requests judgment in its favor and other appropriate relief against Defendants as follows:

1. An award of Plaintiff's reasonable attorney's fees and costs; and

2. Any and all other relief that this Court deems just and proper.

Dated: November 13, 2024    Respectfully submitted,

**AHMAD, ZAVITSANOS & MENSING PC**

By: *Shahmeer Halepota*
Shahmeer Halepota
Daryl Moore
Edward Goolsby (*pro hac* pending)
Weining Bai (*pro hac* pending)
Angela M. Peterson (*pro hac* pending)
Sean Healey (*pro hac* pending)
1221 McKinney, Suite 2500
Houston, Texas 77010
Phone:  (713) 655-1101
Fax:  (713) 655-0062

*Attorneys for Plaintiff*
*Ben & Jerry's Homemade, Inc.*