

Shahmeer Halepota
Direct 713.600.4953
Main 713.655.1101
Fax 713.655.0062
shalepota@azalaw.com

February 13, 2025

**_Via ECF_**
The Honorable Kevin P. Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

  RE: *Ben & Jerry's Homemade, Inc. & v. Unilever PLC and Conopco, Inc.,
     Case No. 24-cv-8641-PKC* (S.D.N.Y.)

Dear Judge Castel,

  On behalf of Plaintiffs Ben & Jerry's Homemade, Inc., and the Class I Directors of the Ben & Jerry's Independent Board, we write in response to Defendants' February 7 Letter under Rule 3(A) to request a pre-motion conference. Per Rules 1(A)(iii) and 3(A)(vi) of Your Honor's Individual Practices, a status conference is scheduled for February 27, 2025 at 12:00 PM. The grounds Defendants raise in their February 7 Letter would not amount to dismissal of the suit even if granted in full. As such, Plaintiffs respectfully request that the briefing on Defendants' proposed motion be either (1) deferred to after the completion of fact discovery as a summary judgment motion, or (2) completed concurrently with fact discovery.

  **I.**  **Introduction**

  From providing benefits to employees in same-sex partnerships in 1989 to fighting for GMO labeling over a decade ago, Ben & Jerry's has consistently staked a vocal—and often pioneering—position on a host of social activism issues. This litigation concerns one such issue: Palestinian human rights. Approximately a year ago, in the face of human rights abuses during the Gaza war, Ben & Jerry's sought to call for "peace" and a "ceasefire." Unilever unilaterally blocked the statement (and 3 others promoting human rights), despite expressly agreeing in multiple contracts between the parties that Ben & Jerry's Independent Board held "primary responsibility" over the company's Social Mission. Ben & Jerry's accordingly initiated suit on November 13, 2024, to protect its longstanding Social Mission.

  Defendants filed their first pre-motion letter to the Court on December 13, 2024. Following Plaintiff's response, the Court granted Plaintiffs leave to amend their Complaint, setting a deadline of January 24, 2025. In early January 2025, as Ben & Jerry's prepared to issue a post identifying various social issues that may be challenged during the Trump administration, Unilever again intervened to censor Ben & Jerry's, despite having expressly agreed to "[r]espect" the Independent Board's "primary responsibility over Ben & Jerry's Social Mission" and to "work in good faith with the Independent Board" to ensure it was "protected and furthered." Ben & Jerry's

filed their First Amended Complaint ("FAC") on January 24, 2025, adding Unilever's latest censoring to its list of breaches.

These breaches are ongoing. Last Thursday, on February 6, 2025, President Trump publicly announced a plan to remove Palestinians from Gaza permanently, exacerbating the human rights concerns of Ben & Jerry's Independent Board. Then, on February 13, 2025, Unilever's President of Ice Cream, Peter ter Kulve unilaterally erected a policy prohibiting Ben & Jerry's from issuing any posts criticizing President Trump until further review.[1]

Despite these developments, Unilever takes the following positions: (1) Ben & Jerry's Independent Board—the entity with "primary responsibility" over Ben & Jerry's Social Mission—cannot enforce the company's rights in a dispute regarding the Social Mission, and (2), despite Unilever's forcible silencing of the company's longstanding activism—including via threats of professional reprisals against Ben & Jerry's employees—Ben & Jerry's has not articulated a contractual breach.

**II.    Argument**

Defendants' February 7 Letter raises four grounds for partial dismissal—(1) a challenge to Ben & Jerry's Independent Board's standing to bring claims on behalf of their company, (2) a challenge to the sufficiency of Plaintiffs' damages allegations for its breach of contract claims, (3) expressly in the alternative to dismissing Plaintiffs' breach of contract claim, a challenge to Plaintiffs' declaratory judgment claim as duplicative; and (4) a challenge to Plaintiffs' breach of contract claim under the Settlement Amendment based on ripeness.

Defendants' proposed grounds for dismissal will not dispose of this case because they raise no independent challenge to Plaintiffs' claim for declaratory judgment under the Settlement Agreement. As to the other claims, Defendants' arguments continue to regard form over substance and ask the Court to act as a factfinder at the motion to dismiss stage.

**A.    Unilever's argument that Ben & Jerry's Independent Board cannot bring suit on behalf of its own company ignores the parties' multiple agreements.**

Unilever argues that Ben & Jerry's Independent Board cannot initiate suit on behalf of Ben & Jerry's. Unilever's interpretation ignores the plain text of the parties' agreements and would render rights therein illusory.

*First*, Unilever's interpretation disregards the parties' multiple agreements cementing the Independent Board's authority over Ben & Jerry's Social Mission and brand integrity. In 2000, Unilever and Ben & Jerry's entered into a Merger Agreement. Per the plain terms of the Merger Agreement, Ben & Jerry's would retain an independent board of directors who would serve as custodians of the Ben & Jerry's brand image, with primary responsibility over the company's

---

[1] Ben & Jerry's respectfully seeks leave to incorporate these new factual allegations into its Complaint.

Social Mission and Essential Brand Integrity. In 2022, the parties entered into a Settlement Agreement, which expressly reaffirms "Ben & Jerry's Independent Board's primary responsibility over Ben & Jerry's Social Mission and Essential Brand Integrity." Dkt. 32-2 at 1. Despite these repeated agreements, Unilever now argues that the entity with "primary responsibility over Ben & Jerry's Social Mission" cannot initiate litigation on behalf of Ben & Jerry's regarding the company's Social Mission. Unilever's interpretation—ignoring the plaint text of the parties' agreements—would render Ben & Jerry's "custodians" mere bystanders.

*Second*, Unilever's interpretation would make clearly defined rights in the Settlement Agreement and Amendment illusory. Defendants have now twice argued Ben & Jerry's Homemade, Inc.'s rights against Unilever under the Settlement Agreement and Settlement Amendment are unenforceable because, allegedly, only Unilever may bring suit on Ben & Jerry's behalf (and Unilever cannot sue itself). Such an illusory contract is disfavored. *See Coventry Enterprises LLC v. Sanomedics Int'l Holdings, Inc.*, 2015 WL 4486335, at *4 (S.D.N.Y. July 23, 2015) ("New York courts avoid an interpretation that renders a contract illusory and therefore unenforceable for lack of mutual obligation and prefer to enforce a bargain where the parties have demonstrated an intent to be contractually bound.") (internal quotations omitted). Unilever's interpretation further omits that both the Settlement Agreement and the Settlement Amendment align Ben & Jerry's Homemade, Inc., with the Independent Board, rather than Unilever. *See* Settlement Agreement at 1 (noting the agreement "is entered into by Conopco, Inc. … and Unilever PLC (collectively "Unilever"), *on the one hand*, and Ben & Jerry's Homemade, Inc. and the Class I Directors of the Ben & Jerry's Board of Directors ("Ben & Jerry's" or "Plaintiff"), *on the other hand* . . .") (emphasis added); Settlement Amendment at 1 (same).[2] Under Unilever's flawed interpretation, Ben & Jerry's rights against Unilever can only be vindicated by Unilever suing itself. The plain terms of the agreements, however, give the Independent Board primary responsibility over Ben & Jerry's Social Mission and align the Class I Directors with Ben & Jerry's, making the Class I Directors of the Independent Board the appropriate parties to bring suit in case of a breach by Unilever.[3]

*Finally*, Unilever has conceded that the Class I Directors of the Independent Board are parties to the Settlement Agreement and Amendment and have standing to sue thereinunder. Plaintiffs respectfully request that any briefing regarding Defendant's interpretation over who may bring suit on behalf of Ben & Jerry's occur concurrently with discovery, as the factual allegations giving rise to the breaches articulated by both Ben & Jerry's Independent Board as well as Ben & Jerry's are one in the same.

> **B.    Unilever's Argument That Ben & Jerry's Has Failed to Allege Damages Ignores the Allegations in Plaintiffs' First Amended Complaint.**

---

[2] Dkt. 32-2; Dkt. 32-6.

[3] The Class I Director's ability to bring such claims also falls within Federal Rule of Civil Procedure 17(a)(1)(F).

February 13, 2025
Page 4

Defendants challenged Plaintiffs' damages allegations in their December 13 Letter to the Court and largely rehash the same arguments in their February 7 Letter. But Plaintiffs' amended pleadings clearly define both (1) the damages they continue to suffer due to Unilever's actions and (2) the basis for their requested prospective declaratory relief. FAC at ¶¶ 41–54, Prayer for Relief.

Plaintiffs' First Amended Complaint articulates a series of damages for Unilever's breaches of the parties' agreements. As examples, per Section 2(g) of the Settlement Agreement, Unilever was obligated to pay $2.5 million to Ben & Jerry's in 2024 for use as donations to human rights organizations (FAC ¶ 45). Defendants do not contest that they failed to make the payment. Separately, Ben & Jerry's has spent decades establishing its brand integrity through its Social Mission (FAC ¶ 10). As alleged in the FAC, "Defendants' actions (including their censorship) have damaged Ben & Jerry's Social Mission and brand integrity (including its goodwill) and encroached on the Independent Board's duties as the custodians of the Ben & Jerry's brand." FAC ¶ 44.

Moreover, although Defendants allege that Plaintiffs' declaratory relief claims are duplicative, Plaintiffs request for declaratory relief distinctly seeks: (1) a declaration that funds be disbursed to specific human rights organizations (FAC ¶ 50); (2) declarations regarding Unilever's impending obligations to make and report payments to Canaan Fair Trade under the Settlement Amendment (FAC ¶ 54); and 3) prospective relief requiring Unilever to respect and acknowledge the Independent Board's duties and involve the Independent Board in all decisions impacting Ben & Jerry's Essential Brand Integrity and Social Mission moving forward (Compl. Prayer for Relief).

These allegations, which specifically articulate both retroactive damages and prospective declaratory relief, are sufficient. *See Evans v. Select Portfolio Servicing, Inc.*, 2020 WL 5848619 at *15 (E.D.N.Y. Sept. 30, 2020) ("A plaintiff is not obligated to show, on a motion to dismiss, that it actually sustained damages and need only plead allegations from which damages attributable to defendant's breach might be reasonably inferred."). Because Defendants' only grounds to dismiss Plaintiffs' claims for declaratory relief under the Settlement Agreement are that this relief would be duplicative of a sustained breach of contract claim, Plaintiffs respectfully request that briefing related to these non-dispositive legal issues be performed concurrently with fact discovery relevant to either claim.

C.   **Unilever's Past Behavior and Concurrent Restructuring Necessitate Plaintiffs' Declaratory Relief Claim Regarding Payments to Canaan Fair Trade.**

Finally, Defendants seek to dismiss Plaintiffs' Settlement Amendment claim on the sole ground that Defendants eventually made and confirmed the 2024 payment to Canaan Fair Trade. But one payment is not sufficient to address whether Defendants' unilateral imposition of extracontractual hurdles was proper, nor to guarantee they will make future payments without such hurdles. As alleged in the complaint, Unilever intentionally missed the first quarterly report, because Mr. ter Kulve wanted to renegotiate the Settlement Amendment before a single payment had gone out. (FAC ¶¶ 36-10). Given this past conduct—and Defendants' failure to confirm that they will cease to raise such hurdles in the future—Plaintiffs have legitimate concerns that

Defendants will not fulfill their contractual obligations under the Settlement Amendment, creating a real and substantial controversy of sufficient immediacy for declaratory judgment. *Cf. Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") The dispute is all the more immediate given Unilever's concurrent restructuring, which threatens to undermine the agreement.[4]

Further, Defendants admit they need to rely on documents outside the Complaint to address this claim. Defendants' February 7 Letter at 4-5. In response, Plaintiffs would need to incorporate by reference documents evidencing Defendant's imposition of extracontractual hurdles as described above. See Compl. at ¶¶ 37-40. Thus, in essence, Defendants are seeking early adjudication on materials outside the Complaint to prevent discovery, even though discovery is necessary to resolve the dispute. Only through discovery can the Court evaluate Defendants' motivations to enact these hurdles, their intent to do so again, and what implications this may have for Ben & Jerry's ongoing corporate relationship with Unilever—all of which relate to the claim for declaratory judgment. *See DeBagio v. Metro. Cas. Ins. Co.*, 2017 WL 11682781, at *2 (N.D.N.Y. Mar. 31, 2017) ("declaratory judgment serves to clarify where litigants stand in an ongoing relationship with each other"). As such, Plaintiffs respectfully request that these issues be addressed on a summary judgment motion after fact discovery.

### III.   Conclusion

Because Defendants' proposed grounds for dismissal will not dispose of this case and ask the Court to act as a factfinder at the motion to dismiss stage, Plaintiffs respectfully request that the Court allow discovery to proceed and schedule briefing relating to all remaining issues identified in Defendants' February 7 Letter either at the close of or concurrently with fact discovery.

Respectfully,

Shahmeer Halepota

---

[4] As Mr. ter Kulve himself informed the Independent Board just today, because the Ice Cream business is preparing to be a standalone company in 2025, this ongoing restructuring allegedly creates a "new dynamic" in an "unprecedented time." Plaintiffs respectfully seek leave to incorporate these new factual developments into their Complaint.