**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| BEN & JERRY'S HOMEMADE, INC., | ) | |
| CLASS I DIRECTORS OF BEN & JERRY'S | ) | |
| INDEPENDENT BOARD | ) | |
| | ) | Case No. 1:24-cv-08641-PKC |
| Plaintiffs, | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| UNILEVER PLC AND CONOPCO, INC. | ) | |
| | ) | |
| Defendants. | | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**</u>
<u>**LEAVE TO FILE SECOND AMENDED COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

I.     PRELIMINARY STATEMENT ................................................................................................ 1

II.    RELEVANT BACKGROUND ................................................................................................ 2

III.   LEGAL STANDARDS .......................................................................................................... 5

IV.   ARGUMENT ........................................................................................................................ 6

     A.   Ben & Jerry's Motion is Timely. ................................................................................ 6

     B.   Ben & Jerry's Motion is Brought in Good Faith and Granting Leave is in the Interest of Judicial Efficiency. .................................................................................... 8

     C.   There is No Undue Prejudice to Defendants .............................................................. 8

     D.   Ben & Jerry's New Claims are Supported by Facts and Law .................................... 9

V.    CONCLUSION ................................................................................................................... 11

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*,
    773 N.E.2d 496 (N.Y. 2002) ................................................................................. 10

*AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*,
    626 F.3d 699 (2d Cir. 2010) ................................................................................... 9

*Agerbrink v. Model Serv. LLC*,
    155 F. Supp. 3d 448 (S.D.N.Y. 2016) .................................................................... 7

*Aktiebolag v. Andrx Pharm., Inc.*,
    695 F. Supp. 2d 21 (S.D.N.Y. 2010) ...................................................................... 6

*Bilt–Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.*,
    1990 WL 129970 (E.D.N.Y. Aug. 24, 1990) .......................................................... 5

*Block v. First Blood Assocs.*,
    988 F.2d 344 (2d Cir. 1993) ................................................................................... 8

*Chapman v. CBS Corp.*,
    310 F.R.D. 240 (S.D.N.Y. 2015) ............................................................................ 5

*DeBagio v. Metro. Cas. Ins. Co.*,
    2017 WL 11682781 (N.D.N.Y. Mar. 31, 2017) ..................................................... 10

*Duling v. Gristede's Operating Corp.*,
    265 F.R.D. 91 ........................................................................................................... 8

*Eagan v. Glassbrenner*,
    2015 WL 3637410 (W.D.N.Y. June 10, 2015) ...................................................... 9

*Eison v. Kallstrom*,
    75 F. Supp. 2d 113 (S.D.N.Y. 1999) ...................................................................... 6

*Foman v. Davis*,
    371 U.S. 178 (1962) ................................................................................................ 5

*Health-Chem Corp. v. Baker*,
    915 F.2d 805 (2d Cir. 1990) ................................................................................... 9

*Hillair Capital Invs., L.P. v. Integrated Freight Corp.*,
    963 F. Supp. 2d 336 (S.D.N.Y. 2013) .................................................................... 9

*Katzman v. Sessions*,
    156 F.R.D. 35 (E.D.N.Y. 1994) ........................................................ 6

*Kreisler v. P.T.Z. Realty, L.L.C.*,
    318 F.R.D. 704 (S.D.N.Y. 2016) ..................................................... 5

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*,
    312 U.S. 270 (1941) ...................................................................... 10

*Monahan v. New York City Dep't of Corrections*,
    214 F.3d 275 (2d Cir. 2000) ....................................................... 5, 8

*Polanco v. NCO Portfolio Mgmt., Inc.*,
    23 F. Supp. 3d 363 (S.D.N.Y. 2014) ............................................. 9

*Randolph Foundation v. Duncan*,
    2002 WL 32862 (S.D.N.Y. Jan. 11, 2002) .................................... 7

*State Teachers Ret. Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981) .......................................................... 9

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011) .......................................................... 5

*Yves St. Laurent Perfumes, S.A. v. Costco Wholesale Corp.*,
    2007 WL 3340840 (S.D.N.Y. Nov. 8, 2007) ................................ 6

**Rules**

FED. R. CIV. P. 15 ........................................................................... 1, 5, 6

## I.  <u>PRELIMINARY STATEMENT</u>

Pursuant to Fed. R. Civ. P. 15(a)(2) and 15(d), Ben & Jerry's Homemade, Inc. and the Class I Directors of the Independent Board (collectively, "Ben & Jerry's" or "Plaintiffs") respectfully move this Court for leave to file a Second Amended Complaint ("SAC"), to amend and supplement their breach of contract and declaratory judgment claims to reflect recent additional breaches by Defendants Unilever and Conopco and information obtained by Plaintiffs after filing First Amended Complaint.  Granting leave is consistent with the goals of Rules 15(a) and 15(d) because this case is at an early stage and amending now will permit Plaintiffs to pursue, adjudicate, and resolve the full scope of their dispute with Defendants without causing any undue delay or prejudice.  A redline copy of the proposed SAC is attached as <u>Exhibit A</u>, and a clean copy of the proposed SAC is attached as <u>Exhibit B</u>.

Ben & Jerry's proposed SAC differs from the operative complaint in three main respects. In particular, it:

1. Alleges that after Plaintiffs filed their First Amended Complaint, Unilever took steps to remove David Stever from his position as Ben & Jerry's CEO in retaliation for supporting the Independent Board's Social Mission.

2. Alleges that Unilever is reorganizing its ice cream business as a separate company, and that the imminent transaction threatens to eliminate the Independent Board and undermine the parties' agreements.

3. Adds claims for declaratory relief under the Merger and Settlement Agreements, because retaliating against Ben & Jerry's CEO for supporting the Company's Social Mission and Essential Brand Integrity or restructuring the company in a way that substantially interferes with the Independent Board, the Social Mission, or Essential

Brand Integrity are substantial, immediate, and real controversies, would violate both agreements, and would damage Plaintiffs.

These amendments are necessary to address Unilever's ongoing and repeated breaches of its agreements with both Plaintiffs, several of which occurred or came to light only after the First Amended Complaint was filed. Plaintiffs bring this motion to amend within the time period allocated by the Court in its February 19, 2025 Scheduling Order [Dkt. 36], and without any undue delay, bad faith or dilatory motive, or undue prejudice to Defendants. Accordingly, Plaintiffs' motion for leave to file the SAC should be granted.

## II.  **RELEVANT BACKGROUND**

Plaintiffs brought this lawsuit to redress Unilever's ongoing, unlawful censorship of Ben & Jerry's social activism. Ben & Jerry's relationship with its parent companies is unique. Under the Merger Agreement, Ben & Jerry's Independent Board holds the authority to safeguard the company's longstanding social and political activism (the "Social Mission") and accompanying brand image (or "Essential Brand Integrity"), and Unilever and Conopco agreed to respect the same. The Settlement Agreement and Settlement Amendment—which arose from prior litigation between the parties—further cemented these rights with the Class I Directors of the Independent Board, obligated Unilever to make $5 million of charitable payments to Board-designated organizations, and created Unilever's 10-year-long donation commitment to one of Ben & Jerry's longstanding partners.

On November 13, 2024, Plaintiffs filed an original Complaint for breach of contract.[1] The Complaint alleged that Unilever (i) breached the Merger and Settlement agreements by repeatedly censoring Ben & Jerry's posts in support of Palestinian human rights, (ii) further breached the

---

[1] Dkt. No. 5.

Settlement Agreement by unreasonably withholding funds for donations to certain human rights organizations designated by the Independent Board's Chair, and (iii) breached the Settlement Amendment by failing to abide by its terms, putting Unilever's 10-year commitment into jeopardy.

Defendants challenged the Independent Board's standing to sue under the Merger Agreement in a December 13, 2024 letter to the Court, arguing that the Independent Board was not a party to the agreement and did not have authority to bring claims on behalf of Ben & Jerry's Homemade, Inc.[2] In response, Plaintiffs filed a First Amended Complaint ("FAC") on January 27, 2025,[3] specifically adding the Class I Directors as plaintiffs and alleging an additional instance of Unilever's censorship.[4] The FAC included three separate causes of action: (i) breach of the Settlement Agreement for hindering Ben & Jerry's Social Mission and unreasonably withholding consent to release donations to human rights organizations, (ii) declaratory judgment that Unilever must comply with the Settlement Agreement going forward, and (iii) declaratory judgment that Unilever breached the Settlement Amendment by imposing extracontractual hurdles before it would perform on its promise to donate $2 million to Ben & Jerry's longstanding partner in 2024.

Defendants once again challenged the authority of the Independent Directors to initiate suit on behalf of Ben & Jerry's Homemade, Inc. and argued the first and third causes of action should be dismissed.[5] Plaintiffs' responses to these arguments are detailed in their February 13, 2025 letter to the court, which noted that Defendants' grounds would not suffice to dismiss the entire lawsuit even if granted in full.[6] The Court issued a Scheduling Order on February 19, setting a March 19 deadline for Defendants' to file their motion to dismiss, and a 21 day deadline after said

---

[2] Dkt. No. 28, at 2–3.
[3] Dkt. No. 32.
[4] In the time between the original Complaint and the FAC, Unilever blocked Ben & Jerry's from making a public statement on social issues Ben & Jerry's believed would be challenged during the Trump administration. *See* Dkt. No. 32 at ¶ 24.
[5] Dkt. No. 33.
[6] Dkt. No. 35.

motion for Plaintiffs to amend the complaint.[7]

Shortly thereafter, Unilever began taking steps to remove Ben & Jerry's CEO, David Stever, in blatant violation of the Merger Agreement. Section 6.14(c) of the Merger Agreement dictates that replacement of the CEO shall occur only **_after_** good faith consultation with and participation of an advisory committee appointed by the Independent Board.[8] On March 3, 2025, before such a committee was even appointed, Unilever informed the Board of its intent to remove Stever and imposed an arbitrary four-day deadline for the Board to provide input. Unilever refused to provide the Board access to any minutes, notes, or materials related to Stever's removal, making it impossible for the advisory committee to meaningfully participate beyond rubberstamping a decision that had already been made.

As Plaintiffs soon learned, Unilever's motive for removing Stever was to obstruct Ben & Jerry's Social Mission and undermine the Board's authority. Over the prior year, Unilever had repeatedly pressured Ben & Jerry's personnel, including Stever, to undermine and silence the Board. Then, despite Ben & Jerry's strong performance under Stever, Unilever gave him a negative performance review for "repeatedly acquiesce[ing] to the demands of the Independent Social Mission Board."

Meanwhile, Unilever's censorship has continued. In February, Unilever blocked Ben & Jerry's from posting in honor of Black History Month. Then in March, Unilever blocked a Ben & Jerry's post supporting the free speech rights of a student activist, Mahmoud Khalil.

Unilever's actions are especially concerning given their simultaneous efforts to restructure the ice cream business as a separate company. As this restructuring progresses, the Independent

---

[7] Dkt. No. 36.
[8] The allegations in this paragraph and the remainder of this section are included in the proposed SAC. *See* Ex. A. at ¶¶ 43–52.

Board still has little insight into Unilever's "imminent" restructuring plans. Given Unilever's explicit threats to eliminate the Independent Board, multiple encroachments on the Independent Board's authority, repeated threats to Ben & Jerry's personnel, attempts to remove Ben & Jerry's CEO, and concurrent restructuring sans any meaningful consultation with the Independent Board, the Independent Board seeks declaratory relief that any restructuring will conform with the parties' Merger and Settlement Agreements.

### III.  LEGAL STANDARDS

When a party seeks to amend its pleading, "the court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).  "This permissive standard is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011).  The "policy behind this rule is that '[l]iberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit.'" *Kreisler v. P.T.Z. Realty, L.L.C.*, 318 F.R.D. 704, 706 (S.D.N.Y. 2016) (quoting *Bilt–Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.*, 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990)). "Thus, absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The non-movant bears the burden of showing prejudice, bad faith or futility. *Chapman v. CBS Corp.*, 310 F.R.D. 240, 242 (S.D.N.Y. 2015).

Additionally,  Rule 15(d) allows a court, "[o]n motion and reasonable notice. . . . [and] on just terms" to permit the pleader to serve a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be

supplemented." FED. R .CIV. P. 15(d). A supplemental pleading may "add additional facts or events relating to liability or to change the relief requested." *Aktiebolag v. Andrx Pharm., Inc.*, 695 F. Supp. 2d 21, 25 (S.D.N.Y. 2010) (quoting 3 James WM. Moore *et al.*, Moore's Federal Practice § 15.30 (3d ed. 2009)). Similar to Rule 15(a), "[t]he goal of Rule 15(d) is to establish a 'liberal policy favoring a merit-based resolution of the entire controversy between the parties.'" *Eison v. Kallstrom*, 75 F. Supp. 2d 113, 116 (S.D.N.Y. 1999) (quoting *Katzman v. Sessions*, 156 F.R.D. 35, 38 (E.D.N.Y. 1994)). Therefore, a motion for leave to supplement should be granted unless the non-movant is able to demonstrate "bad faith on the part of the moving party, the futility of the claims asserted within the application, or undue prejudice to the nonmovant." *Eison*, 75 F. Supp. 2d at 116 (S.D.N.Y. 1999) (internal quotation marks omitted).

## IV. ARGUMENT

Plaintiffs should be granted leave to amend the complaint because the motion is timely, the amendments reflect newly discovered information, and addressing Defendants' numerous contractual breaches in a single case promotes judicial efficiency. Given that Unilever did not inform the Independent Board of its intent to remove the Ben & Jerry's CEO until after the FAC was filed, Unilever cannot now claim bad faith or unfair prejudice. Unilever's breaches are ongoing. Amending the complaint to reflect Unilever's most recent breaches is therefore necessary to resolve the case fairly and on the merits.

### A.    Ben & Jerry's Motion is Timely.

This filing comes well before the deadline to amend the complaint, which the Court set at 21 days after filing of Defendants' motion to dismiss.[9] *See Yves St. Laurent Perfumes, S.A. v. Costco Wholesale Corp.*, 2007 WL 3340840, at *2 (S.D.N.Y. Nov. 8, 2007) (motion to amend was

---

[9] *See* Dkt. No. 32, at 2.

timely where it was entered before extended deadline had lapsed). Given that Defendants have not yet moved to dismiss, the motion to amend is timely.

Additionally, Plaintiffs have not unduly delayed bringing the SAC, since the new allegations are based on Unilever's actions and statements after the FAC was filed. Plaintiffs only became aware of Unilever's intent to fire Mr. Stever on March 3. Plaintiffs have acted diligently to amend their pleadings to include these new developments—and the background facts showing Unilever's true motive—within two weeks. Similarly, Unilever's statement that the corporate restructuring is "imminent" and its latest attempts to stifle the Social Mission occurred within the past two months.

Even if Unilever claims that Ben & Jerry's could have brought some of the amended claims earlier, that is an insufficient basis to deny leave absent a showing of bad faith or undue prejudice. *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) ("Simply alleging that the plaintiff could have moved to amend earlier than she did, however, is insufficient to demonstrate undue delay."); *Randolph Foundation v. Duncan*, 2002 WL 32862, at *3 (S.D.N.Y. Jan. 11, 2002) ("[T]he fact that a party may have had evidence to support a proposed amendment earlier in the litigation does not, by itself, give rise to an inference of bad faith."). Here, while the Merger Agreement predates the FAC, the new claim under the Merger agreement arises from Unilever's "imminent" and ongoing restructuring. Similarly, Unilever's past statements regarding Ben & Jerry's management are alleged to show Unilever's true motive for removing Stever as CEO, a decision that did not become known to Plaintiffs until two weeks ago. Thus, none of the new allegations have been delayed in bad faith.

**B.    Ben & Jerry's Motion is Brought in Good Faith and Granting Leave is in the Interest of Judicial Efficiency.**

Ben & Jerry's seeks to amend its pleading in good faith to resolve the full scope of its dispute with Unilever. Defendants' ongoing censorship of the Social Mission relates directly to the claims in the FAC. These acts and the planned bad faith removal of the CEO give rise to additional claims for relief under the Settlement Agreement, which directly protects the Independent Board's primary responsibility over the Social Mission. And as discussed below in Section D, Plaintiffs have a claim for declaratory relief under the Merger Agreement because Defendants' imminent restructuring threatens not only the authority but the very existence of the Independent Board. Permitting Plaintiffs to file the SAC will allow the Court to adjudicate these claims alongside the interrelated claims already before the Court, preventing duplicative litigation and furthering judicial efficiency. *See Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 102 n. 5 (S.D.N.Y.2010)) ("Where, as here, the original and proposed claims are interrelated, it also serves judicial efficiency to permit them to be brought in the same action.")

**C.    There is No Undue Prejudice to Defendants.**

Granting Ben & Jerry's leave to amend will not result in any prejudice to Unilever. In determining what constitutes "prejudice," courts in the Second Circuit "generally consider whether the assertion of the new claim or defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Monahan*, 214 F.3d at 284 (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). The proposed amendments do not implicate any of these concerns.

***First***, granting leave to file the SAC will not significantly expand the scope of discovery or result in any greatly increased discovery costs. The new claims and allegations involve facts

and events that are already known to Defendants and substantially overlap with allegations in the
FAC. The same concerns about Unilever's suppression of the Social Mission—involving the exact
same Unilever executives—will be the object of discovery under both the amended and the original
claims. *See State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (affirming
leave to amend where the amended claim was "one of the objects of discovery and related closely
to the original claim" and the amendments "involved information better known to the defendants
than to the plaintiffs").

     ***Second***, due to the early stage of this case, amendment will not materially delay resolution.
*See Hillair Capital Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 339 (S.D.N.Y.
2013) ("Here, at this early stage of the case, there is no concern about delay, bad faith, or
prejudice."). No discovery has taken place, the new claims invoke contractual provisions already
referenced in the previous pleadings, and the parties and theories of liability are substantially the
same. *See Eagan v. Glassbrenner*, 2015 WL 3637410, at *8 (W.D.N.Y. June 10, 2015) (granting
leave to amend where "discovery has barely begun," the new claim "would add no new parties or
theories of liability," and the movant "wants only to invoke a contractual provision that already
exists" and was previously invoked by the other party).

     Accordingly, there is no prejudice here.

### D.    Ben & Jerry's New Claims are Supported by Facts and Law.

     A proposed amendment is considered futile only if it has "no merit." *Health-Chem Corp.
v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).  For example, a motion for leave to amend will be
denied when the proposed pleading would not survive a motion to dismiss.  *See AEP Energy
Services Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 726 (2d Cir. 2010).  In
deciding the issue of futility, courts read the proposed amendments in the light most favorable
to the plaintiffs and draw all inferences in their favor. *Polanco v. NCO Portfolio Mgmt., Inc.*,

23 F. Supp. 3d 363, 369 (S.D.N.Y. 2014). For three reasons, Ben & Jerry's proposed amendments are not futile.

*First*, the new Count IV states a claim for declaratory relief because Unilever's imminent restructuring and ongoing efforts to remove the CEO create a real and substantial controversy of sufficient immediacy to warrant declaratory judgment. *See Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (Holding relief is available under the Declaratory Judgment Act if the "facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"); *DeBagio v. Metro. Cas. Ins. Co.*, 2017 WL 11682781, at *2 (N.D.N.Y. Mar. 31, 2017) ("[D]eclaratory judgment serves to clarify where litigants stand in an ongoing relationship with each other, to prevent or to limit damages that are reasonably certain to occur.") Unilever and Ben & Jerry's stand in an ongoing relationship with each other, and Unilever's breaches are continuous. Unilever's imminent actions—removal of the CEO for upholding the Social Mission and restructuring of the ice cream business as a standalone entity—threaten to undermine or eliminate the Independent Board's authority over the Social Mission. These actions would further harm Ben & Jerry's goodwill and rob the Class I Directors of the positions they are entitled to under Section 6.14(a). Declaratory relief is warranted to prevent these harms and clarify the parties' rights.

*Second,* Count IV is supported by a theory of breach of the implied covenant of good faith and fair dealing. Under New York law, all contracts imply a covenant of good faith and fair dealing, which requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002). The Merger

Agreement's protection of the Social Mission and Essential Brand Integrity in Section 6.14 is a bargained-for benefit to which Ben & Jerry's is contractually entitled. The benefit is made possible through the unique and carefully designed roles of the Independent Board and the CEO, who are required to work together in good faith. Defendants' attempts to turn Ben & Jerry's management against the Independent Board, undermine the Independent Board's authority over the Social Mission, and defy the CEO removal process all have the effect of destroying or injuring the right of Ben & Jerry's to receive the fruits of these provisions. Thus, even if Unilever's actions do not breach an express provision, they breach the duty of good faith and fair dealing.

*Third,* Defendants' stated grounds for a motion to dismiss the FAC would not dispose of the complaint even if granted in full. Defendants' February 7, 2025 letter raised no independent challenge to Count II (declaratory relief under the Settlement Agreement), arguing merely that it was duplicative of the breach of contract claim and should be dismissed if the breach of contract claim survived.[10] In the SAC, Count II is amended to request declaratory relief that Unilever's contemplated removal of the CEO and restructuring without the Independent Board would violate the Settlement Agreement, neither of which is part of Count I.[11] This amendment would not be futile because it would defeat defendants' only ground for dismissing Count II.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the court grant Plaintiffs leave to file the proposed Second Amended Complaint.

---

[10] Dkt. 33, at 4.
[11] Ex. A, at ¶ 67(c) & (e).

Dated: March 25, 2025          Respectfully submitted,

**AHMAD, ZAVITSANOS & MENSING PLLC**

By: /s/*Shahmeer Halepota*
Shahmeer Halepota
Daryl Moore
Edward Goolsby (admitted *pro hac vice*)
Weining Bai (admitted *pro hac vice*)
Angela M. Peterson (admitted *pro hac vice*)
Sean Healey (admitted *pro hac vice*)
1221 McKinney, Suite 2500
Houston, Texas 77010
Phone:  (713) 655-1101
Fax:  (713) 655-0062

*Attorneys for Plaintiffs Ben & Jerry's Homemade, Inc. and the Class I Directors of the Ben & Jerry's Board*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was filed electronically on March 25, 2025.  As such, this document was served on all counsel of record pursuant to the Federal Rules of Civil Procedure.

/s/*Shahmeer Halepota*
Shahmeer Halepota