**UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT
OF NEW YORK**

| | |
|---|---|
| BEN & JERRY'S HOMEMADE, INC., CLASS I DIRECTORS OF BEN & JERRY'S INDEPENDENT BOARD )))) | Case No. 1:24-cv-08641-PKC |
| Plaintiffs, )) v. ) | JURY TRIAL DEMANDED |
| )) UNILEVER PLC AND CONOPCO, INC. )) | |
| Defendants. | |

**[PROPOSED] SECOND AMENDED COMPLAINT**

Plaintiffs Ben & Jerry's Homemade, Inc. and the Class I Directors of the Ben & Jerry's Independent Board (together, "Plaintiffs" or "Ben & Jerry's"), by and through their undersigned attorneys, as and for their second amended complaint (the "Complaint") against defendants Conopco, Inc. ("Conopco") and Unilever PLC ("Unilever," and together with Conopco, "Unilever" or "Defendants"), hereby allege upon knowledge as to themselves and their own acts, and upon information and belief as to all other matters, as follows:

**INTRODUCTION**

1.      This dispute centers on Unilever's failure to adhere to its contractual obligations vis-a-vis the parties' Merger Agreement, Settlement Agreement, and Settlement Amendment. Specifically, Unilever has repeatedly failed to recognize and respect the Independent Board's primary responsibility over Ben & Jerry's Social Mission and Brand Integrity, including threatening Ben & Jerry's personnel should the company speak out regarding issues that Unilever prefers to censor. The Independent Board initiates this litigation to protect Ben & Jerry's three-part mission from Unilever's unilateral erosion and to safeguard the company from Unilever's repeated overreaches.

1

**Exhibit No.**

**B**

## PARTIES

2.     Plaintiff Ben & Jerry's Homemade, Inc. is a Vermont corporation with its principal place of business in Burlington, Vermont.

3.     Plaintiffs Class I Directors of the Ben & Jerry's Independent Board consist of the Class I Directors of Ben & Jerry's Homemade, Inc., who bring suit in their capacity as Directors of the Independent Board with the authority to enforce the Settlement Agreement.  The Class I Directors of Ben & Jerry's Homemade, Inc. are citizens of California, Nevada, and Georgia:

    a.   Anuradha Mittal – California

    b.   Daryn Dodson – California

    c.   Jennifer Henderson – Nevada

    d.   Detavio Samuels – Georgia

    e.   Chivy Sok – California

4.     Defendant Conopco, Inc. is a New York corporation headquartered in Englewood Cliffs, New Jersey.

5.     Defendant Unilever PLC is a United Kingdom public limited company headquartered in London, England.

## PERSONAL JURISDICTION AND VENUE

6.     This Court has personal jurisdiction over Unilever because Unilever has consented to personal jurisdiction in any federal court located in the State of New York under Section 14 of the Settlement Agreement with respect to the claims being brought in this Complaint.

7.     This Court has personal jurisdiction over Conopco because Conopco has consented to personal jurisdiction in any federal court located in the State of New York under Section 14 of the Settlement Agreement with respect to the claims being brought in this Complaint.  Conopco is also subject to the general personal jurisdiction of this Court as a domestic corporation.  *See* N.Y.

C.P.L.R. § 301.

8.      Venue lies within this District pursuant to Section 14 of the Settlement Agreement.

On information and belief, venue also lies in this District under 28 U.S.C. § 1392(b)(2) because

Defendants conduct, transact, and/or solicit substantial business in New York.

## SUBJECT MATTER JURISDICTION

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332 as there is complete diversity between the parties and the matter in controversy exceeds,

exclusive of interest and costs, the sum of seventy-five thousand dollars.

## FACTUAL BACKGROUND

**I.      Unilever Has Breached the Parties' Settlement Agreement by Inappropriately Halting Ben & Jerry's Social Mission.**

**A.      Under the Parties' Multiple Agreements, The Independent Board Holds Primary Responsibility Over Ben & Jerry's Social Mission and Brand Integrity.**

10.      Social justice and human rights are core to Ben & Jerry's DNA.  For over four

decades, the company has pursued its unique Social Mission via its public, progressive stances on

issues such as migrant justice, LGBTQ+ rights, Black Lives Matter, GMO labeling, and a variety

of other economic and social causes affecting historically marginalized communities. Consistent

with its decades-long history of supporting peace and human rights, in July 2020, Ben & Jerry's

Independent Board unanimously passed a resolution that instructed company management to

develop a plan to end all distribution of Ben & Jerry's products in Israeli-only settlements in the

Occupied Palestinian Territory.  Unilever's appointee to the Independent Board voted in favor of

the resolution.  Approximately one year later, in July 2021, Ben & Jerry's announced to the public

that it would be ending sales of its products in the area, with Unilever concurrently issuing a press

release declaring that it had "*always recognised the right* of the brand and its independent Board

3

to take decisions about its social missions."[1]

11.    On June 23, 2022, Unilever announced that it had sold Ben & Jerry's intellectual property in Israel and the Occupied Palestinian Territory to a distributor who would continue sales in the settlements.  The Independent Board—who had not consented to nor been consulted about the sale—initiated litigation on behalf of Ben & Jerry's within a matter of days, alleging that Unilever's actions constituted breaches of the parties' 2000 Merger Agreement and 2000 Shareholders Agreement, both of which cemented "primary responsibility" over Ben & Jerry's Social Mission and Brand Integrity with the Independent Board.

12.    The parties negotiated for several months thereafter. A primary objective of the Independent Board was to enshrine guardrails preventing any dilution of the company's Social Mission and Brand Integrity. Following over six months of negotiations, in December 2022, Ben & Jerry's and Unilever ultimately entered into a Settlement Agreement, which was expressly conditioned on Unilever respecting the Independent Board's authority over Ben & Jerry's Social Mission and Brand Integrity.  Per Section 2(b) of the Settlement Agreement, Unilever must "[r]espect and acknowledge the Ben & Jerry's Independent Board's primary responsibility over Ben & Jerry's Social Mission and Essential Brand Integrity" and "work in good faith with the Independent Board to ensure that both are protected and furthered."[2]

13.    Unilever has breached its contractual obligations to both Ben & Jerry's and the Independent Board through various threats, reprisals, and censorship.

---

[1]    Exhibit 1 (Unilever Statement on Ben & Jerry's Decision) at 2.

[2]    Exhibit 2 (Settlement Agreement) at 1.  This provision underscored the Independent Board's authority as outlined in the Merger Agreement.  Indeed, the Settlement Agreement repeatedly references the Merger Agreement, and uses the following statement to summarize its purpose and extent: "Unilever respects the Merger Agreement with Ben & Jerry's Homemade Inc., including the company's three-part mission and the Independent Board's primary responsibility over the company's Essential Brand Integrity and Social Mission . . . As provided in Sections 6.14(e), (f) of the Merger Agreement, any decisions implicating Ben & Jerry's Essential Brand Integrity and Social Mission should be made after consultation with and approval of the Independent Board of Ben & Jerry's." *Id.* at 2-3.

**B.     Unilever Has Repeatedly Halted Ben & Jerry's Social Mission in Direct Contravention of the Settlement Agreement.**

14.     Mere months after the parties entered the Settlement Agreement, Unilever had already begun its efforts to undermine it.  Specifically, during the ongoing humanitarian crisis in Gaza, which has claimed the lives of over 20,000 innocent Palestinian children, Ben & Jerry's has on four occasions attempted to publicly speak out in support of peace and human rights.  Despite its contractual commitment to "[r]espect and acknowledge" the Independent Board's primary responsibility over Ben & Jerry's Social Mission and Essential Brand Integrity, ***Unilever has silenced each of these efforts***.

15.     *First*, in December 2023, approximately two months into the humanitarian crisis, the Independent Board alongside Ben & Jerry's management informed Unilever that Ben & Jerry's would be issuing the following statement: "Ben & Jerry's calls for peace and a permanent and immediate ceasefire."  By this time, over 140 countries around the world (including England, France, and Canada), Doctors Without Borders, and the Pope had also called for a ceasefire.  In response, Unilever threatened to ***dismantle the Independent Board*** and ***sue the board members individually*** if Ben & Jerry's—with its decades-long motto of "peace, love, & ice cream"—issued the statement supporting "peace" and a "ceasefire."  These threats were coupled with personal calls from Peter ter Kelve and Jeff Eglash (Unilever's President of Ice Cream and Global Head of Litigation), who attempted to intimidate Ben & Jerry's personnel with professional reprisals if the company issued the ceasefire statement.

16.     *Second*, approximately five months later, in May 2024, Ben & Jerry's social activism managers in Europe sought to release the following statement in support of the safe passage of Palestinian refugees:



People fleeing war need routes to safety, but right now there are no safe ways for Palestinians affected by war to seek sanctuary in the UK.

So just like the UK did for Ukrainians, we ask that the Government urgently create a Visa Scheme allowing Palestinians to reunite SAFELY with their loved ones in the UK.

Join us in this humanitarian call for a Gaza Family Visa Scheme NOW.

17.    This statement was consistent with Ben & Jerry's long history of supporting safe passage for refugees from multiple countries, including Rwanda, Afghanistan, and Ukraine, among others.  In fact, Ben & Jerry's showcases a statement titled "the Rights and Dignity of Refugees and Asylum Seekers" under the "Issues We Care About" section of the company's website. Nevertheless, Unilever prevented Ben & Jerry's social activism managers from publishing the statement, without the Independent Board's knowledge or consent.

18.    In June 2024, after the Independent Board became aware of Unilever's inappropriate muzzling, Ben & Jerry's Chairwoman, Anuradha Mittal, wrote to Mr. ter Kelve emphasizing Ben & Jerry's "long history of work on refugee rights," including supporting safe passage for refugees from multiple countries.  The Chairwoman continued: "Safe passage is the right of every single person from every single country; to single out Gazan refugees' right to safe passage is discriminatory and contravenes international human rights and humanitarian laws, not to mention Unilever's stated commitment to human rights principles in general.  This work also

6

falls squarely under the Merger Agreement which grants the Board primary decision-making authority."

19.     On July 1, 2024, Mr. ter Kelve responded: "[T]o my understanding the communications team initially reviewed [the statement] and was concerned about the timing of it – it coincided with the Iranian missile attack on Israel.  When the matter was escalated to me, I expressed concerns about the continued perception of antisemitism that is a persistent issue.  It was my judgment that in light of the timing and nature of the post it, it was not an appropriate message at this time."  Disturbed that Mr. ter Kelve would intentionally create a false equivalency between calling for the safe passage of Gazan refugees and antisemitism, Ms. Mittal wrote on July 7, 2024: "[O]ther than your clairvoyant intuition, could you please point to any objective data point—such as a market study or third-party evaluation—that objectively confirmed your unilateral judgment that calling for safe passage of all refugees, including from Gaza will be viewed as antisemitism?" To this day, Mr. ter Kelve has never provided any such evidence.

20.     *Third*, in June 2024, as college campuses around the country were protesting the civilian deaths and humanitarian catastrophe in Gaza, Ben & Jerry's management and the Independent Board aligned on issuing a public statement supporting the protesters' First Amendment rights.  Ben & Jerry's has a long history of supporting such discourse, including a post titled "Silence is NOT an Option" regarding the murder of George Floyd, which remains live on Ben & Jerry's website.  When Ben & Jerry's management informed Unilever that they would be publishing the statement supporting the protesters' rights, Jeffrey Eglash (Unilever Global Head of Litigation) barred its release.

21.     *Fourth*, on September 25, 2024, Senator Bernie Sanders issued the following tweet:



22.     In conjunction with Senator Sander's post, Ben & Jerry's management and the Independent Board agreed on releasing the following statement:

> We Support the Sanders Resolution. As the one-year anniversary of October 7th approaches, with tens of thousands of innocent Palestinian civilians killed and dozens of Israeli hostages still held, we believe in providing critical humanitarian aid, not in sending more weapons. We urge you to join us in calling on the Senate to pass the Sanders Resolution and halt an additional $20 billion in military aid to Israel.

23.     On September 25, 2024, Ms. Mittal wrote to Ben & Jerry's CEO requesting publication of the statement as approved by the Independent Board, the entity with "primary responsibility" over Ben & Jerry's Social Mission.  The Chair followed up on September 29, 2024, requesting a status update.  The following day, Ms. Mittal was informed that Mr. ter Kelve had

unilaterally vetoed the statement in what amounted to Unilever's fourth act of censoring Ben & Jerry's social mission in less than a six-month span.

24.    Unilever's overreach has recently expanded to other portions of the Social Mission as well.  For example, following the November 2024 election, Ben & Jerry's management worked collaboratively with the Independent Board to release a post on Inauguration Day that identified several social issues Ben & Jerry's believed would be challenged during the Trump administration, including minimum wage, universal healthcare, abortion, and climate change.  Despite weeks of working on the statement, including feedback from Unilever's Global Head of Litigation, on January 18, 2024, Peter ter Kelve unilaterally barred Ben & Jerry's from issuing the post because it specifically mentioned "Donald Trump."

25.    Mr. ter Kelve's objection, of course, ignored Ben & Jerry's consistent history of challenging the Trump administration, including launching the flavor "Pecan Resist" in 2018 alongside the following public statement:  "The company cannot be silent in the face of President Trump's policies that attack and attempt to roll back decades of progress on racial and gender equity, climate change, LGBTQ rights and refugee and immigrant rights – all issues that have been at the core of the company's social mission for 40 years."  Mr. ter Kelve—clearly unaware of the Pecan Resist statement—provided **no evidence whatsoever** regarding any commercial implications of previous posts regarding the Trump administration or of the Inauguration Day post which he unilaterally blocked.  Rather, Mr. ter Kelve appeared to base his decision solely on his intuition.

26.    Unilever's objection to mentioning "Trump" coincides with its prominent board member, Nelson Peltz, publicly supporting Mr. Trump.  Within twenty-four hours of Mr. ter Kelve blocking the Inauguration Post on the grounds that it was "partisan," he hosted an Ice Cream Townhall, where he publicly touted that Mr. Peltz had been the one to introduce Elon Musk to

Donald Trump. According to Mr. ter Kelve, despite four decades of progressive social activism—and years of challenging policies under both Democratic and Republican presidents—criticizing Trump was now too taboo for the brand synonymous with "Peace, Love, and Ice Cream."

27.     As the aforementioned conduct underscores, Unilever has exhibited a pattern and practice of usurping the Independent Board's authority, while concurrently stymieing Ben & Jerry's Social Mission and Brand Integrity.

## II.     Unilever Has Breached the Parties' Settlement Agreement by Blocking Donations to Jewish Voice for Peace and the Council on American Islamic Relations.

### A.     Per the Settlement Agreement, the Chair of the Independent Board Designates Donation Recipients.

28.     As another condition to the Settlement Agreement, Unilever must make a total of $5 million in payments to Ben & Jerry's for disbursement to human rights and humanitarian organizations. Per Section 2(g) of the Settlement Agreement:

> Unilever will make two $2,500,000 payments to Ben & Jerry's Homemade Inc. (totaling $5,000,000). The first payment will occur in 2023 and the second payment in 2024. Under no circumstances will the first payment be made later than July 30, 2023, or the second payment be made later than July 30, 2024. The Chair of the Independent Board in good faith consultation with Unilever will determine to which humanitarian and human rights organizations the funds will be disbursed. Unilever's consent will not be unreasonably withheld.

29.     Per the plain terms of the Settlement Agreement, the Chair of Ben & Jerry's Independent Board is to "determine" the donation recipients. It is a breach of contract for Unilever to unreasonably object to the Chair's designees.

### B.     Unilever Has Unreasonably Blocked Ben & Jerry's from Donating to Jewish Voice for Peace and the Council on American-Islamic Relations.

30.     On June 7, 2024, Ben & Jerry's Chairwoman provided Maria Varsellona—Unilever's Chief Legal Officer—a list of her designees, which included Jewish Voice for Peace and the San Francisco-Bay Area Chapter of the Council on American-Islamic Relations (CAIR-SFBA), among others. This initial correspondence led to a two-month-long negotiation process

over the designees.

31.    On multiple occasions, the Chair requested any objections Unilever had to the groups in writing. After initially refusing, Unilever finally provided its written objections on August 16, 2024 via a chart of grievances which simply regurgitated offensive stereotypes regarding each of the Chair's designees. These objections were riddled with inconsistencies. For example, despite expressly agreeing to donate to "human rights organizations" in the parties' Settlement Agreement, each of Unilever's objections boiled down to the same issue: the organizations were advocating for human rights, namely Palestinian human rights. As an illustration, Unilever's objection to donations for ***Jewish Voice for Peace*** was that the group was too critical of the Israeli government. Unilever's asserted objections were inconsistent with ***its own public*** Human Rights Policy which states that "[b]usinesses ***must not support any actions, directly or indirectly***, which impinge upon human rights defenders' right to ***freedom of expression***, association, or assembly."[3]

32.    Unilever's pretext for blocking the donations was that it allegedly seeks to remain "neutral" on the Palestinian-Israeli conflict. Unilever's actions, however, belie its assertions of neutrality. For example, following October 7, Unilever publicly made a 500,000 Euro donation to Magen David Adom, an Israeli organization which acts as an auxiliary service to the Israeli Defense Forces (IDF). Magen David Adom has appointed to head its rabbinical committee Rabbi Schmuel Eliyahu, who has been repeatedly criticized for his "racist statements and extremist views." Mr. Eliyahu has called on Jews "not to rent apartments to Arabs" and for the indiscriminate bombing of Palestinians ("If they don't stop after we kill 100, then we must kill a thousand. And if they do not stop after 1,000 then we must kill 10,000. If they still don't stop we must kill 100,000,

---

[3]    *See* Unilever Principles in Support of Human Rights Defenders (https://www.unilever.com/files/a9ee0484-3dad-4f48-9f0b-69cea560ebba/unilever-principles-in-support-of-human-rights-defenders-sept-2023.pdf) at 7.

even a million"). As Rabbi Rick Jacobs, President of the Union for Reform Judaism, has described: "Rabbi Shmuel [sic] Eliyahu is well known for his racist views which most Jews and supporters of Israel find offensive and which the Israeli Supreme Court strongly condemned."[4] He further described Rabbi Eliyahu as a "purveyor of hatred towards Arabs."[5] Most recently, Rabbi Eliyahu has called for the nuking of Gaza.[6]

33.     Moreover, Unilever has not remained "neutral" in other contexts. For example, Unilever's website contemporaneously showcases its position on the Ukraine/Russia conflict: Unilever "continue[s] to condemn the war in Ukraine as a ***brutal and senseless act by the Russian state***."[7] In support of this position, Unilever "ceased all imports and exports of [its] products into and out of Russia . . . stopped all media and advertising spend . . . [and] ceased all capital flows into and out of the country."[8]

34.     On August 28, 2024, Ms. Mittal provided the following response to Unilever's objections chart: "We have provided ample evidence of Unilever taking sides in both this conflict and others completely negating your assertions, including the head rabbi of David Magen Adom calling for a nuclear bomb to drop on Gaza. It is disappointing that you attempt to portray Palestinian human rights as a 'needless dispute'  We have reviewed your 'evidence' and find your objections to be riddled with caricatures and stereotypes. There is nothing unreasonable with promoting basic human rights for Palestinians." Ms. Varsellona never responded.

---

[4]    Exhibit 3 (Sam Sokol, *Israeli Rabbi Accused of Racism Says Barred from U.S. by 'anti-Zionists'*, HAARETZ (May 31, 2022)) at 2.

[5]    *Id.*

[6]    Exhibit 4 (*Rabbi Backs Remark by his Son, a Far-right Minister, that Nuking Gaza is an Option*, TIMES OF ISRAEL (Nov. 14, 2023)) at 1-2.

[7]    Exhibit 5 (Unilever Statement on the War in Ukraine) at 2.

[8]    *Id.*

### III. Unilever Has Failed to Adhere to Its Contractual Payment Obligations to Indigenous Palestinian Farmers.

#### A. Per the Parties' Settlement Amendment, Unilever Is to Disburse $20 Million to Canaan Fair Trade Over the Next 10 Years.

35. On August 30, 2023, the Parties negotiated a Settlement Agreement Amendment. Per the Amendment, Unilever "will make payments totaling $2 million USD annually to Canaan Fair Trade ('Canaan'), directly or through a third party, for the use of Palestinian almonds (or for the direct benefit of Palestinian almond farmers), for at least ten years   Payments to Canaan will be verified by auditors selected by the Independent Board and reported on an annual basis in SEAR.  Confirmation of payments made hereunder will be sent to the Chair of the Independent Board quarterly."[9] Canaan has sourced ingredients for Ben & Jerry's products for nearly a decade, with its almonds being recognized for their high quality alongside Canaan's promotion of values-led sourcing and fair trade.

#### B. Unilever Has Failed to Adhere to Its Contractually Mandated Reporting Requirements While Scapegoating Its Former Executives.

36. Per the plain terms of the Settlement Amendment, "[c]onfirmation of payments made" to Canaan "will be sent to the Chair of the Independent Board quarterly."  The end of the first quarter occurred on March 31, 2024.  Unilever failed to provide such confirmation.

37. Instead, on April 2, 2024, Mr. ter Kelve wrote to Ben & Jerry's Chairwoman that he "[h]ad not been briefed on this yet and will investigate what the status of this agreement is. Who is this Canaan group could not find when I googled?"

38. As Ms. Mittal pointed out in her response, Mr. ter Kelve's ignorance was eye-popping: "We have had a nearly-**decade long** commitment with Canaan. **As referenced in the language of the Settlement Amendment**, they are a supplier of fair-trade ingredients from

---

[9]    Exhibit 6 (Settlement Agreement Amendment) at 1.

Palestinian farmers:  https://canaanpalestine.com/." (emphasis added).

39.     On April 11, 2024, Ms. Mittal and Mr. ter Kelve had a telephone conference to further discuss the issue.  During the call, Mr. ter Kelve lamented the Settlement Amendment as a bad agreement and suggested that his predecessor, Matt Close, was fired for agreeing to it.  When Ms. Mittal pointed out that the Settlement Amendment involved a multi-month negotiation process and review by multiple Unilever executives, Mr. ter Kelve was at a loss for excuses.

40.     In addition to attempting to renegotiate the parties' agreement, Unilever has unilaterally added hurdles to Cannan's receipt of the funds, conditions which do not appear in the Settlement Amendment.  These extracontractual conditions highlight Unilever's chronic overreach and disregard of the parties' agreement.

## IV.    Unilever Is Attempting to Replace Ben & Jerry's CEO for Defending the Social Mission in Violation of Unilever's Obligations Under the Merger and Settlement Agreements.

41.     Like the Settlement Agreement, Section 6.14 of the parties' Merger Agreement protects the Social Mission and Brand Integrity of Ben & Jerry's, positions the Independent Board as the "custodians" of the same, and obligates Unilever to work with the Independent Board in good faith.[10]

42.     The Merger Agreement further protects Ben & Jerry's interests by precluding the unilateral removal of its CEO. Specifically, under Section 6.14(c), any decision regarding the replacement of Ben & Jerry's CEO shall only occur "*after* good faith consultation with, and the participation in the discussion of, an advisory committee of the Company Board (the 'Appointment

---

[10]    *See* Exhibit 7 (Merger Agreement), at 48–52. 1.  The good faith cooperation of the CEO, the Independent Board, and Conopco in furthering Ben & Jerry's Social Mission and Brand Integrity is an essential term of the Merger Agreement.  Sections 6.14(e) and 6.14(f) provide that the Independent Board "shall work together with the CEO" to integrate the Social Mission into Ben & Jerry's business plan and conduct the business in a manner that "preserves and enhances" Brand Integrity.  Section 6.14(d) contemplates that the Company and Conopco shall work together in good faith to devise the annual business plan.  And Section 6.14(i) specifically provides that "Conopco shall not prevent [Ben & Jerry's] from fulfilling its obligations" under Section 6.14.

Committee')."  The power to appoint members to this committee is vested exclusively in the Class I Directors of the Independent Board.

43.      Contrary to their obligations under Section 6.14, Unilever has repeatedly threatened Ben & Jerry's personnel, including CEO David Stever, should they fail to comply with Unilever's efforts to silence the Social Mission.

44.      This month, ter Kelve and Unilever followed through with their threats.  On March 3, 2025, Unilever informed the Independent Board that they were removing and replacing Mr. Stever as Ben & Jerry's CEO.  Ter Kelve informed third parties of the same soon thereafter. Despite the Merger Agreement's clear obligation that any decision regarding the CEO's removal can only occur "*after* good faith consultation with, and the participation in the discussion of, an advisory committee of the Company Board," Unilever announced their decision before the committee had even been appointed and attempted to force the Independent Board into rubberstamping the decision by unilaterally dictating artificial and hasty deadlines.

45.      For example, Unilever attempted to impose an arbitrary *four-day* deadline for the Independent Board to convene, appoint a committee, analyze the merits of removal, draft a "consultation" in writing, and send it to Unilever, despite Unilever claiming they had been contemplating the removal for over *four months*.  According to Unilever, *four days* was plenty of time for good faith discussions regarding replacing the CEO of a billion-dollar business.

46.      In response, the Independent Board pointed out that Unilever's four-day timeline was inconsistent with the Merger Agreement and offered instead to appoint a committee on April 1, the date for the next Independent Board meeting. The Independent Board also requested access to Unilever's minutes, notes, and materials related to the removal decision so that the committee— once appointed—could meaningfully participate in the contractually-mandated discussions. Unilever refused the request.

47.    On information and belief, Unilever's motive for removing Mr. Stever is his commitment to Ben & Jerry's Social Mission and Essential Brand Integrity and his willingness to collaborate in good faith with the Independent Board, rather than any genuine concerns regarding his performance history.  Under Mr. Stever's tenure, Ben & Jerry's *outperformed* Unilever's ice cream portfolio and was ranked #2 on the Brand 500 Authenticity Index in both 2023 and 2024.

48.    In fact, in January 2025, Unilever literally wrote out their true intentions in Mr. Stever's annual performance review authored by Gerardo Rozanski (Unilever's President of Ice Cream for North America) and Ronald Schellekens (Unilever's Chief Human Resources Officer). In that review, Unilever chastised Stever for "repeatedly acquiesce[ing] to the demands of the Independent Social Mission Board" by allowing Ben & Jerry's to post statements the Independent Board had collaboratively worked on with Ben & Jerry's management.

49.    Unilever's actions breached the Merger Agreement by obstructing the CEO's duties, purposely undermining Ben & Jerry's Social Mission and Brand Integrity, and failing to abide by the agreed procedure for removal of Ben & Jerry's CEO.  These actions also breached the Settlement Agreement:  Unilever's attempt to replace Mr. Stever for preserving Ben & Jerry's Social Mission and working respectfully with the Independent Board is antithetical to its contractual obligations to respect the Social Misson and work with the Independent Board in good faith to ensure it is furthered.

50.    Concurrently with their efforts to remove Mr. Stever, Unilever's suppression of Ben & Jerry's Social Mission has reached startling new levels of oppressiveness—and irony.  For example, Unilever prevented Ben & Jerry's—the company that has openly called for "Dismantling White Supremacy"—from issuing a post commemorating Black History Month. And most recently, after Columbia graduate Mahmoud Khalil was detained by ICE for expressing pro-Palestine views on a college campus, Unilever blocked Ben & Jerry's from making the following

16

post: "Protect the First Amendment! Free speech and peaceful protests are the lifeblood of our democracy, and student activists have always been at the center of the fight for justice. Political speech is protected by our constitution and peaceful civil disobedience should never be the basis for deportation. Protect your right to dissent and take action with the @ACLU," followed by a link to an ACLU petition for Mr. Khalil's release. Once again, Unilever provided no explanation for the censorship.

51.     Unilever's repeated threats (including to dismantle the Independent Board), inappropriate muzzling, and campaign of professional reprisals are particularly concerning given their simultaneous efforts to restructure the company. Beginning in 2024, Unilever began taking steps to spin off Unilever's ice cream business, including Ben & Jerry's Homemade, Inc. into a standalone company. To date, Unilever has failed to engage with the Independent Board in good faith regarding how the restructuring will preserve the rights, duties, and obligations specified in the parties' agreements, including Ben & Jerry's Social Mission and Brand Integrity and the Independent Board's authority over the same. Instead, they have repeatedly threatened Ben & Jerry's personnel, encroached on the Independent Board's authority over the Social Mission, and are now moving to replace those who they deem to have sided with the Independent Board.

52.     On March 5, 2025, Unilever informed the Independent Board that the restructuring was "imminent."

<u>**CAUSES OF ACTION:**</u>

**COUNT I –BREACH OF CONTRACT:  SETTLEMENT AGREEMENT**

53.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

54.     Plaintiffs and Defendant entered into the Settlement Agreement in December 2022. Per Section 2(b) of the Settlement Agreement, Unilever must "[r]espect and acknowledge the Ben

& Jerry's Independent Board's primary responsibility over Ben & Jerry's Social Mission and Essential Brand Integrity" and "work in good faith with the Independent Board to ensure that both are protected and furthered." These commitments echo previous promises Defendant made to Plaintiffs in the Merger Agreement.

55.     Defendants have breached this provision by threatening to dismantle the Independent Board, sue Board members, and intimidate Ben & Jerry's personnel. Defendants' breaches also include censoring Ben & Jerry's from publicly voicing support for peace and refugee rights and for social and economic justice under the Trump administration. Defendants have also failed to ensure that the Social Mission is protected and furthered, often acting unilaterally. Defendants' actions are unreasonable, hindering Ben & Jerry's Social Mission and tarnishing its Brand Integrity, areas over which the Independent Board retains primary responsibility.

56.     Defendants' actions (including their censorship) have damaged Ben & Jerry's Social Mission and Brand Integrity (including its goodwill) and encroached on the Independent Board's authority, including their duties as the custodians of the Ben & Jerry's brand.

57.     Per Section 2(g) of the Settlement Agreement, "Unilever will make two $2,500,000 payments to Ben & Jerry's Homemade Inc. (totaling $5,000,000). The first payment will occur in 2023 and the second payment in 2024." Unilever failed to make the 2024 payment. Ben & Jerry's has thus been damaged through its non-receipt of the promised funds.

58.     Unilever's breaches have also damaged Ben & Jerry's by injuring its reputation and goodwill with customers, both of which are highly dependent upon a sustained public perception that Ben & Jerry's steadfastly promotes its social goals and refuses to compromise its integrity. Ben and Jerry's customers expect the Company to publicly comment on pressing social issues and expect its highest-ranking officials—including the CEO and the independent Board—to be

supportive of these causes.[11] Ben & Jerry's unwavering commitment to the Social Mission and Essential Brand Integrity is one of the primary reasons customers choose Ben & Jerry's over other brands, and a key part of its business model.  Consequently, every act of muzzling, suppressing, or publicly undermining the company's social activism causes real, calculable, and significant financial and reputational harm to Ben & Jerry's.  Unilever's breaches have also undermined the Independent Board and damaged its authority over the Social Mission and Brand Integrity of the company, including their roles as "custodians" of the same.

### COUNT II – DECLARATORY JUDGMENT: SETTLEMENT AGREEMENT

59.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

60.    Per Section 2(b) of the Settlement Agreement, Unilever must "[r]espect and acknowledge the Ben & Jerry's Independent Board's primary responsibility over Ben & Jerry's Social Mission and Essential Brand Integrity" and "work in good faith with the Independent Board to ensure that both are protected and furthered."  Unilever's ongoing silencing of Ben & Jerry's Social Mission breaches this obligation, including its present bar on any posts criticizing the Trump administration's policies.

61.    Additionally, a present, actual, and justiciable controversy exists between Plaintiffs and Defendants regarding whether Unilever has unreasonably objected to the Chair's designees under the terms of Settlement Agreement such that Unilever is now bound to disburse the funds to the Chair's designees.  28 U.S.C. § 2201.

62.    Under Section 2(g) of the Settlement Agreement, the "Chair of the Independent Board in good faith consultation with Unilever will determine to which humanitarian and human

---

[11]    *See, e.g.*, Ben & Jerry's January 24, 2025 TikTok post and user comments thereunder: (https://www.tiktok.com/@benandjerrys/video/7463526456144989486?lang=en).

rights organizations the funds will be disbursed. Unilever's consent will not be unreasonably withheld."

63.     Defendants have breached these provisions by preventing Ben & Jerry's from donating to the Chair's designees, including Jewish Voice for Peace and CAIR-SFBA, among others.

64.     Under Section 2(i) of the Settlement Agreement, Unilever and Conopco are required to ensure that "[r]espect and adherence to the Merger Agreement and a respectful work relationship with the Independent Board will be a stated component of the job description of every CEO of Ben & Jerry's."

65.     Defendants are in breach of this provision, as well as the obligation to protect and further the Social Mission under Section 2(b), if they persist in replacing Ben & Jerry's CEO for respecting the Social Mission and collaborating with the Independent Board.  These actions also breach the implied duty of good faith and fair dealing by undermining the agreement's purpose and the parties' obligations under these sections.

66.     Unilever's habitual breaches are particularly concerning given their ongoing restructuring.  Any restructuring inconsistent with preserving the Independent Board's authority would constitute a breach of Unilever's contractual obligations, damaging the Independent Board's authority as well as the rights they are granted within the agreement.

67.     Accordingly, Plaintiffs seek a declaration that:

a.   Unilever has unreasonably withheld its consent to the Chair's designees.

b.   By unreasonably withholding its consent and failing to make the payments by the agreed upon dates, Unilever has breached the Settlement Agreement.

c.   Any attempt by Unilever to remove Ben & Jerry's CEO for protecting the Social Mission or Essential Brand Integrity or for respecting the independent Board would breach Defendants' obligations under the Settlement Agreement.

d.  Any attempt to prevent Ben & Jerry's from criticizing the Trump administration's policies or speaking out on other social issues under the purview of its Social Mission would constitute a breach of its commitment to "[r]espect and acknowledge the Ben & Jerry's Independent Board's primary responsibility over Ben & Jerry's Social Mission and Essential Brand Integrity" and "work in good faith with the Independent Board to ensure that both are protected and furthered."

e.  Any attempt to eliminate the Independent Board or its members, or to substantially alter or diminish the Independent Board's responsibility and rights over the Social Mission and Essential Brand Integrity, or to restructure the company in a way that would have the same effect would breach Defendants' obligations under the Settlement Agreement.

f.  Unilever must immediately disburse or allow Ben & Jerry's to disburse $2,500,000 in funds to the Chair's designees, including Jewish Voice for Peace and CAIR.

**COUNT III– DECLARATORY JUDGMENT: SETTLEMENT AMENDMENT**

68.  Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

69.  A present, actual, and justiciable controversy exists between Plaintiffs and Defendants regarding whether Unilever has failed to adhere to its contractual obligations regarding disbursements to Canaan Fair Trade and failing to send quarterly confirmation reports to the Independent Board.

70.  Per the 2023 Settlement Amendment, Unilever "will make payments totaling $2 million USD annually to Canaan Fair Trade ('Canaan'), directly or through a third party, for the use of Palestinian almonds (or for the direct benefit of Palestinian almond farmers), for at least ten years．  Payments to Canaan will be verified by auditors selected by the Independent Board and reported on an annual basis in SEAR．  Confirmation of payments made hereunder will be sent to the Chair of the Independent Board quarterly." Defendants have breached the Settlement Amendment by failing to abide by the quarterly reporting requirements, by failing to make payments in compliance with the Amendment's requirements, and by unilaterally erecting

extracontractual hurdles.

71.   Accordingly, Plaintiffs seek a declaration that:

a.   Under the terms of the Settlement Amendment, Unilever must make annual payments of $2 million to Canaan Fair trade, for the use of Palestinian almonds or the direct benefit of Palestinian almond farmers, for a period of ten years.

b.   Unilever must send confirmation of the payments to the Chair of the Independent Board, reporting on a quarterly basis.

c.   Unilever must not erect extracontractual barriers to such payment.

**COUNT IV—DECLARATORY JUDGMENT: MERGER AGREEMENT**

72.   Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

73.   Defendants' proposed restructuring of the company threatens to eliminate the Independent Board's, which would breach Section 6.14(a)'s provision that Conopco "shall not otherwise remove any member of the Company Board," as well as violating the duty of good faith and fair dealing as to this and other subsections of Section 6.14.  Eliminating the Independent Board or its custodial role would irreparably harm Ben & Jerry's by leaving the Social Mission and Brand Integrity unprotected, contrary to the clear intent of the Merger Agreement.

74.   Further, Section 6.14(c) of the Merger Agreement requires Conopco to consult an Independent Board-appointed advisory committee in good faith ***before*** deciding to remove, appoint, or change the compensation of the CEO. This advisory committee is entitled to "participation in the discussions" of any such contemplated decision.

75.   By attempting to remove the CEO of Ben & Jerry's for cooperating with the Independent Board on the Social Mission and Essential Brand Integrity, Conopco threatens to undermine these critical aspects of the Merger Agreement and cause irreparable harm to Ben & Jerry's.  If completed, Mr. Stever's removal would breach Section 6.14(c)'s requirements of good

22

faith consultation and meaningful participation in discussions. Removal under these circumstances would also breach the implied duty of good faith and fair dealing as to Sections 6.14(d), 6.14(e), and 6.14(f) by obstructing the ability of the CEO and the Independent Board to work together in furthering the Social Mission and Essential Brand Integrity.

76.    Accordingly, Plaintiffs seek a declaration that:

   a.  Unilever must engage in good faith consultation with the Independent Board's Appointment Committee to remove Ben & Jerry's CEO or appoint a new CEO and must also allow the Appointment Committee to participate in all such discussions. Unilever must provide any notes, minutes, or other memorandum to the Appointment Committee for any discussions which have taken place without their participation.

   b.  Under the terms of the Merger Agreement, Defendants may not fire the CEO of Ben & Jerry's for defending the Social Mission or for cooperating with the Independent Board, and persisting in their current attempt to do so would be a breach of contract.

   c.  Eliminating the Independent Board or substantially altering or diminishing its rights, duties, or responsibilities would materially breach the Merger Agreement; therefore, any restructuring of Unilever, Conopco, and/or Ben & Jerry's Homemade Inc. must preserve the Independent Board's existence and role as custodian of the Social Mission and Essential Brand Integrity.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Ben & Jerry's respectfully requests judgment in its favor and other appropriate relief against Defendants as follows:

1.    Actual, direct, indirect, unjust enrichment, incidental, consequential, and nominal damages;

2.    Declaratory relief ordering Defendants to prospectively respect and acknowledge the Ben & Jerry's Independent Board's primary responsibility over the brand's Essential Brand Integrity and Social Mission; ensure any decisions impacting the Essential Brand Integrity and Social Mission follow consultation with and the approval of the Independent Board; release funds to the Chair's designees, including Jewish Voice for Peace and CAIR; make agreed

payments to Canaan Fair Trade for the next ten years; respect the CEO's obligation to work with the Independent Board in good faith to further the Social Mission and Essential Brand Integrity; comply with the CEO appointment and removal procedure required by the Merger Agreement; and ensure that any restructuring of Ben & Jerry's or its parents does not eliminate or diminish the authority of the Independent Board;

3.      An award of Plaintiffs' reasonable attorney's fees and costs; and

4.      Any and all other relief that this Court deems just and proper.

Dated: March 18, 2025                    Respectfully submitted,


                                         **AHMAD, ZAVITSANOS & MENSING PLLC**

                                         By: /s/ *Shahmeer Halepota*
                                         Shahmeer Halepota
                                         Daryl Moore
                                         Edward Goolsby (admitted *pro hac vice*)
                                         Weining Bai (admitted *pro hac vice*)
                                         Angela M. Peterson (admitted *pro hac vice*)
                                         Sean Healey (admitted *pro hac vice*)
                                         1221 McKinney, Suite 2500
                                         Houston, Texas 77010
                                         Phone:  (713) 655-1101
                                         Fax:  (713) 655-0062

                                         *Attorneys for Plaintiffs Ben & Jerry's Homemade, Inc.*
                                         *and the Class I Directors of the Ben & Jerry's Board*


## CERTIFICATE OF SERVICE

        The undersigned hereby certifies that a true and correct copy of the above and foregoing document was filed electronically on March 18, 2025.  As such, this document was served on all counsel of record pursuant to the Federal Rules of Civil Procedure.

                                         /s/*Shahmeer Halepota*
                                         Shahmeer Halepota