# EXHIBIT D

## Confidential Arbitration By Agreement

Class I Directors of the Ben & Jerry's Board of Directors, referred to as Claimants,

v.

Unilever PLC, Conopco, Inc., Ben & Jerry's Homemade, Inc, referred to as Respondents.

## Award of Arbitrator

After consideration of the witnesses and evidence presented at the hearing on the merits and the pre- and post-hearing briefs of the parties and their arguments, the Arbitrator in this matter makes the following award and adopts the following as findings of fact and conclusions of law.

This arbitration by agreement of the parties was established through a series of arbitration agreements and the Arbitrator, Hon. Christopher F. Droney(ret.), was jointly selected by the parties.

 The Claimants will be also referred to herein as the "Class I Directors or Independent Board" and Respondents also as "Unilever."

I.    Background

Ben & Jerry's is an internationally known and successful distributor of many different flavors and types of ice cream.  In 2000, Ben & Jerry's and Conopco (a wholly owned subsidiary of Unilever, an international consumer goods and products company) entered into a merger agreement.  Conopco acquired all the stock of Ben & Jerry's, but the Independent Board was established at that time as a unique entity to oversee the "Social Mission Priorities" and "Essential Brand Integrity" of Ben & Jerry's.   Following the merger, the business management and day-to-day operations of Ben & Jerry's were to be conducted by Conopco and Unilever.  Prior to the merger, Ben & Jerry's had

invested substantial efforts and resources in many social missions, including sustainable product resourcing and environmental causes. Following the merger, the Class I Directors continued those efforts, including expanding into the "Black Lives Matter" movement and other social justice causes, encouraging diversity and opportunities in its operations, and assisting non-profit organizations.

In July 2021, a major development occurred that has had continuing effects. At the urging of the Class I Directors, Ben & Jerry's decided to cease selling products in the West Bank because of Israel's treatment of Palestinians and other activities by the government of Israel in the West Bank affecting Palestinians, and to not renew its license agreement with its partner in Israel. As a result, there were substantial negative repercussions to Unilever throughout the world, especially in the United States. Many states and government officials viewed this step as a boycott of Israel and, among other things, divested from Unilever stock, began a variety of investigations of Unilever (both state and federal) and placed Unilever on their Israel boycott list. Unilever was sanctioned by ten states in the United States, pension funds of a number of states divested hundreds of millions of dollars in Unilever securities, and states threatened Unilever with sanctions under their anti-"Boycott, Divestment and Sanctions" laws. A number of lawsuits were also filed against Unilever for shutting down its Ben & Jerry's sales in the West Bank.

Unilever subsequently sold its licensing and production rights to its former partner in Israel, who resumed production in Israel (including the West Bank) with some modifications of labeling of the ice cream. Following that, the Class I Board sued Unilever in the United States District Court for the Southern District of New York for taking that step contrary to the position of the Class I Board in advocating for the shutting down of sales in the West Bank.

That suit was resolved and dismissed pursuant to a "Confidential Settlement and Release Agreement" of December 13, 2022 (the Settlement Agreement"), which led to this arbitration.

The settlement agreement, among other things, at Section 2(g) provided that Unilever would make two contributions of $2,500,000, one each in 2023 and 2024, to "humanitarian and human rights organizations" identified by the Chair of the Independent Board. Section 2(g) requires that the Chair consult in good faith with Unilever as to those recipients and "Unilever's consent will not be unreasonably withheld." The Chair of the Independent Board is—and has been for many years-- Anuradha Mittal, founder and executive director of The Oakland Institute.

The principal dispute in this arbitration is the following: the Chair of the Independent Board identified two organizations to receive the 2023 contributions as the Institute for Middle East Understanding "(IMEU") and the United Nations Special Rapporteur on the Palestinian Territories Occupied Since 1967 ("Special Rapporteur"). Those two entities were rejected by Unilever, and the issue is whether those rejections are consistent with Unilever's duty to only reject proposed contributions if the rejections were reasonable. Unilever also raised as issues in the arbitration the following: did Mittal consult in good faith in that process, and did Mittal violate her fiduciary duty as a board member of Ben & Jerry's by her proposing and insisting that Unilever contribute to those two organizations?

Because resolution of the first issue is adequate to resolve this arbitration, the Arbitrator will not resolve whether Mittal consulted in good faith and whether Mittal violated her fiduciary duties. The Arbitrator will also not resolve issues as to the 2024 contributions as those potential recipients have not yet been identified.

  II. Standard of Reasonableness

The relevant agreements between the parties provide that New York law applies to this dispute. New York law provides that an objective standard of reasonableness applies. Hoag v. Chancellor, Inc., 246 A.D.2d 224, 231, 677 N.Y. S.2d 531 (Ist Dep't 1998). There is no presumption of reasonableness that would apply to the circumstances of this matter. IGT v. High 5 Games, LLC, 380 F. Supp.3d 390, 396 (S.D.N.Y. 2019). Unilever has the burden to demonstrate that its withholding of consent was reasonable, and the

Arbitrator will not apply the "business judgment rule" in considering the decisions of Unilever concerning the identified potential contributions. Consent is reasonably withheld when supported by objective business considerations. IGT, 380 F. Supp. 3d at 395.

### III.     IMEU and the Special Rapporteur as Potential Recipients of the 2023 Unilever Contributions

Unilever has refused to contribute to IMEU and the Special Rapporteur because it believes that those two organizations have repeatedly and consistently criticized the State of Israel for its treatment of Palestinians in Gaza and the West Bank. Unilever maintains those organizations have called for boycotting Israel, condemned Israel for apartheid in its dealing with Palestinians, and accused the Israeli government of war crimes and genocide in its treatment of Palestinians. Unilever contends that, especially in light of the negative international reaction in 2021 (some of which continues to today) when it ceased its Ben & Jerry's business in the West Bank, it will suffer considerable international criticism, boycotts, investigations, loss of business and divestment of its stock if it is identified as supporting those two organizations now. In particular, Unilever contends that contributing to IMEU and the Special Rapporteur will be widely viewed as "taking the side" of Palestinians in its disputes with Israel.

The recent backdrop to this arbitration is, of course, the Hamas invasion of Israel on October 7, 2023, with its killing of 1200 Israelis, the wounding of many others and the hostage-takings that also occurred, as well as the response of Israel with its invasion of Gaza and the killing of an estimated 30,000 people in Gaza. Although the identification of the two putative recipients of the Unilever donations occurred before October 7, the situation that developed on that date and after has affected the analysis of the requested contributions.

a. IMEU

The Arbitrator concludes that Unilever acted reasonably in rejecting IMEU as a recipient of a 2023 contribution.

The IMEU is a widely known and very public organization headquartered in the United States that advocates for Palestinians concerning their treatment by Israel, as well as other Palestinian-related matters. It frequently posts its positions on social media, including its support of Palestinians in their conflicts with Israel.

The evidence at the arbitration hearing included the following: George Bisharat, one of the co-founders of IMEU and a continuing IMEU-identified "expert" on IMEU-related issues and efforts, and Margaret DeReus, its executive director, have publicly indicated on a number of occasions that IMEU supports the "Boycott, Divestment and Sanctions" movement against Israel for its treatment of Palestinians in the West Bank and Gaza. They also characterized the treatment of Palestinians by Israel as apartheid and genocide. Those positions have been repeatedly publicized in internet posts by IMEU and other documents appearing on the IMEU website.

b. The Special Rapporteur

The Arbitrator concludes that Unilever also acted reasonably in rejecting the Special Rapporteur as a recipient of a 2023 contribution.

The current Special Rapporteur is Francesca Albanese, and her immediate predecessor is Michael Lynk. Mr. Lynk has publicly characterized the treatment of Palestinians as apartheid and the treatment of Palestinians by Israel as war crimes. Ms. Albanese has also been very publicly vocal in her support of the Palestinians in its disputes with Israel and has written extensively in support of the Palestinian cause, especially after the October 7 attack. She has described the situation in Gaza as apartheid, genocide, and war crimes on the part of Israel. The United States, France, Germany and the U.N. Secretary-General all criticized her statements concerning the October 7 attack.

These public statements by both IMEU and the Special Rapporteur concerning the situation of Palestinians in the West Bank and Gaza are of particular significance to this dispute because those organizations are widely known, and their statements are prominent in the international community and in the United States in particular.

IV.   Conclusion

The evidence demonstrates that contributions by Unilever to IMEU and the Special Rapporteur pursuant to the settlement agreement would likely result in material damage to the business interests of Unilever, especially considering the reaction to the decision in July 2021 to end its sales in the West Bank. They were reasonable decisions by Unilever, based on objective evidence, to not contribute to these two organizations for the 2023 contributions. If Unilever were to contribute in 2023 or now to IMEU and the Special Rapporteur, that would be widely viewed as taking the side of the Palestinians in their disputes with Israel, as well as supporting the BDS movement against Israel.

As to both organizations, the Independent Board has suggested that the King Beaudoin Foundation could be utilized to provide confidentiality to the Unilever contributions. It was also objectively reasonable for Unilever to conclude that the contributions might be disclosed at some point, notwithstanding the efforts at anonymity.

Christopher F. Droney, Arbitrator

March 27, 2024