**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BEN & JERRY'S HOMEMADE, INC. and CLASS I DIRECTORS OF BEN & JERRY'S INDEPENDENT BOARD,<br><br>    *Plaintiffs*,<br><br>v.<br><br>UNILEVER PLC and CONOPCO, INC.,<br><br>    *Defendants*. | Case No.: 24-cv-8641 (PKC) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendants
Unilever PLC and Conopco, Inc.*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ 1

**ARGUMENT** .............................................................................................................................. 2

I.    The Class I Directors Lack Authority To Sue In The Name Of B&J ................................. 2

     A.    The Merger Agreement's Plain Terms Do Not Support The Class I Directors' Interpretation ................................................................................................ 2

     B.    The Class I Directors' Rights Are Not "Illusory" ..................................................... 4

     C.    The Shareholders Agreement Confirms The Class I Directors' Limited Rights ..... 5

     D.    The Settlement Agreement Provides No Authority To Sue ................................... 6

II.   Plaintiffs Fail To Show Each Of Their Declaratory Judgment Claims Are Justiciable .......... 6

     A.    There Is No Controversy Regarding CFT ............................................................... 6

     B.    The Impending Spin-Off Does Not Create A Justiciable Controversy ................... 7

     C.    The Removal Of B&J's CEO Is Moot .................................................................... 7

     D.    Plaintiffs Concede Declaratory Relief Related To Their Muzzling Claim Serves No Useful Purpose .................................................................................... 8

III.  Plaintiffs Fail To Adequately Plead Damages .................................................................... 9

IV.   If Count I Is Allowed To Proceed, Count II Should Be Dismissed As Duplicative .......... 10

**CONCLUSION** ......................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Airlines Reporting Corp. v. Pro Travel, Inc.*,
   657 N.Y.S.2d 654 (1st Dep't 1997) ................................................................................................6

*Bajan Grp., Inc. v. Consumers Interstate Corp.*,
   958 N.Y.S.2d 59 (Sup. Ct. Albany Cnty. 2010) ..............................................................................4

*Bernstein v. O'Reilly*,
   2019 WL 10995111 (S.D.N.Y. Mar. 5, 2019) .................................................................................9

*Cambridge Cap. LLC v. Ruby Has LLC*,
   675 F. Supp. 3d 363 (S.D.N.Y. 2023) .............................................................................................3

*Clanton v. UMG Recordings, Inc.*,
   556 F. Supp. 3d 322 (S.D.N.Y. 2021) .............................................................................................1

*Consedine v. Portville Cent. Sch. Dist.*,
   879 N.Y.S.2d 806 (2009) ............................................................................................................2, 3

*Coventry Enters. LLC v. Sanomedics Int'l Holdings, Inc.*,
   2015 WL 4486335 (S.D.N.Y. July 23, 2015) ..................................................................................4

*Doe v. McDonald*,
   128 F.4th 379 (2d Cir. 2025) .......................................................................................................7, 8

*EFG Bank AG v. AXA Equitable Life Ins. Co.*,
   309 F. Supp. 3d 89 (S.D.N.Y. 2018) .........................................................................................8, 10

*Genger v. Genger*,
   76 F. Supp. 3d 488 (S.D.N.Y. 2015) ...............................................................................................5

*Kapitus Servicing, Inc. v. MS Health, Inc.*,
   201 N.Y.S.3d 1 (1st Dep't 2023) .....................................................................................................6

*Khodeir v. Sayyed*,
   323 F.R.D. 193 (S.D.N.Y. 2017) .....................................................................................................9

*KLS Diversified Master Fund, L.P. v. McDevitt*,
   507 F. Supp. 3d 508 (S.D.N.Y. 2020) .............................................................................................3

*Lebowitz v. Dow Jones & Co.*,
   508 F. App'x 83 (2d Cir. 2013) .......................................................................................................5

*McSweeney v. Cohen*,
    2025 WL 966022 (S.D.N.Y. Mar. 31, 2025) ................................................................8

*In re N.Y.C. Asbestos Litig.*,
    838 N.Y.S.2d 76 (1st Dep't 2007) ...............................................................................3

*Nenninger v. Vill. of Port Jefferson*,
    509 F. App'x 36 (2d Cir. 2013) ...............................................................................6, 7

*Outlogic, LLC v. Advan Rsch. Corp.*,
    682 F. Supp. 3d 407 (S.D.N.Y. 2023) ..........................................................................7

*Powers v. Ohio*,
    499 U.S. 400 (1991) ..................................................................................................10

*R.C. Bigelow, Inc. v. Unilever N.V.*,
    867 F.2d 102 (2d Cir. 1989) ........................................................................................7

*RIJ Pharm. Corp. v. Ivax Pharm., Inc.*,
    322 F. Supp. 2d 406 (S.D.N.Y. 2004) ..........................................................................9

*Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*,
    523 F. Supp. 2d 376 (S.D.N.Y. 2007) ..........................................................................7

*Russman v. Bd. of Educ.*,
    260 F.3d 114 (2d Cir. 2001) ........................................................................................6

## PRELIMINARY STATEMENT[1]

It is ironic that Plaintiffs accuse Unilever of resorting to "head fakes" to "divert attention from the actual issue in dispute" when they have filed an opposition brief littered with irrelevant (and unpled) allegations that do not address the arguments Unilever raised in its motion to dismiss. Just one example: Plaintiffs defend MAP and criticize Magen David Adom, yet barely mention the two organizations actually at issue in the case—JVP and CAIR-SF.[2] This underscores the fact that they are using this litigation, not to seek legitimate judicial relief, but rather to air their grievances and attract media attention, while making little effort to address the clear legal and factual deficiencies of the SAC.

*First*, the Class I Directors disregard the plain language of the Merger Agreement to argue that they have authority to bring this lawsuit in the name of B&J, notwithstanding that they are not parties to the Merger Agreement, which delegates such authority to the CEO and Conopco. *Second*, Plaintiffs still fail to articulate the damages they suffered to sustain their breach of contract claim. *Third*, Plaintiffs ignore that Unilever continues to comply with its obligations to purchase almonds from CFT, that former B&J CEO Dave Stever voluntarily resigned, and that the upcoming Spin-Off does not threaten the Board's role, each of which renders these claims non-justiciable. *Finally*, Plaintiffs do not address—and thereby concede—that their request for declaratory relief relating to alleged past instances of "censorship" of the Board would serve no useful purpose. The Court should dismiss with prejudice all but the declaratory judgment claim related to the charitable donations, which has no merit and will fail after limited discovery.

---

[1] Capitalized and abbreviated terms used but not defined herein shall have the meaning ascribed to them in Unilever's Memorandum of Law in Support of Motion to Dismiss. *See* ECF No. 57 ("MTD Br.").

[2] Plaintiffs' new allegations, including those concerning these organizations, negotiations Unilever undertook with its Israeli distributor, and threats Unilever executives allegedly made to Mr. Stever should be disregarded. *See* ECF No. 61 ("Opp.") at 4-12. "[A] plaintiff cannot raise allegations not raised in its complaint in a brief in opposition to a motion to dismiss." *Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 327 (S.D.N.Y. 2021).

**ARGUMENT**

I. <u>**The Class I Directors Lack Authority To Sue In The Name Of B&J**</u>

The Class I Directors concede that they are not parties to the Merger Agreement, but argue that they *must* have authority to bring this lawsuit on behalf of B&J because, otherwise, their "primary" responsibility over B&J's social mission would be "subordinate" or "illusory." But the Class I Directors ignore that B&J is a close corporation under Vermont law and therefore can have no board or—like here—a Board with limited functions. Plaintiffs also ignore that the Merger and Shareholders Agreements' plain terms expressly limit the Board to "primary responsibility" over B&J's social mission and brand integrity, while expressly reserving to the shareholder rights over operational matters such as control of the legal function.

    A.    **The Merger Agreement's Plain Terms Do Not Support The Class I Directors' Interpretation**

The Merger and Shareholders Agreements, respectively, provide that Conopco "shall have primary responsibility for . . . the other aspects of [B&J] not allocated to the Company Board" under Section 6.14 of the Merger Agreement, *see* ECF No. 50-7 § 6.14(j), and that "[a]ll rights, powers and authority not specifically granted" to the Board are "reserved to [Conopco]," *see* ECF No. 58-2 § 1(l). The delegation to Conopco of *all* other powers over B&J includes the authority to initiate lawsuits on B&J's behalf.

Notwithstanding these plain terms, the Class I Directors argue that certain words relating to the social mission—primary, safeguard, and preserve—in Sections 6.14(e) and (f) of the Merger Agreement *imply* a right to initiate litigation on B&J's behalf. Opp. at 13-16. But "[a] contract should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases." *Consedine v. Portville Cent. Sch. Dist.*, 879 N.Y.S.2d 806, 811 (2009). Because it would have to disregard the Merger Agreement's express reservation to Conopco of *all other*

2

*responsibilities* over B&J's operations, including filing lawsuits on B&J's behalf, the Court should reject the Class I Directors' suggestion that their "primary" "custody" over "preserving" the social mission and brand integrity entitles them to sue on behalf of B&J. *See id.*

The Class I Directors' interpretation would also contradict the Merger Agreement's provisions that disclaim all third-party beneficiary rights, with a limited exception permitting the Class I Directors to sue to prevent their removal. *See* ECF No. 50-7 §§ 6.14(a), 9.07. Section 9.07 of the Merger Agreement provides that the Class I Directors may sue *only* for breaches of the Agreement to prevent the removal of directors. *See id.* § 9.07. The decision to include this limited exception while, at the same time, excluding any other authority for the Class I Directors to sue on behalf of B&J, necessarily demonstrates that the Class I Directors do not have the right to sue to enforce their "primary responsibility" over the social mission and brand integrity and reveals an "intent that the omission was intentional." *KLS Diversified Master Fund, L.P. v. McDevitt*, 507 F. Supp. 3d 508, 542 (S.D.N.Y. 2020), *aff'd,* 2022 WL 2759055 (2d Cir. July 13, 2022); *see also In re N.Y.C. Asbestos Litig.*, 838 N.Y.S.2d 76, 80 (1st Dep't 2007) (under New York contract law, "expression of one thing implies the exclusion of the other").

The Class I Directors argue that the Merger Agreement's third-party beneficiary provision is inapplicable because the Board does not "seek[] to enforce the rights of a third party" but "to enforce the rights of Ben & Jerry's . . . in an area where the Independent Board explicitly holds 'primary responsibility.'" Opp. at 19. This argument seeks an end-run around the express language of Section 9.07 of the Merger Agreement, which *both* disclaims "any rights or remedies" of third parties and specifies the limited circumstances under which the Class I Directors may enforce rights under the Agreement. *See* ECF No. 50-7 § 9.07. Because a term in a contract must be "interpreted by the company it keeps," *Cambridge Cap. LLC v. Ruby Has LLC*, 675 F. Supp. 3d

3

363, 390 (S.D.N.Y. 2023), Section 9.07's disclaimer of third-party enforcement, read in tandem with its authorization for Board members to sue *only* in cases of removal, demonstrates that the Class I Directors have no right to sue to enforce the social mission provisions on behalf of B&J.

### B. The Class I Directors' Rights Are Not "Illusory"

The Class I Directors argue that Unilever's interpretation would render the Class I Directors' "primary responsibility" over social mission and brand integrity illusory because they would not be able to enforce those rights on behalf of B&J. Opp. at 16. But "courts avoid an interpretation that renders a contract illusory" *unless* the contract reveals a "lack of mutuality of obligation." *Coventry Enters. LLC v. Sanomedics Int'l Holdings, Inc.*, 2015 WL 4486335, at *4 (S.D.N.Y. July 23, 2015) (cleaned up). Here, the Merger Agreement is a binding contract whose terms were heavily negotiated and mutually agreed upon for substantial consideration. The Agreement sets out the rights and responsibilities of each of the parties to the Agreement, as well as the Board. *See* ECF No. 50-2 Art. II.[3] That the Class I Directors—who are *not* parties to the Merger Agreement and did not negotiate its terms—do not like its terms does not render the Agreement illusory. Put differently, Sections 6.14(e)-(f)'s limitations on the Board's "primary responsibility" over the social mission and brand integrity are not made illusory by the fact that the parties deliberately limited the Class I Directors' rights under the Merger Agreement to enforce those responsibilities. *Coventry Enters. LLC,* 2015 WL 4486335, at *4.

Unilever's authority under the Merger Agreement to appoint and remove the CEO and the CEO's authority to "manage the affairs of" B&J, ECF No. 50-7 § 6.14(b)—including legal action—do not make the Class I Directors' responsibilities illusory, either. Here, too, the Merger

---

[3] *Bajan Grp., Inc. v. Consumers Interstate Corp.*, 958 N.Y.S.2d 59 (Sup. Ct. Albany Cnty. 2010), is inapposite because the court concluded that a promise was illusory because the parties never formed a binding contract. *Id.* By contrast, Unilever and B&J entered into a binding Merger Agreement that limits the Board's role and permits Unilever to remove the B&J CEO.

4

Agreement includes a clause specifying that Unilever first must consult with the Board in good faith before appointing or removing a CEO; Unilever sought to do so here only for the Class I Directors to refuse. *See* SAC ¶¶ 44-45. Moreover, even if Unilever had unbound discretion to hire or fire a CEO who is authorized to initiate lawsuits for B&J, such discretion does not make the Class I Directors' "primarily responsibility" over social mission and brand integrity illusory. *Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83, 84 (2d Cir. 2013) ("[A] contract is not illusory merely because its terms give discretion to one party[.]").

        **C.**    **The Shareholders Agreement Confirms The Class I Directors' Limited Rights**

While the Class I Directors ask the Court to ignore the Shareholders Agreement, *see* Opp. at 19, that Agreement clarifies the Class I Directors' role outlined in the Merger Agreement. Under New York law, "all writings which form part of a single transaction and are designed to effectuate the same purpose [must] be read together, even [if] they were executed on different dates and were not all between the same parties." *Genger v. Genger*, 76 F. Supp. 3d 488, 496 (S.D.N.Y. 2015), *aff'd*, 663 F. App'x 44 (2d Cir. 2016). The Shareholders Agreement, executed just one month after the Merger Agreement by B&J and Conopco, "limit[s] and restrict[s] [] the powers and functions of" the Board. ECF No. 58-2 at 1. The Shareholders Agreement thus reinforces the objectives of the Merger Agreement, *compare id.* §§ 1(e)-(f) *with* ECF No. 50-7 §§ 6.14(e)-(f), and shows that the parties "designed [it] to effectuate" its purpose of limiting the Board's role, which does not include litigating in B&J's name. *Genger*, 76 F. Supp. 3d at 496.[4]

---

[4] Because the Shareholders Agreement states that the Board "shall not have any rights, powers or authority, express or implied" not specifically granted therein, ECF No. 58-2 § 1(l), it expressly excludes the Class I Directors' argument that Exhibit B to the Merger Agreement, which lists the Board's and Conopco's respective authorities, provides them with any *implied* authority over B&J. *See* Opp. at 17 n.37. Accordingly, the Court should reject the Class I Directors' argument that Exhibit B to the Merger Agreement implicitly authorizes them to sue in B&J's name.

5

### D. The Settlement Agreement Provides No Authority To Sue

Finally, the Court should reject the Class I Directors' contention that they may sue as B&J because their rights under the Settlement Agreement are "aligned with" B&J. Opp. at 19. The Class I Directors offer no legal support for their theory that they may pursue this litigation, not only in their own right, but also on behalf of a different party to a contract. The Settlement Agreement does not give the Class I Directors any such rights and, indeed, New York law is clear that "[a] contracting party generally has a right to maintain an action in its *own name*." *Airlines Reporting Corp. v. Pro Travel, Inc.*, 657 N.Y.S.2d 654, 655 (1st Dep't 1997) (emphasis added); *Kapitus Servicing, Inc. v. MS Health, Inc.*, 201 N.Y.S.3d 1, 2 (1st Dep't 2023).

The Merger Agreement is clear: Only Conopco and B&J's CEO may sue on B&J's behalf. Accordingly, claims brought in B&J's name should be dismissed with prejudice.

## II. Plaintiffs Fail To Show Each Of Their Declaratory Judgment Claims Are Justiciable

### A. There Is No Controversy Regarding CFT

Plaintiffs fail to rebut Unilever's argument that its timely payments to CFT to purchase Palestinian almonds and confirmation of the same to Mittal have mooted Count III. *See* MTD Br. at 19-20; ECF No. 58-3. Plaintiffs attach an email from April 2024 wherein Unilever's President of Ice Cream Peter ter Kulve expresses displeasure with Unilever's obligation under the Settlement Agreement to purchase the almonds from CFT, *see* ECF No. 61-1 at 3, but do not dispute that Unilever fulfilled its payment and notification obligations, *see* ECF No. 58-3. The dispute is therefore moot. *See Russman v. Bd. of Educ.*, 260 F.3d 114, 118-19 (2d Cir. 2001). And while Plaintiffs argue that Unilever's forthcoming Spin-Off of its ice cream business casts doubt on whether the spun-off entity will "adhere to Unilever's contractual commitments," Opp. at 20, that is a "[c]hallenge to [] hypothetical future events [that are] too speculative to be ripe for adjudication" because Plaintiffs allege no facts to support their claim. *Nenninger v. Vill. of Port*

6

*Jefferson*, 509 F. App'x 36, 39 (2d Cir. 2013). Because Unilever has satisfied its obligations to purchase the Palestinian almonds, and Plaintiffs point to nothing to the contrary, Plaintiffs' request for declaratory relief in Count III is moot and any future hypothetical breach is not ripe. *See id.*

### B. The Impending Spin-Off Does Not Create A Justiciable Controversy

Plaintiffs' request for a declaration that Unilever may not "eliminate" the Board or "substantially alter or diminish" its rights in the future Spin-Off also fails to present a live controversy. SAC ¶¶ 67(e), 76(c). To issue a declaratory judgment, a case or controversy must be "concrete, involve[] adverse legal interests, and [be] sufficiently immediate and real." *Outlogic, LLC v. Advan Rsch. Corp.*, 682 F. Supp. 3d 407, 412 (S.D.N.Y. 2023), *aff'd*, 2024 WL 2203280 (2d Cir. May 16, 2024). Plaintiffs point to a handful of alleged threats made by Mr. ter Kulve but do not, as they must, allege a dispute in which the "threatened risk [of harm] occurred," rather than just a "feared legal consequence [that] remains a mere possibility . . . that may or may not come to pass." *Id.* at 413 (citation omitted). Without any plausible allegation that the Spin-Off will result in the abrogation of the Board's rights, this claim remains a remote hypothetical over which the Court may not issue a declaratory judgment. *See id.*[5]

### C. The Removal Of B&J's CEO Is Moot

Plaintiffs argue that their claim regarding the removal of B&J's CEO is not moot because Unilever's conduct is capable of repetition. Opp. at 22. Although "[a] suit is not moot if it targets conduct which is capable of repetition, yet evading review," this rule "applies only in exceptional situations where . . . there is a reasonable expectation that the same complaining party would be

---

[5] The cases Plaintiffs cite are distinguishable because they involved previous or ongoing conduct that made the threat of legal risks immediate enough to warrant relief. *See R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 106 (2d Cir. 1989) (prior merger negotiations warranted third largest market participant's requested injunction of merger); *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 383 (S.D.N.Y. 2007) (plaintiff avowed it would continue to make statements that defendants asserted would infringe their trademarks).

7

subjected to the same action again." *Doe v. McDonald*, 128 F.4th 379, 386-87 (2d Cir. 2025) (internal quotations omitted). Plaintiffs allege no facts to support their contention that Unilever will remove a future CEO for their support of the social mission and without first consulting in good faith with the Board. Putting aside the fact that Unilever did not remove Mr. Stever for those reasons and did—in fact—attempt to consult with the Board, Plaintiffs' reference to a single performance review of Mr. Stever and unspecified threats to unnamed personnel do not support their claim that a future CEO will be removed for supporting the social mission or that Unilever will do so without consulting in good faith. Plaintiffs' claim is nothing more than a "mere physical or theoretical possibility." *Id.* at 387. Because Mr. Stever voluntarily resigned from B&J, any claims related to this removal are moot. *See id.* at 385.[6]

### D. Plaintiffs Concede Declaratory Relief Related To Their Muzzling Claim Serves No Useful Purpose

Finally, Plaintiffs have not responded to Unilever's argument that the requested declaration regarding Unilever's alleged "silencing" of the Board, *see* SAC ¶ 67(d), should be dismissed because it would serve no useful legal purpose and therefore has waived this claim. *McSweeney v. Cohen*, 2025 WL 966022, at *31 (S.D.N.Y. Mar. 31, 2025) (holding a claim not addressed in the briefing is waived). Even without Plaintiffs' waiver, the Court should dismiss this claim because all future statements must be assessed individually. Thus, any declaration would not clarify or settle the legal issues in dispute. *EFG Bank AG v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018).

---

[6] Plaintiffs have not alleged a claim for breach of the Settlement Agreement for Unilever's alleged action toward Mr. Stever, *see* Opp. at 22, including because they have not alleged they have suffered resulting damages. *See infra*. Further, because they never alleged such breach in their SAC, they cannot raise it for the first time in their opposition. *See supra* n.2.

III.     **Plaintiffs Fail To Adequately Plead Damages**

Plaintiffs' argument that their alleged loss of goodwill is sufficient to sustain a breach of contract claim fails for three reasons. First, Plaintiffs' supporting case states only that loss of goodwill can sustain a breach of contract claim for *consequential* damages, which are not alleged here. *See RIJ Pharm. Corp. v. Ivax Pharm., Inc.*, 322 F. Supp. 2d 406, 414 (S.D.N.Y. 2004). Second, even if Plaintiffs may rest a claim on a loss of goodwill, their claim still fails because New York law requires that they "allege [] facts, beyond [] bald allegations of damages, establishing what, if any . . . harms and reputational damage [they] specifically suffered." *Bernstein v. O'Reilly*, 2019 WL 10995111, at *7 (S.D.N.Y. Mar. 5, 2019). Without specific factual allegations showing *how* Unilever's actions hurt B&J's—or the Class I Directors'—reputation, Plaintiffs cannot maintain their breach of contract claim. *Id*. Finally, any alleged loss of goodwill could only be credited to B&J, which is improperly named as a plaintiff.

Plaintiffs' argument that the SAC sufficiently pleads nominal damages resulting from Unilever's alleged breach should be rejected for the same reason: whether a party asserts nominal or actual damages, it may not rest its claim merely on conclusory assertions of harm and "must still allege sufficient facts supporting damages." *Khodeir v. Sayyed*, 323 F.R.D. 193, 202 (S.D.N.Y. 2017). Plaintiffs baselessly allege—without any facts—that they suffered nominal damages. This is not enough. *See* SAC ¶ 58. Because Plaintiffs do not allege any facts supporting their claim of loss of goodwill or that they suffered any other form of tangible harm, the Court should dismiss Count I for failure to state a claim. *See Khodeir*, 323 F.R.D. at 202.

Plaintiffs also cannot maintain Count I based on alleged damages suffered by JVP or CAIR-SF. To sue for damages on the organizations' behalf, Plaintiffs must allege that (1) their own injury-in-fact gives them a "sufficiently concrete interest" in the donations, (2) they bear a "close relation" to the two organizations, and (3) the two organizations have somehow been

hindered in their abilities to protect their own interests. *See Powers v. Ohio*, 499 U.S. 400, 410-411 (1991). Because the SAC alleges none of these three requirements, Plaintiffs may not maintain Count I on these organizations' behalf.

## IV.     If Count I Is Allowed To Proceed, Count II Should Be Dismissed As Duplicative

The Court should reject Plaintiffs' argument that, because Counts I and II involve retrospective and prospective relief, they are not duplicative. Opp. at 25. To be clear, and as discussed *supra*, Plaintiffs have not adequately alleged damages in support of Count I and, therefore, only Count II relating solely to the charitable donations should proceed. But, should Count I survive, the Court may still dismiss a prospective declaratory relief claim if it duplicates a retrospective breach of contract claim that provides "complete relief." *EFG Bank AG*, 309 F. Supp. 3d at 99. Accordingly, the Court should dismiss Count II as duplicative.

In any event, the only declaratory judgment claims that seek prospective relief for justiciable controversies are subparts (d) and (f), which seek declarations that Unilever may not censor the Board and must donate to JVP and CAIR-SF going forward. *See* SAC ¶ 67.[7] If the breach of contract claim remains (Count I), declarations regarding these same issues would serve no "useful purpose in clarifying or settling" the dispute and should be dismissed. *EFG Bank AG*, 309 F. Supp. 3d at 99.

## CONCLUSION

For the foregoing reasons, the Court should dismiss B&J as a plaintiff and dismiss all claims except the declaratory judgment claim (SAC ¶ 67(f)) relating solely to charitable donations.

---

[7] Subparts (c) and (e) should be dismissed for non-justiciability. *See supra*.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: New York, New York<br>May 16, 2025 | WEIL, GOTSHAL & MANGES LLP<br><br>*/s/ David J. Lender*<br>David J. Lender<br>Luna N. Barrington<br>Alexandra Rose<br>767 Fifth Avenue<br>New York, NY 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007<br>david.lender@weil.com<br>luna.barrington@weil.com<br>alexandra.rose@weil.com<br><br>*Attorneys for Defendants Unilever PLC and Conopco, Inc.* |

**WORD COUNT CERTIFICATION**

Pursuant to Local Rule 7.1(c), I hereby certify that the total number of words in this memorandum, excluding the caption, table of contents, table of authorities, signature block, and word count certification is 3,496.

*/s/ David J. Lender*
David J. Lender