**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |
|---|---|
| BEN & JERRY'S HOMEMADE, INC. and CLASS I DIRECTORS OF BEN & JERRY'S INDEPENDENT BOARD, | ) ) ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) |
| UNILEVER PLC, CONOPCO, INC., | ) ) |
| *Defendants*. | ) ) |

Case No.: 24-cv-8641 (PKC)

_____

**DEFENDANTS UNILEVER PLC'S AND CONOPCO, INC.'S AND PROPOSED-DEFENDANTS THE MAGNUM ICE CREAM COMPANY N.V.'S, AND BEN & JERRY'S HOLDCO, LLC'S**
**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT AND PROPOSED PLAINTIFF THE BEN & JERRY'S FOUNDATION'S**
<u>**MOTION TO INTERVENE**</u>

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendants Unilever PLC and*
*Conopco, Inc. and Proposed Defendants*
*The Magnum Ice Cream Company N.V. and*
*Ben & Jerry's HoldCo, LLC*

.

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 3

    I.      Defendants Exercised Their Rights Under B&J's Governing Documents ............. 3

          A.      The Merger Agreement and Relevant Governing Documents Dictate the Relationship Between the Board and B&J .............................. 3

          B.      Unilever's Spin-Off of its Ice Cream Business ............................................ 6

    II.     The Audit Finds that BJF Lacks Proper Governance and Financial Controls ................................................................................................................ 9

PROCEDURAL HISTORY .................................................................................................. 11

LEGAL STANDARD .......................................................................................................... 12

    I.      Leave to Amend .................................................................................................. 12

    II.     Intervention ......................................................................................................... 13

ARGUMENT ...................................................................................................................... 14

    I.      The Third Amended Complaint Fails for the Same Reasons as the Second Amended Complaint ........................................................................................... 15

    II.     Plaintiffs' Claims Related to the Removal of the Directors are Futile ................ 15

    III.   Plaintiffs' Claims Related to BJF's Funding Are Futile ...................................... 19

          A.      The Former Class I Directors Lack Standing Under the Merger Agreement to Bring Claims Under Section 6.14(h) .................................. 19

          B.      The Merger Agreement Does Not Require that TMICC Fund BJF Under Current Conditions ........................................................................ 20

    IV.   BJF Fails to Establish a Basis for Intervention ................................................... 22

          A.      BJF Lacks Standing ................................................................................... 22

          B.      BJF Has Failed to Show a Legally Cognizable Interest Which Necessitates Intervention ........................................................................ 23

    V.     Defendants Continue to Abide by Their Obligations Under the Settlement Agreement Regarding Payments to Canaan ........................................................ 24

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*,
   314 F. Supp. 3d 497 (S.D.N.Y. 2018) *aff'd*, 771 F. App'x 498 (2d Cir. 2019).......................4

*A.I.A. Holdings, S.A. v. Lehman Bros.*,
   No. 97 CIV.4978 (LMM), 1999 WL 47223 (S.D.N.Y. Feb. 3, 1999),
   *reconsideration granted on other grounds*, 2000 WL 302697 (S.D.N.Y. Mar.
   21, 2000) ............................................................................................................22

*Aeneas McDonald Police Benev. Ass'n, Inc. v. City of Geneva*,
   92 N.Y.2d 326 (1998) ........................................................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................13

*CarbonCharge Techs. LLC v. Talafous-Favetta*,
   No. 24-CV-00361, 2025 WL 2630669 (S.D.N.Y. Sept. 12, 2025).......................14

*Carney v. Int'l Cap. Grp.*,
   No. 21 Civ. 183 (NRB), 2024 WL 1484114 (S.D.N.Y. Apr. 5, 2024) ..................18

*Dane v. UnitedHealthcare Ins. Co.*,
   974 F.3d 183 (2d Cir. 2020).................................................................................13

*Dubarry v. Annucci*,
   No. 21-CV-5487, 2022 WL 17850435 (S.D.N.Y. Dec. 22, 2022) .........................23

*A.H. ex rel. E.H. v. N.Y. State Dep't of Health*,
   147 F.4th 270 (2d Cir. 2025), *petition for cert. filed*, No. 25-843 (U.S. Jan. 15,
   2026) ...........................................................................................................13, 23

*Evolution Fast Food One, LP v. HVFG, LLC*,
   720 F. Supp. 3d 251 (S.D.N.Y. 2024)..................................................................13

*In re George Washington Bridge Bus Station Dev. Venture LLC*,
   65 F.4th 43 (2d Cir. 2023) ..................................................................................19

*Hauptman v. Interactive Brokers, LLC*,
   349 F. Supp. 3d 292 (S.D.N.Y. 2018)...............................................................13, 22

*Holland v. JP Morgan Chase Bank, N.A.*,
   No. 19 CIV. 00233, 2019 WL 4054834 (S.D.N.Y. Aug. 28, 2019) .........................4

*Int'l Sec. Exch., LLC v. S & P Dow Jones Indices, LLC*,
  987 F. Supp. 2d 428 (S.D.N.Y. 2013) ....................................................................12

*Kehagias v. Phila. Indem. Ins. Co.*,
  345 F.R.D. 46 (S.D.N.Y. 2023) .....................................................................14, 23

*L. Debenture Tr. Co. v. Maverick Tube Corp.*,
  595 F.3d 458 (2d Cir. 2010) ...........................................................................23

*Neurological Surgery Prac. of Long Island, PLLC v. Cigna Health & Life Ins. Co.*,
  No. 21-CV-01549(JS)(JMW), 2025 WL 2778389 (E.D.N.Y. Sept. 30, 2025) .....................12

*Restor-A-Dent Dental Lab'ys, Inc. v. Certified Alloy Prods., Inc.*,
  725 F.2d 871 (2d. Cir. 1984) ...........................................................................24

*Spokeo Inc. v. Robins*,
  578 U.S. 330 (2016) ...................................................................................13

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
  864 F.3d 236 (2d Cir. 2017) ...........................................................................13

*Times Mirror Mags., Inc. v. Field & Steam Licenses Co.*,
  294 F.3d 383 (2d Cir. 2002) ...........................................................................19

**Statutes**

Vt. Stat. Ann. tit. 11A, § 10.03(a) ....................................................................16

Vt. Stat. Ann. tit. 11A, § 10.20(b) ....................................................................16

## PRELIMINARY STATEMENT

The Magnum Ice Cream Company ("**TMICC**"), B&J HoldCo, LLC ("**HoldCo**"), and Ben & Jerry's Homemade, Inc. ("**B&J**") acted well within their legal and contractual rights under the express terms of the relevant agreements and governing corporate documents. The Court should deny Plaintiffs' and Proposed Plaintiff's motions as futile.

The former Class I Directors of B&J's Board (the "**Class I Directors**") ask this Court to ignore the plain language of the agreements and basic corporate governance principles to secure for themselves rights to which they are not entitled. For the last fourteen months, the former Class I Directors have used this litigation as a platform to air their grievances against Unilever, PLC and Conopco, Inc. ("**Conopco**," and, together with Unilever, PLC "**Unilever**") for the way in which Unilever has exercised its business judgment to protect B&J and preserve its three-part mission. Despite three complaints and a fully-briefed pending motion to dismiss, Plaintiffs now seek to bring more claims against new owner HoldCo and TMICC[1] premised on (i) TMICC's exercise of its rights under the bylaws; and (ii) TMICC's decision to withhold funding from the Ben & Jerry's Foundation ("**BJF**") following an audit that exposed clear conflicts of interests and serious deficiencies in BJF's governance, procedures, and controls.

In an attempt to obfuscate Defendants' clear rights to implement corporate governance standards, Plaintiffs seek to misdirect attention to the Business Integrity Investigation ("**BII**"), which found that the former Chair of B&J's Board (the "**Board**") had engaged in serious misconduct that rendered her ineligible to serve on the Board. The former Class I Directors' focus on the BII and the pages they dedicate in their motion to defend themselves is, for now, beside the

---

[1] A late-2025 spin-off of the ice cream business (the "**Demerger**"), created Proposed Defendants HoldCo and TMICC (together with Unilever, "**Defendants**"). Conopco and HoldCo are referred to herein as the "**Shareholder**."

point in deciding the current motion.[2] Instead, whether Plaintiffs can assert their new claims can be resolved by answering three straightforward questions: (i) whether the sole shareholder of B&J has the right to amend B&J's governing documents to impose term limits on the Board and require that all directors of the Board abide by TMICC's Code of Business Integrity (the "**Code**"), (ii) whether TMICC was within its rights under the Merger Agreement to withhold funding to BJF following an audit that uncovered serious governance concerns, and (iii) whether TMICC complied with obligations under the Settlement Agreement to donate funds to the benefit of Palestinian almond farmers. Because the answer to each of these questions is yes, Plaintiffs' latest claims are futile and should be denied.

*First*, it bears emphasis that the Board has no operational responsibilities. Instead, pursuant to the Merger Agreement, the Board is a limited purpose board with primary—but not sole—responsibility for B&J's social mission and essential brand integrity, while reserving all other governance and operational authority to the Shareholder, including the right to amend B&J's governing documents to ensure that directors who serve on the Board meet eligibility requirements.

Pursuant to that right, the Shareholder amended the Bylaws to include nine-year term limits[3] and a requirement that Board members, like every other TMICC director and employee, agree to comply with the Code. Not one word of the Merger Agreement was changed, meaning the Class I Directors still get to annually elect the Class I Directors—they just cannot elect

---

[2] Defendants, however, are confident that if the parties are required to litigate Mittal's eligibility based on her misconduct, the facts will confirm that she no longer meets the criteria to serve on the Board.

[3] The nine-year term limits align with the Netherlands and UK Corporate Governance Codes under which TMICC and its subsidiaries operate. Under the UK and Netherlands Corporate Governance Codes, directors are no longer considered independent once they have served longer than nine years under the UK code and twelve years under the Netherlands code. *See* Financial Reporting Council, *The UK Corporate Governance Code* (2024) § 10; Monitoring Committee, *The Dutch Corporate Governance Code* (2025) §2.2.2.

ineligible ones. Certain of the Class I Directors became ineligible because they served on the Board well beyond the nine-year term limit and others became ineligible because they refused to agree to act ethically and abide by the Code.

**Second**, the Merger Agreement allows TMICC to exercise discretion to stop funding BJF if the activities of BJF are not "reasonably acceptable" to TMICC. TMICC exercised that discretion after BJF refused to implement corporate governance changes that were recommended by the auditors and requested by Unilever/TMICC.

**Third**, TMICC and the Class I Directors have found themselves at odds regarding the Settlement Agreement, which requires TMICC to make annual payments for the benefit of Palestinian almond farmers. TMICC has put aside the required funds for 2025, but has yet to release payment, as the Palestinian almond collective—Canaan Fair Trade ("**Canaan**")—refuses to address TMICC's concerns about whether the donations will, in fact, be directed to the benefit of the Palestinian almond farmers as opposed to some other purpose.

Plaintiffs' motion to amend fails because it rests entirely on Defendants' exercise of their contractual rights. Separately, the former Class I Directors, and similarly BJF, lack standing to assert claims under the Merger Agreement. BJF also should not be permitted to intervene because it lacks a sufficient interest to intervene as of right or with permission. The Court should deny both motions as futile.

## FACTUAL BACKGROUND

I.    **Defendants Exercised Their Rights Under B&J's Governing Documents**

A.    **The Merger Agreement and Relevant Governing Documents Dictate the Relationship Between the Board and B&J**

In 2000, Conopco—a wholly-owned subsidiary of Unilever—acquired B&J for $326 million. Under the Merger Agreement, Unilever agreed to establish a limited purpose board with

primary responsibility over B&J's social mission and essential brand integrity. *See* ECF No. 72-1 Exhibit 7 ("**Merger Agreement**") § 6.14(a), (e), (f); *see also* Exhibit A ("**Articles of Incorporation**") Art. 7.[4] All other responsibilities regarding management of the affairs of B&J rest with the Shareholder. *See* Exhibit E (**"Shareholder Agreement"**)[5] § 1(b) ("The Shareholder hereby delegates authority to the CEO to manage the affairs of the Company . . ."); *see also* Exhibit B ("**2000 Bylaws**") § 3.1. The Board consists of (i) the CEO of B&J, (ii) up to nine directors designated as Class I Directors, and (iii) one director designated by B&J's shareholder as a Class U Director. *See* Merger Agreement § 6.14; Third Amended Complaint ("**TAC**") ¶ 19.

As relevant here, the Shareholder retained the right and authority under the relevant governing documents to amend the Bylaws of B&J. The Articles of Incorporation, dated as of August 3, 2000 (the time of the acquisition) provide, "[t]he by-laws of the Corporation may only be adopted, amended or repealed by the shareholder of the Corporation." Exhibit A (Articles of Incorporation), Art. 8. Like the Articles of Incorporation, the 2000 Bylaws themselves made clear that the Bylaws may be "altered, amended, or repealed and new bylaws may be only adopted by the Shareholder." *See* Exhibit B (2000 Bylaws) § 7.5. In November 2022, the Shareholder amended its Bylaws and expressly retained the authority to amend the Bylaws further. *See* Exhibit C ("**2022 Bylaws**") § 7.5.

Under the Articles of Incorporation and the Merger Agreement, "[t]he Directors shall be elected for one year terms (subject to earlier removal, death or resignation), and a majority of the

---

[4] The TAC explicitly refers to the new corporate governance documents and communications between Plaintiffs and Defendants, and includes the Merger Agreement as an attachment. *See* TAC ¶¶ 84, 103, 117. Accordingly, each is properly considered in deciding a motion for leave to amend. *See 7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.,* 314 F. Supp. 3d 497, 502 n.2 (S.D.N.Y. 2018) (holding that on a motion for leave to amend a complaint, a court may consider documents attached to the complaint as exhibits, incorporated by reference, or integral to the complaint), *aff'd*, 771 F. App'x 498 (2d Cir. 2019). The same principle applies to the letters and emails referenced in the TAC.

[5] In determining whether a party has standing, "a district court … may refer to evidence outside the pleadings." *Holland v. JP Morgan Chase Bank, N.A.*, No. 19 CIV. 00233, 2019 WL 4054834, at *6 (S.D.N.Y. Aug. 28, 2019) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

Directors then in office in each Class shall designate the candidates for election to the board of Directors in such Class each year, and the shareholder of the Corporation shall cause the election of such candidates and the Chief Executive Officer of the Corporation to the Board of Directors …. *No Ineligible Director shall be permitted at any time to be elected to the Company Board*." Exhibit A (Articles of Incorporation) Art. 7 (emphasis added); Merger Agreement § 6.14(a). The Merger Agreement further provides that "[e]ach member of the Company Board … shall agree to abide by the Unilever Code of Business of Conduct …." Merger Agreement § 6.14(j). The 2022 Bylaws defined eligibility requirements for directors to serve on the Board, including that a person must agree to abide by Unilever's current Code of Business Principles:

> To qualify for election as a director, and to remain eligible to continue serving as a director, a person must annually (1) certify in writing to the corporation that he or she shall abide by the then current Unilever Code of Business Principles, and thereafter comply with such code; (2) not have been convicted of a felony or misdemeanor involving moral turpitude, or become bankrupt or have made any composition or entered into any deed or similar arrangement with creditors; (3) not have engaged in any fraud, dishonesty or other misconduct that (i) brings or is likely to bring such person, the corporation, the Shareholder or any of their respective affiliates into disrepute or (ii) is or is likely to be materially adverse to the interests of the corporation, the Shareholder, or any of their respective affiliates; (4) not have failed to perform such person's duties as a director competently or otherwise have demonstrated any serious or persistent neglect in the discharge of such person's duties as a director; and (5) not have been prohibited by law from being a director. Each term for a director shall be one year.

Exhibit C (2022 Bylaws) § 3.2.

On December 12, 2025, following the Demerger, the Shareholder amended the eligibility requirements to require compliance with TMICC's Code and to impose a nine-year term limit to be applied retroactively to align with the framework of the TMICC Group and the Netherlands and UK Corporate Governance Codes:

> To qualify for election as a director, and to remain eligible to continue serving as a director, a person must annually (1) certify in writing to the corporation that he or she shall abide by the then current *The Magnum Ice Cream Company Code of Business Integrity*, and thereafter comply with such code. … *Any violations of*

*Unilever's Code of Business Principles shall be considered and relied upon in making decisions regarding a director's eligibility. No ineligible director shall be permitted at any time to serve on the Board.* Each term for a director shall be one year*, and no director shall serve more than nine (9) terms on the Board. For the avoidance of doubt, any service by a director prior to the effective date of these Amended and Restated Bylaws shall be applied to such term limit.*

Exhibit D ("**2025 Bylaws**") § 3.2 (emphasis added to reflect changes).

### B.    Unilever's Spin-Off of its Ice Cream Business

On December 6, 2025, Unilever completed the Demerger. *See* TAC ¶ 109–10; ECF No. 50 ("**SAC**") ¶ 51. As part of the Demerger, Conopco contributed all of the issued and outstanding shares of capital stock in B&J to HoldCo and assigned to HoldCo its rights and obligations under the Merger Agreement and Shareholders Agreement. TAC ¶¶ 8, 13. Thus, B&J is now a wholly-owned subsidiary of its sole shareholder, HoldCo, which is itself an indirect, wholly-owned subsidiary of TMICC—making TMICC the ultimate parent of B&J. *See id.* TMICC and HoldCo also assumed the rights and obligations of Unilever and Conopco, as applicable, under the Merger Agreement, the Settlement Agreement, and any claims as relevant to this dispute.[6] TAC ¶ 12–13. Following the Demerger, the Shareholder amended B&J's Articles of Incorporation and 2022 Bylaws to, among other things, align the term limits of the Board with the framework of the TMICC Group and the Netherlands and UK Corporate Governance Codes.

### 1.    Audits and Investigations Conducted in Connection with the Demerger

In April 2025, and in preparation for the Demerger, Defendants sought to ensure that each of the relevant subsidiaries, including B&J, and business units had proper governance protocols in place. *See* Exhibit F (December 13, 2025 Letter from A. Bhattacharya ("**Bhattacharya Letter**")).

---

[6] In light of the Demerger and accompanying assignment of rights and obligations, the only proper defendants for this lawsuit are TMICC and HoldCo, thus, any claims against Unilever are also futile.

Because Unilever's obligations under the Merger Agreement include a conditional requirement to fund BJF and such conditional obligations would transfer to TMICC in the Demerger, an audit was initiated to ensure BJF had proper internal controls and governance.[7] *See* TAC ¶¶ 66, 84–85. After months-long negotiations on the scope of the audit and the auditor, Unilever and BJF reached an agreement to retain Ernst & Young ("**EY**") and to begin the audit in June 2025. TAC ¶ 91. EY's audit of BJF uncovered several troubling findings, most notably that BJF regularly made grants to organizations where certain Trustees, including former Chair Anuradha Mittal, held senior positions and received compensation or other benefits. *See* Exhibit H (December 15, 2025 Letter from V. Vilar to A. Mittal ("**Vilar Letter**")). This led to serious concerns of conflicts of interest by Ms. Mittal who, as Chair of the Board, was responsible for directing Unilever's funds to BJF. *See id.* When EY requested to interview Ms. Mittal in connection with the audit, Ms. Mittal—through outside litigation counsel—refused to participate. *See id*.

Additionally, in April 2025, Defendants began a separate BII into concerns of misconduct involving Ms. Mittal related to her roles on the Board and at BJF. *See* TAC ¶ 132(h). The BII—conducted by an outside law firm—found that Ms. Mittal's conduct violated the then-applicable code of conduct to which she was bound. *See* TAC ¶ 98. TMICC thus determined that Ms. Mittal no longer met the criteria to serve as a Class I Director. *Id*. TMICC informed the Board of the BII findings and its conclusion that Ms. Mittal was no longer eligible to serve as a director by letter dated October 23, 2025. *See id.* ¶ 103.

---

[7] BJF is a philanthropic social justice organization that was funded by Unilever through B&J. TAC ¶ 67. BJF is run by a president and five trustees. *See* Ben & Jerry's Foundation, Our Team, https://benandjerrysfoundation.org/about/our-team/ (last visited Jan. 20, 2026).

Because TMICC was in the process of becoming a public company, it filed a Form 20-F Registration Statement with the U.S. Securities and Exchange Commission. In the November 4, 2025 filing, under the "Risk Factors" section, TMICC stated: "in the opinion of [TMICC] the current chair of the Ben & Jerry's Board no longer meets the criteria to serve as a member of the Ben & Jerry's Board." *See* TAC ¶ 123. TMICC also accurately reported that the Board had been informed about the results of the BII, and TMICC would consider its options based on the response it eventually received from the Board. *See id.*

### 2.  Defendants Implement Appropriate Corporate Governance Measures

As noted above, following the Demerger, and pursuant to its rights under the operative agreements, the Shareholder amended B&J's Bylaws and Articles of Incorporation to establish nine-year term limits for all directors to align with the framework of the TMICC Group, best practices in the industry, and the Netherlands and UK Corporate Governance Codes given TMICC's listing in the Netherlands and United Kingdom. *See* Exhibit D (2025 Bylaws) § 3.2; Exhibit G (Articles of Amendment) § 2; TAC ¶ 117. The 2025 Bylaws retained the eligibility requirements in the 2022 Bylaws and updated the requirement that directors certify compliance with TMICC's Code. The 2025 Bylaws further made clear that no ineligible director shall be permitted at any time to serve on the Board. *See* Exhibit D (2025 Bylaws) § 3.2. The amended Articles of Incorporation similarly implement term limits, as well as provide for a situation where there are no active Class I Directors. *See* Exhibit G (Articles of Amendment) § 2.

On December 15, 2025, the six former Class I Directors and one Class U Director were notified of the amendments to the Bylaws and Articles. The three directors who had served longer than nine years—Ms. Mittal, Daryn Dodson, and Jennifer Henderson—were notified that, pursuant to the 2025 Bylaws, they were no longer eligible for reelection to the Board. *See* TAC ¶ 117. The

other three former Class I Directors—Detavio Samuels, Aseel Najib, and Chivy Sok—and the Class U Director—Michiel Kruyt—were asked to certify their continued compliance with the Code and undergo compliance training to remain eligible to serve on the Board. *See* TAC ¶ 117. TMICC also advised Ms. Mittal that the BII findings rendered her ineligible to serve on the Board, effective immediately. *See* Exhibit H (Vilar Letter).

None of the non-term limited former Class I Directors—Mr. Samuels, Ms. Najib, and Ms. Sok—elected to certify compliance with the Code, which underscores the necessity of that provision. *See* TAC ¶ 117. Accordingly, as of January 1, 2026, the Board consists only of the Class U Director and B&J's CEO. *See* Merger Agreement § 6.14(a).

## II.    The Audit Finds that BJF Lacks Proper Governance and Financial Controls

BJF is not a party to the Merger Agreement and is a separate entity from B&J. *See* Merger Agreement § 1.03. For the last twenty-five years, Unilever has provided $68 million in funding to BJF. *See* TAC ¶¶ 67, 71–74. Donations are guided by B&J employees and BJF's Trustees. *See id.* ¶ 82. Currently, BJF has five trustees, including Ms. Mittal, and a president.[8] *See id.* ¶ 85. Section 6.14(h) of the Merger Agreement dictates BJF's funding and provides TMICC with broad discretion to withhold or stop funding after a period of ten years if the activities of BJF are no longer reasonably acceptable to it. Specifically, Section 6.14(h) provides that (1) Unilever was obligated to fund BJF for ten years (*i.e.*, through 2010); (2) the Board was permitted to allocate a portion of such contributions to BJF if BJF's "charitable purpose" did not significantly change, none of the Trustees disparaged B&J, and BJF's Trustees remained "reasonably satisfactory" to the Shareholder; and (3) after 2010, Unilever was no longer required to continue making charitable contributions if "the activities and performance of [BJF] *cease to be reasonably acceptable to*

---

[8] *See* Ben & Jerry's Foundation, Our Team, https://benandjerrysfoundation.org/about/our-team/ (last visited Jan. 20, 2026).

*Unilever*" (now TMICC) or the other conditions of funding are not met. Merger Agreement § 6.14(h) (emphasis added). TMICC assumed these obligations after the Demerger.

The EY audit concluded that BJF's governance and financial protocols were deficient. *See* Exhibit F (Bhattacharya Letter) at 2. The executive summary and key findings of the EY audit were shared with the President of BJF's Board of Trustees on September 11, 2025, and Defendants spent several months trying to work with BJF's Trustees to institute basic corporate governance, diligence principles, and financial controls that would remedy the deficiencies. *See id.* On December 13, 2025, TMICC notified BJF that funding would not be continued because the audit found that (i) BJF did not have a conflict-of-interest policy or require conflicts of interest disclosures, resulting in BJF making grants to organizations where Trustees hold senior positions and receive compensation and other benefits; (ii) there were limited controls and due diligence related to discretionary grants, which resulted in grants to organizations that were not aligned with BJF's charter or policies; and (iii) there was no evidence of the required year-end "ratification" of grants by Trustees. *See* Exhibit F (Bhattacharya Letter). TMICC continued to encourage BJF to implement governance protocols to address and mitigate the deficiencies identified in the audit, including a conflict-of-interest policy, financial and diligence controls covering all grants, term limits for Trustees, and complete independence between the Board and BJF. *Id.* While BJF enacted a code of conduct and conflict-of-interest policy, it refused to adopt the other recommendations and, instead, launched a public smear campaign which independently triggered TMICC's rights under the Merger Agreement to cease funding BJF. *See* Merger Agreement § 6.14(h). TMICC advised BJF that its activities were no longer reasonably acceptable to TMICC and that TMICC would cease funding the Foundation. BJF then sought to intervene in the instant lawsuit rather than implement the audit's recommendations. *See* ECF No. 65.

BJF's website now includes a large red banner across the top that reads "Hands off the Foundation! Our independence and funding is at risk," which leads visitors to a webpage entitled "Lawsuit to protect our independence."[9] This site contains links to the December 18, 2025 letter to the Court requesting permission to intervene, a press release about TMICC's threat to stop funding should BJF fail to address the concerns from the audit, and a website where visitors can donate to BJF.[10] BJF also has posted multiple times on social media accusing TMICC and Unilever of wrongfully withholding funds, rather than addressing the significant concerns with the integrity of BJF's donations.[11] This dispute is not about independence; it is about basic corporate governance and financial controls.

## PROCEDURAL HISTORY

The former Class I Directors, purporting to act on behalf of B&J, filed their original complaint on November 14, 2024, asserting a single cause of action for breach of contract alleging that Unilever and Conopco violated the Merger Agreement and Settlement Agreement by preventing the Board from posting highly divisive partisan rhetoric on social media, refusing donations to political organizations, and failing to pay Canaan in connection with the parties' Settlement Agreement (even though the 2024 payment was made in full). *See* ECF No. 5 ¶¶ 37-40. On January 27, 2025, Plaintiffs filed their First Amended Complaint to add the former Class I Directors as additional Plaintiffs and claims for declaratory judgment for Unilever's alleged breaches of the Merger and Settlement Agreements. *See* ECF No. 32. ¶¶ 46-54.

---

[9] *See* Ben & Jerry's Foundation, https://benandjerrysfoundation.org/ (last visited Jan. 20, 2026).
[10] *See* Ben & Jerry's Foundation, Our Independence & Funding is at Risk, https://benandjerrysfoundation.org/about/independence-at-risk/ (last visited Jan. 20, 2026).
[11] *See* Ben & Jerry's Foundation, Instagram, https://www.instagram.com/benandjerrysfoundation/?hl=en (last visited Jan. 20, 2026).

On March 18, 2025, Plaintiffs requested permission to file a second amended complaint ("**SAC**"). ECF No. 45. While the Court permitted Plaintiffs to amend in that instance, the Court prohibited any further amendment. *See* ECF No. 49. On April 4, 2025, Plaintiffs filed the SAC (ECF NO. 50) alleging Unilever breached the terms of the Merger and Settlement Agreements, reiterating the claims from their earlier complaints and adding allegations regarding the purported removal of B&J's then-CEO. *See* SAC ¶¶ 14–52. Unilever moved to dismiss the SAC arguing that Plaintiffs (1) lack standing under the operative agreements to sue on behalf of B&J, (2) fail to state a cause of action, and (3) fail to allege justiciable controversies. *See* ECF No. 56; ECF No. 57 at 17–25. Unilever's motion to dismiss is fully briefed and pending before this Court.

Notwithstanding the Court's prior admonition, on December 17, 2025, Plaintiffs wrote to the Court requesting leave to amend their complaint for a third time. *See* ECF No. 64. BJF then filed a letter with the Court requesting to file a motion to intervene as a Plaintiff-Intervenor. *See* ECF No. 65. The Court issued orders on December 30, 2025, permitting Plaintiffs to file a motion for leave to amend with BJF as a Plaintiff-Intervenor. *See* ECF Nos. 69, 70. Plaintiffs and BJF filed their Motion for Leave to File Third Amended Complaint and to Intervene, attaching the TAC, on January 11, 2026. *See* ECF Nos. 71; 72; 72-1.

## LEGAL STANDARD

### I.    Leave to Amend

While Federal Rule of Civil Procedure 15(a)(2) states that a party "may amend" its pleading, "leave to amend a complaint need not be granted when amendment would be futile." *Int'l Sec. Exch., LLC v. S & P Dow Jones Indices, LLC*, 987 F. Supp. 2d 428, 437 (S.D.N.Y. 2013) (citation omitted). The futility branch is "ofttimes the death knell on a contested motion to amend." *See Neurological Surgery Prac. of Long Island, PLLC v. Cigna Health & Life Ins. Co.*, No. 21-CV-01549(JS)(JMW), 2025 WL 2778389, at *2 (E.D.N.Y. Sept. 30, 2025).

Leave to amend should be denied as futile where "plaintiff has not suggested any amendment that would cure its Article III standing issue." *Evolution Fast Food One, LP v. HVFG, LLC,* 720 F. Supp. 3d 251, 264 (S.D.N.Y. 2024). To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016). An "[a]mendment to a pleading is futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Hauptman v. Interactive Brokers, LLC,* 349 F. Supp. 3d 292, 295 (S.D.N.Y. 2018) (citation omitted); *Tannerite Sports, LLC v. NBCUniversal News Grp.,* 864 F.3d 236, 252 (2d Cir. 2017).

Under Rule 12(b)(6), a complaint should be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To state a plausible claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When evaluating the sufficiency of a claim for relief, the court must "accept as true all factual allegations and draw from them all reasonable inferences," but is "not required to credit conclusory allegations or legal conclusions couched as factual … allegations." *Dane v. UnitedHealthcare Ins. Co*., 974 F.3d 183, 188 (2d Cir. 2020) (citation omitted).

## II.    Intervention

To intervene as of right under Rule 24(a), "a movant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *A.H. ex rel. E.H. v. N.Y. State Dep't of Health*, 147 F.4th 270, 281 (2d Cir. 2025) (citations omitted), *petition for cert. filed*, No. 25-843 (U.S. Jan. 15, 2026). A nonparty's interest

in the litigation must be "direct, substantial, and legally protectable" and neither "remote from the subject matter of the proceeding, [n]or … contingent upon the occurrence of a sequence of events before it becomes colorable" to intervene as of right under Rule 24(a). *CarbonCharge Techs. LLC v. Talafous-Favetta*, No. 24-CV-00361, 2025 WL 2630669, at *4 (S.D.N.Y. Sept. 12, 2025) (citation omitted). The nonparty must also show that "the [case's] disposition may as a practical matter impair or impede [its] ability to protect [its] interests." *Id.* at *5. For permissive intervention under Rule 24(b) to be appropriate, a nonparty must establish that it has "a claim or defense that shares with the main action a common question of law or fact," *id.* at 3 (quoting Fed. R. Civ. P. 24(b)(1)(B)), and "an interest sufficient to justify permissive intervention," *Kehagias v. Phila. Indem. Ins. Co*., 345 F.R.D. 46, 52 (S.D.N.Y. 2023).

## ARGUMENT

The new claims for breach of the Merger and Settlement Agreements, breach of the implied covenant of good faith and fair dealing, declaratory judgment, and unjust enrichment premised on (1) TMICC's permitted amendments to the Bylaws and Articles of Incorporation, (2) TMICC's decision to withhold funding for BJF following the EY audit's findings of deficiencies, and (3) TMICC's decision to withhold funds for Canaan until basic questions are answered about the propriety of the donations are futile because (a) no former Class I Directors were "removed" and there is no dispute, based on the plain language of the agreements, that the Shareholder was well within its rights to amend the Bylaws to clarify the eligibility requirements, and (b) the former Class I Directors have no standing to challenge TMICC's decision under the Merger Agreement to withhold funding from BJF. Even putting standing aside, (a) TMICC has broad discretion under the clear terms of the Merger Agreement to withhold funding if BJF's activities are not reasonably acceptable to TMICC and (b) the duty of good faith and fair dealing claim fails because the former

Class I Directors are not parties to the Merger Agreement and, with respect to the Settlement Agreement to which they are a party, their claim attempts to create extra-contractual obligations that are nowhere found in the agreement. Finally, TMICC has set aside the payment to Canaan and simply requested information from Canaan to ensure compliance with the Settlement Agreement and applicable law.

Because the claims premised on these new allegations are futile, BJF's motion for intervention must necessarily be denied. BJF's motion for intervention fails for the additional reason that BJF concedes that it lacks standing to bring claims under the Merger Agreement and BJF cannot state a claim for unjust enrichment.

## I.  The Third Amended Complaint Fails for the Same Reasons as the Second Amended Complaint

Plaintiffs' TAC suffers from the same deficiencies raised by Unilever in its motion to dismiss, which Defendants hereby incorporate by reference. *See* ECF Nos. 56-58, 63. As Unilever previously explained, all of the claims brought on behalf of B&J should be dismissed because only the CEO of B&J is authorized under the Merger Agreement to bring suit on behalf of the Company, and the former Class I Directors themselves have no standing to bring claims under the Merger Agreement (other than to challenge their removal). Plaintiffs' new claims fare no better.[12]

## II.  Plaintiffs' Claims Related to the Removal of the Directors are Futile

Plaintiffs' proposed breach of contract, declaratory judgment, and breach of the implied covenant claims (Counts I, III, V, VI, and IX) are futile because they ignore Defendants' clear governance rights under the relevant agreements.

---

[12] Moreover, as part of the Demerger, all of the rights and obligations against Unilever have been assigned to TMICC and HoldCo. TAC ¶¶ 12–13. Accordingly, all claims (in both the SAC and the TAC) as against Unilever are now futile. Defendants intend to move to substitute TMICC and HoldCo for Unilever and Conopco pursuant to Federal Rule of Civil Procedure 25 should this case proceed.

Plaintiffs erroneously argue that TMICC and the Shareholder breached the terms of the Merger and Settlement Agreements because they "unilaterally" removed the former Class I Directors. TAC ¶ 163. TMICC and the Shareholder did not remove any eligible director from the Board or otherwise interfere with the former Class I Directors' rights. The Merger Agreement remains unchanged; the newly designated Class I Directors' power to request the removal of a Class I Director and to elect directors remains intact. Merger Agreement § 6.14(a). Rather, the Shareholder exercised its rights to amend the Bylaws to incorporate governance principles aligned with applicable governance codes and to clarify existing eligibility requirements. These amendments rendered certain former directors no longer *eligible* for additional one-year terms. Plaintiffs do not dispute that the Shareholder is fully within its rights to amend B&J's Bylaws and Articles of Incorporation to institute eligibility requirements for the Board.[13]

Vermont law unequivocally permits shareholders to "amend or repeal the corporation's bylaws," Vt. Stat. Ann. tit. 11A, § 10.20(b), and articles of incorporation, Vt. Stat. Ann. tit. 11A, § 10.03(a). Each of B&J's governing agreements make clear that the Shareholder holds these rights exclusively. *See* Merger Agreement § 5.01(iii) ("The Company shall not … do any of the following without the prior written consent of [the Shareholder] … amend its articles of incorporation, by-laws or other comparable charter or organizational documents."); Exhibit E (Shareholders Agreement Exhibit A) § 1(g) (giving the Shareholder authority over "[a]ny amendments of the By-laws of the Company"); Exhibit B (2000 Bylaws) § 7.5 ("These bylaws may be altered, amended, or repealed and new bylaws may only be adopted by the Shareholder."); Exhibit A (Articles of Incorporation), Art. 8 ("The by-laws of the Corporation may only be adopted, amended or repealed

---

[13] The former Class I Directors appear to argue that they were not consulted with respect to the amendments to the Articles of Incorporation because—by their account—the amendments were "not-bargained-for." TAC ¶ 158. But the previously bargained-for agreements do not require the Shareholder to consult with or "bargain" with the former Class I Directors—non-parties to the agreement—prior to instituting the amendments.

by the shareholder of the Corporation."). The Shareholders Agreement also unambiguously grants the Shareholder authority to regulate B&J's corporate affairs. *See* Exhibit E (Shareholders Agreement Exhibit A) § 1(l). The Merger and Shareholders Agreements make clear that the Shareholder has "primary responsibility for the … operational aspects of [B&J]." Merger Agreement § 6.14(j); Exhibit E (Shareholders Agreement) § 1(j). Accordingly, there can be no dispute that the Shareholder has the right to amend the Bylaws and the Articles of Incorporation, and Plaintiffs' attempts to challenge those amendments are futile.

The 2025 Bylaws apply to all Board members—not just the former Class I Directors. Under the 2025 Bylaws, no Board member may serve more than nine, one-year terms, a limit that applies retroactively to directors who have already exceeded nine years of service. In addition, all Board members must satisfy specified criteria to remain eligible, including certifying that they will abide by—and thereafter comply with—the then applicable code of conduct. *See* Exhibit D (2025 Bylaws) § 3.2. Because the Merger Agreement requires the Board to abide by the Code, the amendments merely update the reference to reflect the TMICC Code. *See* Merger Agreement § 6.14(j). Three former Class I Directors have exceeded the nine-year term limits,[14] and the other three former Class I Directors refused to certify that they will abide by the ethical and legal standards set forth in the Code. Thus, they all became ineligible and could not be reelected to the Board.[15]

---

[14] While Ms. Mittal also became ineligible due to her misconduct, the Court need not address those allegations to dispose of the claim because she exceeds the permissible term limits.

[15] Although it asserted no claim about it, the TAC also includes allegations about a purported new Board member whom the former Class I Directors selected in December 2025 to join the Board but TMICC purportedly rejected. To be clear, TMICC simply responded that Class I Directors needed to follow the process defined in the Merger Agreement, which requires electing only eligible directors (whose eligibility is confirmed by the Shareholder) and then allowing the Shareholder to cause the election of director candidates. *See* Merger Agreement § 6.14(a). The former Class I Directors did not respond to TMICC and appears to be more interested in manufacturing another gripe than following the Merger Agreement.

Plaintiffs also argue that Defendants breached their obligations under the Settlement Agreement to "respect and acknowledge" the social mission and to ensure the social mission and brand integrity are "protected and furthered" by taking these actions. ECF No. 72 at 14. But that bears no relation to reality. In fact, the Shareholder took steps as a matter of good governance and best practices to *protect* B&J and its social mission, including by amending the Articles of Incorporation to expressly allow for any remaining directors to designate candidates to serve as Class I Directors if there were none that remained eligible, and for those elected Class I Directors to then elect the remaining Class I Directors. *See* Exhibit G (Articles of Amendment) § 2 ("If there are no Class I Directors then in office (or all Class I Directors have been deemed ineligible as outlined below), the majority of Directors then in office shall designate candidate[s] for election to the Board as Class I Director[s]."). At the end of the day, Plaintiffs improperly conflate Defendants' obligations to protect and further the social mission—which Defendants have honored and are committed to—with Plaintiffs' manufactured right to serve indefinitely on the Board. The former Class I Directors' eligibility to serve on the Board, however, is expressly conditioned on compliance with B&J's governing documents and is subject to renewal annually. Indeed, if the former Class I Directors' position were correct, Defendants could not stop them from electing a felon or sanctioned person to the Board (notwithstanding the eligibility requirements), which cannot be the correct result for the subsidiary of a publicly listed company. Likewise, because the non-term limited Class I Directors *chose* not to certify compliance with the Code, they are no longer eligible to serve.

Plaintiffs' claim for breach of good faith and fair dealing (Count IX) is futile because Plaintiffs are not parties to the Merger Agreement. To assert a breach of good faith and fair dealing claim, Plaintiffs must be a party to the relevant agreement. *See Carney v. Int'l Cap. Grp.,* No. 21

Civ. 183 (NRB), 2024 WL 1484114, at *3 (S.D.N.Y. Apr. 5, 2024) (dismissing claims for breach of good faith and fair dealing where defendants were not party to the contract). As to the Settlement Agreement, Plaintiffs base all their allegations on the generic requirement that Defendants must "respect" the Board, but Plaintiffs cannot use the implied covenant to rewrite the operative agreements or prohibit the Shareholder from exercising its right to amend the Bylaws. *See Times Mirror Mags., Inc. v. Field & Steam Licenses Co.*, 294 F.3d 383, 394–95 (2d Cir. 2002) (holding a party "cannot avoid the express terms of the contract by relying on the implied covenant of good faith and fair dealing"). Moreover, and as discussed *supra*, Defendants remain committed to—and will continue to—respect B&J's social mission and the construct of the Board. Accordingly, Plaintiffs' breach of the implied covenant claim is also futile.

### III.    Plaintiffs' Claims Related to BJF's Funding Are Futile

Plaintiffs' proposed claims for breach of contract, declaratory judgment, and breach of the implied covenant related to TMICC's decision to withhold funding for BJF are likewise futile.

#### A.    The Former Class I Directors Lack Standing Under the Merger Agreement to Bring Claims Under Section 6.14(h)

The former Class I Directors do not have standing to bring claims under Section 6.14(h) of the Merger Agreement to challenge TMICC's decision to withhold funding from BJF (Counts II, IV, and IX). As explained in Unilever's motion to dismiss, the former Class I Directors are not parties to the Merger Agreement. The Merger Agreement also expressly disclaims any rights to third party beneficiaries except in limited circumstances not applicable to BJF's funding under Section 6.14(h). *See* Merger Agreement § 9.07; *see also In re George Washington Bridge Bus Station Dev. Venture LLC,* 65 F.4th 43, 55 (2d Cir. 2023) (holding a contract provision naming specific third-party beneficiaries indicated the intentional omission of others). The Merger Agreement makes clear that it is "not intended to confer upon any person other than the parties

any rights or remedies," including enforcement of provisions relating to BJF's funding. Merger Agreement § 9.07. Accordingly, Plaintiffs do not have standing to bring claims under Section 6.14(h) of the Merger Agreement.

**B.    The Merger Agreement Does Not Require that TMICC Fund BJF Under Current Conditions**

Putting their lack of standing aside, the provision at issue makes clear that TMICC was well within its contractual rights to withhold funding. Unilever was only required to fund BJF for ten years. *See* Merger Agreement § 6.14(h). After ten years (*i.e.*, 2010), Unilever (now, TMICC) is not required to "make contributions" to BJF if "the activities and performance of BJF cease to be reasonably acceptable to Unilever" (now, TMICC). *Id*. Further, the Merger Agreement clearly states that BJF only remains eligible for funding under the Merger Agreement if: "(i) [BJF] does not significantly change its charitable purpose, (ii) none of the trustees of [BJF] disparages the … Corporation, its products or its management and (iii) any replacement or additional trustee of [BJF] is reasonably satisfactory to Conopco" (now HoldCo). *Id*.

Neither Plaintiffs nor BJF dispute the plain terms of the Merger Agreement, which unequivocally grants TMICC broad discretion to determine what is reasonably acceptable to it. TAC ¶ 156. Nevertheless, they argue that Defendants breached the Merger Agreement by "refusing to provide the allocated contribution" that the former Class I Directors designated to BJF. TAC ¶ 140. The former Class I Directors, however, ignore that no such funding has been allocated to BJF because no quorum was present at the Board meeting where BJF's funding was purportedly allocated.

But even taking their allegations as true—that the former Class I Directors have already allocated funding to BJF—those claims are still futile. Just because the former Class I Directors took an *internal* action and decided to allocate funds to BJF does not create a binding obligation

between TMICC and BJF, a third party. *See Aeneas McDonald Police Benev. Ass'n, Inc. v. City of Geneva,* 92 N.Y.2d 326, 330 (1998) (affirming holding that resolutions do not create a contractual right or binding entitlement). Moreover, TMICC has the right to withhold the allocated funds and stop funding if the activities of BJF are not reasonably acceptable to TMICC. *See* TAC ¶¶ 137-147 (Count II), ¶¶ 155-159 (Count IV).

On December 13, 2025, TMICC advised BJF that its activities were not reasonably acceptable to TMICC, including because (i) BJF did not have a conflict-of-interest policy or require conflicts-of-interest disclosures, which resulted in BJF making grants to organizations where Trustees hold senior positions and receive compensation or other benefits; (ii) there were limited controls and due diligence related to discretionary grants, which resulted in grants made that were inconsistent with BJF's charter or policies; and (iii) there was no evidence of the required year end "ratification" of grants by Trustees. *See* Exhibit F (Bhattacharya Letter). TMICC encouraged BJF to follow the recommendations of the audit and implement certain governance protocols, including a conflict-of-interest policy, financial and diligence controls, term limits for Trustees, and independence between the Board and BJF.[16] *Id.* While BJF implemented a conflict-of-interest policy, BJF refused to implement financial and diligence controls, term limits for Trustees, or independence requirements. Because BJF declined to exercise and implement reasonable governance protocols, TMICC found that BJF's activities were no longer reasonably acceptable to it and declined to provide funding to BJF. Accordingly, Plaintiffs' breach of contract and declaratory judgment claims related to BJF's funding are futile.

---

[16] The rationale for this policy is sound: the Board allocates funding to BJF and Trustees have discretion to allocate portions of that funding as they see fit. Overlap between the Board and BJF allows for the possibility that a Board member allocates TMICC funds to BJF and then, as a Trustee, allocates funds to their own non-profit organization, which in turn allocates them a salary. In short, if such overlap is allowed to continue, the propriety of the process is suspect as the dual Board member and Trustee could be seen as allocating TMICC funding to themselves. Indeed, this is precisely what the audit and BII concluded Ms. Mittal had done, which Ms. Mittal has never denied.

BJF's claim for unjust enrichment (Count X) fails for the same reason: no money is owed to BJF. *A.I.A. Holdings, S.A. v. Lehman Bros.,* No. 97 CIV.4978 (LMM), 1999 WL 47223, at *4 (S.D.N.Y. Feb. 3, 1999) (dismissing claims for unjust enrichment where plaintiff lacked possessory interest in the funds), *reconsideration granted on other grounds*, 2000 WL 302697 (S.D.N.Y. Mar. 21, 2000). TMICC cannot be unjustly enriched by retaining its own money. Nor is there any merit to BJF's claim that Defendants "continue[] to reap the benefits of BJF's work." TAC ¶ 194. Rather, such benefits are undoubtedly the result of Unilever's $68 in million funding for BJF over the last 25 years. Accordingly, BJF's claim for unjust enrichment is futile. *See Hauptman* 349 F. Supp. at 295 ("[a]mendment to a pleading is … futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)").

## IV.    BJF Fails to Establish a Basis for Intervention

BJF's motion to intervene as of right or, in the alternative, for permissive intervention, should be denied. BJF's ability to intervene rises and falls with Plaintiffs' motion to amend. Because Plaintiffs' claims as it relates to BJF's funding are futile—as discussed *supra*—BJF's motion to intervene should likewise be denied.

### A.    BJF Lacks Standing

Even if the Court were to consider BJF's motion to intervene, BJF's claim fails because it concedes that it lacks standing to bring claims for breach of Section 6.14(h) of the Merger Agreement. *See* ECF No. 72 at 19 n.2. BJF is not a party to the Merger Agreement or any of the relevant governing documents and, as discussed *supra*, the Merger Agreement expressly disclaims any third-party beneficiaries. *See* Merger Agreement § 9.07. Therefore, BJF lacks standing to sue.

BJF claims, instead, that TMICC's "threat to withhold the [] approved funding … give[s] [BJF] standing to seek relief in this case, including a declaratory judgment construing Section 6.14(h) of the Merger Agreement." ECF No. 72 at 18. That is simply not true. Rather, BJF must

have standing under the Merger Agreement to bring the claims alleged—it cannot write into a contract a right that does not exist and then rewrite the rights that do exist simply to suit its purpose. *L. Debenture Tr. Co. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010). To intervene, an "injured party's interest" must be "sufficiently 'direct, substantial, and legally protectable' to satisfy the requirements of intervention as of right, [or] 'an interest sufficient to justify permissive intervention.'" *Kehagias*, 345 F.R.D. at 52 (citation omitted).

Perhaps recognizing that they have no standing, BJF tries to bootstrap standing through the former Class I Directors. BJF argues that "to the extent Plaintiffs and the Foundation seek the same relief, including declaratory relief, the Foundation does not have to separately establish its standing." ECF No. 72 at 19. But, as discussed *supra*, the former Class I Directors also have no standing to bring claims under Section 6.14(h), and therefore BJF cannot bootstrap onto Plaintiffs' purported standing either.

**B.    BJF Has Failed to Show a Legally Cognizable Interest Which Necessitates Intervention**

Separately, BJF has failed to show that it has a legally cognizable interest in the action. *N.Y. State Dep't of Health*, 147 F.4th at 281 (explaining that, among other requirements, "[t]o prevail on a motion for intervention as of right, a movant must … show an interest in the action, [and] … show that the interest is not protected adequately by the parties to the action") (citation omitted). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy" the standard for amendment. *Dubarry v. Annucci*, No. 21-CV-5487, 2022 WL 17850435, at *1 (S.D.N.Y. Dec. 22, 2022).

As discussed *supra,* TMICC need only donate to BJF if, among other things, its activities are reasonably acceptable to TMICC. *See* Merger Agreement § 6.14(h). BJF chose not to

implement certain governance controls and protocols, rendering its activities no longer reasonably acceptable to TMICC and ending TMICC's obligation to fund BJF. Accordingly, BJF does not have a legally protectable interest in the litigation because it is no longer entitled to funds from TMICC. *See Restor-A-Dent Dental Lab'ys, Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d. Cir. 1984) (denying intervention in a breach of contract case where the proposed intervenor failed to point to an interest that was "direct, as opposed to remote or contingent").

## V.   Defendants Continue to Abide by Their Obligations Under the Settlement Agreement Regarding Payments to Canaan

Finally, Plaintiffs' new claims under the Settlement Agreement (Counts VII and VIII) are also futile. Plaintiffs purport to bring claims for Defendants' failure to pay Canaan, claiming Defendants breached the Settlement Agreement by, among other things, not making payments to Canaan in 2025. *See* TAC ¶ 179. The Settlement Agreement provides that Unilever (now TMICC) "will make payments totaling $2 million USD annually to [Canaan] directly or through a third party, for the use of Palestinian almonds (*or for the direct benefit of Palestinian almond farmers*)." Settlement Agreement § 1 (emphasis added). There is no question that these funds were paid in 2024 and the funds for 2025 have been set aside. The "context and documents from Canaan," TAC ¶ 56, however, revealed a problem: Canaan did not have $2 million worth of almonds to sell to TMICC, and Canaan could not establish that the funds would go to the "direct benefit of Palestinian almond farmers." Settlement Agreement § 2(f). In other words, TMICC, which is now a publicly traded company, could not ensure that the funds it disbursed to Canaan would comply with the Settlement Agreement (or applicable law) and go to the benefit of Palestinian almond farmers only. And when TMICC tried to resolve the issue with the former Class I Directors in good faith, Ms. Mittal and her counsel violated Federal Rule of Evidence 408 by publicly

disclosing—and misrepresenting—the parties' confidential discussions.[17] Any claim that Defendants are in violation of the Settlement Agreement is futile as there is no dispute between the parties: TMICC is ready and willing to disburse funds upon a showing that such funding will go to the direct benefit of Palestinian almond farmers.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' Motion for Leave to Amend and BJF's Motion to Intervene. If, however, the Court decides to grant the motions, Unilever and the Proposed Defendants respectfully request 30 days from the date of the filing of any Third Amended Complaint to move to dismiss or otherwise respond and further ask that the Court again prohibit any further amended pleadings.

Respectfully submitted,

Dated: New York, New York
　　　　January 20, 2026

WEIL, GOTSHAL & MANGES LLP

*/s/ David J. Lender*
David J. Lender
Luna N. Barrington
Alexandra Rose
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
david.lender@weil.com
luna.barrington@weil.com
alexandra.rose@weil.com

*Attorneys for Defendants Unilever PLC and Conopco, Inc. and Proposed Defendants The Magnum Ice Cream Company N.V. and Ben & Jerry's HoldCo, LLC*

---

[17] Counsel for the former Class I Directors, who also represents Ms. Mittal and BJF Trustees, was a participant in these discussions and had agreed under FRE 408 to keep the discussions confidential. Counsel violated the parties' agreement by disclosing, and even more egregiously mischaracterizing, the confidential discussions in filings with the Court. *See, e.g.,* ECF No. 72 at 4-6; TAC ¶ 100.

## <u>WORD COUNT CERTIFICATION</u>

Pursuant to Local Rule 7.1(c), I hereby certify that the total number of words in this memorandum, excluding the caption, table of contents, table of authorities, signature block, and word count certification is 8,467.

<i>/s/ David J. Lender</i> _____<br>David J. Lender