UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEN & JERRY'S HOMEMADE, INC., CLASS I DIRECTORS OF BEN & JERRY'S INDEPENDENT BOARD<br><br>Plaintiffs,<br><br>v.<br><br>UNILEVER PLC AND CONOPCO, INC.<br><br>Defendants. | Case No. 1:24-cv-08641-PKC<br><br>JURY TRIAL DEMANDED |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' AND PROPOSED INTERVENOR PLAINTIFF'S JOINT MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT AND TO INTERVENE**

i

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

    1.    Magnum cannot evade its contractual obligations by amending bylaws mid-litigation. ................................................................................................................. 3

    2.    Magnum cannot be the party responsible for suing itself. .................................... 5

    3.    Magnum cannot institute a pretextual audit of the Ben & Jerry's Foundation, tarnish its reputation, cut funding allocated to dozens of nonprofits, and then completely shield itself from scrutiny. The Foundation should be allowed to intervene. ...................... 6

    4.    Magnum's self-reports of compliance with the Settlement Agreement and Settlement Amendment are insufficient to carry its burden on futility. .............................. 9

CONCLUSION ................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*150 Broadway N.Y. Assocs., L.P. v. Bodner*,
  14 A.D.3d 1 (1st Dept. 2004) .................................................................................................. 7

*Brennan v. N.Y.C. Bd. of Educ.*,
  260 F.3d 123 (2d Cir. 2001) .................................................................................................... 9

*Cmty. Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp.*,
  No. 18-CV-4273 (PMH) (JCM), 2020 WL 5089444 (S.D.N.Y. Aug. 28, 2020) ..................... 3

*In re NYC Policing During Summer 2020 Demonstrations*,
  27 F.4th 792 (2d Cir. 2022) ................................................................................................. 4, 7

*Intercloud Sys., Inc. v. Integration Partners Corp.*,
  No. 1:17-CV-1628-GHW, 2017 WL 11570456 (S.D.N.Y. July 31, 2017) ............................. 4

*Kent v. Quicksilver Min. Co.*,
  78 N.Y. 159 (1879) ................................................................................................................. 4

*Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*,
  239 F. Supp. 3d 710 (S.D.N.Y. 2017) .................................................................................. 10

*Nettis v. Levitt*,
  241 F.3d 186 (2d Cir. 2001) .................................................................................................... 3

*RJ Cap., S.A. v. Lexington Cap. Funding III, Ltd.*,
  10 CIV.24 PGG, 2011 WL 3251554 (S.D.N.Y. July 28, 2011) ............................................ 10

## INTRODUCTION

By 1999, Ben & Jerry's had become an American institution, with several industry rivals seeking to acquire the brand. To distinguish itself from other bidders, Unilever instructed its Chief Counsel, Ronald Soiefer, that his "job was to collaborate with" Ben & Jerry's "to create a governance structure that would set [Unilever's] bid apart from any others." TAC at ¶ 18, Doc. 72-1. The resulting Merger Agreement created a one-of-a-kind governance structure with an independent board of directors ("Independent Board"). Although Unilever could appoint one member to the Independent Board (a "Class U Director"), under Section 6.14 of the Merger Agreement, the majority would comprise of independent directors ("Class I Directors"). To preserve the directors' independence, Section 6.14(a) of the Merger Agreement barred Unilever from removing an independent director and mandated that only the independent directors would be allowed to select their replacements. TAC at Ex. 7 ("Merger Agreement"). As Unilever's then-Chief Counsel confirmed: "The board of Ben & Jerry's is not going away. They will always be pushing to integrate the social mission throughout the company and keep the company's operations transparent. ***It isn't like Unilever can run out the clock***." TAC at ¶ 21 (emphasis added). The TAC alleges that is precisely what Defendants are now attempting to do.

Unhappy with Ben & Jerry's outspoken values, Unilever's latest executives want to eliminate the Merger Agreement's constraints that prevent them from controlling the Independent Board. In January 2024, Peter ter Kulve—weeks into his appointment as Unilever's President of Ice Cream—wrote to the Independent Board Chair, Anuradha Mittal, referring to her as "manic" and suggesting she resign from her position in response to the Independent Board's proposed post calling for "peace" and a "permanent and immediate ceasefire" in Gaza. TAC at ¶ 27. The next month, in February 2024, Mr. ter Kulve threatened Ben & Jerry's then-CEO, Dave Stever: "You

need to fix your board. I will get rid of them or fire you if they don't change." *Id.* at ¶ 123. Mr. ter Kulve—who is now Magnum's CEO—is a close ally of Nelson Peltz, a prominent member of Unilever's Board of Directors. In March 2024, Mr. Peltz told the *Financial Times*: "Ben & Jerry's job is to sell ice cream, not to make political statements. And these people use anything for a soapbox that they have no right to do." *Id.* at ¶ 27. He added: "What sense is being a billionaire if you're not a bully?" *Id.*

Since these comments from Magnum's CEO and Unilever's senior board member, Defendants have engaged in a coordinated campaign to threaten and dismantle the Independent Board, bulldozing their obligations under the Merger and Settlement Agreements along the way. Just since Plaintiffs initiated this litigation, Defendants have ousted Mr. Stever—a thirty-plus-year employee who began his career as a Ben & Jerry's tour guide—for supporting the Independent Board (*id.* at ¶¶ 59–60); refused to disburse monies owed to indigenous Palestinian famers facing dire economic conditions as collateral damage (*id.* at ¶¶ 51–56); launched a pretextual audit of and cut funding to the forty-year-old Ben & Jerry's Foundation because it refused to turn on Chair Mittal (*id.* at ¶¶ 83–97); orchestrated a sham investigation against Chair Mittal—who has dedicated her life to human rights work—based on allegations Unilever itself has previously "denounced" as "extreme personal slander" necessitating "unprecedented" security (*id.* at ¶¶ 98–109);[1] and unilaterally removed *every* independent director from the Independent Board (*id.* at ¶ 117).

---

[1] The premeditated and pretextual nature of Defendants' scheme to remove Chair Mittal is underscored by Exhibit H to their response (Doc. 74-8), a December 15, 2025, letter from Magnum's Head of Business Integrity, Vanessa Vilar. What Magnum has conveniently omitted, however, is that Ms. Vilar sent nearly identical allegations regarding Chair Mittal to the remaining independent directors on October 23, 2025, threatening their positions if they disagreed with Unilever's assertions. TAC at ¶ 103. On December 3, 2025, the Class I Directors provided a detailed twenty-six-page rebuttal highlighting the infirmities and severe deficiencies behind Defendants' allegations. *Id.* at ¶ 108; *see also* Declaration of Shahmeer Halepota ("Halepota Decl.") Ex. 1 (December 3, 2025, Class I Directors' letter regarding Defendants' allegations). Ignoring the robust response, Magnum simply pushed through with its removal scheme, including by sending Exhibit H, which repeated the allegations from its October 23, 2025 letter nearly verbatim *without addressing whatsoever* the Class I Directors' detailed responses. TAC at ¶ 109.

2

On January 11, 2026, Plaintiffs and the Foundation sought leave to file the TAC, alleging that Defendants' efforts to hijack the Independent Board while holding hostage charitable funds due to the Foundation breached the Merger Agreement and Settlement Agreement. In their January 20, 2026 response, Defendants argue any such challenge is futile, attempting to whitewash their contractual breaches as an innocent "governance" update, while claiming the "Merger Agreement remains unchanged." Doc. 73 at 16. Within thirty-six hours of that representation to this Court, on January 22, 2026, Magnum informed *The Wall Street Journal*—in further contravention of the Merger Agreement's appointment process and antithetical to the term "independent"—that it "would appoint an independent chair who would then appoint new independent directors to the *new* Ben & Jerry's board."[2] Magnum has no such right.

## ARGUMENT

**1.      Magnum cannot evade its contractual obligations by amending bylaws mid-litigation.**

To prevail on its futility argument, Magnum must establish that Plaintiffs' legal challenge is "frivolous or facially insufficient." *Cmty. Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp.*, No. 18 CIV. 4273 (PMH) (JCM), 2020 WL 5089444, at *5 (S.D.N.Y. Aug. 28, 2020) (cleaned up). However, Defendants' "futility" arguments all suffer from the same flaw: they ask the Court to consider disputed facts and resolve the merits of the claims. "Determinations of futility," however, "are made under the same standards that govern Rule 12(b)(6) motions to dismiss." *Nettis v. Levitt*, 241 F.3d 186 n.4 (2d Cir. 2001), *overruled on other grounds*, *Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006). The only question for the Court at this stage is whether, taking well-pleaded allegations as true, these claims are plausible. Defendants instead ask

---

[2] Halepota Decl. Ex. 2 (Aimee Look, *Magnum Ice Cream Says New Independent Ben & Jerry's Board Members to be Appointed*, The Wall Street Journal (Jan. 22, 2026, at 13:09 ET), https://www.wsj.com/business/magnum-ice-cream-says-new-independent-ben-jerrys-board-members-to-be-appointed-221544a0) (emphasis added).

3

the Court to prematurely decide the case based on their view of the facts, confusing "the merits of the litigation with the standard for intervention under Rule 24(a)(2)." *In re NYC Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 800 (2d Cir. 2022).³

Specifically, Magnum cannot carry its futility burden for three reasons. *First*, Magnum's efforts to hijack the Independent Board—including replacing all the independent directors with Magnum appointees—breaches its express obligations under the parties' agreements. Specifically, Section 6.14(a) of the Merger Agreement mandates that:

- Magnum "shall not" remove any independent ("Class I") directors. Magnum has now removed *each* of the independent directors.

- The majority of the Independent Board will consist of independent directors. According to Magnum, due to its removal efforts, "as of January 1, 2026, the Board consists only of the Class U Director and B&J's CEO," both Magnum appointees. Doc. 73 at 9.

- Magnum will only have the power to appoint one director to the Independent Board, and the majority of the independent board will be selected by the independent directors. Per Magnum's statements to *The Wall Street Journal*, it now has total control over the Independent Board and will appoint *each* director. Halepota Decl. Ex. 2 at 2.

*Second*, Magnum's assertion that its post hoc bylaws amendments can override its existing contractual obligations is inconsistent with over a century of commonsense caselaw. *Kent v. Quicksilver Min. Co.*, 78 N.Y. 159, 182 (1879) ("[N]o alteration [of bylaws] could be made which would infringe a right already given and secured by the contract of the corporation."). Magnum has no right to enact bylaws amendments that breach the Merger Agreement, including changing quorum rules so Magnum can now run Independent Board meetings without *a single* independent director being present. Doc. 74-4 at § 3.5.

---

³ "Although a motion to dismiss Plaintiff's first amended complaint is fully briefed, the Court believes that the wiser course would be to rule on the sufficiency of the proposed second amended complaint in the context of a fully briefed motion to dismiss that complaint, should Defendants choose to bring one." *Intercloud Sys., Inc. v. Integration Partners Corp.*, No. 1:17-CV-1628-GHW, 2017 WL 11570456, at *1 (S.D.N.Y. July 31, 2017).

4

*Third*, Magnum's attempts to inject pretextual "eligibility" requirements into the Merger Agreement amounts to a unilateral rewriting of the same. The Merger Agreement already defines the term "Ineligible Director,"[4] and it conspicuously does not include any of the conditions Magnum attempts to superimpose *over two decades after the fact* as a tool for removing every independent board member.

**2.    Magnum cannot be the party responsible for suing itself.**

Magnum concedes that the independent directors have standing under the Merger Agreement to challenge their *individual* removals, Doc. 73 at 15, a concession sufficient for those claims to proceed. Nevertheless, Magnum maintains that it or an individual under its control (namely, the Ben & Jerry's CEO) is the appropriate party to bring a suit on behalf of Ben & Jerry's alleging that *Magnum* has breached the Merger Agreement. Magnum's interpretation of the Merger Agreement does not satisfy its futility burden for several reasons.

Plaintiffs incorporate their arguments from their Opposition to Defendants' Motion to Dismiss (Doc. 61), including that Magnum's interpretation: 1) renders Ben & Jerry's rights illusory if entirely reliant on Magnum suing itself; 2) is inconsistent with the Independent Board's "primary" authority over the social mission and brand integrity (which would be "secondary" if reliant on others to initiate litigation); and 3) ignores the prior history of the Independent Board suing on behalf of Ben & Jerry's. *Id*. at 13–19. Magnum's current maneuverings underscore Plaintiffs' arguments: Magnum's suggestion that any challenge to its hijacking of the Independent

---

[4] The Merger Agreement defines "Ineligible Director" to mean "any member of the Company Board at the date hereof who (a) fails to tender his or her shares of Company Common Stock pursuant to the Offer, (b) makes any public statement disparaging either Parent, Conopco, the Company, any Transaction Agreement or any Transaction [also defined terms], (c) takes any action that, but for Section 9.11, would constitute a breach of this Agreement by the Company or (d) takes any other action which is intended to cause any of the Transactions to fail to be completed." Merger Agreement at § 9.03. There is no mention of term limits, annual certifications, or "trainings."

5

Board is *futile* establishes why a party other than Magnum (or someone under Magnum's control) must be responsible for enforcing Ben & Jerry's rights under the Merger Agreement.

Magnum's secondary suggestion that the CEO it appoints for Ben & Jerry's could be the one to initiate litigation fares no better. *First*, Magnum's assertion regarding the CEO suing on behalf of Ben & Jerry's negates Magnum's argument regarding third-party reliance: Ben & Jerry's CEO is not a party to the Merger Agreement. *Second,* Plaintiffs incorporate their arguments from their Opposition to the Motion to Dismiss, including that Section 6.14(f) of the Merger Agreement expressly provides the Independent Board with authority to "prevent" the CEO from taking actions inconsistent with Ben and Jerry's brand integrity—a meaningless right if the CEO can quash litigation to enforce the same. Doc. 61 at 13–19. Moreover, Ben & Jerry's rights would still be illusory under this interpretation because Magnum claims an unfettered right to swiftly remove and replace a CEO whom it disfavors—*precisely what it did in the middle of this litigation with Mr. Stever*. *Id.* at 17–18.

3. **Magnum cannot institute a pretextual audit of the Ben & Jerry's Foundation, tarnish its reputation, cut funding allocated to dozens of nonprofits, and then completely shield itself from scrutiny. The Foundation should be allowed to intervene.**

*<u>Standing</u>*: Contrary to Defendants' assertion, the Foundation does not "concede" (Doc. 73 at 15, 22) that it lacks standing under the unique circumstances of this case to seek relief under Section 6.14. It is settled law—and Defendants do not dispute—that so long as Plaintiffs have standing to enforce Section 6.14, the Foundation need not independently establish standing to pursue the same relief. *See* Doc. 72 at 19; Doc. 73 at 23. In addition, Defendants do not challenge the Foundation's standing to pursue its equitable unjust enrichment claim. *See* Doc. 73 at 22 (only arguing futility).

Further, Defendants' position that neither Plaintiffs nor the Foundation have standing to bring claims under Section 6.14(h) would effectively render the section a nullity. Section 6.14(h)

6

was designed to protect the Foundation and protect the social mission. It establishes obligations for the surviving corporation, Ben & Jerry's, and expressly limits the corporate parent's ability to interfere with the Foundation's funding so long as certain requirements are met. If the corporate parent breaches those terms, someone must be able to enforce them. Defendants' position, however, is that only entities that the corporate parent (first Unilever, and now Magnum) fully control can enforce Section 6.14(h). *See* Doc. 73 at 22–23 (addressing former Class I Directors and the Foundation). That interpretation eviscerates the bargain at the heart of the deal—and violates both the letter and spirit of the contract, which allows claims to be brought under Section 6.14(h). "It is a cardinal rule of contract construction that a court should avoid an interpretation that would leave contractual clauses meaningless." *150 Broadway N.Y. Assocs., L.P. v. Bodner*, 14 A.D.3d 1, 4 (1st Dept. 2004) (cleaned up). The Court should reject any interpretation that leaves Section 6.14(h), a unique and key component of the sale, as meaningless window dressing.

***Sufficiency of claims*:** In urging the Court to reject the Foundation's claims, Defendants again improperly argue their version of disputed facts. They rely on a letter from Magnum CFO Bhattacharya as allegedly providing the conclusions of the "audit" Magnum insisted upon. Doc. 73 at 21 & Ex. F. Defendants refused to provide the audit to the Foundation, TAC at ¶¶ 96–97, and they have not provided it to the Court (let alone the scope of work). That refusal speaks volumes. Mr. Bhattacharya's letter and Defendants' other factual assertions are entitled to no weight at this stage of the proceedings, *In re NYC Policing,* 27 F.4th at 800, and should be disregarded.

Other than improperly relying on disputed facts, Defendants' argument appears to be that it has "broad discretion" under Section 6.14(h) and thus its actions cannot be challenged. *See* Doc. 73 at 20. Section 6.14(h) does not include any such standard. To the contrary, Section 6.14(h) defines an objective standard, namely that the Foundation's activities remain "reasonably

7

acceptable to Unilever." That carefully chosen language does not allow Magnum to cut off funding for any reason. If it did, it would say so. Plaintiffs and the Foundation have plausibly alleged that Magnum's conduct has been anything but reasonable. The timing of the first-ever audit (initiated after this lawsuit); Magnum's targeting of Chair Mittal; its newfound complaints about longstanding practices; its attempt to use a forensic investigator who does not conduct routine audits; and its secrecy all show that Magnum's demands are pretextual and not reasonable. TAC at ¶¶ 91–97, 123.

The Foundation has conducted its activities in the same way for two decades, with no complaints from Unilever until the Foundation became a target of the campaign against Chair Mittal. *Id.* at ¶ 123. The unreasonableness of Defendants' position is further confirmed by their focus on a conflict-of-interest policy that they nonetheless concede was quickly addressed by the Foundation. Doc. 73 at 21. Moreover, Defendants only remaining objections (term limits and no Ben & Jerry's Board involvement) are conditions that expressly do not appear in the Merger Agreement; are inconsistent with 25 years of the same governance including the Independent Board Chair serving as a trustee; and simply are a veneer for the threats made to the Foundation president that funding would be stopped unless Chair Mittal was removed. TAC at ¶ 97.

When the Independent Board voted to allocate last year's funding to the Foundation,[5] the Merger Agreement obligated Ben & Jerry's to disburse the funds based on a specific calculation contained therein. Defendants mischaracterize the obligation at the heart of the dispute by claiming Magnum could not be obligated to take an action. But it is Ben and Jerry's who disburses the funding per the calculation. Magnum needs only to live up to its end of the bargain, described in Section 6.14(h), by not interfering through pretextual preconditions and extracontractual demands.

---

[5] As Defendants apparently recognize, their assertion that there was no quorum when the Independent Board allocated funding (Doc. 73 at 20) is a fact question that cannot be considered at this stage of the litigation.

8

Magnum has unjustly enriched itself by holding on to funds that the Merger Agreement requires to be distributed per the Independent Board's vote. Funds that the Merger Agreement obligates Ben & Jerry's to disburse are not Magnum's "own money." Doc. 73 at 22. And Magnum's suggestion that the benefits it derives are simply the result of its funding is as wrong as it is insulting. The Foundation's staff works diligently every year in running the various endeavors that involve Ben & Jerry's employees, including the community action grants. TAC at ¶¶ 75–78, 141.

Defendants' repeated invocation of the "reasonably acceptable" language demonstrates the necessity of the Foundation's intervention in this case. Defendants have weaponized that language in their campaign against Chair Mittal and the Independent Board. Unless Chair Mittal and most other Trustees depart and Magnum takes control of the Foundation, its activities will not be acceptable to Magnum. The existence of the Foundation, as envisioned by Ben Cohen over *forty years* ago, is under attack. Section 6.14(h) was written to keep the Foundation running for decades—Magnum wants to use the same section to destroy it. For that section to have its intended effect, the Foundation must be able to speak up to save it.

**<u>*Grounds for intervention*</u>**: Defendants' arguments against intervention contravene the Second Circuit's direction that "Rule 24(a)(2) requires not a property interest but, rather, 'an interest relating to the property or transaction which is the subject of the action.'" *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 130 (2d Cir. 2001). The Foundation has a clear interest in Magnum's campaign against Mittal and the Independent Board as its very existence is at stake in the dispute.

4. **Magnum's self-reports of compliance with the Settlement Agreement and Settlement Amendment are insufficient to carry its burden on futility.**

Under the parties' Settlement Agreement, Magnum is obligated to "respect" the Independent Board's authority and work with them in "good faith." The TAC alleges that Defendants' pretextual audit, sham investigation, and dismantling of the Independent Board's

independence is inconsistent with said obligations. TAC at ¶ 163. Defendants offer the cursory response that, under their own view, their actions—including altering the Merger Agreement to allow Magnum to "designate candidates to serve as Class I Directors"—are mere innocent "governance" updates best for Ben & Jerry's social mission. Doc. 73 at 18. Defendants' unique interpretation of their actions is, at best, a fact issue for trial. *RJ Cap., S.A. v. Lexington Cap. Funding III, Ltd.*, 10 CIV.24 PGG, 2011 WL 3251554, at *11 (S.D.N.Y. July 28, 2011) ("Whether a party to a contract acted in good faith, however, generally presents a question of fact for a jury.").

Under the Settlement Amendment, Magnum is obligated to make payments to Canaan Fair Trade on an annual basis, full stop. Magnum failed to make any payments in 2025. Magnum's excuse for its breach is that it does not know whether Canaan Fair Trade—an organization dedicated to supporting Palestinian indigenous farmers which Ben & Jerry's has worked with for over a decade—supports indigenous Palestinian farmers. Doc. 73 at 3. Here again, Defendants' unique interpretation of their actions is, at best, a fact issue. *Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 239 F. Supp. 3d 710, 735 (S.D.N.Y. 2017) ("The determination whether a material breach has occurred is generally a question of fact." (cleaned up)).

## CONCLUSION

Since the SAC, while its motion to dismiss was pending, Magnum decided to take matters into its own hands, removing each independent director from the Independent Board in preparation of cobbling together a "new" board, all while holding millions in charitable funds hostage. Magnum argues efforts to challenge it are futile. Plaintiffs and the Foundation disagree and seek relief from this Court allowing them to file the TAC, following which Plaintiffs intend to swiftly move for injunctive relief to halt the unilateral demolition plan Magnum has touted to *The Wall Street Journal*.

| | |
|---|---|
| Dated: January 29, 2026 | Respectfully submitted, |

**AHMAD, ZAVITSANOS & MENSING PLLC**

/s/ *Shahmeer Halepota*
Shahmeer Halepota
Joseph Y. Ahmad
John Zavitsanos (admitted *pro hac vice*)
Daryl Moore (admitted *pro hac vice*)
Kelsi White (admitted *pro hac vice*)
Weining Bai (admitted *pro hac vice*)
Thomas Frashier (admitted *pro hac vice*)
Sean Healey (admitted *pro hac vice*)
Sara Fatima Dhanji (admitted *pro hac vice)*
1221 McKinney, Suite 2500
Houston, Texas 77010
Phone: (713) 655-1101

*Attorneys for Plaintiffs Ben & Jerry's Homemade, Inc. and the Class I Directors of the Ben & Jerry's Board*

**STRIS & MAHER LLP**

/s/ *Bridget Asay*
Bridget Asay
15 East State St., Suite 2
Montpelier, VT 05602
(802) 858-4285
basay@stris.com

*Counsel for Proposed Plaintiff-Intervenor The Ben & Jerry's Foundation, Inc.*

## **WORD COUNT CERTIFICATION**

The undersigned hereby certifies pursuant to Local Civil Rule 7.1(c) that, excluding the caption, table of contents, table of authorities, signature block, and required certificates, the total number of words in this memorandum is 3,488.

/s/ *Shahmeer Halepota*
Shahmeer Halepota

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was filed electronically on January 29, 2026. As such, this document was served on all counsel of record pursuant to the Federal Rules of Civil Procedure.

/s/ *Shahmeer Halepota*
Shahmeer Halepota