# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**David J. Lender**
+1 (212) 310-8153
david.lender@weil.com

*VIA ECF*

May 18, 2026

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re:** ***Ben & Jerry's Homemade, Inc. et al. v. Unilever PLC et al.*, Case No. 24-cv-8641-PKC (S.D.N.Y.)**

Dear Judge Castel:

Pursuant to Rule 5(B) of Your Honor's Individual Rules and Practices, this Court's Standing Order (19-mc-00583-CM), this Court's Standing Order regarding Procedures for Access to and Service of Sealed Documents (25-mc-00421), and this Court's ECF Rules & Instructions § 6, Defendants Unilever PLC ("**Unilever**"), Conopco, Inc. ("**Conopco**"), The Magnum Ice Cream Company N.V. ("**TMICC**"), and Ben & Jerry's HoldCo, LLC ("**HoldCo**") (collectively, "**Defendants**") respectfully submit this letter motion requesting the Court's permission to file under seal Exhibits I-K (the "**Assignment Agreements**") to the *Declaration of David J. Lender in Support of Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Complaint and Defendants' Motion to Substitute The Magnum Ice Cream Company N.V. and Ben & Jerry's HoldCo, LLC for Unilever PLC and Conopco, Inc., or, in the Alternative, Motion to Dismiss Unilever PLC and Conopco, Inc.* (the "**Lender Decl.**").

The Assignment Agreements were executed as part of Unilever's spin-off of its ice cream business into a standalone company that is publicly listed. Under those three related agreements, Unilever and Conopco assigned—and TMICC and HoldCo agreed to assume—all of Unilever's and Conopco's (i) rights and obligations under the Merger and Shareholders Agreements in the Assignment, Assumption and Release Agreement ("**Governance Assignment**"); (ii) rights and obligations under the Settlement Agreement in the Assignment and Assumption Agreement ("**Settlement Assignment**"); and (iii) liabilities in connection with the above-captioned litigation (the "**Action**") and any other litigation brought by the former Class I Directors in the Claim Management and Assignment Agreement ("**Claims Assignment**"). *See* Lender Decl. Exs. I-K.

Good cause exists for sealing the Assignment Agreements, which reflect competitively sensitive, non-public contractual terms and business and legal strategy between Unilever and Conopco, on the one hand, and TMICC and HoldCo, on the other. In evaluating the appropriateness of sealing, courts in the Second Circuit weigh the "common law presumption of access" to judicial documents against "countervailing factors," such as the privacy interests of the parties. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d

110, 119–20 (2d Cir. 2006). Documents merit confidential treatment where their "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 120 (internal quotations and citation omitted). "Business secrecy" is an "[e]stablished factor … that can outweigh the presumption of public access." *Lexington Furniture Indus., Inc. v. Lexington Co., AB*, 2021 WL 1143694, at *2 (S.D.N.Y. Mar. 24, 2021) (citing *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995)). Moreover, because a "Motion to Substitute is not dispositive of any claims, the weight accorded to the presumption of public access is 'not particularly great.'" *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.,* 2023 WL 7126251, at *2 (S.D.N.Y. Oct. 30, 2023) (quoting *Alexander Interactive, Inc. v. Adorama, Inc.,* 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014)).

Courts in this District routinely recognize the confidentiality of sensitive business information and permit sealing to prevent its disclosure. *See, e.g.*, *Tyson Int'l Co., Ltd. v. Partner Reinsurance Eur. SE*, No. 1:25-CV-03452 (ALC), 2026 WL 945688, at *2 (S.D.N.Y. Apr. 1, 2026) (agreeing with movant that "contracts/policies at issue in the underlying dispute" should be sealed in their entirety because they "contain sensitive, non-public financial and business information" (internal quotation omitted)); *Hanks v. Voya Ret. Ins. & Annuity Co.*, No. 16-CV-6399 (PKC), 2021 WL 2451981, at *2 (S.D.N.Y. June 16, 2021) (granting sealing of certain exhibits "in [their] entirety" because "protecting … sensitive business information outweigh[s] the public's right to access this information" if the sealing is "narrowly tailored to protect only this sensitive business information"). Assignment agreements are routinely sealed. *See, e.g., Spectrum Dynamics Med. Ltd.*, 2023 WL 7126251, at *2 (sealing assignment agreement); *see also, e.g., Neurological Surgery Prac. of Long Island, PLLC v. Cigna Health & Life Ins. Co*., No. 2:21-CV-01549 (JS) (JMW), 2025 WL 2933103, at *6 (E.D.N.Y. July 2, 2025), *report and recommendation adopted*, No. 21-CV-01549(JS)(JMW), 2025 WL 2778389 (E.D.N.Y. Sept. 30, 2025); *Engstrom v. Elan Corp., plc*, No. 11 CIV. 1232 SAS, 2011 WL 4946434, at *3 (S.D.N.Y. Oct. 18, 2011) (noting that agreements were filed under seal).

Sealing the Assignment Agreements in their entirety is warranted because the highly sensitive, confidential business and legal information contained therein is not confined to discrete terms but rather pervades throughout. If made public, such disclosure would cause substantial competitive harm to Defendants. Specifically, the Claims Assignment dated October 27, 2025, and the related Governance and Settlement Assignments dated June 12, 2025, detail the precise mechanics of TMICC's and HoldCo's assumptions of liability, indemnification obligations, and coordination regarding the Action. The agreements further disclose the details of Defendants' cooperation in their shared litigation strategy, as well as the specific conditions under which settlement may be consummated. Public disclosure of the Assignment Agreements' terms would reveal to potential litigants, outside the current lawsuit, the precise indemnification economics, cost-allocation structures, and internal decision-making protocols governing the defense of this Action, thereby providing a strategic roadmap that could be exploited to Defendants' detriment in future disputes. The Claims Assignment expressly contemplates that its terms and existence be kept confidential, underscoring the parties' expectations. And the Assignment Agreements are not relevant to the underlying merits of the dispute, only the question of whether Unilever and Conopco should remain as defendants.

Defendants seek only to seal the Assignment Agreements, which represent only three of the sixteen exhibits, and do not seek to seal any portions of their motions. The sealing is therefore "narrowly tailored to serve th[e] interest" of preserving Defendants' confidential information. *See Lugosch*, 435 F.3d at 120.

We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ David J. Lender*
David J. Lender

*Attorney for Defendants Unilever PLC, Conopco, Inc.,*
*The Magnum Ice Cream Company N.V. and*
*Ben & Jerry's HoldCo, LLC*

cc:     All Counsel of Record (Via E-filing)