

**SHAHMEER HALEPOTA**
DIRECT 713.600.4953
MAIN 713.655.1101
FAX 713.655.0062
SHALEPOTA@AZALAW.COM

June 1, 2026

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    *Ben & Jerry's Homemade, Inc. et al. v. Unilever PLC et al.*, Case No. 1:24-cv-08641-PKC (S.D.N.Y.)

Dear Judge Castel,

Plaintiffs respectfully oppose Defendants Unilever PLC, Conopco, Inc., The Magnum Ice Cream Company N.V. and Ben & Jerry's Holdco, LLC's (collectively, "Defendants") letter motion to seal the Assignment Agreements attached as Exhibits I–K to the *Declaration of David J. Lender* (the "Lender Decl.") and ask this Court to maintain public access to these documents. The motion should be denied because Defendants have not met their burden to overcome the presumption of public access to judicial documents.

The presumption of public access to judicial documents is "potent and fundamental" under both the common law and the First Amendment. *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, No. 18CV11386VSBKHP, 2023 WL 7126251, at *1 (S.D.N.Y. Oct. 30, 2023). "[A] strong presumption attaches to materials filed in connection with dispositive motions, such as a motion to dismiss[.]" *Olson v. Major League Baseball*, 29 F.4th 59, 90 (2d Cir. 2022). The party seeking to seal "bear[s] the burden of showing that sealing is necessary to preserve higher values." *Tyson Int'l Co., Ltd. v. Partner Reinsurance Europe SE*, No. 1:25-CV-03452 (ALC), 2026 WL 945688, at *2 (S.D.N.Y. Apr. 1, 2026) (quoting *Aioi Nissay Dowa Ins. Co. Ltd. v. Prosight Specialty Mgmt. Co.*, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012)). Defendants' letter motion fails to carry that burden at every step of the analysis.

To seal a judicial document, Defendants must show: "(1) whether the document subject to a sealing request qualifies as a judicial document; (2) the weight of the presumption of public access attaching to that judicial document; and (3) if any countervailing factors or higher values outweigh the right of public access[.]" *Lexington Furniture Indus., Inc. v. Lexington Co*, AB, No. 19-CV-6239 (PKC), 2021 WL 1143694, at *1 (S.D.N.Y. Mar. 24, 2021) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006)). Defendants do not dispute that the Assignment Agreements are judicial documents.

The Honorable P. Kevin Castel
June 1, 2026
Page 2

Defendants invoke "business secrecy" as a countervailing factor, citing *Lexington Furniture*. 2021 WL 1143694 at *2 (citing *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995)). But the Assignment Agreements bear no resemblance to the business secrets at issue there—sales information, pricing information, confidential customer negotiations, non-public financial statements, and customer lists. *Id*. at *2 (citing in part, *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 412–13 (S.D.N.Y. 2015)). Far from containing "highly sensitive confidential business and legal information," the Assignment Agreements are standard corporate reorganization documents executed as part of Unilever's publicly announced spin-off of its ice cream business.

Exhibits I and J (the Governance and Settlement Assignments, both dated June 12, 2025) are short-form agreements transferring Conopco's rights and obligations under the 2000 Merger Agreement, the 2000 Shareholders Agreement, and the Settlement Agreement to B&J HoldCo. They contain a handful of operative provisions—assignment, acceptance and assumption, acknowledgment, release, and indemnity—followed by standard boilerplate (representations of authority, further assurances, severability, counterparts, New York governing law, jury waiver, and forum selection), and their indemnity clauses contain no dollar cap, formula, or financial metric. Exhibit K (the Claims Assignment, dated October 27, 2025) is a longer agreement, but its substance is no more commercially sensitive: it assigns litigation liabilities from Unilever and Conopco to TMICC and HoldCo, provides for indemnification (again with no cap or financial metric), and establishes a framework for cooperative management of this litigation—including provisions addressing which party is consulted before filing motions or consenting to settlements, common-interest privilege protections, and a confidentiality clause. None of these terms reveals sales data, pricing information, customer lists, non-public financial statements, or any other recognized category of business secret.

Defendants point to no competitors, only "*potential litigants*", and dress up the agreements' unremarkable content with inflated labels: "indemnification economics," "cost-allocation structures," and "internal decision-making protocols." But none of these provisions discloses proprietary financial information; the indemnification is an uncapped, open-ended obligation without formulas or metrics that would reveal anything about Defendants' financial position. And the litigation-management and common-interest provisions set out a structure for cooperation between related corporate entities—they do not reveal any defense strategy that future litigants could "exploit." Defendants do not cite a single case in which the speculative threat of "potential litigants" constitutes "competitive harm" warranting sealing. Their conclusory assertions cannot supply the "specific, on the record findings" required to show that "closure is essential[.]" *Tyson Int'l*, 2026 WL 945688, at *1 (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). "Broad and general findings by the trial court, however, are not sufficient to justify closure." *Id*.

Nor can Defendants rely on the confidentiality clause within the Claims Assignment Agreement itself. "It is well established that 'bargained-for confidentiality' is not a higher value that can overcome the presumption of access to judicial documents." *Spectrum Dynamics*, 2023 WL 7126251, at *2 (citing *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 168 (S.D.N.Y. 2018)).

The Honorable P. Kevin Castel
June 1, 2026
Page 3

Finally, Defendants' claim that "[a]ssignment agreements are routinely sealed" is unsupported. Three cases hardly establish "routine" sealing, and the cited cases involve distinctions from the present case. *Neurological Surgery Practice of Long Island, PLLC v. Cigna Health & Life Ins. Co.* sealed ERISA plans containing anti-assignment clauses and terms of financial reimbursement—not generic assignment agreements. No. 2:21-CV-01549 (JS) (JMW), 2025 WL 2933103, at *1–2, *6 (E.D.N.Y. July 2, 2025), report and recommendation adopted, No. 21-CV-01549(JS)(JMW), 2025 WL 2778389 (E.D.N.Y. Sept. 30, 2025). And *Engstrom v. Elan Corp., plc* does not discuss sealing standards at all; the sealed agreements contained "non-assignment" clauses and were not themselves assignment agreements. No. 11 CIV. 1232 SAS, 2011 WL 4946434 (S.D.N.Y. Oct. 18, 2011). In fact, many courts decline to seal assignment agreements. *See Alix v. McKinsey & Co., Inc.*, 739 F. Supp. 3d 172, 193 (S.D.N.Y. 2024); *see also Vamsi Nallapati & IGM Surfaces, LLC v. Justh Holdings, LLC*, 637 F. Supp. 3d 357, 364 (E.D.N.C. 2022); *see also MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, No. 17-23749-CIV, 2017 WL 6622648, at *3 (S.D. Fla. Dec. 22, 2017) ("once the assignments are alleged in a court filing, the public right of access applies").

Defendants' conclusory allegations of competitive harm from hypothetical future litigants, based on unremarkable assignment agreements, fall far short of rebutting the strong presumption of public access attaching to documents filed in support of a dispositive motion. The Court should deny the motion to seal.

Respectfully submitted,

Ahmad, Zavitsanos & Mensing, P.C.

By:

Shahmeer Halepota

Cc:     All counsel of record.