# Weil, Gotshal & Manges LLP

*VIA ECF*

767 Fifth Avenue
New York, NY 10153-0119
Phone: +1 212 310 8000
Fax: +1 212 310 8007

**David J. Lender**
+1 (212) 310-8153
david.lender@weil.com

June 8, 2026

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: ***Ben & Jerry's Homemade, Inc. et al. v. Unilever PLC et al.*, Case No. 24-cv-8641-PKC (S.D.N.Y.)**

Dear Judge Castel:

Pursuant to Rule 5(B) of Your Honor's Individual Rules, Defendants Unilever PLC ("**Unilever**"), Conopco, Inc. ("**Conopco**"), The Magnum Ice Cream Company N.V. ("**TMICC**"), and Ben & Jerry's HoldCo, LLC ("**HoldCo**") (collectively, "**Defendants**"), respectfully submit this reply in support of their letter-motion (ECF No. 116) to file three competitively sensitive, non-public agreements (the "**Assignment Agreements**") under seal.[1]

Courts within this District routinely seal documents which—like those at issue here—contain "sensitive, non-public…business information." *See Tyson Int'l Co., Ltd. v. Partner Reinsurance Eur. SE*, No. 1:25-CV-03452 (ALC), 2026 WL 945688, at *2 (S.D.N.Y. Apr. 1, 2026); *Health & Happiness (H&H) US LLC v. Nutramax Lab'ys, Inc.*, No. 23 CIV. 10849 (LGS) (GS), 2026 WL 836795, at *3 (S.D.N.Y. Mar. 26, 2026) (same). As set forth in Defendants' letter-motion, the Assignment Agreements memorialize, among other things, highly-sensitive indemnification obligations and settlement constraints between two publicly-traded companies. Disclosure of such information—which would provide potential litigants with a roadmap of litigation obligations and constraints—threatens significant commercial and reputational risk for Defendants.

The imperative of sealing is further colored by Plaintiffs' penchant for disregarding the Court's sealing practices and placing Defendants' commercially sensitive information in the public realm. For instance,

---

[1] As defined in Defendants' letter-motion, the term "Assignment Agreements" refers to Exhibits I–K of the Declaration of David J. Lender in Support of Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Complaint and Defendants' Motion to Substitute *et seq*. *See* ECF No. 121.

in both the Third and Fourth Amended Complaints, Plaintiffs disclosed the contents of confidential settlement discussions, which counsel for the former Class I Directors had *confirmed in writing* would remain subject to Rule 408 protection and all state equivalents. *See* ECF No. 78 (Third Amended Complaint) ¶ 100; ECF No. 110 (Fourth Amended Complaint) ¶ 100. In those same complaints, Plaintiffs quoted from and disclosed the confidential performance review of Ben & Jerry's former CEO—without first obtaining his consent—to further their own narrative. TAC ¶ 64; FAC ¶ 64. More recently, Defendants' Rule 26 initial disclosures—which were only provided to counsel—were featured in a public Substack article. Further, Plaintiffs filed multiple, heavily-redacted exhibits to their Fourth Amended Complaint without a sealing motion, as Your Honor's Individual Practices require. *See* ECF Nos. 110-2, 110-6. Litigation should not be used as a vehicle to put confidentially sensitive information into the public domain.

## I. The Court Should Seal the Assignment Agreements

The information reflected in the Assignment Agreements is the sort routinely preserved under seal. The Assignment Agreements memorialize Defendants' allocation of risks and obligations in this litigation and beyond. That framework includes numerous terms governing how Defendants will manage, control, and coordinate their defense in this litigation—a framework that includes detailed parameters for the payment and dispute of indemnification obligations, an allocation of settlement authority and constraints, and specific defense cost allocations. Disclosure of this carefully calibrated framework would provide adverse parties, including potential litigants, with a pathway to exploit Defendants' highly-sensitive arrangement. Moreover, disclosure could impede settlement and dispute resolution negotiations with future litigants who hold insider knowledge of Defendants' litigation coordination framework. *See BBAM Aircraft Mgmt. LP v. Babcock & Brown LLC*, No. 3:20-CV-1056 (OAW), 2022 WL 4080347, at *3 (D. Conn. Aug. 19, 2022) (granting defendants' motion to seal an agreement between parties that defendants claimed "could affect the [] terms potential partners would be willing to accept in future negotiations").

Courts in this district have held that when sealing a document preserves "higher values," such as "the protection of competitively sensitive business information," sealing is warranted. *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, No. 18CV11386VSBKHP, 2023 WL 7126251, at *1–2 (S.D.N.Y. Oct. 30, 2023) (sealing assignment agreement cited in defendant's motion to substitute); *accord Health & Happiness*, 2026 WL 836795, at *3. Most apt, in *Spectrum*, the court concluded that the "proprietary and sensitive business information" contained within assignment agreements that defendant sought to preserve under seal—and relied upon in defendants' motion to substitute—was "warranted" given the competitive sensitivity of the information contained therein. 2023 WL 7126251, at *1–2. This Court should make the same finding here.

Conversely, the weight given to the presumption in favor of public access is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Brown v. Maxwell*, 929 F.3d 41, 49-50 (2d Cir. 2019). "The strongest presumption attaches where the documents 'determin[e] litigants' substantive rights,' and [the presumption] is weaker where the 'documents play only a negligible role in the performance of Article III duties.'" *Olson v. Major League Baseball*, 29 F.4th 59, 89-90 (2d Cir. 2022) (citations omitted). In

*Spectrum*, as here, the determination at issue was a motion to substitute – and the court held that "[b]ecause the Motion to Substitute is not dispositive of any claims, the weight accorded to the presumption of public access is 'not particularly great.'" 2023 WL 7126251, at *2 (quoting *Alexander Interactive, Inc. v. Adorama, Inc., 2014 WL 4346174*, at *2 (S.D.N.Y. Sept. 2, 2014)). Because the Motion to Substitute is likewise "not dispositive of any claims" in this case, Plaintiffs are not entitled to a heightened presumption in favor of public access.

Indeed, Plaintiffs do not cite a legitimate reason for needing to put this information into the public domain or a single decision holding that information of the type contained in the Assignment Agreements does not warrant sealing. Rather, they allude to the supposedly "recognized categor[ies] of business secret[s]," ECF No. 127 at 2, and resort mainly to out-of-circuit authority to cite a range of factually dissimilar case law.  For instance, in *Alix*, the assignment provision at issue was a single paragraph merely transferring claims; it did not disclose indemnification and settlement control provisions. *See Alix v. McKinsey & Co., Inc.*, 739 F. Supp. 3d 172, 178 (S.D.N.Y. 2024). Here, the Assignment Agreements are multi-page documents disclosing, among other things, the specific conditions under which Defendants may consent to settlement—in short, they reveal precisely the type of "negotiation style and strategy" information that the *Alix* court recognized as a *legitimate basis* for sealing.  *Id.* at 194.  Moreover, in *Vamsi*, the court declined to seal the agreement because defendants "d[id] not specifically address the reasons why it should be sealed," *Vamsi Nallapati & IGM Surfaces, LLC v. Justh Holdings, LLC*, 637 F. Supp. 3d 357, 364 (E.D.N.C. 2022)—a situation not present here. And in *MSP Recovery*, the court declined to seal the agreement because plaintiff's reasons for sealing—namely that the assignments were irrevocable and that the client list would be provided to defendant—were deemed "irrelevant." *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, No. 17-23749-CIV, 2017 WL 6622648, at *3 (S.D. Fla. Dec. 22, 2017).  To the extent *MSP Recovery* has any bearing on courts in this district, the sensitive information has been "closely guarded" by Defendants, *id.*; they have not previously disclosed the contents of these Assignment Agreements, nor do they have any intention of disclosing the contents in the future. Plaintiffs' own case law only serves to underscore the appropriateness of sealing here.

## II.    In the Alternative, Defendants Propose Redacting the Assignment Agreements

In the alternative, if the Court finds that the Assignment Agreements should not be sealed in their entirety, Defendants request that the Court grant alternative relief and approve redactions that shield sensitive business information relating to indemnification obligations, cost allocation, and litigation coordination among the Defendants.  To facilitate the Court's consideration, Defendants have submitted the Assignment Agreements with proposed redactions via ECF and will serve copies on Plaintiffs. Defendants' proposed redactions are "generally limited to specific business information and strategies, which, if revealed, may provide valuable insights into a company's current business practices that a competitor would seek to exploit." *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (quotations omitted).

We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ David J. Lender*
David J. Lender

*Attorney for Defendants Unilever PLC, Conopco, Inc.,*
*The Magnum Ice Cream Company N.V. and*
*Ben & Jerry's HoldCo, LLC*

cc: All Counsel of Record (Via E-filing)