

July 20, 2026

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *Ben & Jerry's Homemade, Inc. et al. v. Unilever PLC et al.*, No. 1:24-cv-08641-PKC — Request for Pre-Motion Discovery Conference

Dear Judge Castel:

Plaintiffs Ben & Jerry's Homemade, Inc. and the Class I Directors of the Ben & Jerry's Independent Board ("Plaintiffs") respectfully submit this letter pursuant to Local Civil Rule 37.2 and section 3.B. of Your Honor's Individual Practices in Civil Cases to request a pre-motion discovery conference concerning: (1) Defendants improper withholding of documents as privileged in response to Plaintiffs RFPs 41-59; (2) Defendants' refusal to respond substantively to 3 additional requests for production, RFPs 36, 86, and 91; and (3) Defendants' refusal to provide deposition dates for two of Defendants' employees and one of their non-executive board members, all of whom possess unique information relevant to Plaintiffs' claims.

Despite good-faith efforts to resolve this dispute—including multiple conferrals—the parties remain at an impasse. The next conference in this matter is scheduled for October 15, 2026 at 11:00 a.m., and fact discovery is currently scheduled to close on September 30, 2026.

## Discussion

### I. Defendants' Privilege Claims Improperly Shield a Sham Business Integrity Investigation.

Anuradha Mittal, Chair of the Independent Board, also serves as a trustee of the Ben & Jerry's Foundation. As alleged in the Complaint, Defendants devised a pretextual audit of the Foundation, threatening to withhold millions in allocated funding to non-profits as a pressure tactic. (Fourth Am. Compl. ("FAC") (ECF No. 110), at ¶¶ 66 - 124). As the auditor's own document list confirms, Defendants' litigation counsel devised the pretextual, mid-litigation audit:

| Document File Name | Document Title Name | Comments |
|---|---|---|
| Background for EY_Privileged & Confidential_Attorney Work Product.pdf | Background Overview | Background overview of the situation, similar to our meeting notes with Skadden and Weil but have more depth on the grants in question. |

Unfortunately for Defendants, and as public news reports later confirmed, the audit did not uncover the dirt they were hoping for. Defendants then switched to launching a "Business Integrity Investigation" against Chair Mittal appointing one of the of law firms who had devised the

July 20, 2026
Page 2

pretextual audit of the Foundation as an "independent" investigator. Defendants then utilized the findings from that "independent" investigation—including claims Defendants had themselves previously described as "extreme personal slander" against Chair Mittal necessitating security for her—as a basis to remove Chair Mittal. (FAC at ¶ 104). Plaintiffs contend that this business integrity investigation was a sham. Defendants weaponized the "findings" from the investigation—including the ones they themselves had previously rejected—as the basis to remove Chair Mittal. Despite using the findings from this investigation offensively against the Independent Board, Defendants now attempt to shield discovery into various aspects of the investigation by asserting privilege.

Specifically, Defendants have objected to producing documents responsive to 18 requests for production on the basis of alleged privilege issues but also concurrently failed to produce a privilege log, despite their discovery responses having been due almost seven weeks ago. The subject 18 requests for production concern the sham Business Integrity Investigation ("BI Investigation") into Chair Mittal. *See* Appendix A at RFPs 41-59. As noted above, the investigation is not a peripheral matter: it is Defendants' own stated justification for attempting to remove Chair Mittal from the Ben & Jerry's Homemade, Inc. ("B&J") Independent Board, and the sham nature of the investigation is directly relevant to Plaintiffs' claims regarding improper removal and failure to work with the Independent Board in good faith, in violation of Defendants' contractual obligations under the Merger and Settlement Agreements. Having made the investigation central, Defendants now invoke privilege to withhold its core factual record. Court intervention is warranted because deferring these objections to the close of discovery would require the Plaintiffs to take depositions and further discovery without the very record on which Defendants rely.

Defendants have refused to produce documents on the basis of alleged privileges but have produced no privilege log, in derogation of Federal Rule of Civil Procedure 26(b)(5)[1] and Local Civil Rule 26.2[2] despite their discovery responses having been due almost seven weeks ago and having declared an impasse on the issue.[3] Beyond boilerplate recitations of the privilege rules, Defendants have refused to explain or substantiate their claims or to identify the scope or subject matter of the withheld documents despite multiple attempts to confer.

It is Defendants' burden, not the Plaintiffs, to establish each element of the privilege protection Defendants claim. *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 590 (S.D.N.Y. 2015) (citing *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224 (2d

---

[1] Requiring Defendants to "make the claim expressly and ... describe the nature of the documents, communications, or things not produced or disclosed in a manner that ... will enable other parties to assess the applicability of the privilege or protection."

[2] Requiring Defendants "identify the nature of the privilege (including work product) which is being claimed."

[3] Plaintiffs anticipate Defendants will attempt to use the lack of an agreed upon Protective Order and ESI protocol as a basis to justify their actions. Neither covers their assertions of privilege and both the Protective Order and ESI protocol are delayed because of positions Defendants have taken for which, despite multiple requests, they have either provided no authority or when requested are unable to identify a single document that may substantiate the concerns raised. Defendants may also assert that Plaintiffs have made no production. Plaintiffs have asserted on multiple occasions that they are prepared to make a production but will not be in a position where Defendants may unilaterally dictate the course of discovery exchange.

July 20, 2026
Page 3

Cir. 1984)). Such privileges "are not to be 'lightly created nor expansively construed, for they are in derogation of the search for truth.'" *Cruz v. Coach Stores, Inc.*, 196 F.R.D. 228, 232 (S.D.N.Y. 2000) (citing *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)). Against that standard, the Plaintiffs respectfully request that the Court, at the conference and through any appropriate order:

- Direct Defendants to produce a privilege log for the withheld BI Investigation materials;

- Resolve Defendants' work-product, attorney-client, and waiver objections to the BI Investigation requests (Nos. 41–59) in the Class I Directors' favor; and,

- Direct Defendants to produce the non-privileged materials responsive to those requests, including the witness statements, interview notes, and evidence for which the Class I Directors have shown a substantial need, subject to redaction of any genuinely privileged legal advice.

Foremost, regardless of the status of a privilege log, Defendants will be unable to overcome three fundamental hurdles to establish their burden to shield the sham investigation via privilege: (1) the BI Investigation is not protected work product or attorney-client material; (2) Defendants waived any protection by placing the investigation at issue, using it to remove Chair Mittal and selectively disclosing its factual findings; and, (3) in all events, the Plaintiffs have a substantial need that overrides any qualified work product protection.

A.  **The Investigation Is Not Protected Work Product or Attorney-Client Material**

The threshold deficiency with Defendants' objections is that the BI Investigation is not privileged because Defendants conducted it as an ordinary-course business investigation that would have proceeded in the same form regardless of litigation; and the attorney-client privilege does not reach the business and factual material—witness statements, interview records, and the facts the investigators gathered—that Defendants withhold.

1.  **Work Product Immunity Does Not Cover This Ordinary-Course Investigation**

Defendants assert work product immunity across all 18 requests concerning the BI Investigation, refusing to produce even its core factual record—the investigative file (RFP 48), witness statements (RFP 45), interview notes and memoranda (RFP 46), the facts the investigators obtained (RFP 47), and documents sent or received in connection with the investigation (RFP 49). *See* Appendix A. Defendants bear the "heavy burden" of establishing that protection, *In re Initial Public Offering Securities Litigation*, 249 F.R.D. 457, 459 (S.D.N.Y. 2008), and it is narrow: it reaches only documents "prepared in anticipation of litigation," Fed. R. Civ. P. 26(b)(3), and does not extend to documents "that would have been created in essentially similar form irrespective of litigation," *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998); see also *Cruz*, 196 F.R.D. at 232; *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 465–67 (S.D.N.Y. 1996).

By Defendants' own account, the investigation would have unfolded the same way in the ordinary course, regardless of litigation. Defendants say it was raised "pursuant to Unilever's Code

July 20, 2026
Page 4

of Business Principles and Code Policies" (Letter from Vilar, The Magnum Ice Cream Company ("TMICC") Business Integrity Committee, to the Directors of the B&J Board re Business Integrity Investigation into Anuradha Mittal (Oct. 23, 2025) ("Oct. 23, 2025 Letter"), Ex. 1 attached hereto, at 1) and proceeded according to "the protocols of Business Integrity investigations" without deviation (Oct. 26, 2025 Letter from D. Lender to S. Halepota responding to the Class I Directors' October 22 and 24, 2025 emails) ("Oct. 26, 2025 Letter"), Ex. 2, at 3). Its purpose was a quintessential business function—assessing Chair Mittal's compliance with Unilever's internal codes—and Defendants relied on the findings to deem her ineligible to serve on the Board. (Oct. 23, 2025 Letter, Ex. 1, at 1). Defendants' own conduct confirms the point: they insisted on presenting the findings through ordinary Board governance channels and refused to proceed with the Class I Directors' litigation counsel present, deeming counsel's attendance "outside the Board's normal governance procedures." (Oct. 26, 2025 Letter, Ex. 2, at 2; Oct. 23, 2025 Letter, Ex. 1, at 5). Had the investigation truly been conducted in anticipation of litigation, Defendants could not have treated the presence of opposing counsel as a mere governance irregularity—their insistence on excluding counsel shows they regarded the matter as ordinary corporate governance, not litigation preparation. The witness statements, interview notes, and memoranda Defendants withhold in full (RFPs 45–47) are the same kinds of materials held discoverable in *Cruz* and *In re Kidder Peabody*, where the same interviews would have been conducted and documented identically regardless of litigation. *Cruz*, 196 F.R.D. at 232; *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. at 465–67.

### 2. Attorney-Client Privilege Does Not Shield Business or Factual Material

Defendants' blanket attorney-client objection is overbroad because the privilege is narrow. It protects a communication only where "the predominant purpose of the communication is to render or solicit legal advice," not one made for business rather than legal purposes. *In re County of Erie,* 473 F.3d 413, 419–20 (2d Cir. 2007). And an author's "status as an attorney does not transform what would otherwise be human resources and business communications into legal communications." *Scott*, 94 F. Supp. 3d at 597 (citing *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 45 (E.D.N.Y. 2013), *aff'd*, 29 F. Supp. 3d 142 (2014)).

The withheld categories are far too broad to consist only of legal advice. An internal investigation like this necessarily generates non-legal material—logistical communications about whether and when to open it (Directors' RFP 41), communications with and among the non-attorney investigators and business personnel who ran it, and what the underlying facts witnesses reported—none of which becomes privileged simply because counsel was involved. Yet Defendants refuse to produce anything in response to requests plainly reaching this material: all documents "sent and received" related to the investigation (Directors' RFP 49), all witness statements (Directors' RFP 45), and all notes, memoranda, and documents reflecting witness interviews (Directors' RFP 46). See Appendix A. A flat, categorical refusal—rather than a document-by-document privilege assertion—confirms the objection sweeps in materials that are not privileged in whole or in part.

Because Defendants bear the burden of establishing privilege as to each communication they withhold, their categorical objections cannot be sustained. The proper course is targeted redaction, not wholesale withholding: in *Scott*, the court required production of nonlegal business

July 20, 2026
Page 5

and factual material while permitting redaction of genuine legal advice from the same documents. 94 F. Supp. 3d at 596–601. The Class I Directors ask the Court to require Defendants to produce the non-privileged communications and factual material responsive to these requests, redacting only genuinely privileged legal advice.

**B. <u>Defendants Waived Privilege by Relying on the Investigation to Remove Chair Mittal and Selectively Disclosing Its Findings</u>**

Even if some withheld materials could otherwise qualify for protection, Defendants have waived privilege—and it is their burden "to establish that it has not been waived." *Novartis Pharma AG v. Incyte Corp.*, 778 F. Supp. 3d 637, 645 (S.D.N.Y. 2025) (citation omitted). Defendants waived any protection twice over: 1) by placing the investigation at issue and affirmatively relying on its findings to remove Chair Mittal, and 2) by agreeing to produce documents "sufficient to show" those findings while withholding the rest.

**1. Defendants Placed the Investigation at Issue by Making It the Basis for Removing Chair Mittal**

Through their removal efforts, Defendants placed the BI Investigation at issue in this litigation and waived any work product protection accordingly. A party can waive privilege assertions by putting the privileged information at issue, *In re Actos Antitrust Litig.*, 628 F. Supp. 3d 524, 532-534 (S.D.N.Y. 2022), because "a party cannot . . . affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party," *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000). Defendants did so here in three ways: 1) by relying on the investigation's findings to justify removing Chair Mittal; 2) by serving discovery on the Class I Directors and third parties to prove those findings; and 3) by publicly disclosing the investigation's conclusions in a securities filing to advance the demerger. Each of Defendants' efforts to utilize the BI findings offensively independently places the investigation at issue and waives protection over its findings and supporting evidence.

*First*, Defendants utilized the investigation as a sword to remove Chair Mittal—not collateral background, but the linchpin of their defense of the central challenged action. They first invoked its findings to the Independent Board, informing the Class I Directors those findings rendered Chair Mittal "ineligible to serve on the B&J Board" and then threatened the Class I Directors that if they did not agree with Defendants findings, they were on the chopping block next. (Oct. 23, 2025 Letter, Ex. 1 at 1). They repeated that justification to this Court, representing in their motion to dismiss that "Defendants determined, based on the findings of the integrity investigation, that Mittal's conduct violated the Unilever Code of Business Integrity" and that, "[a]s a result of the findings, Mittal was deemed ineligible to serve on the Board." (Defs' Mot. to Dismiss (ECF No. 118), at 11–12). Having relied on those conclusions to defend the removal, Defendants cannot invoke work product to shield the findings and evidence on which the conclusions rest, allowing them to justify the removals through the investigation's favorable results while denying Plaintiffs means to test how those results were reached.

July 20, 2026
Page 6

*Secon*d, Defendants' own discovery confirms that they have placed the investigation and its findings at the center of the case. They served requests on the Class I Directors targeting the investigation's very subjects and various third-party subpoenas, including one to the Oakland Institute seeking overbroad donation information. Defendants cannot pursue those facts from Chair Mittal, the Board, and third parties while withholding the investigation's own evidentiary record as work product.

Defendants also disclosed the investigation's conclusion publicly, telling investors in TMICC's Form 20-F registration statement that, "following investigations commissioned by the Group and conducted by external advisers," the Group had concluded Chair Mittal "no longer meets the criteria to serve as a member of the Ben & Jerry's Board." (TMICC Registration Statement on Form 20-F (Nov. 4, 2025) ("Registration Statement"), Ex. 3, at 10). Where a party publicly discloses or relies on the results of a privileged investigation, it may waive the privilege as to that subject matter. *In re Grand Jury Proceedings*, 219 F.3d 175, 182-184 (2d Cir. 2000). That principle provides a further basis for waiver here. A party may not use privilege as both a sword and a shield—affirmatively relying on the results of a privileged investigation while withholding the materials necessary to test that reliance. *See In re Leslie Fay Companies, Inc. Sec. Litig.*, 161 F.R.D. 274, 282 (S.D.N.Y. 1995).

## 2. Defendants Disclosed the Findings and Agreed to Produce Supporting Facts, Confirming They Are Non-Privileged

Defendants publicized the investigation's self-serving findings while withholding the materials needed to test them—textbook selective disclosure. A litigant may not release "those portions of the material that are favorable to his position, while withholding unfavorable portions," *Tribune Co. v. Purcigliotti*, No. 93 CIV. 7222 LAP THK, 1997 WL 10924, *5 (S.D.N.Y Jan. 10, 1997) (citing cases), and a work-product waiver occurs where "the party has voluntarily disclosed the work-product, in such a manner that it is likely to be revealed to his adversary," *id.* at *4 (citing *Bowne of New York City, Inc. v. Ambase Corp.*, 150 F.R.D. 465, 479 (S.D.N.Y. 1993)). Defendants' five-page October 23, 2025 Letter did exactly that: it set out the findings—accusing Chair Mittal of personally benefiting from Foundation Funds, failing to disclose conflicts, diverting Foundation funds, creating a toxic work environment, threatening the social mission and brand integrity, and refusing to cooperate with the audit and investigation—and detailed the facts said to support each. (Ex. 1 attached hereto). Defendants then publicly released those findings, attaching them as exhibits to their filings in this litigation. (*See e.g.*, Ex. H to Decl. of D. Lender filed 1/20/2026, ECF # 74-8). Having voluntarily disclosed those findings, Defendants cannot withhold other documents in the same categories merely because they overlap with what the letter already revealed: permitting a curated account while shielding its evidentiary basis would lead to the precise unfairness the waiver doctrine prohibits.

Defendants' own discovery responses confirm the point. They agreed to produce "non-privileged documents sufficient to show" that the facts in the October 23, 2025 Letter were accurate (RFP 50). Having agreed to produce the documents that establish these facts, Defendants cannot withhold other documents of the same kind on work-product grounds. Indeed, Defendants themselves have condemned exactly this practice, objecting in their own correspondence that limiting production to "documents sufficient to show" is "inappropriate for requests directed at the

core allegations" and that a party may not "selectively produce documents based on their subjective view of their claims." (Letter from L. Barrington to S. Halepota dated June 22, 2026) ("June 22, 2026 Letter"), Ex. 4, at 2–3). Defendants cannot invoke that principle to compel Plaintiffs' production, while withholding the same categories of factual evidence underlying the very investigation on which they rely.

### C. <u>Substantial Need Overrides Any Qualified Work Product Protection</u>

Even if some materials retained qualified work product protection, that protection is not absolute and must yield in certain circumstances, including the ones here. Work product may be compelled on a showing of "substantial need" and undue hardship—an inability to obtain the substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3). Plaintiffs readily meet that standard. The investigation is the primary basis for Chair Mittal's removal, and its witness statements, interview notes, and assembled evidence (RFPs 45–49) are the only contemporaneous record of what witnesses said and what the investigators found. That record cannot be reconstructed: Defendants' own external advisers conducted the interviews, and Defendants say the investigation drew on "many witnesses who [allegedly] came forward" (Oct. 26, 2025 Letter, Ex. 2, at 3). Defendants alone hold those accounts; neither Chair Mittal nor the Class I Directors had access to the interviews that produced them. *At the same time* that Defendants attempt to shield these documents, they concurrently seek discovery regarding any complaint about Chair Mittal that was raised to the Class I Directors. (Defs' RFP No. 21, seeking "All Documents and Communications Concerning any complaints from any B&J employee, vendor, or supplier, and/or any former Board member, including those not party to this Action, about the conduct of Anuradha Mittal in her role as the former Chair of the Board.").

The Class I Directors cannot fairly test the findings Defendants press against Chair Mittal—or defend against them—without the underlying witness statements and evidence on which those findings rest, and no deposition or independent inquiry can substitute for the investigators' contemporaneous record of what witnesses reported. This context meets the substantial need and undue hardship test under Rule 26(b)(3), and it independently warrants production of the materials responsive to RFPs 45–49, even to the extent they are treated as qualified work product.

## II.   Additional Disputed Requests (RFPs 36, 86, and 91)

### A. <u>Defendants Refuse to Produce Canaan Documents Without Asserting Privilege (RFP 36)</u>

RFP 36 goes to the heart of a pleaded claim, yet Defendants produce nothing. It seeks documents concerning any analyses of the use of Canaan Fair Trade products in Unilever or Magnum products. Under the Settlement Amendment, Defendants agreed to pay "$2 million USD annually to Canaan Fair Trade ('Canaan'), directly or through a third party, for the use of Palestinian almonds (or for the direct benefit of Palestinian almond farmers), for at least ten years," and Plaintiffs allege Defendants breached that obligation by failing to pay and erecting extracontractual hurdles to payment. (FAC ¶¶ 51–56, 177–179). Defendants have actively asserted that one of the reasons they could not pay Canaan is that they could not use the almonds in other

July 20, 2026
Page 8

Unilever/Magnum products. Because Ben & Jerry's had switched its non-dairy base from almonds to oats, whether and how Defendants could use Palestinian almonds in their own products bears directly on their performance, their claimed inability to use the almonds, and their good faith in implementing the Amendment. Defendants assert no privilege: their written response agreed only to "meet and confer," see Appendix A, but after conferring they stood on their objections and confirmed they "will not produce any documents or communications responsive to this request." (June 22, 2026 Letter, Ex. 4, at 10–11). With no privilege asserted, there is no privilege question to resolve—only a flat refusal to produce plainly relevant documents on a pleaded breach. The Class I Directors ask the Court to require production of the documents responsive to RFP 36.

## B. Magen David Adom Donations Are a Disparate-Treatment Comparator (RFP 86)

Under the Settlement Agreement, Unilever cannot unreasonably withhold its consent to donations to human rights and humanitarian groups that are designated by the Independent Board Chair. The FAC alleges that is precisely what happened here, with Unilever denying donations to groups such as Human Rights Watch claiming it was too "anti-Israel" after months of dragging its feet, claiming it must remain "neutral." At the same time that Unilever was brandishing this excuse, it made a €500,000 to Magen David Adom on an expedited basis. Magen David Adom is an Israeli group that acts as an auxiliary force to the Israeli military; whose Chief Rabbi called for the nuking of Gaza; and, who proudly posts Israeli soldiers standing in front of Gaza rubble on its social media:



RFP 86 seeks documents concerning whether Defendants' selection, approval, rejection, or redirection of donations to Magen David Adom and other Israeli entities were consistent with its denial of donation to the Chair's designees (FAC ¶¶ 47–56). These documents are necessary to

July 20, 2026
Page 9

test whether Defendants applied the same compliance, audit, reputational, and security criteria across comparable recipients, bearing directly on whether they acted reasonably and in good faith in withholding consent under Section 2(g) of the Settlement Agreement. Here too Defendants assert no privilege: their written response agreed only to "meet and confer," see Appendix A, but after conferring they stood on their objections and refused to produce, foreclosing the very comparison the claim requires. (June 22, 2026 Letter, Ex. 4, at 11). The Plaintiffs ask the Court to require production of the documents responsive to RFP 86.

### C. Investigator-Selection Documents Show Pretext and Are Not Privileged (RFP 91)

RFP 91 seeks documents concerning Defendants' identification of a firm other than Skadden to lead the investigation into Chair Mittal and bears directly on Plaintiffs' allegations of pretext and lack of independence. The FAC alleges that Skadden—the "independent" investigator Unilever unilaterally selected—was not disinterested because it aided in devising the pretextual Foundation audit:

| Document File Name | Document Title Name | Comments |
|---|---|---|
| Background for EY_Privileged & Confidential_Attorney Work Product.pdf | Background Overview | Background overview of the situation, similar to our meeting notes with Skadden and Weil but have more depth on the grants in question. |

Moreover, when asked during the investigation whether they had orchestrated the underlying audit or were truly independent, Unilever's chosen "investigator" stopped responding altogether (FAC ¶¶ 98–99). Whether Defendants actually considered other investigators who were truly independent speaks directly to whether their investigation was pretextual. Defendants may redact genuinely privileged legal advice, but they cannot categorically withhold whether they sought alternative firms, whether conflicts existed, or the nonlegal reasons for retaining Skadden. Their written response agreed only to "meet and confer," see Appendix A, but after conferring they stood on their objections and refused to produce anything. (June 22, 2026 Letter, Ex. 4, at 11–12). Plaintiffs ask the Court to require production of the documents responsive to RFP 91, subject to redaction of any genuinely privileged legal advice.

### III. The Court Should Compel Defendants to Provide Deposition Dates for Three Witnesses

Plaintiffs have refused to offer Nelson Peltz, non-executive Unilever board member for deposition. They have also refused to produce Jeff Eglash, head of litigation and business integrity at Unilever and chief legal officer for Ben & Jerry's; and Vanessa Vilar, Magnum's Chief Legal Officer, unless Plaintiffs agree to several restrictions that do not appear in the Federal Rules of Civil Procedure.

### A. Defendants Do Not Contest That the Three Witnesses Possess Relevant Information

Though Defendants have objected to depositions of all three witnesses, they have not objected on relevance grounds. On May 4, 2026, Plaintiffs requested deposition availability for Nelson Peltz and Jeff Eglash. Defendants objected to both depositions on May 7: Defendants have refused to produce Mr. Peltz for deposition, stating that he "does not have unique, firsthand, non-duplicative knowledge of the facts at issue that would justify a deposition" and that his testimony

July 20, 2026
Page 10

"would be cumulative of testimony available from other witnesses." Defendants have also claimed, based on the in-house counsel aspect of Mr. Eglash's job, that "a significant portion of his knowledge and communications are privileged" and have refused to produce Mr. Eglash for deposition unless Plaintiffs agree to a series of restrictions, specifically:

1. Prior to the deposition, Plaintiffs should identify in writing each specific topic on which they intend to examine counsel. The examination should be confined to those noticed topics, and any questioning beyond the scope of the pre-identified topics is subject to objection, instruction not to answer, and, if necessary, termination of the deposition pursuant to Fed. R. Civ. P. 30(d)(3). For example, Plaintiffs can ask about non-privileged communications with Mittal or other third parties about donations or a particular post, but cannot inquire about any work product or privileged communications about the same subject matter.
2. Counsel's deposition should be scheduled after all other fact witnesses, and topics covered with counsel should only be those that Plaintiffs believe, in good faith, elicit non-privileged information that only counsel can provide.
3. The deposition should be limited in length to 3 hours.
4. Plaintiffs may not inquire into counsel's thought processes and/or deliberations.
5. Plaintiffs may not inquire into counsel's communications made in connection with legal advice or in anticipation of litigation.
6. If one of the significant purposes of a communication or investigation was to obtain or provide legal advice, then it is off-limits, even if it also had a business purpose. Plaintiffs may not circumvent this by characterizing a dual-purpose communication as purely business-related.
7. Plaintiffs may not ask counsel to provide legal analysis or interpretation, and counsel may properly decline to answer such questions.

Though Plaintiffs explained that they are unaware of any provisions of the Federal Rules of Civil Procedure that would require such restrictions and requested legal authority for the same on at least three occasions during conferrals that occurred in the interim, Defendants have provided nothing.

On June 18, 2026, Plaintiffs requested deposition availability for Vanessa Vilar, Magnum's Chief Legal Officer. On June 19, 2026, Defendants objected, stating that they had "the same concerns" as with Mr. Eglash. The parties exchanged further correspondence, but the result was the same, with Defendants proposing the same series of restrictions on Ms. Vilar's deposition as they had proposed for Mr. Eglash because Ms. Vilar's deposition would "necessarily implicate privilege."

As noted above, Defendants do not dispute that Mr. Eglash, Ms. Vilar, and Mr. Peltz possess information relevant to the claims at issue in this case. Rather, their concerns fall into two buckets: (1) Mr. Peltz is a highly-placed individual who allegedly would not have *unique* knowledge of facts relevant to the case; and (2) Mr. Eglash and Ms. Vilar function, at least in part, as in-house counsel for Defendants, and thus privilege may take a larger role in their depositions than it would for a non-in-house counsel witness.

July 20, 2026
Page 11

**B. Defendants Have Not Satisfied Their Burden to Show That Another Source Could Provide Identical Information to What Mr. Peltz Can Provide.**

Even if Mr. Peltz (a non-executive Unilever board member) is properly considered one of Defendants' highest-ranking employees, he should not be excused from depositions because Defendants have not explained why he should *not* be deposed whereas Plaintiffs, with the little information they possess, have cited examples of the information that the witness uniquely possesses. Defendants objections are further diluted given their concurrent demands to depose Ben Cohen and Jerry Greenfield (i.e., Ben & Jerry), both of whom are nonparties.

"[S]enior executives are not exempt from deposition, and, because principles relating to apex witnesses are in tension with the broad availability of discovery, it is important to excuse a witness from giving testimony *only in compelling circumstances*." *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK JCF, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) (internal citations omitted) (emphasis added). Indeed, "it is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition." *Oakley v. MSG Networks, Inc.*, No. 17-CV-6903 (RJS), 2024 WL 4134903, at *2 (S.D.N.Y. Sept. 10, 2024) (quoting *Naftchi v. N.Y. Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997)), *reconsideration denied*, No. 17-CV-6903 (RJS), 2024 WL 4859024 (S.D.N.Y. Nov. 21, 2024). "When considering whether to allow the deposition of a corporate executive, the Court must 'begin with the proposition that plaintiffs have no burden to show that the deponents have any relevant knowledge.' The Court considers [1] the likelihood that the individual possesses relevant knowledge, [2] whether another source could provide identical information, [3] the possibility of harassment, and [4] the potential disruption of business." *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015) (citation omitted).

Here, Defendants have never raised harassment or business disruption in discussions regarding deposing Mr. Peltz. Those two factors are the most important barriers to conducting these depositions, and Defendants do not raise either. *Oakley*, 2024 WL 4134903, at *3 (granting motion to depose executive chairman and chief executive officer and explaining that "*most importantly*, the MSG defendants have failed to convincingly show that his deposition will result in harassment or potential disruption of the business of MSG" (emphasis added)). However, it bears mentioning that Plaintiff offered during conferral to restrict Mr. Peltz's deposition to 3.5 hours, demonstrating that this deposition is neither meant to disrupt nor harass, but Defendants refused these offers.

Defendants have also implicitly conceded the first factor, as they only contest the second factor regarding identical information. As to the second factor, Defendants have not shown that "another source could provide identical information" to that which Mr. Peltz could provide. Defendants baldly stated during conferral that Mr. Peltz is a "high-ranking corporate" executive and does "not have unique knowledge of the facts of this case" sans explanation. Though Plaintiffs have in conferral provided examples of what Plaintiffs believe are unique areas of knowledge, Defendants appear to "misunderstand which party bears the burden here. It is the *defendants* who must show that [Mr. Peltz] has 'nothing to contribute' to this litigation." *Oakley,* 2024 WL 4134903, at *3 (citation omitted). Defendants have not met that burden in conferral and could not do so regardless.

July 20, 2026
Page 12

As articulated in the FAC, Mr. Peltz has considerable influence over Unilever, and Unilever's efforts to punish the Independent Board for its Palestinian advocacy is due to Mr. Peltz personal political views on the conflict, rather than any genuine business concerns. (FAC at ¶¶ 27, 28, 40, 122).  The same applies to Unilever's muzzle on any advocacy regarding the Trump administration, which is a new limitation that was not implemented prior to Mr. Peltz joining Unilever's board. (FAC at ¶ 40). For example, during the first Trump administration, in 2018, Ben & Jerry's launched the flavor "Pecan Resist" with the following public statement: "The company cannot be silent in the face of President Trump's policies that attack and attempt to roll back decades of progress on racial and gender equity, climate change, LGBTQ rights and refugee and immigrant rights — all issues that have been at the core of the company's social mission for 40 years."  (FAC at ¶ 39). During the Second Trump administration, Unilever barred the company from mentioning President Trump by name, with Unilever flouting Mr. Peltz's relationship with Mr. Trump.  As Mr. Peltz informed the *Financial Times* in a March 2024 interview: "Ben & Jerry's job is to sell ice cream, not to make political statements. And these people use anything for a soapbox that they have no right to do." He added: "What sense is being a billionaire if you're not a bully?"  (FAC ¶¶ 27).[4] Defendants seek to depose Mr. Peltz for 3.5 hours on the bullying tactics utilized against the Independent Board, particularly given his comments to the *Financial Times* coincided with the initiation of Unilever's efforts to marginalize the Independent Board..

Even if the extent to which Mr. Peltz possesses unique knowledge is unclear, such a factor still counsels in favor of proceeding with the depositions given the expedited discovery here. *See Chevron Corp.*, 2013 WL 1896932, at *1 (declining to defer deposition of Chevron's Chairman and CEO even though the extent of his unique knowledge was unclear and 30(b)(6) deposition of Chevron had not occurred yet where discovery was to be completed by end of the month).

### C.  Mr. Eglash's and Ms. Vilar's Depositions Should Proceed Without Restrictions Other Than Those Imposed by the Federal Rules of Civil Procedure.

Mr. Eglash is head of litigation and business integrity at Unilever and chief legal officer for Ben & Jerry's and Ms. Vilar is chief legal officer for Magnum. Their roles do not warrant restrictions on their depositions beyond those already contemplated by the Federal Rules of Civil Procedure for two reasons: (1) many of the communications and topics about which Plaintiffs would depose them are not privileged; and (2) the default contemplated by the Federal Rules of Civil Procedure—that Defendants can raise privilege objections during the depositions—is not only more efficient but also more helpful in the context of evaluating whether Defendants are properly asserting privilege protections.

*First*, many of the relevant events that took place concern these witnesses' communications and actions with third parties, the Foundation, and the Independent Board, none of which are privileged. *Complex Sys., Inc. v. ABN AMRO Bank N.V.*, 279 F.R.D. 140, 150 (S.D.N.Y. 2011) ("Communications that principally involve the performance of non-legal functions by an attorney are not protected."). For example, Mr. Eglash has authored dozens of non-privileged communications regarding donation recipients, social posts, and Canaan Fair Trade (the entity to

---

[4] *See also*, Agnew, H. (2024, March 22). Investor Nelson Peltz: 'I'm not trying to fire Bob Iger, I want to help him.' Financial Times.https://www.ft.com/content/0a182c97-6af7-42a6-ad9f-ae980562bb45 (last visited January 30, 2026).

July 20, 2026
Page 13

receive $2 million annually per the Settlement Amendment Defendants signed in 2023) including direct communications with Canaan's representatives.  Mr. Eglash has also corresponded with the Ms. Mittal regarding potential donees, Ben & Jerry's proposed social media posts, even going so far as to state that the Independent Board was "partisan" in response to two proposed posts that denounced the "genocide in Gaza." None of these communications involve the provision of legal advice. Witnesses must answer questions regarding non-privileged communications, regardless of whether they are attorneys. *See, e.g.*, *Lead Creation Inc. v. Partnerships & Unincorporated Associations identified on Schedule A*, 668 F. Supp. 3d 302, 309 (S.D.N.Y. 2023) ("[B]ecause Attorney Hurckes was a Director of Plaintiff and also was a member of its Infringement Committee, he must answer questions regarding his role in Plaintiff's business, notwithstanding the fact that he is an attorney."). Indeed, Defendants have conceded that there *are* non-privileged areas of examination, including non-privileged communications with Chair Mittal or other third parties about donations or the muzzling of the social mission through censored posts.

As to Ms. Vilar, not-privileged topics include her refusal to allow the Independent Board's counsel to join an "urgent" meeting to discuss allegations against Chair Mittal and her abrupt cancellation of that meeting; her authoring of the October 23, 2025 correspondence about Chair Mittal, which made several pages of allegations against Chair Mittal and threatened the remaining Independent Board members' positions should they disagree (Ex. 1 attached hereto); her December 15, 2025 multipage letter to Chair Mittal removing her from the Independent Board (ECF # 74-8); her multipage December 15, 2025 letters to the other Independent Board members accusing them of lacking "reasonable prudence," breaching their fiduciary duties for not acquiescing to the "findings" of Defendants' pretextual investigation of Ms. Mittal, informing them that Magnum would now "conduct an investigation into your recent conduct," and again threatening their positions unless they complied with her instructions. (FAC ¶ 103). Ms. Vilar was also a regular participant in non-privileged business communications concerning the demerger, donations, and Canaan.

*Second*, the Federal Rules provide the proper mechanism to raise privilege concerns. Specifically, counsel may assert the attorney-client privilege on a question-by-question basis under Federal Rule of Civil Procedure 30(c)(2), and may instruct a witness not to answer "when necessary to preserve a privilege." But any other restrictions will step on Plaintiffs' rights; specifically, Plaintiffs "have the right to develop the record by seeking [a witness'] knowledge and, where an objection is lodged, asking the questions that will help determine whether the privilege is properly asserted." *Chevron Corp. v. Donziger*, 2013 WL 1896932, at *2 (S.D.N.Y. May 7, 2013) (permitting deposition of vice president and general counsel of Chevron's global upstream and gas group). As discussed extensively in Section I, Plaintiffs do not believe that Defendants are properly asserting a privilege over the investigations relevant to this case.

The restrictions that Defendants attempt to place on the deposition are all designed to achieve the opposite outcome; that is, the restrictions disallow Plaintiffs from accessing Mr. Eglash's and Ms. Vilar's knowledge and prohibit Plaintiffs from gaining information that would help determine whether Defendants are properly asserting privilege, including because they would, for example:

- force Plaintiffs to state exactly what they want to ask about beforehand so that Defendants have a playbook to prepare their witnesses,

July 20, 2026
Page 14

- give Defendants the right to instruct the witness not to answer or to end the deposition if Plaintiffs discover something outside those topics to ask the witness about, even if that topic is not privileged;

- restrict topics to only those that will elicit non-privileged information that only those two witnesses can provide, even though neither could be considered Defendants' highest-ranking employee such that there is any additional layer of protection that should even be considered;

- shorten the deposition from 7 hours to 3 hours;

- restrict Plaintiffs from asking about communications with a "significant" legal purpose, even though the relevant test for attorney-client privilege is "predominant" purpose. *See In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007) ("We consider whether the *predominant* purpose of the communication is to render or solicit legal advice." (emphasis added)); and,

- restrict Plaintiffs from asking about any *investigation* with a "significant" legal purpose even though privilege is evaluated on a communication-by-communication basis. *See Complex Sys., Inc.*, 279 F.R.D. at 150 (S.D.N.Y. 2011) ("[E]ven if a business decision can be viewed as both business and legal evaluations, "the business aspects of the decision are not protected simply because legal considerations are also involved.").

Plaintiffs repeatedly requested Defendants legal authority supporting the foregoing proposed restrictions; however, they failed to provide any authority. In the cases that Plaintiffs reviewed, while it is true that courts have sometimes imposed topic restrictions or time limits, those restrictions are imposed when a party seeks the deposition of *opposing counsel*, not in-house counsel. Regardless, such restrictions would not be appropriate because Ms. Eglash and Ms. Villar have relevant knowledge over non-privileged matters and Defendants generalized, conclusory assertions otherwise do not establish their burden. *Lead Creation Inc.,* 668 F. Supp. 3d at 307 ("The party claiming the benefit of the attorney-client privilege has the burden of establishing all the essential elements.")

The Court should reject Defendants' proposed restrictions on these depositions and order Defendants to produce both Ms. Vilar and Mr. Eglash for deposition with any pre-restrictions.

Plaintiffs thank the Court for its time and consideration on this matter.

Respectfully submitted,

Ahmad, Zavitsanos & Mensing, P.C.

By:

Shahmeer Halepota

cc:    All counsel of record.

| APPENDIX "A" | |
|---|---|
| **Class I Directors'<br>Request for Production** | **Defendants'<br>Response** |
| **RFP No. 36:** "All documents and communications regarding any analyses performed regarding the use of Canaan Fair Trade products in Unilever or Magnum products." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overbroad and not relevant to the claims or defenses of any party, and not reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it requests "[a]ll documents and communications" regarding "any analyses performed regarding the use of Canaan Fair Trade products in Unilever or Magnum products." The Settlement Agreement involving Canaan Fair Trade almonds only applies to B&J products, not Unilever or TMICC products. **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants agree to meet and confer concerning this Request.**" |
| **RFP No. 41:** "All communications related to whether to commence an investigation into Chair Anuradha Mittal, and when such an investigation should start." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll communications." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to the Request as vague, including with respect to "an investigation" as it is non-specific and does not include a time period to clarify the Request. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will produce non-privileged documents sufficient to show that Mittal is ineligible to serve on the Board. Defendants will not produce privileged documents associated with the Business Integrity Investigation.**" |
| **RFP No. 42:** "All documents and communications supporting, reflecting, or regarding the findings of the Mittal Business Integrity Investigation discussed in the October 23, 2025 Letter." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, not relevant to the claims or defenses of any party, and not reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it requests "[a]ll documents and communications." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will produce non-privileged documents sufficient to show that Mittal is ineligible to serve on the Board. Defendants will not produce privileged documents associated with the Business Integrity Investigation.**" |
| **RFP No. 43:** "All drafts of the October 23, 2025 Letter." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will not produce any documents in response to this Request.**" |
| **RFP No. 44:** "All documents and communications related to the Mittal Business Integrity Investigation." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll documents and communications." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will produce non-privileged documents sufficient to show that Mittal is ineligible to serve on the Board. Defendants will not produce privileged documents associated with the Business Integrity Investigation.**" |
| **RFP No. 45:** "All witness statements related to the Mittal Business Integrity Investigation." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will not produce any documents in response to this Request.**" |

| | |
|---|---|
| **RFP No. 46:** "All notes, memoranda, and other documents reflecting witness interviews related to the Mittal Business Integrity Investigation." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll notes, memoranda, and other documents." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will not produce any documents in response to this Request.**" |
| **RFP No. 47:** "All notes, memoranda, and other documents reflecting the facts obtained and findings of any investigators involved in the Mittal Business Integrity Investigation." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll notes, memoranda, and other documents." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will not produce any documents in response to this Request.**" |
| **RFP No. 48:** "Your complete file related to the Mittal Business Integrity Investigation." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as it is vague, in particular with respect to its reference to a "complete file," which is not defined. **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will not produce any documents in response to this Request.**" |
| **RFP No. 49:** "All documents and communications sent and received related to the Mittal Business Integrity Investigation." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll documents and communications." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object as the Request is duplicative of Request No. 48. Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will not produce any documents in response to this Request.**" |
| **RFP No. 50:** "All evidence discussed or mentioned in the October 23, 2025 Letter." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the** work product doctrine, and other applicable privileges or protections. Defendants further object as the Request is duplicative of Request Nos. 48 and 49. Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will produce non-privileged documents sufficient to show the factual assertions in the October 23, 2025 Letter were accurate.**" |
| **RFP No. 51:** "All evidence received regarding the Mittal Business Integrity Investigation." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as it is vague, in particular with respect to its reference to all "evidence received." Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will produce non-privileged documents sufficient to show that Mittal is ineligible to serve on the Board. Defendants will not produce privileged documents associated with the Business Integrity Investigation.**" |
| **RFP No. 52:** "All documents and communications supporting the finding that Ms. Mittal improperly benefited from Foundation Funds as alleged in the October 23, 2025 Letter." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll documents and communications." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject |

| | to and without waiving the foregoing, Defendants respond as follows: **Defendants will produce non-privileged documents sufficient to show Ms. Mittal improperly benefited from Foundation Funds.**" |
|---|---|
| **RFP No. 53:** "All documents and communications reflecting that Ms. Mittal improperly benefited from Foundation Funds, as alleged in the October 23, 2025 Letter." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll documents and communications." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will produce non-privileged documents sufficient to show Ms. Mittal improperly benefited from Foundation Funds.**" |
| **RFP No. 54:** "All documents and communications reflecting that Ms. Mittal circumvented Unilever's refusal to donate to certain organizations, as alleged in the October 23, 2025 Letter." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll documents and communications." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will produce non-privileged documents sufficient to show Ms. Mittal circumvented Unilever's refusal to donate to certain organizations.**" |
| **RFP No. 55:** "All documents and communications reflecting that Ms. Mittal's behavior towards employees and fellow board members created a toxic working environment, as alleged in the October 23, 2025 Letter." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll documents and communications." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will produce non-privileged documents sufficient to show Ms. Mittal's behavior towards employees and fellow board members created a toxic working environment.**" |
| **RFP No. 56:** "All documents and communications reflecting that Ms. Mittal's actions have substantially interfered with both Unilever and Ben & Jerry's businesses, as alleged in the October 23, 2025 Letter." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll documents and communications." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will produce non-privileged documents sufficient to show Ms. Mittal's actions have substantially interfered with both Unilever and Ben & Jerry's businesses.**" |
| **RFP No. 57:** "All documents and communications reflecting that Ms. Mittal allowed the disclosure of confidential business information, as alleged in the October 23, 2025 Letter." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll documents and communications." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will produce non-privileged documents sufficient to show Ms. Mittal allowed the disclosure of confidential business information.**" |
| **RFP No. 58:** "All documents and communications reflecting that Ms. Mittal failed to cooperate in the investigation and the Foundation audit, as alleged in the October 23, 2025 Letter." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll documents and communications." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will produce non-privileged documents sufficient to show Ms. Mittal failed to cooperate in the investigation and the Foundation audit.**" |
| **RFP No. 59:** "All documents and communications reflecting that Ms. Mittal | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll documents and |

| | |
|---|---|
| initiated a business integrity complaint to further her own personal interests at the expense of the Foundation, Unilever, and Ben & Jerry's, as alleged in the October 23, 2025 Letter." | communications." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to this Request as not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants will produce non-privileged documents sufficient to show Ms. Mittal initiated a business integrity complaint to further her own personal interests at the expense of the Foundation, Unilever, and B&J."** |
| **RFP No. 86:** "All documents and communications from the period between October 7, 2023 and present, relating to the selection, approval, rejection, or redirection of donations, grants or contributions by Defendants to Magen David Adom or to any other Israeli entity, organization, initiative or undertaking—including but not limited to those affiliated with, supporting, or working in indirect or direct coordination with Magen David Adom, the Israeli Army, any Israeli governmental agency, or any Israeli corporation or non-governmental organization." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad and unduly burdensome, vague and ambiguous, not relevant to the claims or defenses of any party, and not reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it requests "[a]ll documents and communications" "relating to the selection, approval, rejection, or redirection of donations, grants or contributions by Defendants to Magen David Adom or to any other Israeli entity, organization, initiative or undertaking." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants agree to meet and confer concerning this Request."** |
| **RFP No. 91:** "All documents and communications regarding identifying a firm or third party other than Skadden to lead the investigation into the allegations against Chair Mittal." | "Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request to the extent it calls for documents not relevant to the claims or defenses of any party, and not reasonably calculated to lead to the discovery of admissible evidence. **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Subject to and without waiving the foregoing, Defendants respond as follows: **Defendants agree to meet and confer concerning this Request."** |