

October 23, 2025

To: Aseel Najib, Chivy Sok, Daryn Dodson, Detavio Samuels, Jennifer Henderson

cc: Jochanan Senf, Michiel Kruyt

**Re:    Business Integrity Investigation into Anuradha Mittal**

Dear Directors of the Board:

I write on behalf of The Magnum Ice Cream Company ("TMICC") Business Integrity Committee regarding the findings of the Business Integrity investigation related to Anuradha Mittal, Chair of the Board of Ben & Jerry's Homemade, Inc. ("B&J"), raised pursuant to Unilever's Code of Business Principles and Code Policies (the "Code") applicable to the Board. The investigation's findings are extremely troubling and raise clear concerns of self-dealing by Ms. Mittal that directly conflict with the principles of transparency, accountability and good governance to which we are all bound. The investigation also uncovered a pattern of inappropriate behavior, poor conduct, and waste of resources that have created a toxic and unprofessional environment for B&J's management and its employees. Our concerns are further exacerbated by Ms. Mittal's failure to cooperate in the investigation or the audit of the B&J Foundation (the "Foundation").

We are bringing these findings directly to your attention because Ms. Mittal's actions raise serious concerns about her adherence to her fiduciary duties, specifically the duties of care and loyalty. Her actions also constitute serious violations of the Code and its attendant policies. We strongly believe that these violations render Ms. Mittal ineligible to serve on the B&J Board, effective immediately.

### A.  Ms. Mittal Improperly Benefits from B&J Foundation Funds

The investigation found evidence suggesting that Ms. Mittal has personally benefitted from Foundation funds directed to her own organization in violation of her fiduciary duties, and that Ms. Mittal further failed to disclose those conflicts in violation of the Avoiding Conflicts of Interest policy, which requires directors to disclose an actual, perceived, or potential conflict of interest to Business Integrity. As you are aware, the Foundation is a philanthropic social justice organization fueled by the same social mission as B&J. In addition to her role as a Class I Director, Ms. Mittal serves on the Board of Trustees of the Foundation. Unilever funds the Foundation so long as the Foundation's activities and performance are reasonably acceptable to Unilever and no Trustee disparages the company, its products, or its management. The Board retained responsibility for the allocation of funds to the Foundation, and Trustees of the

**The Magnum Ice Cream Company**

Holding Netherlands B.V.,
Reguliersdwarsstraat 63, 1017BK, Amsterdam, NL



**EXHIBIT**

**1**



Foundation controlled how Foundation funds are dispersed. *See* Merger Agreement § 6.14(h); Shareholders Agreement § 1(h).

In addition to her roles at B&J and the Foundation, Ms. Mittal is also the founder and executive director of the Oakland Institute. Several grants from the Foundation have been given directly to the Oakland Institute. From 2011 to 2023, the Foundation donated at least $345,600 to the Oakland Institute through 59 grants (including $313,600 in grants made directly from the Foundation (including through Trustee discretionary grants) and at least $32,000 made by Trustee Jeff Furman through his non-profit Social Ventures, Inc.). The Foundation also made donations to at least four organizations that donated a combined total of at least $488,125 to the Oakland Institute during the same period. Further, the Foundation contributed more than $300,000 to non-profit organizations where Ms. Mittal held board positions, either through grants to the International Forum on Globalization pre-2022 (totaling $233,500) or through Ms. Mittal's discretionary trustee grants after 2022.

At the same time, Ms. Mittal received approximately $1.3 million in compensation from the Oakland Institute, including $249,000 in rent between 2018 and 2023 for the use of an Oakland, CA home zoned as "family residential." The Oakland Institute also purchased a residential home in a California wine region with an on-site vineyard in 2019, which was not disclosed in any of the Oakland Institute's annual reports or other public statements. In other words, Foundation funds have been directed or funneled to the Oakland Institute, without appropriate conflict-of-interest disclosures or considerations, and Ms. Mittal has personally benefited by receiving compensation through the Oakland Institute.

Ms. Mittal's personal benefit of Foundation funds raises serious concerns about her adherence to her fiduciary duties to B&J and Unilever. Further, Ms. Mittal's presence on both sides of numerous transactions gives an appearance of a conflict of interest that is harmful to the B&J brand, particularly where she failed to disclose her conflict as required under the Avoiding Conflicts of Interest policy.

### B.  Ms. Mittal Circumvented Unilever's Refusal To Donate To Certain Organizations

The investigation also found evidence of Ms. Mittal diverting Foundation funds to organizations that Unilever has previously rejected as donation recipients. As part of the 2022 Settlement Agreement, Unilever agreed to make charitable contributions through B&J for two years to organizations proposed by the Chair of the Board in good faith consultation with Unilever (with consent not to be unreasonably withheld). Unilever made clear that it would not donate to certain of the Board's proposed organizations because the organizations were partisan and placed Unilever and B&J at legal risk of state anti-boycott laws. Unilever also explained to Ms. Mittal that certain organizations were rejected because association with the organizations would threaten the reputation and financial health of B&J and Unilever, as well as the safety of employees. Unilever's concerns were found to be reasonable in a subsequent arbitration proceeding.



Notwithstanding, Ms. Mittal permitted the Foundation (which is funded by Unilever) to provide donations to several previously rejected organizations, either unilaterally through her trustee discretionary grants or through "U-Fund" grants approved by the other trustees, including: the Institute for Middle Eastern Understanding, Jewish Voices for Peace, Council on American-Islamic Relations, Tikkun Olam Productions, and MPower Change. Ms. Mittal is the only current Board member who also serves as a Trustee for the Foundation and was uniquely equipped with knowledge of Unilever's concerns, but she did not share this information with her fellow Foundation Trustees, despite her fiduciary duties to do so, thereby placing the Foundation's funding at risk. By permitting the Foundation to provide donations to these organizations, Ms. Mittal allowed her personal values and political beliefs to take precedence over her responsibilities to B&J and Unilever, in violation of her fiduciary duties and the Avoiding Conflicts of Interest policy.

### C. Ms. Mittal's Behavior Towards Employees and Fellow Board Members Created a Toxic Working Environment

The investigation found that, over the course of the last several years, Ms. Mittal exhibited a pattern of disrespectful, offensive, and inappropriate workplace behavior to both B&J and Unilever employees, as well as fellow Board members, in violation of the Respect, Dignity and Fair Treatment policy, which prohibits any behavior that is offensive, intimidating, malicious or insulting. The investigation found that Ms. Mittal has made remarks that are disrespectful and offensive and that, among other things, demonstrated racial or ethnic bias, or an intent to exclude fellow Board members or employees whom she may have perceived as holding different beliefs than she. The investigation found that several individuals resigned, at least in part, due to Ms. Mittal's workplace conduct and that Ms. Mittal's overall conduct had created a dysfunctional work environment.

B&J's motto is "Peace, Love, & Ice Cream" and, as part of its mission statement, B&J strives to "manifest a deep respect for human beings inside and outside our Corporation and for the communities of which they live." Ms. Mittal's workplace interactions with current and former colleagues, however, have not upheld B&J's mission.

### D. Ms. Mittal's Actions Have Substantially Interfered With Both Unilever and B&J Businesses

The Merger Agreement clearly limits the role of the Board to matters related to B&J's social mission and brand integrity. The investigation found that Ms. Mittal has engaged in behavior which has threatened the very social mission and brand integrity she has been entrusted to protect. Over the years, Ms. Mittal has bypassed B&J's CEO to oversee management employees directly, creating inefficiencies and confusion. She has caused a misalignment between the economic mission and social mission by, for example rejecting a proposal to change a certain ice cream formulation that would have helped the company meet carbon goals without a clear reason, and by impeding the transition from almond-based to oat-based non-dairy ice cream, even in the face of clear consumer preferences and supporting

**The Magnum Ice Cream Company**

Holding Netherlands B.V.,
Reguliersdwarsstraat 63, 1017BK, Amsterdam, NL



market research. Her actions have led to a waste of corporate resources as management teams spend significant time trying to figure out how to deal with the whims of Ms. Mittal.

Ms. Mittal's actions disrupt B&J's operations and business in a manner that does not align with the three-part mission or the general responsibilities of the Board as outlined in the Merger Agreement and violate her fiduciary duties to the Company.

### E. Ms. Mittal Allowed the Disclosure of Confidential Business Information

As Chair of the Board, Mittal is entrusted with certain confidential business information necessary to make informed decisions about B&J's social mission and brand integrity. Ms. Mittal, like all directors, has a fiduciary duty to protect the confidentiality of such information and to adhere to Protecting Unilever's Information Policy. Notwithstanding, the Board, under Ms. Mittal's leadership, disclosed confidential details of former B&J CEO David Stever's January 2025 annual performance review in the pending litigation, and subsequently to the media. Ms. Mittal's disclosure of this confidential information not only violated her fiduciary duties and Protecting Unilever's Information Policy, but also thrusted a long time, hardworking employee and his family into the public eye before he had the chance to make his own arrangements.

### F. Ms. Mittal Failed to Cooperate in the Investigation and the Foundation Audit

Despite numerous opportunities to do so, Ms. Mittal refused to cooperate in the investigation or the Foundation audit. Ms. Mittal, through her counsel, made clear that neither she nor any Class I Directors or Foundation Trustees would agree to be interviewed for the investigation despite several follow-up attempts. Ms. Mittal further declined to participate in an interview with the auditors as part of the Foundation audit. Her failure to cooperate in the investigation and the Foundation audit violates her fiduciary duties and the Living the Code Policy.

### G. Ms. Mittal Initiated a Business Integrity Complaint to Further Her Own Personal Interests at the Expense of the Foundation, Unilever, and B&J

After Ms. Mittal was asked to participate in an interview in connection with the investigation and refused, Ms. Mittal and the Class I Directors initiated a Business Integrity complaint against Unilever's Global Head of Litigation & Business Integrity, Jeffrey Eglash, and B&J's General Counsel / TMICC Chief Integrity Officer and Head of Litigation, Palmina Fava. Ms. Mittal asked Unilever to investigate Mr. Eglash and Ms. Fava for an alleged "serious case of abuse of power and intimidation," and further claimed that the Foundation audit was "pretextual."

Unilever engaged separate outside counsel to conduct an independent investigation of Ms. Mittal's allegations in accordance with the Code. Ms. Mittal declined to participate in the investigation notwithstanding the fact that she initiated the complaint. Despite numerous requests by outside counsel, Ms. Mittal did not provide any information to substantiate her



allegations, and when outside counsel encouraged the Trustees and Foundation staff to share information concerning Ms. Mittal's allegations, none did. After a review of relevant documents, including information that was shared with the Foundation, and interviews, outside counsel concluded that there was no evidence of a Code breach by either of Mr. Eglash or Ms. Fava and that the Foundation audit was not pretextual.

Outside counsel expressed concerns that Ms. Mittal's allegations were not raised in good faith and that the evidence suggests that Ms. Mittal weaponized the Business Integrity process to further her own personal interests that are in conflict with those of the Foundation, Unilever, or B&J. Outside counsel's observations raise serious concerns about Ms. Mittal's adherence to her fiduciary duties to B&J and Unilever.

\* \* \*

TMICC attempted to bring these findings to your attention at a special meeting of B&J's Board on October 23, 2025, but the Class I Directors refused to engage without their outside litigation counsel present, a request that was outside the Board's normal governance procedures, particularly where the Board's outside litigation counsel insisted on recording the meeting where confidential and sensitive information was to be shared. The Class I Directors have a fiduciary duty to act in the best interest of B&J, as well as TMICC and Unilever. The Class I Directors also have an obligation to abide by the Code. Ms. Mittal's continued involvement with B&J is inconsistent with those duties. Further, by refusing to engage with B&J, TMICC and Unilever on issues concerning the integrity of Ms. Mittal, the Class I Directors have failed to fulfill their own fiduciary duties. We reserve all rights.

Please let us know what you intend to do about these findings against Ms. Mittal so we can determine how best to proceed.

Sincerely,

Vanessa Vilar

**The Magnum Ice Cream Company**

Holding Netherlands B.V.,
Reguliersdwarsstraat 63, 1017BK, Amsterdam, NL