**Weil, Gotshal & Manges LLP**

BY E-MAIL

767 Fifth Avenue
New York, NY 10153-0119
Phone: +1 212 310 8000
Fax: +1 212 310 8007

**David J. Lender**
+1 (212) 310-8153
David.lender@weil.com

October 26, 2025

Shahmeer Halepota
Ahmad, Zavitsanos & Mensing PLLC
1221 McKinney St., Suite 2500
Houston, TX 77010

Re:    **October 22, 2025 and October 24, 2025 Emails from Ben & Jerry's Class I Board Members Jennifer Henderson, Daryn Dodson, Chivy Sok, Detavio Samuels and Aseel Najib**

Shahmeer:

I write on behalf of Unilever PLC and The Magnum Ice Cream Company ("TMICC") in response to the emails dated October 22, 2025 and October 24, 2025 from Jennifer Henderson and Daryn Dodson, respectively.

While the communications from Ms. Henderson and Mr. Dodson are titled "Notice of Contractual and Securities Violations," they appear to be empty threats. Other than just saying it, the communications fail to set forth any basis or explanation for what statutes or contracts have purportedly been violated by Unilever or TMICC, or how and why whistleblower regulations in the U.S. or Europe apply here. We assume this is because you understand no such violations exist and the Class I Directors—or their counsel—are attempting to distract from the deeply concerning conduct that has been identified regarding Ms. Mittal, as well as the myriads of conflicts of interest that your various client representations raise. Going forward, I ask that you and your clients address any similar future communications to me and not to individual executives or employees of Unilever, TMICC or Ben & Jerry's Homemade, Inc. ("B&J"), as I represent those entities.

To be clear, Unilever and TMICC reject the numerous factual misrepresentations contained in Ms. Henderson's and Mr. Dodson's emails regarding the events surrounding the October 23 Board meeting, the nature of prior settlement discussions relating to the pending litigation (which as you know are privileged and should not have been disclosed, let alone inaccurately), Unilever and TMICC's conduct, and Unilever and TMICC's management and Board appointment decisions, among other matters.

**EXHIBIT**

**2**

exhibitsticker.com

**Weil, Gotshal & Manges LLP**

Page 2

### A.  Background

As you are aware, on October 23, 2025, B&J CEO Jochanan Senf called a Special Meeting of the B&J Board pursuant to the B&J Bylaws to discuss the findings of a recently concluded Business Integrity investigation related to the Chair of the B&J Board, Anuradha Mittal.  In response to this request, you referred to the meeting as an "illegitimate board meeting" and wrongly stated that the "Bylaws may not be amended sans the Board's consent per the Merger Agreement's exhibit."  You also claimed the meeting was a "breach of our agreements, amongst many other concerns."  You further stated that the "conspicuous timing also raises concerns regarding various securities violations", and that the Class I Directors objected to the meeting "procedurally and substantively."  Lastly, you said you would be present at the Board meeting and wrote, "Please be prepared to thoroughly discuss the allegations made therein.  The meeting will be recorded for transparency."

In response, TMICC's Chief Legal Officer, Vanessa Vilar, informed you that TMICC takes the business integrity framework seriously, and that the special meeting was being properly called pursuant to the Bylaws to advise the Independent Directors of the Business Integrity findings related to Chair Mittal, and that the Independent Directors' attendance at the meeting would constitute confirmation of the Board's acceptance of this fact.  Ms. Vilar clarified that the meeting would not be recorded other than through the minutes that would be taken by the Corporate Secretary.  Finally, Ms. Vilar stated that your attendance at the meeting would not be appropriate given that you represent Chair Mittal, the Independent Directors and the Foundation Trustees and serve as litigation counsel.

Following this exchange, the Class I Directors joined the B&J Board meeting on Thursday, October 23, 2025, and asked that you be allowed to attend.  It was explained that no other external counsel was present and it was therefore not appropriate for you to join the meeting as business integrity matters were being discussed.  It was also stated that the aim of the meeting was to provide a forum to facilitate the Board's discussion relating to business integrity matters.  The members present objected to continuing the meeting without their external litigation counsel present.  Accordingly, the Board meeting ended without the Business Integrity findings and related issues being delivered or discussed.

Because TMICC was unable to present the findings of the Business Integrity investigation, the Ernst & Young audit of the B&J Foundation, and the findings of the Alston & Bird investigation of the Independent Board's claims at that meeting, TMICC sent a letter to the B&J Board regarding the findings of the Business Integrity investigation related to the conduct of Ms. Mittal (the "October 23 Letter").

### B.  The Independent Board's Challenges to the Business Integrity Investigation, Foundation Audit and Related Issues are Unfounded and Show a Disregard for Fiduciary Duties

It appears from the October 24, 2025 email sent by Mr. Dodson that the Independent Board seeks to challenge the findings of the Business Integrity investigations and the Ernst & Young audit of the B&J Foundation.  This is surprising given that the Class I Directors refused to participate in a meeting where the findings of these reviews were going to be discussed.

As you know, Ms. Mittal declined—through you—to be interviewed by Ernst & Young in connection

**Weil, Gotshal & Manges LLP**

Page 3

with the Foundation audit, where she had the opportunity to provide information on the questions the Class I Directors are asking about now (*i.e.*, relating to organizations that received certain Foundation funds). You also declined, on behalf of the Class I Directors, to make any of them available for interviews with outside counsel in connection with the Business Integrity investigation and the Alston & Bird investigation related to the Class I Directors' claims, as described in the October 23 Letter. It is suspect for the Class I Directors to now seek to rebut or challenge the findings of an investigation that they refused to participate in or to provide information for, even though they raised one of the complaints at issue.

The Class I Directors' unwillingness to participate makes clear they have no interest in understanding the facts or adhering to their fiduciary duties. Instead, the Class I Directors appear primarily motivated by a desire to shield Ms. Mittal and themselves from scrutiny regarding their own conduct. We note that despite vaguely referencing "glaring deficiencies," the Class I Directors' October 24 email does not articulate or provide any evidentiary support for their statements or purported challenges to the issues and concerns specified in the October 23 Letter.

TMICC remains willing to present the findings of the Business Integrity investigation, the Ernst & Young audit of the Foundation, and the Alston & Bird investigation to the Board. This would be done as previously set out: with Ms. Mittal's recusal, without external litigation counsel, and with no recording. These are the protocols of Business Integrity investigations, and we will not deviate from them because Ms. Mittal or the Class I Directors want special treatment. If the Class I Directors wish to schedule another meeting on Monday, October 27 to discuss the findings under these parameters, please direct the Class I Directors to reach out to Ms. Vilar.

To be clear, the presentation will not disclose privileged information. Class I Directors are not entitled to obtain privileged information, including attorney-client communications or attorney work product, or to "interview" Unilever's external counsel. Neither Unilever nor TMICC will provide to the Class I Directors privileged reports, drafts or information, or confidential information that puts at risk the disclosure of the identity and other personal information of the many witnesses who came forward in the Business Integrity investigations.

### C. The Class I Directors Have Made Misrepresentations in Improperly Referencing Confidential Settlement Discussions

It is also inappropriate, and improper, for the Class I Directors to reference confidential settlement discussions subject to Federal Rules of Evidence, Rule 408. And even worse, the Class I Directors misconstrued and misrepresented those communications. It is not true, for example, that Unilever offered, at any time, "that the integrity complaint would be closed quietly should the Independent Board settle the litigation" or that Unilever offered to "fund Ms. Mittal to head a million-dollar non-profit if she capitulated." Rather, as you know, those discussions were made in the context of settling the current almonds dispute concerning Caanan Fair Trade. As part of those settlement discussions, Unilever offered to pre-fund a certain amount of money into an escrow (with an escrow agent governing the disbursement of funds) to be paid over time into a trust for the actual benefit of Palestinian farmers. We also proposed that Ms. Mittal could oversee applications for those funds from the trust. We further discussed that this

**Weil, Gotshal & Manges LLP**

Page 4

would settle further disputes about the almond payments because Unilever would pre-fund the escrow, which would be administered by the escrow agent, and that, as long as the funds were used consistently with the escrow and trust documents, monies could flow for the benefit of Palestinian farmers each year. The fact that you could twist this proposal to settle the Cannan dispute into the statements contained in Ms. Henderson and Mr. Dodson's communications reinforces the fact that your side appears to approach every issue as a way of improving your weak litigation position, rather than trying to resolve disputed issues.

### D. Unilever Has the Authority to Amend the Bylaws and the November 2022 Amended Bylaws Are in Effect

The Class I Directors referred to "rejected 'amended bylaws'" in the October 24 email.  The Class I Directors appear to believe that the November 2022 Amended Bylaws are not in effect and you incorrectly asserted in an October 22 email to Ms. Vilar that any amendments to the Bylaws require the Board's approval.  To support this misstatement you cited to the draft *form* Articles of Incorporation attached to the Merger Agreement as Exhibit A.  You are mistaken:

- The B&J Articles of Incorporation were adopted on August 3, 2000, and were not the same as the form provided as Exhibit A to the Merger Agreement in certain material respects.  The form in Exhibit A stated, "In furtherance and not in limitation of the powers conferred upon it by law, the Board of Directors of the Corporation [Ben & Jerry's] is expressly authorized to adopt, amend or repeal the By-laws of the Corporation."

- However, Article 8 of the Amended and Restated B&J Articles of Incorporation, which were adopted and effective as of August 3, 2000, provides, "The by-laws of the Corporation may only be adopted, amended or repealed by the shareholder of the Corporation [Unilever]."

- Further, Section 7.5 of the August 2000 Bylaws stated, "These bylaws may be altered, amended, or repealed and new bylaws may be only adopted by the Shareholder [Unilever]."

Accordingly, the Bylaws were appropriately amended in November 2022 and that version is operative.

### E. Improper References to Implicit Bias

Finally, Unilever and TMICC categorically reject the assertion made in the Class I Directors' October 22 email sent by Ms. Henderson that recent management and Board appointments and decisions are motivated by any form of bias.  Unilever and TMICC's selection processes are guided by a commitment to merit, experience, and the best interests of the organization as a whole.  Each appointment is the result of a thorough and objective evaluation of candidates, without regard to race, ethnicity, or any other protected characteristic.  Unilever and TMICC value diversity and inclusion at every level of the organization and remain dedicated to fostering an environment where all individuals are respected and given equal opportunity.  Any suggestion to the contrary does not reflect the principles by which Unilever and TMICC operate or the intentions behind their decisions.

Page 5

### F.  *The Continued Funding of the Foundation*

Finally, and for the avoidance of doubt, Unilever wishes to make clear that the Foundation's activities—as disclosed in Ernst & Young's audit—are not reasonably acceptable to Unilever.  As Mr. Senf advised Ms. Mittal by email, dated October 20, 2025, Mr. Senf is working with the Foundation's representatives on a plan forward that addresses the many concerns raised in the audit, and those representatives have been apprised of the learnings, recommendations, and scope of the audit. Because those discussions are ongoing, it is not appropriate to make any decisions as to funding at this time, including at the October board meeting.

We reserve all rights.

Sincerely,

*/s/ David J. Lender*

David J. Lender

Enclosure