**As filed with the Securities and Exchange Commission on November 4, 2025.**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

## Form 20-F

| | |
|---|---|
| **EXHIBIT** | |
| **3** | |

☒ **REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR 12(g) OF THE SECURITIES EXCHANGE ACT OF 1934**

**OR**

☐ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**OR**

☐ **SHELL COMPANY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**Commission file number:**

## The Magnum Ice Cream Company B.V.*

(Exact name of Registrant as specified in its charter and translation of Registrant's name into English)

**The Netherlands**
(Jurisdiction of incorporation or organization)

**Reguliersdwarsstraat 63**
**1017 BK Amsterdam**
**The Netherlands**
(Address of principal executive offices)

*Copies to:*

**Vanessa Vilar**
**Chief Legal Officer**
**Reguliersdwarsstraat 63**
**1017 BK Amsterdam**
**The Netherlands**
vanessa.vilar@magnumicecream.com
**+31 61 158 5067**
(Name, Telephone, E-mail and/or Facsimile number and
Address of Company Contact Person)

**Michael Z. Bienenfeld**
**Igor Rogovoy**
**Linklaters LLP**
**One Silk Street**
**London EC2Y 8HQ**
**United Kingdom**
**+44 20 7456 3660**

Securities registered or to be registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Ordinary Shares, nominal value of €1.00 per share[1] | MICC | New York Stock Exchange |

Securities registered or to be registered pursuant to Section 12(g) of the Act: **None**

Securities for which there is a reporting obligation pursuant to Section 15(d) of the Act: **None**

Indicate the number of outstanding shares of each of the issuer's classes of capital or common stock as of the close of the period covered by the annual report: **Not applicable**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act: Yes ☐ No ☒

If this report is an annual or transition report, indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934. Yes ☐ No ☐

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☐ No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). Yes ☐ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or an emerging growth company. See definition of "large accelerated filer," "accelerated filer," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☐        Accelerated filer ☐        Non-accelerated filer ☒        Emerging growth company ☐

If an emerging growth company that prepares its financial statements in accordance with U.S. GAAP, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards† provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant has filed a report on and attestation to its management's assessment of the effectiveness of its internal control over financial reporting under Section 404(b) of the Sarbanes-Oxley Act (15 U.S.C. 7262(b)) by the registered public accounting firm that prepared or issued its audit report. ☐

If securities are registered pursuant to Section 12(b) of the Act, indicate by check mark whether the financial statements of the registrant included in the filing reflect the correction of an error to previously issued financial statements. ☐

Indicate by check mark whether any of those error corrections are restatements that required a recovery analysis of incentive-based compensation received by any of the registrant's executive officers during the relevant recovery period pursuant to §240.10D-1(b). ☐

Indicate by check mark which basis of accounting the registrant has used to prepare the financial statements included in this filing:

U.S. GAAP ☐ International Financial Reporting Standards as issued by the International Accounting Standards Board ☒        Other ☐

If "Other" has been checked in response to the previous question, indicate by check mark which financial statement item the registrant has elected to follow: Item 17 ☐ Item 18 ☐

If this is an annual report, indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐ No ☐

(APPLICABLE ONLY TO ISSUERS INVOLVED IN BANKRUPTCY PROCEEDINGS DURING THE PAST FIVE YEARS)

Indicate by check mark whether the registrant has filed all documents and reports required to be filed by Sections 12, 13 or 15(d) of the Securities Exchange Act of 1934 after the distribution of securities under a plan confirmed by a court. Yes ☐ No ☐

**This registration statement shall hereafter become effective in accordance with the provisions of Section 12(b) of the Securities Exchange Act of 1934.**

---

[1]    With effect prior to the Demerger and as at Admission, it is expected that the Company's Ordinary Shares will have a nominal value of €3.50 each.

*    The Magnum Ice Cream Company B.V. is the registrant filing this registration statement with the Securities and Exchange Commission. Shortly prior to Admission (as defined herein), the Company will be converted into a public company with limited liability under the laws of the Netherlands and renamed The Magnum Ice Cream Company N.V. Following the Demerger (as defined herein), The Magnum Ice Cream Company N.V. will be the ultimate holding company of the Group (as defined herein). The securities issued to investors in connection with the Demerger will be ordinary shares registered or to be registered pursuant to Section 12(b) of the Securities Exchange Act of 1934.

†    The term "new or revised financial accounting standard" refers to any update issued by the Financial Accounting Standards Board to its Accounting Standards Codification after

of the Ben & Jerry's Board have alleged (on behalf of the Ben & Jerry's Board and Ben & Jerry's itself) that Unilever and its wholly-owned subsidiary, Conopco, violated elements of the arrangements governing the relationship between Unilever and Ben & Jerry's referenced above, as well as certain commitments made by Unilever in a settlement agreement entered into by the parties in 2022 to resolve an earlier lawsuit the Ben & Jerry's Board brought against Conopco and Unilever (as well as an amendment to that settlement agreement) by (i) refusing to approve the release of certain statements the Ben & Jerry's Board wished to make in 2023 and 2024 related to the conflict in the Middle East; (ii) withholding their consent to make donations in 2024 to two organisations — Jewish Voice for Peace and the Council on American-Islamic Relations selected by the Ben & Jerry's Board; and (iii) failing to purchase Palestinian almonds and erecting extracontractual hurdles regarding the purchase of these almonds. They are also seeking a declaration that Unilever and Conopco: (a) impermissibly terminated the former CEO of Ben & Jerry's; and (b) may not diminish the rights of the Ben & Jerry's Board in connection with the separation of the Ice Cream Business which is the subject of this registration statement.

The Company, Unilever, Conopco and Ben & Jerry's HoldCo (a wholly-owned subsidiary of the Company) entered into agreements pursuant to which (amongst other things): (i) all liabilities incurred by the Unilever group in connection with; and (ii) conduct in respect of, the litigation described above (together with other litigation that may be brought by the Ben & Jerry's Board in the future), will be assumed by the Company and Ben & Jerry's HoldCo. While the Group expects to incur costs and expend management time and resource in defending or settling the current case, it does not believe this case will have a significant impact on the Group's financial position or profitability. If the Company is unsuccessful in defending any element of the case, however, this could encourage the independent members of the Ben & Jerry's Board, or others associated with Ben & Jerry's, to bring similar claims in the future, which could cause reputational damage to the Group and serve as an on-going distraction to the Group's management team.

The Group has taken a pro-active approach to finding common ground with the Ben & Jerry's Board and its members to avoid future conflicts of the type that have arisen in the past. However, following investigations commissioned by the Group and conducted by external advisers, in the opinion of the Group the current chair of the Ben & Jerry's Board no longer meets the criteria to serve as a member of the Ben & Jerry's Board. The Group has informed the Ben & Jerry's Board about the results of the internal investigations. The Group will consider its options depending on the response it receives from the Ben & Jerry's Board.

While these matters are not expected to have a material impact on the operations of Ben & Jerry's or the Group, they may result in the types of reputational damage, consumer boycotts of products, investor claims or adverse shifts in consumer behaviour that are mentioned above. They may also give rise to further legal claims being brought against the Group (and/or its employees and officers) instigated by the Ben & Jerry's Board or its individual members.

As a result of all these factors, there remains an ongoing risk that the statements and actions of the Ben & Jerry's Board, its members or others associated with Ben & Jerry's (including the co-founders of Ben & Jerry's) could adversely impact the Group's reputation, business, financial condition, and results of operations.

### *A significant interruption at one or more of the Group's key manufacturing facilities could have a material adverse effect on its business, financial condition or results of operations*

The Group owns and operates 30 manufacturing facilities, which are located across six continents. The Group is particularly reliant on certain of its facilities with greater capacities and/or geographical distribution capabilities. The Group's manufacturing facilities are responsible for the vast majority of the products produced and distributed by the Group. The operation of these manufacturing facilities could be disrupted for many reasons, including natural hazards (such as earthquakes, extreme weather conditions and floods), water shortages, fires, service or supply disruptions, system failures, workforce actions, political instability and war, or other causes. Interruptions or a loss of operations at any of the Group's key manufacturing facilities as set out in "*Item 4.B. Business Overview—Manufacturing and Logistics*", even for a short period of time, could result in significant production and delivery delays, and in cases where production at a particular manufacturing facility is shut down in full, the elimination of the availability of some of the Group's products in one or more geographies for a period of time. This could have a significant impact on sales volumes, while also impacting the reputation of the Group and its brands. While the Group may be able to rely on one or more of its other manufacturing facilities with sufficient capacity or capabilities to help alleviate issues caused