# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
Phone: +1 212 310 8000
Fax: +1 212 310 8007

**Luna N. Barrington**
+1 212 310 8421
Luna.Barrington@weil.com

*BY EMAIL*

June 22, 2026

Shahmeer Alam Halepota
Ahmad, Zavitsanos & Mensing, P.L.L.C.
1221 McKinney St.
Suite 2500
Houston, TX 77010

Re: ***Ben & Jerry's Homemade, Inc. et al. v. Unilever PLC et al.*, Case No. 24-cv-8641-PKC (S.D.N.Y.) – Discovery**

Dear Counsel:

We write to follow-up on the meet and confers on June 5 and June 16, 2026 addressing (I) the former Class I Directors' Responses and Objections to Defendants' Request for Production of Documents, dated June 8, 2026; (II) Defendants' Responses and Objections to the former Class I Directors' Request for the Production of Documents, dated June 3, 2026; (III) the former Class I Directors' Responses to Defendants' Interrogatories, dated June 8, 2026; (IV) Ben Cohen's Response to the Subpoena Duces Tecum, served on June 9, 2026; and (V) the Oakland Institute's Response to the Subpoena Duces Tecum served on June 9, 2026.

## I. Defendants' Requests for Production to the Former Class I Directors

At the meet and confer, Defendants raised concerns with the former Class I Directors' Responses and Objections to Defendants' RFPs that apply across several different requests. Defendants summarize those issues below, although they also apply to the request-specific discussion that follows.

### A. Global Issues

#### i. Temporal Scope

Unless otherwise specified in a request, Defendants seek documents from January 1, 2022 through December 31, 2025. The former Class I Directors, however, contend that they should search only from December 1, 2023 forward and, with respect to certain requests, from an even later time period because the allegations in the Fourth Amended Complaint ("**FAC**") begin from December 1, 2023. Defendants disagree. The FAC contains allegations dating back over the course of two decades and chronologizes a number of events that Plaintiffs appear to intend to rely on to support their claims. For example, the former Class I Directors chronicle a number of social mission posts

EXHIBIT

4

that Ben & Jerry's made—including the "Peace Pop" in 1988, the *New York Times* ad in 1990, and posts calling for the dismantling of white supremacy—in support of their claims that Unilever allegedly improperly muzzled the former Class I Directors. Additionally, the Settlement Agreement, which serves as the basis for Counts V, VI, and IX, was negotiated and executed in 2022. As such, January 1, 2022 is a reasonable and proportional start date, particularly given that Defendants have agreed to search for and produce documents from January 1, 2021 through December 31, 2025.

Moreover, Plaintiffs' own requests demonstrate that documents predating December 2023 are relevant to the claims and defenses in the above-captioned case ("**Action**"); indeed, most contain *no temporal limitation whatsoever* (which as noted above, we are proposing to begin in January 2021) but seek documents relating to, among other things, "[a]ll documents and communications reflecting Defendants' views, opinions, and interpretations concerning the Independent Board's responsibility and scope of authority over Ben & Jerry's Social Mission" (former Class I Directors' Request No. 22); and "[a]ll documents and communications relating to the impact of Ben & Jerry's Social Mission on Defendants' reputation, goodwill, customer relations, or financial performance, including but not limited to market studies, customer feedback, and internal analysis" (former Class I Directors' Request No. 25).

For Request Nos. 34, 36-39, and 45, which concern ongoing campaigns, media activity, and related conduct, Defendants seek documents through the present as they relate to Plaintiffs' claims for damages.

    ii. <u>Relevance</u> (Request Nos. 5, 8-12, 14-16, 19, 21, 24, 29-32, 34, 36–48, 51)

For thirty-one requests—related to former Chair Mittal's conduct, the 2025 Business Integrity Investigation into Mittal (the "**BI Investigation**"), charitable donations, the audit ("**Audit**") of the Ben & Jerry's Foundation (the "**Foundation**"), communications with Ben & Jerry founders Ben Cohen and Jerry Greenfield **("Founders**"), social media campaigns and public advocacy, third-party and media communications, litigation funding, and Ben & Jerry's decision to cease sales in Israeli settlements —the former Class I Directors asserted objections based on relevance. These objections are meritless because each of these requests go to the crux of Plaintiffs' claims. Please confirm that the former Class I Directors will not withhold documents on the basis of these objections.

    iii. <u>Documents Sufficient to Show</u> (Request Nos. 1-3, 6-7, 10-11, 17-20, 22-27, 32-33, 35, 49-50, 54)

For twenty-three requests seeking "All Documents and Communications" (or similar terms)—related to the former Class I Directors' social mission activities and governance authority, the demerger, charitable donation designations, the BI Investigation, the Foundation Audit, CEO performance and appointment, and the factual bases for Plaintiffs' claims—the former Class I Directors limited their responses to "documents sufficient to show." As Defendants explained at the meet and confer, such a limitation is inappropriate for requests directed at the core allegations

raised by the FAC. Plaintiffs are proposing to selectively produce documents based on their subjective view of *their claims* in this case. That is not the standard, and Defendants are entitled to all documents and communications that are responsive to these requests.

Please confirm that the former Class I Directors will produce all responsive, non-privileged documents and communications in response to these requests.

iv. <u>All Communications</u> (Request Nos. 6, 7, 10, 11, 13, 17, and 49)

For seven requests for which Defendants sought "All Documents and Communications"—related to corporate governance matters, the 2025 demerger of Unilever's ice cream business into a standalone entity, the selection of recipients for charitable donations pursuant to the Settlement Agreement between the former Class I Directors and Defendants, obligations under the Settlement Amendment, the role of former Board Chair Mittal, and the appointment of a new Ben & Jerry's CEO—the former Class I Directors limited their production to only their communications with Defendants. This limitation is likewise inappropriate, and the former Class I Directors provided no basis to limit their production to only external communications with Defendants. Indeed, Plaintiffs have not limited their own discovery requests to just external communications with Defendants.

Defendants are entitled to all communications, including communications between and among the former Class I Directors, between the former Class I Directors and the Foundation, between the former Class I Directors and the Founders, between the former Class I Directors and any prospective new Class I Director (such as Christopher Miller), and between the former Class I Directors and any third-party, as is responsive to Defendants' requests. The former Class I Directors' "assumption" that *most* responsive communications involve Defendants is not a basis to foreclose a search for and production of all communications in response to these requests.

Please confirm that the former Class I Directors will produce all responsive, non-privileged documents and communications in response to these requests.

v. <u>Documents and Communications with Founders</u> (Request Nos. 29, 30, and 34)

The former Class I Directors have only agreed to produce documents "regarding the Founders" or "as it relates to the Founders," but refuse to produce any documents or communications *with* the Founders. As Defendants explained at the meet and confer, those communications are directly relevant because Plaintiffs themselves place the Founders' involvement at issue in the FAC, including alleging that Defendants attempted to influence the Founders and their support for Chair Mittal. *See* FAC ¶ 123. Moreover, Plaintiffs seek damages based in part on alleged harm to the Ben & Jerry's brand, reputation, goodwill, and social mission. Communications with the Founders bear on Plaintiffs' allegations concerning damage to Ben & Jerry's brand, reputation, goodwill, and social mission and therefore clearly are discoverable.

Please confirm that the former Class I Directors will produce all responsive, non-privileged documents and communications in response to these requests.

June 22, 2026                                    **Weil, Gotshal & Manges LLP**
Page 4

vi. First Amendment & Privacy Objections (Request Nos. 40-45)

In response to Defendants' Request Nos. 40-45, the former Class I Directors asserted First Amendment objections. When asked to explain the basis for those objections, the former Class I Directors stated that those objections would be withdrawn. Please confirm that the former Class I Directors will not withhold documents on the basis of these objections.

The former Class I Directors also asserted privacy objections to certain requests. Any legitimate privacy concerns can be addressed through the Protective Order and do not justify withholding otherwise responsive documents. Please confirm that the former Class I Directors will not withhold documents on the basis of these objections.

**B. Request-Specific Issues**

i. Social Mission, Governance, and the Demerger (Request Nos. 2–5 and 7)

Defendants' Request Nos. 2–5 and 7 concern Ben & Jerry's social mission, social-mission decision-making, the business impact of the former Class I Directors' social-mission initiatives, their decision to cease sales in Israeli settlements, and the demerger. The former Class I Directors objected claiming that such requests related to any social issue is "overbroad."

Defendants have proposed narrowing Defendants' Request Nos. 2 and 3 to focus on the Ben & Jerry's limited-purpose board's (the "**Board**") involvement in social-mission decision-making and specific social-mission initiatives identified in the FAC. For Defendants' Request Nos. 2-3, Defendants propose the following compromise:

> Request No. 2: All Documents and Communications Concerning the Board's responsibility and scope of authority over B&J's social mission, including the protocols or processes for determining the social mission causes that B&J will advocate for, and how those decisions are made by the Board.

> Request No. 3: All Documents and Communications concerning B&J's social mission posts relating to Gaza, racial justice, the Trump administration, and immigration, including/as well as any discussions between the Former Class I Directors Concerning their posts or demands to post the following posts:[1]

---

[1] "a) 'The US was founded on stolen indigenous land – this July 4th, let's commit to returning it' (July 4, 2023 Twitter and website post);
b) 'Ben & Jerry's calls for peace and a permanent and immediate ceasefire.' FAC ¶ 30;
c) 'People fleeing war need routes to safety, but right now there are no safe ways for Palestinians affected by war to seek sanctuary in the UK. So just like the UK did for Ukrainians, we ask that the Government create a Visa Scheme allowing Palestinians to reunite SAFELY with their loved ones in the UK. Join us in this humanitarian call for a Gaza Family Visa Scheme NOW.' FAC ¶ 31;

June 22, 2026
Page 5

**Weil, Gotshal & Manges LLP**

Defendants maintain that Defendants' Request Nos. 4, 5, and 7 are appropriately tailored. These topics are central to Plaintiffs' claims concerning the Board's authority, corporate governance, and Defendants' alleged interference with the Board's independence. Request No. 4 addresses the impact of Ben & Jerry's social-mission posts on the Ben & Jerry's business, which Plaintiffs invoke in several causes of action. *See, e.g.*, FAC ¶ 135. It is therefore plainly relevant, and because Defendants only seek documents dating to January 1, 2022, it is sufficiently narrow. With respect to Request No. 5 specifically, we explained at the meet and confer that the decision to stop selling Ben & Jerry's products in Israeli-only settlements is relevant to Plaintiffs' claims of alleged muzzling and Defendants' good-faith decision not to fund certain charitable organizations proposed by the former Chair. As for Request No. 7, Defendants explained that documents and communications concerning the demerger are central to Plaintiffs' allegations of pretext. Specifically, Plaintiffs imply in the FAC that the demerger was tied to Defendants' challenged governance conduct. *See* FAC ¶¶ 109-111. Plaintiffs also include the demerger as context for "Defendants' [alleged] coordinated campaign" to "inappropriately shift[] the independent directors' authority to its control." *Id.* ¶¶ 122-23. Because Plaintiffs themselves place these issues at the center of the case, Defendants are entitled to discovery on these issues.

    ii. <u>Former-Chair Mittal and the BI Investigation</u> (Request Nos. 8, 9, 13, 14, 19, and 21)

These requests seek documents and communications concerning former Chair Mittal's conduct that rendered her ineligible to serve on the Board, including documents and communications concerning the National Legal and Policy Center's complaint against Mittal, the New York Post article reporting the same, Mittal's relationship with the Oakland Institute, and complaints concerning Mittal's behavior and conduct, as well as documents and communications related to the BI Investigation. The former Class I Directors principally objected to these requests on relevance, overbreadth, and proportionality grounds, contending that documents concerning Mittal's conduct, the BI Investigation, and related third-party complaints are collateral to the breach-of-contract claims and represent an effort to construct an after-the-fact justification for the purportedly pretextual removal scheme.

The former Class I Directors put squarely at issue the propriety of Mittal's conduct. The former Class I Directors repeatedly allege that the BI Investigation was a "sham," challenge the integrity

---

d) 'We Support the Sanders Resolution. As the one-year anniversary of October 7th approaches, with tens of thousands of innocent Palestinian civilians killed and dozens of Israeli hostages still held, we believe in providing critical humanitarian aid, not in sending more weapons. We urge you to join us in calling on the Senate to pass the Sanders Resolution and halt an additional $20 billion in military aid to Israel.' FAC ¶ 37;

e) 'Protect the First Amendment! Free speech and peaceful protests are the lifeblood of our democracy, and student activists have always been at the center of the fight for justice. Political speech is protected by our constitution and peaceful civil disobedience should never be the basis for deportation. Protect your right to dissent and take action with the @ACLU.' FAC ¶ 41;

f) Post regarding the 2025 inauguration of Donald Trump. FAC ¶ 38; and

g) Post regarding Black History Month. FAC ¶ 41."

**Weil, Gotshal & Manges LLP**

==of the investigation, and allege that this was part of Defendants' purported effort to remove Mittal.== *See* FAC ¶ 132. Moreover, the former Class I Directors formally responded to the findings of the BI Investigation in a letter dated December 3, 2025, asserting that "Unilever spew[ed] unsubstantiated allegations that Chair Mittal" and that "Unilever seeks to punish the Independent Board, and specifically Chair Mittal, for defending their rights under the Merger Agreement and the Settlement Agreement." Having placed Mittal's conduct and the legitimacy of the investigation's findings directly at issue, Plaintiffs cannot simultaneously refuse discovery concerning the facts underlying the investigation and Mittal's conduct. At the meet and confer, the former Class I Directors acknowledged the relevance of this information. Defendants request written confirmation that the former Class I Directors will produce all documents and communications responsive to these requests.

With respect to Defendants' Request No. 14, specifically, which sought all documents and communications concerning the Oakland Institute, you stated that Mittal only has an Oakland Institute email address and therefore, this request could encompass all of Mittal's communications with directors and was overbroad. To address this issue, Defendants will narrow the request as follows:

> With regard to Aseel Najib, Daryn Dodson, Jennifer Henderson, Detavio Samuels, Chivy Sok, and Chris Miller, all Documents and Communications Concerning any benefit, including monetary or non-monetary benefits, provided to the Oakland Institute, including Documents and Communications that relate to funding of the Oakland Institute and the Foundation.

> iii. <u>Grants, Donations, and Potential Conflicts</u> (Request Nos. 10–12, 15–16)

Defendants' Request Nos. 10-12 seek documents and communications concerning the designation of Jewish Voice for Peace and CAIR-SFBA as donation recipients, as well as documents and communications concerning the organizations that Unilever proposed and that the former Class I Directors considered and/or rejected. During the meet and confer, you expressed concern that these requests would require the former Class I Directors to detail the entire histories of numerous organizations and stated that you would offer proposals on these requests. While Defendants will consider a reasonable proposal to narrow the request, any communications and documents concerning these organizations—however voluminous—are directly relevant to the claims that Defendants improperly withheld charitable donations to those organizations. Please provide your proposal.

Defendants' Request Nos. 15-16 seek documents and communications concerning monetary or non-monetary benefits received from organizations that received Foundation funding, and any monetary or non-monetary benefits received from companies, vendors, or suppliers that do business with Ben & Jerry's. As addressed during the meet and confer, these requests are relevant because they bear on Plaintiffs' allegations that the Audit and the BI Investigation was pretextual. You objected on the basis that targeting this request at all former Class I Directors was too broad. Defendants disagree, but are willing to  work with the former Class I Directors to propose

reasonable search parameters across the former Class I Directors to capture documents responsive to this request.

    iv. <u>Settlement Agreement, Amendment, and Related Conduct</u> (Request Nos. 52, 18)

Defendants' Request No. 18 seeks documents concerning the use of nondairy ingredients and the transition from almond-based products to oat-based products and Defendants' Request No. 52 seeks documents related to the 2022 Settlement Agreement, including the underlying lawsuit and the negotiation of the agreement and subsequent amendment. With respect to Request No. 18, the former Class I Directors cabined their forthcoming search and production to "the Board's engagement with regards to the Settlement Amendment." As addressed during the meet and confer, the parties' specific obligations under the Settlement Amendment are directly at issue in the FAC, including the obligation to provide "annual payments to Canaan for Palestinian almonds or for the direct benefit of Palestinian almond farmers," *see* FAC ¶¶ 51-52—and Defendants are entitled to discovery into that specific issue. Because Plaintiffs rely on obligations arising from the Settlement Amendment and specifically reference payments benefiting Palestinian almond farmers, discovery concerning these issues is directly relevant to Plaintiffs' claims and Defendants' defenses.

With respect to Request No. 52, the former Class I Directors' limitation to producing the executed Settlement Agreement and Amendment and "subsequent relevant communications regarding the same from December 1, 2023 to December 31, 2025" is insufficient. December 1, 2023, is an arbitrary date to search for relevant communications because the Settlement Agreement was negotiated and executed in 2022.

    v. <u>Media, Public Campaigns, and Third-Party Communications</u> (Request Nos. 34, 36–45)

These requests seek documents concerning the #FreeBenandJerrys campaign, the #FreetheCone campaign, the #HandsofftheFoundation campaign, the Rolling Cone, communications with media outlets, activists, environmental groups, and efforts to generate publicity regarding this Action or Defendants. The former Class I Directors principally object on relevance grounds. Defendants disagree. Plaintiffs seek damages based in part on the alleged harm to Ben & Jerry's brand, reputation, goodwill, and social mission. Documents concerning public campaigns, media activity, third-party advocacy efforts, and attempts to influence public perception bear directly on causation, damages, and Defendants' contention that any alleged reputational harm was caused, at least in part, by Plaintiffs' own conduct.

    vi. <u>Litigation Funding and Damages</u> (Request Nos. 46 and 53)

Request No. 46 seeks documents concerning the funding of this Action, and Request No. 53 seeks documents concerning Plaintiffs' allegations of reputational, goodwill, and financial harm. Many courts have ordered the production of litigation funding documents and some courts even have standing orders requiring their production. That is because, among other things, documents concerning litigation funding bear on Plaintiffs' motivations and objectives in pursuing this litigation. Likewise, documents concerning alleged damages are directly relevant to Plaintiffs'

claims and Defendants' defenses. Defendants seek only documents and communications concerning these subjects, not expert analyses or testimony. Counsel stated during the meet and confer that the former Class I Directors would amend their response to Request No. 53.

 vii. <u>Documents in Support of Former Class I Directors' Claims</u> (Request No. 55)

The former Class I Directors' objection to Defendants' Request No. 55 seeking documents and communications the former Class I Directors may rely on is improper. Defendants expect the former Class I Directors to provide the documentation in support of their claims during the fact discovery period, which the Court scheduled to close on September 30, 2026, and with sufficient time for Defendants to question the former Class I Directors' witnesses at deposition about such documents within that same time period.

## III. Former Class I Directors' Responses to Interrogatories

The former Class I Directors' responses to Defendants' Interrogatories are unverified and therefore improper under Federal Rule of Civil Procedure 33. Verified responses were due on June 5, which was extended by agreement to June 8. They are therefore two weeks past due.

Moreover, the former Class I Directors' objections are without merit. The Interrogatories seek information regarding (1) statements allegedly inconsistent with Ben & Jerry's social mission and brand integrity, (2) the calculation and categories of damages claimed by the former Class I Directors, (3) persons with knowledge of facts concerning the charitable payments and designees under the Settlement Agreement and Settlement Amendment, (4) persons involved in the publication and distribution of the Rolling Cone Substack newsletter, (5) third-party litigation funding, and (6) potential investors or buyers of the Ben & Jerry's business. The former Class I Directors provided no substantive response for Interrogatory Nos. 4, 5, and 6 and only provided a partial response for Interrogatory No. 2, as no specific dollar amounts related to the claim damages were provided.  The information sought is relevant to this Action because Plaintiffs seek damages based in part on alleged harm to the Ben & Jerry's brand, reputation, goodwill, and social mission. The publication and distribution of the Rolling Cone is relevant to allegations concerning attempts to influence public perception and bear directly on causation, damages, and allegations of reputational harm. Likewise, the funding of this litigation and the involvement of investors also concern Plaintiffs allegations of reputational, goodwill, and financial harm. Accordingly, the former Class I Directors must promptly serve verified, complete interrogatory responses that provide the requested substantive information.

* * *

June 22, 2026
Page 9

**Weil, Gotshal & Manges LLP**

Please provide the responses to the outstanding issues identified above by June 26, 2026. Absent agreement by the former Class I Directors on any issue identified herein, we will consider the parties to be at an impasse and will proceed accordingly.

## II. Former Class I Directors' Requests for Production to Defendants

### A. Requests Pertaining to the BI Investigation (Request Nos. 41-59)

With respect to the former Class I Directors' Requests pertaining to the BI Investigation (Request Nos. 41-59), Defendants agreed to "produce non-privileged documents sufficient to show that Mittal is ineligible to serve on the Board," but will not produce privileged documents. During the meet and confer, we stated that documents and communications pertaining to the BI Investigation are privileged, but that Defendants will produce all relevant and non-privileged documents to support the claim that Anuradha Mittal is ineligible to serve on the Board.

### B. Requests Pertaining to the Audit of the Ben & Jerry's Foundation (Request Nos. 64-76)

With respect to the requests pertaining to the Foundation Audit (former Class I Directors' Request Nos. 64-76), Defendants maintain that documents concerning the Audit are protected by the attorney-client privilege and/or work-product doctrine to the extent they reflect legal advice or were prepared in anticipation of litigation. During the meet and confer, Defendants offered to produce the final Audit report if the former Class I Directors and the Foundation agree that such production will not be asserted as a basis for waiver of privilege with respect to other Audit materials. To the extent this proposal is not amenable to the former Class I Directors and the Foundation, Defendants are available to meet and confer after Plaintiffs have reviewed Defendants' privilege log.

With respect to former Class I Directors' Request No. 65 ("All engagement agreements with auditors related to the Foundation Audit") and Request No. 66 ("All scopes of work sent to or received from auditors related to the Foundation audit"), we stated we would produce documents responsive to these requests to the extent they are not privileged. With respect to Request No. 70 ("All notes, memoranda, and other documents reflecting the facts obtained and findings of any auditors or investigators involved in the Foundation Audit"), Request No. 71 ("Your complete file related to the Foundation Audit"), Request No. 76 ("All documents and communications related to any revisions Defendants made to any version of the audit report regarding the Foundation Audit"), and Request No. 77 ("All notes, minutes, and documents reflecting the discussions at the October 10, 2025 meeting between Anuradha Mittal and Maria Varsellona"), we stated that our objection is based on privilege.

### C. Requests Pertaining to Communications Involving Jeffrey Eglash (Request Nos. 9 and 89)

With respect to requests pertaining to communications involving Jeffrey Eglash, we stated our position that to the extent Mr. Eglash was conveying legal advice or advising as in-house counsel for Ben & Jerry's, every communication between Mr. Eglash and Ben & Jerry's personnel is

privileged. Counsel for the former Class I Directors inquired about Mr. Eglash's dual role as Chief Business Integrity Officer and whether communications involving Mr. Eglash in that capacity would also be privileged. We stated that Mr. Eglash's communications are presumptively privileged due to his role as legal advisor to Ben & Jerry's.

**D. Requests for Documents and Communications After December 31, 2025**

With respect to the former Class I Directors' requests for documents and communications after December 31, 2025, we stated our position that no documents after this date would be relevant given that the allegations in Plaintiffs' FAC pertain to alleged improper removal, and none of the former Class I Directors served on the Board after 2025. We asked for specific examples of requests that Plaintiffs believe should run to the present. The former Class I Directors stated that it would send a list but have not yet done so, more than two weeks later. Accordingly, we do not intend to search for or produce any documents from after December 31, 2025, in response to the Directors' requests.

**E. Requests on Which We Agreed to Confer Internally** (Request Nos. 25, 26, 36, 37, 40, 63, 78, 86, 87, and 91)

We agreed to confer internally and inform Plaintiffs of our positions on ten of the former Class I Directors' requests. Our positions are set forth below:

- With respect to Request No. 25 ("All documents and communications relating to the impact of Ben & Jerry's Social Mission on Defendants' reputation, goodwill, customer relations, or financial performance, including but not limited to market studies, customer feedback, and internal analysis"), we will produce relevant, non-privileged documents and communications sufficient to show the impact of Ben & Jerry's Social Mission on Defendants' reputation, goodwill, customer relations, or financial performance.

- With respect to Request No. 26 ("All documents and communications relating to the impact of Ben & Jerry's Independent Board on Defendants' reputation, goodwill, customer relations, or financial performance, including but not limited to market studies, customer feedback, and internal analyses"), we will produce relevant, non-privileged documents and communications sufficient to show the impact of the Ben & Jerry's Board on Defendants' reputation, goodwill, customer relations, or financial performance.

- With respect to Request No. 36 ("All documents and communications regarding any analyses performed regarding the use of Canaan Fair Trade products in Unilever or Magnum products"), Defendants stand on their objections. We will not produce any documents or communications responsive to this request.

- With respect to Request No. 37 ("All documents and communications regarding any analyses performed regarding the use of Canaan Fair Trade products in the proposed Ben & Jerry's Gaza flavor"), we will produce relevant, non-privileged documents and

**Weil, Gotshal & Manges LLP**

communications sufficient to show any analyses performed regarding the use of Canaan Fair Trade products in the proposed Ben & Jerry's Gaza flavor.

- With respect to Request No. 40 ("All documents and communications regarding the sourcing of Ben & Jerry's ingredients from Palestinian farmers and any cessation of such sourcing, including but not limited to contracts, payment records, internal reports, and communications with and concerning Canaan Fair Trade"), assuming this request refers to the Settlement Amendment, we agree to produce relevant, non-privileged documents and communications responsive to this request.

- With respect to Request No. 63 ("All of Skadden, Arps, Slate, Meagher & Flom LLP's invoices for service provided related to the Mittal Business Integrity Investigation"), we accept counsel's proposed compromise of seeking Skadden's date of engagement and total hours worked. We will produce a document sufficient to show this information.

- With respect to Request No. 78 ("All minutes of meetings of the Independent Board from December 15, 2025 to present"), in the interest of compromise, Defendants will produce non-privileged meeting minutes of the Board from December 15, 2025 to present.

- With respect to Request No. 86 ("All documents and communications from the period between October 7, 2023 and present, relating to the selection, approval, rejection, or redirection of donations, grants or contributions by Defendants to Magen David Adom or to any other Israeli entity, organization, initiative or undertaking—including but not limited to those affiliated with, supporting, or working in indirect or direct coordination with Magen David Adom, the Israeli Army, any Israeli governmental agency, or any Israeli corporation or non-governmental organization"), Defendants stand on their objections. We will not produce any documents or communications in response to this request.

- With respect to Request No. 87 ("All documents and communications from the period between December 13, 2022, and present relating to Defendants' characterization of any organization as 'anti-Israel' or otherwise objectionable for purposes of receiving donations from Ben & Jerry's, the Ben & Jerry's Foundation, or the Board"), we will produce relevant, non-privileged documents and communications sufficient to show Defendants' characterization of any organization as "anti-Israel" or otherwise objectionable for purposes of receiving donations from Ben & Jerry's, the Ben & Jerry's Foundation, or the Board.

- With respect to Request No. 91 ("All documents and communications regarding identifying a firm or third party other than Skadden to lead the investigation into the allegations against Chair Mittal"), Defendants stand on their objections. Defendants will not produce any documents or communications responsive to this request.

## IV. Subpoena to Ben Cohen

June 22, 2026
Page 12

**Weil, Gotshal & Manges LLP**

Defendants do not agree to limit their requests to Ben Cohen to communications with the former Class I Directors, as counsel suggested during the meet and confer. Cohen is not a true third party; he is, in fact, listed on the former Class I Directors' Initial Disclosures as an "individual likely to have discoverable information." Cohen possesses evidence directly relevant to this dispute and Defendants expect Cohen to produce documents responsive to Defendants' requests. To the extent counsel has specific objections to a particular request, state such specific objections and the parties will discuss during a meet and confer.

## V. Subpoena to the Oakland Institute

Defendants do not agree to preemptively limit their requests to the Oakland Institute. The Oakland Institute's relationship with the Foundation, Mittal, other Trustees of the Foundation, and the former Class I Directors bear directly on Plaintiffs' claims and Defendants' defenses. To the extent counsel has specific objections to a particular request, state such specific objections and the parties will discuss during a meet and confer.

\* \* \*

Please provide the responses to the outstanding issues identified above by June 26, 2026. Absent agreement by the former Class I Directors on any issue identified herein, we will consider the parties to be at an impasse and will proceed accordingly.

Defendants reserve all rights.

Respectfully,

*/s/ Luna N. Barrington*

**WEIL, GOTSHAL & MANGES LLP**

Luna N. Barrington