**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BEN & JERRY'S HOMEMADE, INC., CLASS I DIRECTORS OF BEN & JERRY'S INDEPENDENT BOARD, and THE BEN & JERRY'S FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNILEVER PLC, CONOPCO, INC., THE MAGNUM ICE CREAM COMPANY N.V., and BEN & JERRY'S HOLDCO, LLC, <br><br> Defendants. | Case No. 1:24-cv-08641-PKC |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTIONS TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT**
**<u>AND TO DISMISS OR SUBSTITUTE UNILEVER AND CONOPCO</u>**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT..............................................................................................................................2

    A.  Plaintiffs Concede that the Bylaw Amendments Were Lawful, Nullifying a Claim For Breach of Section 6.14(a) of the Merger Agreement .....................................................2

    B.  The Plain Language of Section 6.14 Merits Dismissal of Plaintiffs' Other Claims ............4

        1.  Plaintiffs Lack Standing to Assert Claims Under Sections 6.14(b), (c), (e), (f), (h), (j), and (i) On Their Behalf or On Behalf of B&J.................................................4

        2.  Plaintiffs Fail To Allege Breaches of Section 6.14 of the Merger Agreement.............8

    C.  Plaintiffs Fail to Allege Breaches of the Settlement Agreement ......................................10

    D.  Plaintiffs' Allegations Are Insufficient to Assert Cognizable Damages ...........................10

    E.  The Former Class I Directors' Declaratory Judgment Claims Must Be Dismissed Because They Are Moot and Serve No Useful Purpose ......................................................12

    F.  The Implied Covenant Claim Must Be Dismissed ...........................................................13

    G.  BJF's Unjust Enrichment Claim Must Be Dismissed.......................................................13

    H.  Unilever and Conopco Should Be Substituted or Dismissed.............................................14

        1.  Unilever and Conopco Should Be Dismissed..............................................................14

        2.  Alternatively, The Court Should Substitute TMICC and HoldCo for Unilever And Conopco .............................................................................................................15

CONCLUSION...........................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AAIPharma Inc. v. Kremers Urb. Dev. Co.*,
   2010 WL 11570154 (S.D.N.Y. Feb. 16, 2010)..........................................................................15

*Airlines Reporting Corp. v. Pro Travel, Inc.*,
   657 N.Y.S.2d 654 (1st Dep't 1997)..........................................................................................7

*Alta Partners, LLC v. BitFuFu Inc.*,
   2025 WL 2145557 (S.D.N.Y. July 29, 2025).........................................................................10

*Aniero Concrete Co. v. N.Y.C. Constr. Auth.*,
   308 F. Supp. 2d 164 (S.D.N.Y. 2003)......................................................................................13

*Bajan Grp., Inc. v. Consumers Interstate Corp.*,
   958 N.Y.S.2d 59 (Sup. Ct. Albany Cnty. 2010) .......................................................................7

*Bernstein v. O'Reilly*,
   2019 WL 10995111 (S.D.N.Y. Mar. 5, 2019) .........................................................................11

*Bruce Winston Gem Corp. v. Harry Winston, Inc.*,
   2010 WL 3629592 (S.D.N.Y. Sept. 16, 2010).........................................................................12

*Calcano v. Swarovski N. Am. Ltd.*,
   36 F.4th 68 (2d Cir. 2022) ......................................................................................................14

*In re Chalasani*,
   92 F.3d 1300 (2d Cir. 1996).....................................................................................................15

*Coventry Enters. LLC v. Sanomedics Int'l Holdings, Inc.*,
   2015 WL 4486335 (S.D.N.Y. July 23, 2015) ...........................................................................6

*Croteau v. A.C. and S. (In re N.Y.C. Asbestos Litig.)*,
   838 N.Y.S.2d 76 (1st Dep't 2007) .............................................................................................4

*Doe v. McDonald*,
   128 F.4th 379 (2d Cir. 2025) ...................................................................................................13

*EFG Bank AG v. AXA Equitable Life Ins. Co.*,
   309 F. Supp. 3d 89 (S.D.N.Y. 2018).......................................................................................12

*Fashion G5 LLC v. Anstalt*,
   2016 WL 7009043 (S.D.N.Y. Nov. 29, 2016).........................................................................15

*Fed. Hous. Fin. Agency v. Morgan Stanley ABS Cap. I Inc.*,
  73 N.Y.S.3d 374 (Sup. Ct. N.Y. Cnty. 2018) ...........................................................................11

*Fischkoff v. Iovance Biotherapeutics, Inc.*,
  2018 WL 4574890 (S.D.N.Y. July 5, 2018) ...........................................................................13

*In re Fyre Festival Litig.*,
  399 F. Supp. 3d 203 (S.D.N.Y. 2019).....................................................................................14

*Genger v. Genger*,
  76 F. Supp. 3d 488 (S.D.N.Y. 2015).........................................................................................7

*Gerdau Ameristeel US Inc. v. Ameron Int'l Corp.*,
  2014 WL 3639176 (S.D.N.Y. July 22, 2014) ...........................................................................9

*Gerszberg v. Iconix Brand Grp., Inc.*,
  2018 WL 2108239 (S.D.N.Y. May 7, 2018) ...........................................................................14

*Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  530 F. Supp. 3d 447 (S.D.N.Y. 2021)....................................................................................4, 8

*Hill v. Holder*,
  348 F. App'x 653 (2d Cir. 2009) ...........................................................................................15

*JN Contemp. Art LLC v. Phillips Auctioneers LLC*,
  29 F.4th 118 (2d Cir. 2022) ...................................................................................................13

*Jujamcyn Theaters LLC v. Fed. Ins. Co.*,
  659 F. Supp. 3d 372 (S.D.N.Y. 2023)....................................................................................12

*Khodeir v. Sayyed*,
  323 F.R.D. 193 (S.D.N.Y. 2017) ......................................................................................10, 11

*Lebowitz v. Dow Jones & Co.*,
  508 F. App'x 83 (2d Cir. 2013) ...............................................................................................7

*MAK Tech. Holdings Inc. v. Anyvision Interactive Techs. Ltd.*,
  249 N.E.3d 1194 (N.Y. 2024)...................................................................................................5

*Metro. Transp. Auth. v. Duffy*,
  2026 WL 588117 (S.D.N.Y. Mar. 3, 2026) ..............................................................................8

*Nat'l Union Fire Ins. Co. v. Int'l Wire Grp.*,
  2003 WL 21277114 (S.D.N.Y. June 2, 2003) .........................................................................13

*Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*,
  273 F. Supp. 2d 436 (S.D.N.Y. 2003)......................................................................................5

iii

*Papazian v. Sony Music Ent.*,
   2017 WL 10154498 (S.D.N.Y. Nov. 22, 2017)........................................................................14

*Powers v. Ohio*,
   499 U.S. 400 (1991).................................................................................................................12

*Prickett v. N.Y. Life Ins. Co.*,
   896 F. Supp. 2d 236 (S.D.N.Y. 2012)........................................................................................9

*RIJ Pharm. Corp. v. Ivax Pharm., Inc.*,
   322 F. Supp. 2d 406 (S.D.N.Y. 2004)......................................................................................11

*Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*,
   920 N.E.2d 359 (N.Y. 2009)......................................................................................................5

*Software Freedom Conservancy, Inc. v. Best Buy Co.*,
   2010 WL 4860780 (S.D.N.Y. Nov. 29, 2010)..........................................................................15

*Storms v. United States*,
   2015 WL 1196592 (E.D.N.Y. 2015)........................................................................................12

*Wisdom Import Sales Co., LLC v. Labatt Brewing Co.*,
   339 F.3d 101 (2d Cir. 2003).....................................................................................................11

**Statutes**

11A V.S.A. § 20.09.........................................................................................................................6

## PRELIMINARY STATEMENT[1]

All parties agree that the role of the limited purpose Board is defined and governed by the plain language of documents negotiated and entered into over 25 years ago, rendering this dispute appropriate for decision on a motion to dismiss before the parties expend additional resources on discovery. The governing documents demarcate the Board's limited role, state who can enforce what provisions and when, set forth eligibility requirements for all directors, permit the Shareholder to amend the Bylaws and Articles of Incorporation, and, in virtually all circumstances, rest ultimate decision-making with the Shareholder (acting through the CEO)—not the Class I Directors. Plaintiffs do not—and cannot—dispute these facts, yet they ask this Court to ignore the Merger Agreement's express language, including the disclaimer of their right to enforce nearly all of the provisions they invoke in the FAC, and well-settled law on contract interpretation.

Plaintiffs cannot manufacture standing by over-emphasizing irrelevant words in unrelated provisions that do not bear on the authority to sue to enforce the Merger Agreement. Nor can Plaintiffs identify any cognizable harm, rebut that the former Class I Directors—as non-parties to the Merger Agreement—cannot pursue an implied covenant claim, assert an unjust enrichment claim where the Merger Agreement explicitly governs, or offer a response to Defendants' showing that declaratory relief would not resolve any live dispute. Further, they ignore the plain language of Unilever's and Conopco's agreements with TMICC and HoldCo that warrant substitution. For all these reasons, the Court should dismiss all but two claims so discovery can focus on those remaining claims and dismiss Unilever and Conopco as parties.

---

[1] Capitalized and abbreviated terms used but not defined herein have the meaning ascribed to them in Defendants' Memorandum of Law in Support of Their Motion to Dismiss. *See* ECF No. 118 ("MTD Brief" or "MTD Br.").

**ARGUMENT**

**A.    Plaintiffs Concede that the Bylaw Amendments Were Lawful, Nullifying a Claim For Breach of Section 6.14(a) of the Merger Agreement**

Plaintiffs do not dispute that B&J's Shareholder has the sole authority to amend B&J's governing documents or that it acted pursuant to its authority to update the eligibility requirements. *See* ECF No. 133 ("Opp.") at 12–13 (Holdco "*lawfully* amended the bylaws" of B&J) (emphasis added). Instead, contrary to the actual language of the governing documents and the amendments, Plaintiffs recast the December 2025 amendments as "overrid[ing] existing contractual obligations" and "nullify[ing] bargained-for protections for Class I Director composition and removal." *See id.* at 13. In so doing, Plaintiffs ignore the fundamental—and undisputed—facts that (1) B&J's governing documents have *always* subjected directors to eligibility criteria, (2) ineligible directors have *never* been permitted to stand for renomination at the expiration of each annual term, (3) the Shareholder is entitled to update the Bylaws and Articles of Incorporation so long as it does not remove any *particular* director in violation of Section 6.14(a) of the Merger Agreement—which it did not here, and (4) the Class I Directors chose to render themselves ineligible by not signing the TMICC Code. Their regret over their own informed and deliberate choices should not subject Defendants to over-expansive discovery on untenable claims and further delay resolution of this dispute.

Since Unilever acquired B&J in 2000, B&J's governing documents have uniformly and consistently imposed eligibility requirements on Board members and provided for one-year terms. *See* 2000 Bylaws Art. 3 (regulating the powers, number, tenure, and qualifications of directors); *see also* Merger Agrmt § 6.14(a) (directors must maintain eligibility and be elected to one-year terms on the Board); 2000 Articles Art. 7 (same). At the same time, B&J's governing documents from the very beginning gave *only* the Shareholder the exclusive authority to amend the Bylaws,

2

including its eligibility requirements for Board service. *See* 2000 Bylaws § 7.5; 2000 Articles, Art. 8. And pursuant to that authority, the Shareholder lawfully amended B&J's Bylaws, applicable to *any* person who wishes to serve on the Board, to impose a limit on the number of one-year terms a director may serve and to reinforce the eligibility requirements. In so doing, the Shareholder did not shorten the one-year term set forth in the Merger Agreement or otherwise curtail that language.[2]

As Plaintiffs' opposition brief confirms, "the majority of" the then-serving Class I Directors "had served less than nine years" when the Shareholder amended the Bylaws in December 2025, Opp. at 14, and those directors could have, under the 2025 Bylaws, retained their eligibility and *continued to serve* merely by certifying adherence to the TMICC Code. *See* MTD Br. at 12–13; FAC ¶ 117. Plaintiffs' explicit and tacit concessions that these directors could continue to serve on the Board only underscores that the Shareholder did not *remove* these or the other directors. The amendments merely reiterated Section 6.14(j)'s condition that board members' *prospective* eligibility required signing and complying with the applicable code of conduct, and, in light of the Demerger, defined the applicable code as TMICC's rather than Unilever's. Their choice not to satisfy long-standing eligibility requirements—not the Shareholder's legitimate conduct—caused their departure.

Finally, although Plaintiffs claim that Defendants "overlook" the FAC's allegations about Chris Miller, Opp. at 15, their concessions actually undermine their claim. Plaintiffs acknowledge that the Merger Agreement allows *only* the Shareholder to cause the election of a Class I Director. *See* Merger Agrmt § 6.14(a). Plaintiffs now concede that the role of Class I Directors is to

---

[2] Because the Shareholder's authority to amend the Bylaws without breaching the Merger Agreement is apparent on the face of B&J's governing documents, Plaintiffs' citation to *Icahn Sch. of Med. at Mount Sinai v. Neurocrine Biosciences, Inc.* actually *supports* dismissal because, there, the court *granted* the defendant's motion to dismiss because "a plain reading of the [agreement's] definitions of the[] terms" could not support the plaintiff's breach allegation. 191 F. Supp. 3d 322, 331 (S.D.N.Y. 2016).

"*designate* the candidates for election to the [] Board," not *elect* them. Opp. at 12 (emphasis added). Plaintiffs alleged neither that they designated Miller for election nor that the Shareholder committed a breach by failing to elect him thereafter, *see id.* at 15–16. Instead, the FAC claims that the failure to "recogniz[e] the valid election of Chris Miller as a Class I Director" is what constituted a breach. FAC ¶ 132(c). Plaintiffs cannot state a claim for breach because, as they now admit, the Merger Agreement does not permit the Class I Directors to conduct an "election."

**B.**     **The Plain Language of Section 6.14 Merits Dismissal of Plaintiffs' Other Claims**

      **1.**     **Plaintiffs Lack Standing to Assert Claims Under Sections 6.14(b), (c), (e), (f), (h), (j), and (i) On Their Behalf or On Behalf of B&J**

Plaintiffs may not establish standing by relying on an allegation that is contradicted by the plain terms of the Merger Agreement. *See Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 530 F. Supp. 3d 447, 453 (S.D.N.Y. 2021). Tellingly, Plaintiffs do not address the fact that Section 9.07 of the Merger Agreement directly contravenes their allegations and only authorizes the former Class I Directors and BJF to sue to enforce Sections 6.14(a) and 6.15, respectively, and expressly *disclaims* their ability—as non-parties to the Merger Agreement—to sue for breach of *any other* subprovision of Section 6.14. *See* Merger Agrmt § 9.07. That the language of Section 9.07 explicitly disclaims Plaintiffs' ability to enforce these provisions while *simultaneously* granting them the ability to enforce Sections 6.14(a) and 6.15 makes clear that the Merger Agreement was intended to omit any enforcement capability—either on their own behalf or B&J's—and does not permit Plaintiffs to assert claims under Sections 6.14(b), (c), (e), (f), (h), (j), and (i). *Croteau v. A.C. and S. (In re N.Y.C. Asbestos Litig.)*, 838 N.Y.S.2d 76, 80 (1st Dep't 2007) (the "expression of one thing implies the exclusion of the other"); *Hertz Glob. Holdings, Inc.*, 530 F. Supp. 3d at 453.

To distract from this clear conclusion, Plaintiffs claim that the dictionary definitions of "primary," "safeguard," "preserve," and "custodian" found elsewhere in Section 6.14 somehow authorize the former Class I Directors to sue on B&J's behalf. But the Merger Agreement "should be read as a whole to ensure that undue emphasis is not placed upon [] particular words and phrases" in subprovisions that have nothing to do with standing. *MAK Tech. Holdings Inc. v. Anyvision Interactive Techs. Ltd.*, 249 N.E.3d 1194, 1199 (N.Y. 2024) (quotations omitted). Moreover, the Court "cannot and should not accept an interpretation that . . . creates a conflict where one need not exist." *Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 445 (S.D.N.Y. 2003) (quotations omitted). Interpreting these words to enable Plaintiffs to enforce the other provisions of Section 6.14 would place undue emphasis on them and write in an enforcement authority that is absent from the Merger Agreement and in direct conflict with Section 9.07. Accordingly, these terms cannot purport to confer standing on Plaintiffs to bring claims under Section 6.14. *See id.; MAK Tech. Holdings Inc.*, 249 N.E.3d at 1199; *see also Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 920 N.E.2d 359, 363 (N.Y. 2009) ("Courts may not by construction add or excise terms, nor distort the meaning of those used[.]" (quotations omitted)).

Plaintiffs' argument also would require the Court to disregard the careful balance set forth in the Merger and Shareholders Agreements, which make clear that the *Shareholder*—acting through the CEO—retains all powers not specifically delegated to the Board.[3] *See* Merger Agrmt § 6.14(b) ("delegat[ing] authority to the CEO to manage the affairs of [B&J]"); *id.* § 6.14(j) (the Shareholder "shall have primary responsibility for . . . the other aspects of [B&J] not allocated to the [] Board"); Shareholders Agrmt § 1(l) ("[a]ll rights, powers and authority not specifically granted" to the Board are "reserved to the Shareholder"). Moreover, Plaintiffs ignore that Sections

---

[3] Contrary to Plaintiffs' assertion, Opp. at 22, Defendants have maintained throughout briefing that the governing documents give only the Shareholder *or* the CEO the authority to sue on B&J's behalf. *See* ECF No. 40 at 16.

6.14(e) and (f) do not give the Board *sole* authority over social mission and brand integrity issues but require directors to *collaborate* with the CEO. *See* Merger Agrmt §§ 6.14(e)–(f) (the Board must "work together with the CEO" on those matters). Thus, every corner of Sections 6.14 and 9.07 of the Merger Agreement (plus the Shareholders Agreement) make clear that, while Class I Directors have certain responsibilities over B&J's social mission and brand integrity, they are limited and shared, and they do not extend to suing when they disagree with decisions of the Shareholder, except under the limited circumstances defined in Section 9.07.[4]

There is nothing unusual or illusory about this framework. Vermont law permits the shareholder of a close corporation to operate the company with no board at all, or, as is the case here, to choose to institute a board with a limited purpose and limited rights. *See* 11A V.S.A. § 20.09. The Shareholder here chose a limited purpose, in which Class I Directors must "work together" with the CEO to come up with solutions when disagreements arise or leave it to the Shareholder to pursue claims on B&J's behalf. Courts also "avoid an interpretation that renders a contract illusory" *unless* the contract reveals a "lack of mutuality of obligation." *Coventry Enters. LLC v. Sanomedics Int'l Holdings, Inc.*, 2015 WL 4486335, at *4 (S.D.N.Y. July 23, 2015) (cleaned up). No lack of obligation exists here: the Merger Agreement was heavily negotiated and is a binding contract that sets out the rights and responsibilities of each of the parties to the Agreement, as well as of the Board and BJF. The decision not to grant Class I Directors the ability to enforce Section 6.14 (except 6.14(a)) does not make those rights illusory and is permitted under Vermont law. *See id.;* 11A V.S.A. § 20.09. And, the fact that the Merger and Shareholders Agreements give the Shareholder discretion to hire or fire a CEO empowered to sue on behalf of

---

[4] *HK Kolmar USA, LLC v. Wormser Corp.* supports this position. 813 F. Supp. 3d 430, 446 (S.D.N.Y. 2025). There, the court held that "the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed." *Id.* Here, as described above, several unambiguous provisions of the Merger and Shareholders Agreements demonstrate that the Board's authority is limited and shared with the CEO.

B&J does not render the rights illusory, as it is black letter law that "a contract is not illusory merely because its terms give discretion to one party[.]" *Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83, 84 (2d Cir. 2013).[5]

Plaintiffs' reliance on the Settlement Agreement and inaccurate reading of the Shareholders Agreement do not override the plain language of the Merger Agreement. First, the former Class I Directors' "alignment" with B&J in the Settlement Agreement is irrelevant for standing because "[a] contracting party generally has a right to maintain an action in its *own name*" alone. *Airlines Reporting Corp. v. Pro Travel, Inc.*, 657 N.Y.S.2d 654, 655 (1st Dep't 1997) (emphasis added). This has nothing to do with whether the former Class I Directors can sue in the name of B&J or under other agreements. Second, Plaintiffs' contention that the Shareholders Agreement does not bear on standing because it "is not a contract between the relevant parties," Opp. at 21, is nonsensical, as the Shareholders Agreement is a contract between Conopco and B&J—the same parties that contemporaneously executed the Merger Agreement. *See* Merger Agrmt; Shareholders Agrmt. In fact, the Shareholders Agreement *reinforces* the Board's limited role outlined in the Merger Agreement, *see* Shareholders Agrmt §§ 1(e)–(f), and makes clear that the parties "designed [the Shareholders Agreement] to effectuate" the same purpose as the Merger Agreement to limit the Board's role. *Genger v. Genger*, 76 F. Supp. 3d 488, 496 (S.D.N.Y. 2015), *aff'd*, 663 F. App'x 44 (2d Cir. 2016).

Finally, the Court's order permitting BJF to intervene to assert its own claims does not confer standing. Opp. at 32–33. The Court's permissive intervention order is silent on whether BJF established standing. *See* ECF No. 77 at 3–4. And, where, as here, the intervenor "seeks additional relief beyond which the [original] plaintiff requests," it "is required to establish standing itself."

---

[5] *Bajan Grp., Inc. v. Consumers Interstate Corp.*, 958 N.Y.S.2d 59 (Sup. Ct. Albany Cnty. 2010), is inapposite because the court concluded that a promise was illusory because, unlike here, no binding contract was ever formed. *Id.*

*Metro. Transp. Auth. v. Duffy*, 2026 WL 588117, at *13 (S.D.N.Y. Mar. 3, 2026). Because BJF seeks damages arising from its alleged loss of funding, which is not sought by the former Class I Directors, it cannot rest on its permissive intervention to establish standing.[6] Plaintiffs also erroneously argue that BJF may sue to enforce Section 6.14(h) because the provision "was intended to benefit" BJF. Opp. at 33 n.10. But that argument is contradicted by the plain language of the Merger Agreement, which expressly states that Section 6.14(h) is "not intended to confer upon any [non-party] any rights or remedies" and omits any mention of BJF's ability to enforce Section 6.14(h); the plain language of the Merger Agreement only authorizes BJF to enforce Section 6.15 with respect to the initial one-time contribution to BJF in 2000. Merger Agrmt. § 9.07; *see also Hertz Glob. Holdings, Inc.*, 530 F. Supp. 3d at 453.

### 2.    Plaintiffs Fail To Allege Breaches of Section 6.14 of the Merger Agreement

Even if Plaintiffs had standing to sue—which they do not—they fail to state claims for breach of contract under the Merger Agreement.

***Section 6.14(c)***: The FAC shows that Defendants *complied* with their obligation under Section 6.14(c) to consult with the Board regarding B&J CEO Dave Stever and the appointment of a replacement following Stever's voluntary resignation. *See* MTD Br. at 9–10, 24; ¶¶ FAC 60–62. Following this concession, Plaintiffs make a conclusory statement, unsupported by law or fact, that the consultation was "not good faith." Opp. at 24. That unsupported statement is not enough to state a claim for breach of Section 6.14(c). *See Kortright Cap. Partners LP*, 257 F. Supp. 3d at 360 ("[C]onclusory allegations of a party's failure to act in good faith alone are insufficient; specific factual allegations of a party's bad faith acts are required." (internal quotations omitted)).

---

[6] *Town of Chester, N.Y. v. Laroe Ests., Inc.*, on which Plaintiffs rely, is inapposite because there, the intervention was of right, whereas BJF was granted permissive intervention. 581 U.S. 433, 439 (2017).

***Sections 6.14(e), (f), and (i)***: On a motion to dismiss, the court need not "accept the allegations of the [complaint] regarding the construction of the [contract]," but instead can "interpret [the] contract properly before it." *Gerdau Ameristeel US Inc. v. Ameron Int'l Corp.*, 2014 WL 3639176, at *3 (S.D.N.Y. July 22, 2014) (quotations omitted). Here, Sections 6.14(e) and (f) of the Merger Agreement and Sections 1(e) and (f) of the Shareholders Agreement limit the former Class I Directors only to "primary" responsibility over B&J's social mission and essential brand integrity and require them to "work together" with the B&J CEO on such issues. *See* Merger Agrmt §§ 6.14(e)–(f); Shareholders Agrmt §§ 1(e)–(f). Thus, the contracts expressly contemplate that the Class I Directors' authority would be shared, not absolute, on matters related to the social mission and brand integrity.[7]

***Section 6.14(h)*** explicitly provides that Unilever's (now TMICC's) obligation to fund BJF was for ten years and they can cease funding at any time thereafter if BJF's activities "cease to be reasonably acceptable *to* Unilever"—now TMICC—and if BJF fails to "meet[] [] other requirements" specified in Section 6.14(h), including that no BJF trustee "disparages" B&J. *See* Merger Agrmt § 6.14(h) (emphasis added). This is not an *objective* standard but leaves BJF funding up to the *subjective* discretion of Unilever/TMICC. While Plaintiffs contest the legitimacy of the EY audit, they do not dispute that TMICC has subjective latitude to withhold funding, and its exercise of that latitude cannot constitute a breach. *See Prickett v. N.Y. Life Ins. Co.*, 896 F. Supp. 2d 236, 251 (S.D.N.Y. 2012).[8]

---

[7] While Section 6.14(f) permits a majority of the Board to vote to prevent the CEO from taking actions only with respect to product integration and standards, the content of marketing materials, and the licensing or use of B&J's trademark, Merger Agrmt § 6.14(f), it does not create broad "veto authority" over *all* brand integrity or *any* social mission matters. Even if it did, Plaintiffs' claim fails because they do not allege that the Shareholder abridged this authority and, as discussed above, Plaintiffs have no standing to assert a claim for breach of Sections 6.14(e) or (f).

[8] Plaintiffs' argument that their Section 6.14(h) claims may survive because audits "are not within the scope of the Merger Agreement," Opp. at 25, is irrelevant. Section 6.14(h) does not preclude Defendants from relying on findings from a third party review in exercising their discretion that BJF's activity was no longer reasonably acceptable.

9

### C.    <u>Plaintiffs Fail to Allege Breaches of the Settlement Agreement</u>

Plaintiffs' opposition does not support their claims that Defendants breached Sections 2(b) and 2(j) of the Settlement Agreement. *See* FAC ¶¶ 162–64. These provisions restate the Board's and the Shareholder's respective responsibilities over the social mission and brand integrity that the Merger Agreement prescribes and, as Defendants explain above and in their MTD Brief, they have complied with their duties and exercised their contractual discretion by: collaborating with the Board on appropriate social mission posts, rather than censoring them; attempting to consult with the Board on the CEO position only to see their offers rebuffed; amending the applicable Bylaws regarding Board eligibility and term limits, rather than removing any Class I Director or abridging the Board's contractual role; and exercising their discretion not to allocate funds to BJF upon discovering activity that was not reasonably acceptable to them. *See supra* Sections A–B. Because these actions do not evince a failure to "respect and acknowledge" the Board's responsibilities or to refrain from making statements "inconsistent with [B&J's] [s]ocial [m]ission," FAC ¶¶ 162, 164, Plaintiffs fail to allege breaches of the Settlement Agreement.

### D.    <u>Plaintiffs' Allegations Are Insufficient to Assert Cognizable Damages</u>

Plaintiffs are wrong that they need not plead damages to survive dismissal of their breach of contract claims. Because "factual allegations showing damages *are* essential . . . [a] claim for breach of contract must rest on more than a conclusory allegation that the defendant's breach caused damages." *Alta Partners, LLC v. BitFuFu Inc.*, 2025 WL 2145557, at *8 (S.D.N.Y. July 29, 2025) (emphasis added) (quotations and citations omitted). The FAC's absence of factual allegations supporting damages is thus fatal to the breach of contract claims. *Id.* Plaintiffs' reliance on the availability of nominal damages is irrelevant. Even assuming, *arguendo*, that a plaintiff need only allege nominal damages, it still may not rest its claim merely on conclusory assertions of harm and "must still allege sufficient facts supporting damages" to survive dismissal. *Khodeir*

*v. Sayyed*, 323 F.R.D. 193, 202 (S.D.N.Y. 2017). Because Plaintiffs do not allege any facts supporting their claim of loss of goodwill or that they suffered any other form of tangible harm, the Court should dismiss the breach of contract claims for failure to state a claim. *See id.*

Further, the allegations of reputational damages and loss of goodwill are insufficient because they are only cognizable as consequential damages, which is not what Plaintiffs allege. *RIJ Pharm. Corp. v. Ivax Pharm., Inc.*, 322 F. Supp. 2d 406, 414 (S.D.N.Y. 2004). And, even if Plaintiffs may rest a claim on a loss of goodwill, their claim still fails because the FAC lacks "facts, beyond [] bald allegations of damages, establishing what, if any . . . harms and reputational damage [they] specifically suffered." *Bernstein v. O'Reilly*, 2019 WL 10995111, at *7 (S.D.N.Y. Mar. 5, 2019). The Court also should reject "[t]he loss of bargained-for governance rights, Class I Director authority, and appointment rights" as a "cognizable injury." Opp. at 27. Notwithstanding the fact that Defendants *have not* altered the rights of Class I Directors under the Merger Agreement, Plaintiffs cite to no legal authority that supports their theory, and the only case Plaintiffs do cite says nothing about governance rights or whether the loss thereof is a cognizable injury. *See Fed. Hous. Fin. Agency v. Morgan Stanley ABS Cap. I Inc.*, 73 N.Y.S.3d 374, 397 (Sup. Ct. N.Y. Cnty. 2018). Further, Plaintiffs' appeal to the "loss of corporate veto rights," Opp. at 29, fails because, unlike the plaintiff in *Wisdom Import Sales Co., LLC v. Labatt Brewing Co.*, 339 F.3d 101 (2d Cir. 2003), which had its express contractual minority veto over certain transactions stripped, the 2025 amendments to the Bylaws did not modify—let alone eliminate—the Board's limited authority under Section 6.14(f) to prevent actions undertaken in enumerated areas of product integration, marketing, or trademark use. *See supra* n. 7.

Finally, Plaintiffs may not rely on supposed harm to designated donation recipients because the FAC does not allege that (1) Plaintiffs' own injury-in-fact gives them a "sufficiently concrete

11

interest" in the donations, (2) they bear a "close relation" to the organizations, and (3) the organizations have somehow been hindered in their abilities to protect their own interests. *See Powers v. Ohio*, 499 U.S. 400, 410–411 (1991).

**E.**     **The Former Class I Directors' Declaratory Judgment Claims Must Be Dismissed Because They Are Moot and Serve No Useful Purpose[9]**

The declarations the former Class I Directors seek would not clarify the parties' future relationship. To the extent they address future issues (which they do not), they involve only individualized and "hypothetical situations that are inappropriate for determination in a declaratory judgment action." *Bruce Winston Gem Corp. v. Harry Winston, Inc.*, 2010 WL 3629592, at \*5 (S.D.N.Y. Sept. 16, 2010). Because each future social mission statement, CEO appointment, and director's eligibility must be assessed individually, a declaration would not, as it must, clarify or settle the legal issues in dispute. *EFG Bank AG v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018). Similarly, because the Shareholder's recent amendments to B&J's Bylaws left the structure of the Board untouched, they will not, as Plaintiffs erroneously assert, require B&J "to operate [] without the bargained-for Class I Director structure." Opp. at 29. As such, the requested declarations should be dismissed because they "would not offer any relief from uncertainty, nor any conclusion to the issues between the parties." *Storms v. United States*, 2015 WL 1196592, at \*24 (E.D.N.Y. 2015).

Moreover, the requested declarations are moot. The exception for past conduct "capable of repetition, yet evading review . . . applies only in exceptional situations where . . . there is a reasonable expectation that the same complaining party would be subjected to the same action

---

[9] If the Court permits the breach of contract claims to proceed, all declaratory relief claims should be dismissed for the additional reason that they are duplicative because the breach of contract claims would require adjudication of the same issues and provide Plaintiffs complete relief. *Jujamcyn Theaters LLC v. Fed. Ins. Co*., 659 F. Supp. 3d 372, 382 (S.D.N.Y. 2023).

again." *Doe v. McDonald*, 128 F.4th 379, 386–87 (2d Cir. 2025) (internal quotations and citations omitted). No allegation in the FAC indicates that the circumstances surrounding the transition from Dave Stever to Jochanan Senf as B&J CEO are likely to recur, that the disputes regarding the specific complained-of social mission statements will arise again, or that the eligibility of particular former Class I Directors will be reviewed again. Because these controversies involve only "past acts," there is no basis for declaratory relief. *Nat'l Union Fire Ins. Co. v. Int'l Wire Grp.,* 2003 WL 21277114, at \*5 (S.D.N.Y. June 2, 2003).

**F.      The Implied Covenant Claim Must Be Dismissed**

The law is crystal clear that, if the Court permits Plaintiffs' breach of contract claims to proceed, it should dismiss as duplicative their claim for breach of the implied covenant of good faith and fair dealing. *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022). Contrary to Plaintiffs' contention, there is no "dispute over the existence, scope, or enforceability of the" Merger Agreement. Opp. at 31 (quotations and citations omitted). The FAC does not assert any such dispute and Plaintiffs have never raised one, making Count IX inappropriate if the breach of contract claims proceed. Further and regardless, the Court should dismiss Count IX on the merits because Plaintiffs fail to address that the former Class I Directors are not parties to the Merger Agreement, as they must be to assert the claim. *Fischkoff v. Iovance Biotherapeutics, Inc.*, 2018 WL 4574890, at \*7 (S.D.N.Y. July 5, 2018).

**G.      BJF's Unjust Enrichment Claim Must Be Dismissed**

Plaintiffs argue that the Merger Agreement does not bar BJF's equitable claim for unjust enrichment. Not so. It is black letter law that a party cannot assert an unjust enrichment claim where, as here, a contract governs the relationship. *Aniero Concrete Co. v. N.Y.C. Constr. Auth.*, 308 F. Supp. 2d 164, 179 (S.D.N.Y. 2003). By dictating how the Board may allocate charitable contributions to BJF and specifying that BJF's activities and performance must be "reasonably

acceptable to" Unilever (now TMICC) to receive donations after ten years, Section 6.14(h) of the Merger Agreement governs the relationship between BJF, the Board, and Unilever/TMICC with respect to charitable donations. Merger Agrmt. § 6.14(h). Because the Merger Agreement covers the subject matter of Count X, "[P]laintiffs cannot base a claim for unjust enrichment on this conduct, even in the alternative." *Gerszberg v. Iconix Brand Grp., Inc.*, 2018 WL 2108239, at *9 (S.D.N.Y. May 7, 2018). Further, Section 9.07 deprives BJF, as a non-party, of the ability to *enforce* Section 6.14(h), even through an unjust enrichment claim. *See In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 222 (S.D.N.Y. 2019). In addition, BJF lacks a possessory interest in the funds of which they claim they were deprived, as the FAC states clearly that the funds BJF receives are not kept with BJF but distributed to third-party organizations. *See* FAC ¶¶ 75–84.

## H.      Unilever and Conopco Should Be Substituted or Dismissed

### 1.      Unilever and Conopco Should Be Dismissed

The Court should dismiss Unilever and Conopco regardless of how much of the FAC survives dismissal. While Plaintiffs contend that the contractual assignments to TMICC and HoldCo "do[] not eliminate the controversy over Unilever's and Conopco's own breaches" because they "occurred after many of the alleged breaches," Opp. at 39, that is not enough to maintain Article III jurisdiction because "a controversy must exist throughout litigation, not simply at the time the complaint is filed." *Papazian v. Sony Music Ent.*, 2017 WL 10154498, at *1 (S.D.N.Y. Nov. 22, 2017); *see also Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (a live controversy must exist "[a]t all stages of [the] litigation"). That Conopco and Unilever retain relevant discovery, Opp. at 39, has no bearing on the Article III analysis. Having conceded that there was a complete transfer-of-interest to TMICC and HoldCo, Plaintiffs make no argument that their alleged injuries are "likely to be redressed by a favorable judicial decision" against those

two entities rather than TMICC and HoldCo. *Hill v. Holder*, 348 F. App'x 653, 655 (2d Cir. 2009) (quotations omitted).

### 2.  Alternatively, The Court Should Substitute TMICC and HoldCo for Unilever And Conopco

Plaintiffs do not dispute that a Rule 25 substitution enables a case to continue without interruption where a "successor in interest" will be "bound by a judgment against its predecessor," *Software Freedom Conservancy, Inc. v. Best Buy Co.*, 2010 WL 4860780, at *2 (S.D.N.Y. Nov. 29, 2010) (quotations omitted), or that "[TMICC] and HoldCo are successors-in-interest" to Unilever and Conopco, Opp. at 38. Accordingly, absent dismissing the claims against Unilever and Conopco, Plaintiffs' concessions suffice to permit substitution. Plaintiffs argue that substitution will not "expedite and simplify the action" in a manner that allays any efficiency concerns. *AAIPharma Inc. v. Kremers Urb. Dev. Co.*, 2010 WL 11570154, at *3–4 (S.D.N.Y. Feb. 16, 2010) (a predecessor-in-interest still must "cooperate in th[e] litigation"). However, Plaintiffs' assertion that substitution will "complicate discovery" and "obscure responsibility" to their prejudice is not only unsupported in their brief, Opp. at 38–39, but contrary to Unilever's and Conopco's express "agree[ments] to accept service of any Rule 45 subpoena" and "to transfer any application related to compliance" to this District, ECF No. 120 at 6.[10]

### CONCLUSION

For the foregoing reasons, the Court should dismiss, with prejudice and without leave to replead, (1) the FAC, with the exception of Count VII and the portion of Count V related to Section 2(g) of the Settlement Agreement, and (2) Unilever and Conopco as parties to this action.

---

[10] The cases Plaintiffs cite are distinguishable because, unlike here, *there was no transfer of interest* in *In re Chalasani*, 92 F.3d 1300, 1312 (2d Cir. 1996) or *Fashion G5 LLC v. Anstalt*, 2016 WL 7009043, at *3 (S.D.N.Y. Nov. 29, 2016).

Respectfully submitted,

Dated:  New York, New York          WEIL, GOTSHAL & MANGES LLP
        July 21, 2026

                                    */s/ David J. Lender*
                                    David J. Lender
                                    Luna N. Barrington
                                    Joseph R. Rausch
                                    Alexandra Rose
                                    Nicholas Reade
                                    767 Fifth Avenue
                                    New York, NY 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007
                                    david.lender@weil.com
                                    luna.barrington@weil.com
                                    joseph.rausch@weil.com
                                    alexandra.rose@weil.com
                                    nick.reade@weil.com

                                    *Attorneys for Defendants*

16

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.1(c), I hereby certify that the total number of words in this memorandum, excluding the caption, table of contents, table of authorities, signature block, and word count certification is 5,212.

/s/ David J. Lender
David J. Lender