# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

*VIA ECF*

July 27, 2026

**David J. Lender**
+1 (212) 310-8153
david.lender@weil.com

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re:   *Ben & Jerry's Homemade, Inc. et al. v. Unilever PLC et al.*, Case No. 24-cv-8641-PKC
(S.D.N.Y.)**

Dear Judge Castel:

Pursuant to Part 3.B of this Court's Individual Practices and Local Civil Rule 37.2, Defendants Unilever
PLC ("**Unilever**"), Conopco, Inc., The Magnum Ice Cream Company N.V. ("**TMICC**"), and Ben &
Jerry's HoldCo, LLC (collectively, "**Defendants**") respectfully request a discovery conference to resolve
certain discovery disputes with the former Class I Directors. The next conference before the Court is
scheduled for October 15, 2026, *see* ECF No. 100, although the former Class I Directors have also
requested a discovery conference, *see* ECF No. 138.

To date, the former Class I Directors and their counsel, who also represents third-party Ben Cohen, have
done nothing but seek to shield discovery relevant to the case *they* initiated, all the while demanding
Defendants respond to hundreds of requests for production. The former Class I Directors have
manufactured discovery rules for this case. For several weeks, they refused to produce *any* internal
communications amongst themselves or with their co-plaintiff, the Ben & Jerry's Foundation (the
"**Foundation**")—and agreed only to produce communications with *Defendants*.[1] And in terms of the
documents they did agree to produce, the former Class I Directors only agreed to produce documents and
communications that they unilaterally deem are 'sufficient to show,' meaning they get to select what is
produced and what is not.

Discovery would certainly be much simpler if each side only had to produce documents that they think
help prove their case. But such cherry-picking is not what Rule 26 contemplates or how discovery
operates. Put simply, discovery is not a one-way mirror—parties cannot demand broad production while
shielding their own relevant documents from view. *See Gordon v. Target Corp.*, 318 F.R.D. 242, 246

---

[1] Only today, the former Class I Directors backed away from this position, representing that they "are not
limiting the RFPs … to external communications only" and will be producing internal communications
as well. Defendants accept the former Class I Directors' representations but reserve all rights to seek relief
should the former Class I Directors withhold internal communications from their production.

July 27, 2026
Page 2

(E.D.N.Y. 2016) ("Discovery is not a matter of gamesmanship nor conducted like a game of chess. Rather, the over-arching purpose of the discovery rules is to encourage the disclosure of information and materials to avoid unnecessary surprise and to level the playing field for both parties to the litigation.") (internal quotation marks and citation omitted). On the contrary, Rule 26 permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The former Class I Directors' one-sided approach has persisted throughout the parties' discovery exchanges. Defendants served their Interrogatories (the "**Interrogatories**") and Requests for Production of Documents (the "**RFPs**") on May 6, 2026. Exs. A-B. The former Class I Directors responded to the Interrogatories (the "**Interrogatory R&Os**") and to the RFPs (the "**RFP R&Os**") on June 8, 2026 with objections and limitations inconsistent with standard discovery practices. *See* Exs. C-D. Following unproductive meet-and-confers with the former Class I Directors, Defendants attempted to streamline the parties' disputes by sending a detailed letter on June 22 outlining their positions. *See* Ex. E (the "**June 22 Letter**"). Defendants received no response until nearly a month later, on July 19, when the former Class I Directors largely maintained their meritless objections. *See* Ex. F (the "**July 19 Letter**"). Defendants met and conferred with the former Class I Directors on July 24, 2026, and attempted to meet and confer again on July 27, but counsel for the former Class I Directors did not join the call. As a result, the parties remain at an impasse.

Defendants therefore bring these issues before the Court and respectfully request that the Court schedule a conference to address the issues detailed below.

## I.      The Former Class I Directors Fail to Comply with Their Discovery Obligations

### A.  The Former Class I Directors Must Produce Documents Beyond Those "Sufficient to Show" (RFP Nos. 2, 3, 4, 6, 7, 10, 11, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 32, 33, 35, 49, 50, 54)

In their responses and objections to the RFPs, the former Class I Directors improperly limited production for nearly half of Defendants' RFPs—twenty-three out of fifty-five—by agreeing only to produce documents "sufficient to show." The former Class I Directors' "sufficient to show" limitations span virtually every central subject in this case: social mission authority and brand integrity (RFP Nos. 2, 3, 4, 20, 22, 33); corporate governance, the Demerger, and the value of Ben & Jerry's Homemade, Inc. ("**B&J**") (RFP Nos. 6, 7, 35); charitable designations, Canaan Fair Trade, and Settlement Amendment obligations (RFP Nos. 10, 11, 17, 18); Business Integrity Investigations (RFP Nos. 19, 23, 54); the Foundation Audit (RFP Nos. 24, 25, 32); and CEO performance and appointment (RFP Nos. 26, 27, 49, 50). In some instances, the former Class I Directors further restrict production to documents that, *in their view*, relate to "the specific claims pleaded in the Fourth Amended Complaint." *See* RFP R&Os at 13, 17-18 (R&Os to RFP Nos. 20, 33).

**Weil, Gotshal & Manges LLP**

July 27, 2026
Page 3

But it "should not need to be said" that "producing **some** relevant, responsive documents does not excuse a party from producing **all** relevant, responsive documents." *Au New Haven, LLC v. YKK Corp.*, No. 15-CV-3411 (GHW), 2023 WL 2612204, at *10 (S.D.N.Y. Mar. 23, 2023) (emphasis added). Indeed, "[t]o countenance the withholding of relevant evidence—even for a short period—would run counter to the over-arching purpose of the federal discovery rules which were designed to encourage liberal pre-trial disclosure in order to ensure that the crucible of a trial is 'less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" *Gordon*, 318 F.R.D. at 245 (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). Moreover, "[n]o party possess[es] the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case." *XChange Telecom Corp. v. Sprint Spectrum L.P.*, No. 14-CV-54 (GLS/CFH), 2015 WL 773752, at *3 (N.D.N.Y. Feb. 24, 2015) (citation omitted). Adopting the former Class I Directors' position—that they may avoid producing all relevant, responsive documents by virtue of producing a subset favorable to their case—"would make Swiss cheese of the discovery process." *Au New Haven, LLC*, 2023 WL 2612204, at *10.

Defendants raised this deficiency in the June 22 Letter. Yet after a month-long process of drafting a response, the former Class I Directors have failed to meaningfully address their deficiencies or engage in good faith. They instead responded that "Defendants use that phrase liberally throughout their responses to the Independent Board's RFPs to Defendants." July 19 Letter at 9. This response ignores the disparity between the parties' use of this limitation: Defendants invoked it for only eighteen of the former Class I Directors' ninety-three RFPs. *See* Ex. G (Defendants' R&Os to former Class I Directors' May 4 RFPs); Ex. H (Defendants' R&Os to former Class I Directors' May 20 RFPs). Defendants also restricted their use of this limitation to those requests that bore little to no relation to the merits of the claims.[2]

But more importantly, a "sufficient to show" caveat on claims going to the former Class I Directors' allegations is particularly inappropriate given that the former Class I Directors are the ones who *brought* these claims. As the party that brought the suit, the former Class I Directors should not be permitted to limit their production to documents that they determine will help them prove up their claims while depriving Defendants of the discovery necessary to challenge those claims. *See XChange Telecom Corp.*, 2015 WL 773752, at *3 ("[N]either party can ... by their sole insistence, declare evidence undiscoverable or irrelevant merely because it does not fit into their own theory of the case." (quoting *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 926 (8th Cir. 2014))).

Rule 26 does not confine discovery to documents a party chooses to produce or evidence supporting Plaintiffs' preferred account of their pleaded allegations. It permits discovery relevant to "*any* party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). The former Class I Directors therefore

---

[2] For example, Defendants agreed to produce documents "sufficient to show" with respect to overly broad requests, such as the former Class I Directors' request for all of Ben & Jerry's financial documents for each fiscal quarter since January 1, 2022, even though they have no financial oversight of B&J. *See* Ex. H at 9-10 (R&O to Request No. 89).

cannot define the responsive universe by producing only what they believe helps prove their claims while excluding documents relevant to defenses—including documents bearing on causation, damages, the reasonableness and good faith of the parties' conduct, and the accuracy of Plaintiffs' allegations. Given the former Class I Directors' refusal to comply with their discovery obligations despite Defendants' attempts to reach a resolution, Defendants respectfully request that the Court compel full production of documents responsive to these twenty-three RFPs via a custodial search (including each of the former Class I Directors).

### B.  The Former Class I Directors Must Amend Their Response to Interrogatory No. 4

Defendants' Interrogatory No. 4 seeks straightforward identification of the persons who "manage, write, edit, financially support, or otherwise contribute to the publication and distribution of the Rolling Cone Substack newsletter or the related Rolling Cone emails." Interrogatories at 10. The Rolling Cone, created in or about February 2026, is an anonymous online Substack blog that writes about this litigation from Plaintiffs' perspective. *See generally* The Rolling Cone, https://benjerry1.substack.com/ (last visited July 27, 2026). It relentlessly accuses Defendants and their management teams of misconduct, and even published—just *two days* after they were served—Defendants' Initial Disclosures (which were only served on Plaintiffs' counsel) and criticized the witnesses listed on those disclosures.[3]

The former Class I Directors refused to answer this interrogatory.[4] They did *not* say that they do not know or do not have this information. Instead, they claim it "exceeds the categories of interrogatories permitted at the commencement of discovery [under] Local Civil Rule 33.3 and falls outside the scope of discovery permitted under Federal Rule of Civil Procedure 26(b)(1)," and assert that the Rolling Cone and the persons responsible for writing, editing, or funding it are "not referenced even once in the FAC." Interrogatory R&Os at 12.

As a preliminary matter, whether something is referenced in a complaint is not the standard for discovery under Rule 26. "[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues," and relevance under Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also MacCartney v. O'Dell*, No. 14-CV-3925 (NSR), 2017 WL 766906, at *3 (S.D.N.Y. Feb. 27, 2017) ("It is

---

[3] The post was subsequently taken down.

[4] The former Class I Directors had previously either refused or improperly limited their obligations to produce documents responsive to Defendants' requests regarding the Rolling Cone and related public campaigns. They have since represented that they will not withhold such documents and will be producing documents in response to this request. Defendants accept the former Class I Directors' representations but reserve all rights to seek relief should the former Class I Directors withhold these documents from their production.

well-established within this Circuit that the [discovery] rule will be satisfied if there is 'any possibility' that the information sought may be relevant to the subject matter of the action."). And here, it is clearly relevant because the former Class I Directors seek damages based on alleged harm to B&J's social mission, brand, goodwill, and commercial value while an anonymous Substack—bolstered by information shared by Plaintiffs, including Defendants' Initial Disclosures—has been writing blog posts critical of the brand.

In any event, the former Class I Directors' continued refusal to respond substantively to Interrogatory No. 4 is untenable. Defendants respectfully request that the Court overrule their objections and compel a complete response.

## II.    Ben Cohen Must Comply with Defendants' Subpoena

Defendants also respectfully request that the Court compel non-party Ben Cohen to search for and produce non-privileged documents responsive to the subpoena issued to him on May 26. *See* Ex. I. Mr. Cohen has produced no documents in response to Defendants' subpoena. Instead, through counsel for the former Class I Directors, he asserted substantially identical, categorical objections to all seventeen requests— principally relevance, overbreadth, burden, duplication, and privilege—without identifying the searches he is willing to conduct, substantiating any burden, or proposing meaningful limitations that would permit any production. *See* Ex. J.

Mr. Cohen possesses relevant evidence that cannot be obtained from the parties alone. The former Class I Directors themselves identified Mr. Cohen in their initial disclosures as an individual likely to possess discoverable information. The FAC affirmatively places the B&J founders' involvement at issue, alleging that Defendants attempted to persuade them to "take Unilever's side against the Independent Board." FAC ¶ 123. Under the former Class I Directors' framing (which Defendants dispute), this makes discovery from Mr. Cohen relevant. The subpoena accordingly seeks, among other things, Mr. Cohen's communications with the former Class I Directors concerning the social mission, brand integrity, the Demerger, and this Action (Request Nos. 2–3); documents concerning the specific social mission posts challenged in the Complaint (Request No. 5); and documents concerning the removal of David Stever and the appointment of Jochanan Senf (Request No. 13). These materials bear directly on Plaintiffs' allegations of interference with the Board, the parties' contemporaneous understanding of the events at issue, and Defendants' defenses.

Other requests address the former Class I Directors' claimed injury and causation. The former Class I Directors seek damages based on alleged harm to B&J's social mission, brand, goodwill, and commercial value. Yet, through his "Free Ben & Jerry's" campaign (Request Nos. 1, 8, 11, 12), Mr. Cohen is actively seeking to harm B&J, while at the same time he claims to want to purchase B&J. Such evidence bears on whether the former Class I Directors suffered the injury they allege and whether any claimed reputational or commercial harm was caused or amplified by the former Class I Directors, the Foundation, Mr. Cohen, or social media campaigns undertaken on their behalf. Mr. Cohen's communications with the authors of

**Weil, Gotshal & Manges LLP**

July 27, 2026
Page 6

the Rolling Cone and concerning protests directed at Defendants likewise bear on public messaging, causation, and claimed reputational harm (Request Nos. 16–17). For example, the campaigns aimed at "freeing" B&J *explicitly* urge consumers to "BOYCOTT MAGNUM" and even to "SINK [Magnum's] STOCK" in order to "Save Ben & Jerry's":



Mr. Cohen's campaign directly impacts this dispute, and he goes so far as to claim that TMICC "wants to hand-pick the 'independent' chair meant to protect [its] mission" and to claim "[t]hat's not governance."

**Weil, Gotshal & Manges LLP**

July 27, 2026
Page 7

Messages urging financial harm to B&J's corporate parent have an obvious and direct relationship with the alleged reputational and commercial harms asserted in the FAC.

Mr. Cohen's objections do not justify withholding all documents. His assertion that responsive documents may also be available from the parties ignores that the subpoena seeks his own files—including communications with investors, the press, campaign participants, his co-Founder, and other third parties—which the parties may not possess. Nor may Mr. Cohen avoid discovery merely because he is a non-party. Defendants recognize Rule 45's protections and are willing to agree on reasonable search terms and temporal parameters to reduce burden. But Mr. Cohen is not an uninterested third party, and he has offered no evidence that an appropriately tailored electronic search would impose undue burden or significant expense on an individual who voluntarily injected himself into this case by filing an affidavit in support of Plaintiffs' Motion for a Temporary Restraining Order. *See* ECF No. 81. His generalized invocation of privilege is likewise no basis for categorical noncompliance; any privileged materials may be withheld and logged as required by Rule 45(e)(2).

The July 19 Letter does not advance the parties toward resolution of the subpoena to Mr. Cohen. It merely directs Defendants back to Mr. Cohen's objections. Accordingly, Defendants respectfully request that the Court direct Mr. Cohen to conduct a reasonable search and produce all responsive, non-privileged documents.

We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ David J. Lender*
David J. Lender

*Attorney for Defendants Unilever PLC,*
*Conopco, Inc., The Magnum Ice Cream*
*Company N.V., and Ben & Jerry's HoldCo, LLC*

cc:     All Counsel of Record (Via E-filing)

**Weil, Gotshal & Manges LLP**

July 27, 2026
Page 8

## <u>RULE 37 CERTIFICATION</u>

Counsel certifies, pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, that we have met and conferred in a good-faith effort to resolve the parties' disputes, but have been unable to resolve these issues. In particular, the parties met and conferred by video conference on June 16, 2026 and July 24, 2026. Defendants attempted to meet with Plaintiffs again on July 27, 2026, but Plaintiffs did not join. The parties also conferred by email exchange between June 22, 2026, and July 27, 2026.

*/s/ Luna N. Barrington*

Luna N. Barrington