**Stris**

**Bridget Asay**
PARTNER

**STRIS & MAHER LLP**
15 East State Street, Ste 2
Montpelier, VT 05602
www.stris.com

basay@stris.com
802.858.4285

July 28, 2026

VIA ECF

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *Ben & Jerry's Homemade, Inc. et al. v. Unilever PLC et al.*, Case No. 1:24-cv-08641-PKC
(S.D.N.Y.): Request for Pre-Motion Discovery Conference

Judge Castel:

Pursuant to Local Civil Rule 37.2 and Your Honor's Individual Rule 3.B, Plaintiff The Ben & Jerry's Foundation (the "Foundation") respectfully submits this letter regarding Defendants' sweeping assertions of work-product protection over audit-related materials in response to RFP Nos. 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 25, 26, and 28, which seek documents concerning the audit Defendants contend justifies withholding Foundation funding.[1] The Foundation respectfully requests a discovery conference to resolve whether the work-product doctrine (or other bases for withholding Defendants may assert) applies to those materials. The next conference before the Court is set for October 15, 2026, although Defendants and the Independent Board Plaintiffs have also recently requested discovery conferences.

The audit is at the center of the dispute between the Foundation and Defendants. Defendants told the Foundation last year that any continued funding would be contingent on what Defendants described as an "independent" and "routine" audit related to Defendants' "demerger" plans. There was no litigation involving the Foundation at that time, and Defendants never disclosed any litigation-related purpose for auditing the Foundation. Yet Defendants now assert the work-product doctrine in response to every audit-related request for production from the Foundation. The Foundation has repeatedly asked Defendants to explain the basis for their work-product assertion, but has received no meaningful response. Defendants' current position is inconsistent and unsupportable: Defendants say they will produce the final Ernst & Young ("EY") audit report and what they describe as EY's "ordinary-course audit work papers." Ex. 1 at 6. But they are (1) not agreeing to produce Defendants' communications with either of the two audit firms, EY and Forensic Risk Alliance ("FRA"); and (2) interposing their unsupported work-product assertions to limit their production of Defendants' internal communications regarding the audit—including its scope and purpose, actions taken in response to the audit's findings and recommendations, and other broad categories of audit-related communications. Defendants thus

---

[1] Appendix A contains the disputed Requests for Production and their corresponding objections.

The Honorable P. Kevin Castel
July 28, 2026
Page 2

seek to disclose and use the final audit report while foreclosing discovery into crucial components of the audit itself—including any instructions Defendants (including Defendants' lawyers) gave the audit firms; any edits or revisions Defendants made to the audit process, findings, or draft report; and Defendants' internal communications about the audit.

The Foundation has made substantial efforts to resolve this dispute without Court intervention. During meet-and-confer sessions on June 16, 2026, and July 10, 2026, the Foundation repeatedly asked Defendants to explain the basis for their work-product assertions over audit-related materials and communications. On both occasions, Defendants represented that they would provide a written explanation supporting those assertions. They ultimately did not do so. Instead, Defendants provided the following brief, non-explanatory response (Ex. 1 at 6), which addressed RFP Nos. 4, 6, 7, 17, and 22—a small subset of the RFPs at issue:

> Defendants will produce the final EY audit report and EY's audit work papers generated in the ordinary course of the audit. The production of those materials does not waive any applicable privilege, work-product protection, or other protection with respect to any other documents or communications. Defendants are not asserting privilege over the final audit report or EY's ordinary-course audit work papers. Defendants will, however, withhold privileged communications and attorney work product relating to the audit, including communications involving counsel. Those communications occurred in the context of ongoing legal matters, including the Demerger, the related litigation, and the Business Integrity investigation, and remain protected notwithstanding production of the audit report and audit work papers.

This response did not address the remaining audit-related RFPs. Nor did it identify the litigation for which the withheld materials were purportedly prepared, explain why an audit Defendants publicly characterized as independent was conducted in anticipation of litigation, or otherwise substantiate Defendants' work-product assertions. Nor have Defendants explained their inconsistent assertion of work product in producing the final audit report and "ordinary course" work papers, but withholding Defendants' communications with the audit firms. Having exhausted the meet-and-confer process, the Foundation respectfully seeks the Court's review.[2]

Defendants' work-product assertion fails for two independent reasons. First, Defendants cannot show, given their contemporaneous representations, that communications and other materials that concern the audit's purpose, scope, implementation, and resulting actions were

---

[2] Defendants initially selected FRA to conduct what they publicly described as a "routine independent audit" of the Foundation. ECF 110 at 29-30. After questions from the Foundation about the audit, Defendants switched from FRA to EY, and EY completed the audit. *See* Bankowski Decl. ¶ 5. The Foundation also subpoenaed the audit firms EY and FRA. EY's and FRA's in-house counsel informed the Foundation's counsel that Defendants' counsel will review all responsive documents from EY and FRA for privilege/work-product before EY or FRA makes any production. Neither EY nor FRA has made any production in response to the subpoenas served on April 27, 2026.

The Honorable P. Kevin Castel
July 28, 2026
Page 3

prepared because of anticipated litigation rather than as part of an ordinary-course business investigation. Second, even if portions of the audit would otherwise qualify as work product, Defendants cannot invoke the audit as the basis for withholding Foundation funding while simultaneously withholding the materials necessary to understand that audit.

This dispute warrants threshold resolution because Defendants are withholding a broad category of documents most important to the Foundation's claims. Resolving this dispute now will therefore substantially narrow further discovery disputes and will avoid delays and inefficiencies as discovery continues. Depositions of Defendants' employees begin on August 18, 2026. If this dispute is not resolved before depositions proceed, and the audit-related materials are produced later, the Foundation may be forced depose witnesses a second time to address these key documents, resulting in unnecessary burden and expense for both the parties and the Court.

I.    **Defendants' contemporaneous descriptions of the audit as independent, routine, and conducted for a business purpose foreclose any assertion of work product for audit-related materials.**

"The work-product doctrine, codified for the federal courts in Fed. R. Civ. P. 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (cleaned up). For the doctrine to apply, "the material at issue must be (1) documents or tangible things, (2) that were prepared in anticipation of litigation, and (3) were prepared by or for a party, or by or for his representative." *Nat'l Day Laborer Org. Network v. United States Immigr. & Customs Enf't*, 486 F. Supp. 3d 669, 696 (S.D.N.Y. 2020) (cleaned up). "Documents prepared in anticipation of litigation are those that, in light of the nature of the document and the factual situation in the particular case can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *Weber v. Paduano*, 2003 WL 161340, at *3 (S.D.N.Y. Jan. 22, 2003) (cleaned up). The burden rests with the party asserting the privilege to establish that litigation, rather than ordinary business purposes, drove the document's creation. *Bogan v. Nw. Mut. Life Ins. Co.*, 163 F.R.D. 460, 463 (S.D.N.Y. 1995).

The mere existence of litigation does not change that analysis. Businesses continue to conduct audits, investigations, and make operational decisions even when litigation is anticipated. The relevant question is whether the documents were prepared *because of* litigation or whether they would have been created in substantially the same form as part of the company's ordinary business operations. *Adlman*, 134 F.3d at 1202. That inquiry turns on the "circumstances surrounding the creation of the documents in question." *Bogan*, 163 F.R.D. at 463. And, even then, "a mere possibility of litigation is insufficient to obtain work product protection." *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 2011 WL 5439046, at *4 (S.D.N.Y. Nov. 10, 2011) (cleaned up).

Courts have repeatedly rejected efforts to transform routine internal audits into protected work product simply because litigation existed in the background. In *In re Leslie Fay Companies, Inc. Securities Litigation*, for example, litigation and government investigations were already underway when the company's audit committee retained outside counsel and accountants to

The Honorable P. Kevin Castel
July 28, 2026
Page 4

investigate accounting irregularities. 161 F.R.D. 274, 280–82 (S.D.N.Y. 1995). Even so, the court held the resulting investigation was not protected work product because it served significant business purposes—including determining the scope of the problem, implementing new internal controls, restoring confidence among lenders and shareholders, and informing corporate decision-making—and "would have [been] conducted . . . anyway." *Id.* at 281. The court emphasized that "the simple fact" that litigation was anticipated did not convert an otherwise ordinary business investigation into work product. *Id.* at 280. Likewise, in *Genon Mid-Atl., LLC v. Stone & Webster, Inc.*, the court rejected a work-product claim over materials generated during a contractual audit notwithstanding the parties' ongoing litigation. 2011 WL 2207513, at *2–4 (S.D.N.Y. June 6, 2011). Applying *Adlman*, the court held that documents prepared pursuant to ordinary contractual audit rights—and that would have been created in substantially the same form regardless of litigation—remain outside the protection of the work-product doctrine. *Id.* at *3–4.

Here, Defendants conducted an audit of a third party—the Foundation—and obtained the Foundation's permission and cooperation by describing the audit as "routine"; "independent"; and intended to determine whether Foundation funding should continue under the Merger Agreement. *See* Letter from Abhijit Bhattacharya, Ice Cream Chief Financial Officer, to Jeff Furman, President of The Ben & Jerry's Foundation, at 1 (May 6, 2025) (Bankowski Decl., Ex. 3) (stating that Defendants intended to "conduct a routine audit of the Foundation ahead of the planned separation of Ice Cream from Unilever"); Unilever Ice Cream, *Unilever Statement on Ben & Jerry's Foundation Audit* (Apr. 24, 2025) (Bankowski Decl. Ex. 2) ("[Unilever] ha[s] requested a routine independent audit of the Foundation."); Letter from Abhijit Bhattacharya, Ice Cream Chief Financial Officer, to Jeff Furman, President of The Ben & Jerry's Foundation (Apr. 9, 2025) (Bankowski Decl., Ex. 1) ("The results of the audit will inform decisions as to future funding of the Foundation by Unilever and, post-separation, by The Magnum Ice Cream Company."). Defendants publicly described the audit as a "routine independent audit." Unilever Ice Cream, *Unilever Statement on Ben & Jerry's Foundation Audit* (Apr. 24, 2025) (Bankowski Decl. Ex. 2). Defendants expressly justified the audit with reference to the "reasonably acceptable" provision of Section 6.14(h) of the Merger Agreement. *See* Letter from Abhijit Bhattacharya, Ice Cream Chief Financial Officer, to Jeff Furman, President of The Ben & Jerry's Foundation (Apr. 9, 2025) ("Under the acquisition agreement in place concerning Ben & Jerry's, Unilever shall continue to make contributions to the Foundation 'unless the activities and performance of the Foundation cease to be reasonably acceptable' to Unilever (Section 6.14(h)). In order to assist me in making this determination, I intend to initiate an audit of the Foundation….") (Bankowski Decl., Ex. 1). They described its goal as: "identify[ing] opportunities to improve processes going forward, and ensure any weaknesses are appropriately addressed." Unilever Ice Cream, *Unilever Statement on Ben & Jerry's Foundation Audit* (Apr. 24, 2025) (Bankowski Decl. Ex. 2). In addition, Defendants changed audit firms from FRA to EY after the Foundation questioned Defendants' reasons for using FRA. *See* Bankowski Decl., ¶ 5. The record is clear: Defendants told the Foundation and the public that they commissioned an independent audit to inform a routine contractual business decision—not because of any anticipated litigation involving the Foundation.

Defendants' contemporaneous representations to the Foundation and public statements defeat any effort by Defendants to assert work product based on Defendants' litigation with the

The Honorable P. Kevin Castel
July 28, 2026
Page 5


Independent Board plaintiffs. *See* ECF 138 at 1-3 (discussing Defendants' attempts to shield materials related to the Business Integrity Investigation based on ongoing litigation). Although the Foundation *later* intervened in this action, after Defendants withheld funding, the Foundation was not a party to this case when the audit was requested and conducted, and Defendants publicly disclaimed any reason for the audit other than a "routine" "independent" inquiry. According to Defendants, the audit arose out of a contractual relationship (the Merger Agreement), served a distinct business purpose, and concerned whether the Foundation's activities and performance remained "reasonably acceptable" under Section 6.14(h) of the Merger Agreement. Defendants cannot re-write history now and assert work-product merely because Defendants were in litigation with other parties at that time. The work-product doctrine requires a far more particularized showing. *See In re Initial Public Offering Sec. Litig.*, 249 F.R.D. 457, 459 (S.D.N.Y. 2008).

> **A.    Defendants consistently described the audit as an independent governance review.**

Defendants consistently described the auditors' engagement as an independent business review—not a litigation investigation—designed to evaluate the Foundation's operations. Unilever publicly announced that it had "requested a routine independent audit" of the Foundation as part of its planned demerger. Unilever Ice Cream, *Unilever Statement on Ben & Jerry's Foundation Audit* (Apr. 24, 2025) (Bankowski Decl., Ex. 2); *see* Letter from Abhijit Bhattacharya, Ice Cream Chief Financial Officer, to Jeff Furman, President of The Ben & Jerry's Foundation (Apr. 9, 2025) (Bankowski Decl., Ex. 1) (Unilever would "initiate an audit of the Foundation, focusing on internal procedures and controls, disbursements, accuracy of books and records, and governance," with its results designed to "inform decisions as to future funding of the Foundation by Unilever and, post-separation, by The Magnum Ice Cream Company."). Defendants likewise represented that FRA and EY were conducting an independent audit and that the completed report would be shared to promote "transparency for all involved." Letter from Abhijit Bhattacharya, Ice Cream Chief Financial Officer, to Jeff Furman, President of The Ben & Jerry's Foundation (May 6, 2025) (Bankowski Decl., Ex. 3). Defendants should not now be permitted to recast that same engagement as litigation work product simply because the audit has become central to this lawsuit.

The court confronted materially similar circumstances in *Eastman Kodak Co. v. Kyocera Corp.*, 2012 WL 4103811 (W.D.N.Y. Sept. 17, 2012). After representing that it was conducting a contractual audit, Kodak later sought to characterize communications with its independent auditor as protected work product. *Id*. at *1–3. The court rejected that position, concluding that the audit materials "would have been created in essentially the same form irrespective" of litigation. *Id.* at *4–6. Although the court recognized that Kodak's change in position also raised possible estoppel and waiver issues, it found it need not resolve those questions because the audit was not work product in the first place. *Id.* at *5. Defendants' conduct follows the same pattern. They described the engagement as routine and independent and obtained the Foundation's cooperation on that understanding. Defendants did not contemporaneously disclose any litigation-related purpose for the audit. Defendants should not be permitted to block critical discovery based on after-the-fact re-characterizations of the audit's purpose. *Columbia Data Prods., Inc. v. Autonomy Corp.*, 2012 WL 6212898, at *12 (D. Mass. Dec. 12, 2012) (work product did not apply to audit that was

The Honorable P. Kevin Castel
July 28, 2026
Page 6

invoked pursuant to a contractual right, where party that commissioned it described audit firm as "'independent' auditor that was retained for the sole purpose of exercising" contractual rights, and did not disclose litigation purpose).

**B.      Defendants should be held to their repeated statements that the audit was commissioned for a business purpose.**

Defendants have repeatedly justified the audit as part of their decision-making process under Section 6.14(h) of the Merger Agreement. According to Defendants, the audit was undertaken to evaluate whether the Foundation's "activities and performance" remained "reasonably acceptable" for purposes of future funding decisions. Letter from Abhijit Bhattacharya, Ice Cream Chief Financial Officer, to Jeff Furman, President of The Ben & Jerry's Foundation (Apr. 9, 2025) (Bankowski Decl., Ex. 1).

Evaluating whether the Foundation satisfied the contractual standard for continued funding is a business determination—not litigation preparation. Under *Adlman*, documents prepared for that type of business decision are not transformed into work product merely because litigation also exists. 134 F.3d at 1202.

Defendants have yet to offer any meaningful explanation of how their communications with audit firms engaged to conduct what they intended to be an independent, routine audit for a business purpose could possibly qualify as work product. To justify such a claim, they would have to show that they requested the audit for litigation purposes and that it was not, in fact, independent, but directed by Defendants and/or Defendants' counsel. But that's not what they told the public or the Foundation. The Court should not allow Defendants to use the work-product doctrine to shield relevant and material information about the audit. Defendants told the Foundation that the audit was intended to promote "transparency." Letter from Abhijit Bhattacharya, Ice Cream Chief Financial Officer, to Jeff Furman, President of The Ben & Jerry's Foundation (May 6, 2025) (Bankowski Decl., Ex. 3). Consistent with that position, Defendants' work-product theory should be rejected, and they should be required to produce their audit-related related documents and communications, including all communications between Defendants (including Defendants' counsel) and the independent audit firms EY and FRA.

**II.      Defendants cannot use the audit as both a sword and a shield.**

Defendants must not be permitted to have it both ways when it comes to the audit materials. On the one hand, they have made the audit central to their justification for withholding Foundation funding and demanding sweeping governance changes. At the same time, they seek to withhold audit-related documents other than the final EY audit report and EY's audit work papers generated in the ordinary course of the audit. The work-product doctrine and fundamental fairness do not permit that result.

The Honorable P. Kevin Castel
July 28, 2026
Page 7

### A.    Defendants have placed the audit at issue.

A party may not "use[] an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (cleaned up). Nor may it "affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000). The touchstone is fairness. *John Doe Co. v. United States*, 350 F.3d 299, 304 (2d Cir. 2003).

"[T]his kind of unfairness may arise when a party advances a claim to a court or jury (or perhaps another type of decision maker) while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim." *New York Times Co. v. United States Dep't of Just.*, 939 F.3d 479, 495 (2d Cir. 2019) (cleaned up). That is precisely what Defendants seek to do here. They repeatedly invoke the audit as the basis for concluding that the Foundation's "activities and performance" were no longer "reasonably satisfactory" under Section 6.14(h) of the Merger Agreement. *See, e.g.,* ECF 118 at 4, 10-11, 25-26. According to Defendants, the audit justified withholding millions of dollars in Foundation funding and demanding retroactive trustee term limits, trustee eligibility restrictions, and other governance changes. *Id.* at 10-11, 25.

At the same time, Defendants have agreed to produce only the final audit report and what they describe as EY's ordinary-course audit work papers while continuing to assert work-product protection over broad categories of audit-related materials, including communications between Defendants and the audit firms. Defendants want to shield from discovery the documents that would show what EY was asked to do, what information it considered, or whether Defendants influenced its scope or findings. In other words, Defendants seek to prove their case with evidence they refuse to produce. The work-product doctrine does not permit that result. *See Abromavage v. Deutsche Bank Secs. Inc.*, 2019 WL 6790513, at *2 (S.D.N.Y. Dec. 11, 2019) ("The at-issue waiver rule aims to prevent the unfairness that results when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." (cleaned up)).

This Court rejected materially similar conduct in *In re Leslie Fay Companies, Inc. Securities Litigation*. There, the company sought to rely on the conclusions of an audit committee report while withholding the documents on which the report was based. 161 F.R.D. at 277–79. The court held that such selective reliance was "precisely the situation" the related subject-matter waiver doctrine was designed to prevent because the company was attempting to "shield the documents underlying the [report] from discovery while at the same time urging this Court" to rely on the report's conclusions. *Id.* at 283–84. The court therefore required production of the underlying materials, subject only to a document-by-document showing that particular documents contained legal analysis not otherwise disclosed. *Id.* at 284.

The same principle applies here. Indeed, Defendants have made the audit—and no other contemporaneous business record—the centerpiece of their explanation for why they withheld Foundation funding. They cannot rely on the audit as both a sword and a shield; their decision to

The Honorable P. Kevin Castel
July 28, 2026
Page 8

put the audit at issue precludes assertion of work product and is treated by courts as a waiver. *See Columbia Data*, 2012 WL 6212898, at *16–18 (applying waiver principles and concluding that, where party put "the audit report, the audit process, and PWC's status as an independent auditor directly at issue . . . full disclosure is only fair"); *Pall Corp. v. Cuno Inc*., 268 F.R.D. 167, 169 (E.D.N.Y. 2010) ("Where a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion, notions of unfairness are implicated that impliedly waive work product protection." (cleaned up)).

### B.     Defendants induced the Foundation's participation by representing that the audit would be independent, routine, and transparent.

The unfairness is even more pronounced because Defendants obtained the Foundation's participation by repeatedly representing that the audit would be independent, transparent, and shared.

The chronology tells the story:

- <u>April 24, 2025</u>: Unilever publicly announced that it had "requested a routine independent audit" of the Foundation as part of its planned demerger. Unilever Ice Cream, *Unilever Statement on Ben & Jerry's Foundation Audit* (Apr. 24, 2025) (Bankowski Decl., Ex. 2).

- <u>May 6, 2025</u>: Defendants informed the Foundation that it would receive the completed audit report because doing so would promote "transparency for all involved." Letter from Abhijit Bhattacharya, Ice Cream Chief Financial Officer, to Jeff Furman, President of The Ben & Jerry's Foundation, at 2 (May 6, 2025) (Bankowski Decl., Ex. 3).

- <u>May 18, 2025</u>: Defendants again asserted that the audit was "routine" and emphasized that "transparency is the hallmark of responsible charitable foundations, which ordinarily welcome audits as a means of improving performance, efficiency, and compliance." Email from Abhijit Bhattacharya to The Ben & Jerry's Foundation, at 2 (May 18, 2025) (Bankowski Decl., Ex. 4).

In reliance on those representations, the Foundation produced documents, participated in interviews, and cooperated fully with the audit. It was told the process was an independent audit— not a privileged investigation intended for use in litigation. Defendants cannot induce the Foundation's participation based on those representations and then invoke work-product protection to shield significant aspects of the audit process after completion.

### C.     The Foundation Has a Substantial Need for the Audit Materials.

Even if the Court concludes that some responsive materials constitute ordinary work product, Rule 26(b)(3) permits their disclosure upon a showing of "substantial need" and an inability to obtain the substantial equivalent without undue hardship. Fed. R. Civ. P.

The Honorable P. Kevin Castel
July 28, 2026
Page 9

26(b)(3)(A)(ii). *See Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74–75 (S.D.N.Y. 2010) ("A substantial need exists where the information sought is essential to the party's defense, is crucial to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues." (cleaned up)). To the extent Defendants continue to withhold factual audit-related materials on that basis, the Foundation readily satisfies that standard.

The audit-related materials bear directly on the merits of the Foundation's claims. Defendants have repeatedly asserted that the audit justified withholding Foundation funding and demanding sweeping governance changes. The Foundation's position, based on the manner in which the audit was conducted, Defendants' subsequent demands, and other circumstances, is that the audit was pretextual and its conclusions may have been pre-ordained. ECF 110 at 24, 28-32; ECF 83 at 2. Defendants' communications with the audit firms, their internal communications, and documents such as scope of work, proposed or draft findings, and draft reports are thus key evidence in this case. As the Foundation has argued in opposing dismissal, Section 6.14(h) of the Merger Agreement imposes an objective reasonableness standard on Defendants' funding decisions for the Foundation. ECF 133 at 34. Those materials go directly to whether Defendants acted reasonably in requesting and conducting the audit or, as the Foundation now believes, the audit was a pretext for asserting control over the Foundation's governance.

The Foundation cannot obtain the substantial equivalent of those materials through other means. Although Defendants have agreed to produce the final EY audit report and EY's ordinary-course work papers, those materials do not reveal the contemporaneous factual development that preceded, shaped, and followed the audit. Nor can depositions conducted after the fact recreate those exchanges or Defendants' internal deliberations concerning the audit and its role in their decision to suspend Foundation funding.

Because the remaining withheld factual materials are central to the Foundation's claims and unavailable from any other source, Rule 26(b)(3) requires their production to the extent they constitute ordinary work product.

### D.     The same waiver and fairness principles that preclude Defendants' work-product claims also limit their assertions of attorney-client privilege.

Defendants also assert attorney-client privilege as a potential basis for withholding certain requested documents. To the extent Defendants contend that communications with the audit firms are protected by the attorney-client privilege, such a claim would not be supportable. The audit firms were retained to conduct an independent investigation, not to facilitate the rendering of legal advice. *See Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 175 F.R.D. 431, 437 (W.D.N.Y. 1997) (finding no privilege where the consultant's role "was not to put information gained from the plaintiff into usable form for the defendant's attorneys to render legal advice, but rather, to collect information not obtainable directly from the plaintiff" (cleaned up)). Further, by placing the "independent" audit at the center of their justification for withholding Foundation funding, Defendants have placed the audit at issue and implicated fundamental fairness concerns. *See Columbia Data*, 2012 WL 6212898, at *18 (holding that, "[i]n fairness, CDP cannot use PWC's status and work as an independent auditor as a 'sword' against the defendants, while relying on the

The Honorable P. Kevin Castel
July 28, 2026
Page 10

attorney-client privilege and the work product doctrine as a 'shield' to prevent disclosure of related materials"). The "attorney-client privilege cannot at once be used as a sword and a shield, meaning a defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *Patriarch Partners Agency Servs., LLC v. Zohar CDO 2003-1, Ltd.*, No. 16-CV-4488 (VM), 2026 WL 685730, at *2 (S.D.N.Y. Mar. 11, 2026) (cleaned up); *see also Worthington v. Endee*, 177 F.R.D. 113, 118 (N.D.N.Y. 1998) (ordering production of the "entire report and the notes" from an investigation placed "at issue").

For these reasons, the Foundation respectfully requests that the Court schedule a discovery conference and direct Defendants to produce additional audit-related materials, including engagement letters and scope of work, all communications with EY and FRA, and draft findings and reports, among other related documents. We thank the Court for its time and attention to this matter.

Respectfully submitted,

*/s/ Bridget Asay*

Bridget Asay

cc:    All counsel of record.

The Honorable P. Kevin Castel
July 28, 2026
Page 11

## RULE 37(a)(1) CERTIFICATION

Pursuant to Your Honor's Individual Practices in Civil Cases § 3(B), I hereby certify that counsel for the Foundation conferred in good faith with counsel for Defendants on June 16, 2026 and July 10, 2026, in an effort to resolve the issues raised in this letter motion. During those conferences, the parties discussed Defendants' assertions of work-product protection over the audit-related materials. The Foundation explained its position that Defendants could not withhold those materials based on work product given their contemporaneous representations including that the audit was independent and routine. The Foundation asked Defendants to explain their position including identifying the litigation the audit was allegedly prepared for and reconciling their position with Defendants' prior descriptions of the audit. Defendants agreed to explain their position in writing. In a letter dated July 20, 2026, Defendants provided a one-sentence explanation of their work-product assertion and stated that they would produce "the final EY audit report and EY's audit work papers generated in the ordinary course of the audit." Defendants have not agreed to produce Defendants' communications with the audit firms EY and FRA (RFP 14) and represented they would withhold both privileged communications and attorney work product related to the audit.

*/s/ Bridget Asay*
Bridget Asay

The Honorable P. Kevin Castel
July 28, 2026
Page 12

| APPENDIX A | | |
|---|---|---|
| **Foundation's Requests for Production** | **Defendants' Response** | **Defendants' Subsequent Correspondence** |
| **RFP No. 4:** All Documents and Communications Concerning any analysis of the impact of Defendants' actions Relating to (1) the Audit or (2) Foundation Funding on the Foundation's operations, grantmaking, or financial condition. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad and unduly burdensome, and as vague and ambiguous, particularly insofar as it requests "[a]ll Documents and Communications" and seeks information or documents regarding the "impact of Defendants' actions," and insofar as it references "the Audit," because the term "Audit" as defined does not refer to any specific audit or investigation. **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants also object to the lack of temporal scope of this Request. Defendants further object to this Request to the extent that it is duplicative of Requests 1 and 3. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to meet and confer concerning this Request. | July 20, 2026: Defendants will produce the final EY audit report and EY's audit work papers generated in the ordinary course of the audit. The production of those materials does not waive any applicable privilege, work-product protection, or other protection with respect to any other documents or communications. Defendants are not asserting privilege over the final audit report or EY's ordinary-course audit work papers. Defendants will, however, withhold privileged communications and attorney work product relating to the audit, including communications involving counsel. Those communications occurred in the context of ongoing legal matters, including the Demerger, the related litigation, and the Business Integrity investigation, and remain protected notwithstanding production of the audit report and audit work papers. |
| **RFP No. 6**: All Documents and Communications Concerning any evaluation, determination, or assertion | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as | July 20, 2026: Defendants will produce the final EY audit report and EY's audit work papers generated in the |

The Honorable P. Kevin Castel
July 28, 2026
Page 13

| | | |
|---|---|---|
| that any Foundation trustee was not "reasonably satisfactory," including but not limited to any such evaluation made in connection with the Audit, Foundation Funding, or any proposed or actual change to the Foundation's governance. | if set forth fully herein. Defendants further object to this Request as overly broad, and as vague and ambiguous, particularly insofar as it requests "[a]ll Documents and Communications" and seeks information or documents regarding the "evaluation, determination, or assertion that any Foundation trustee was not 'reasonably satisfactory,'" and insofar as it references "the Audit," because the term "Audit" as defined does not refer to any specific audit or investigation. **Defendants also object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the lack of temporal scope of this Request. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to meet and confer concerning this Request. | ordinary course of the audit. The production of those materials does not waive any applicable privilege, work-product protection, or other protection with respect to any other documents or communications. Defendants are not asserting privilege over the final audit report or EY's ordinary-course audit work papers. Defendants will, however, withhold privileged communications and attorney work product relating to the audit, including communications involving counsel. Those communications occurred in the context of ongoing legal matters, including the Demerger, the related litigation, and the Business Integrity investigation, and remain protected notwithstanding production of the audit report and audit work papers. |
| **RFP No. 7**: All Documents and Communications Related to the Audit. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll Documents and Communications related to the Audit," and as vague and ambiguous insofar as it | July 20, 2026: Defendants will produce the final EY audit report and EY's audit work papers generated in the ordinary course of the audit. The production of those materials does not waive any applicable privilege, work-product protection, or other protection with respect to any other documents or communications. Defendants |

The Honorable P. Kevin Castel
July 28, 2026
Page 14

| | | |
|---|---|---|
| | references "the Audit," because the term "Audit" as defined does not refer to any specific audit or investigation. For purposes of this Request, Defendants interpret "the Audit" to mean the audit of the Foundation discussed in the October 23, 2025 Letter. **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the lack of temporal scope of this Request. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to conduct a reasonable custodial search for, and produce, relevant, non-privileged documents, if any, in response to this Request, following the entry of a Protective Order by the Court. | are not asserting privilege over the final audit report or EY's ordinary-course audit work papers. Defendants will, however, withhold privileged communications and attorney work product relating to the audit, including communications involving counsel. Those communications occurred in the context of ongoing legal matters, including the Demerger, the related litigation, and the Business Integrity investigation, and remain protected notwithstanding production of the audit report and audit work papers. |
| **RFP No. 8**: All Documents and Communications Concerning the initiation of the Audit, including but not limited to any analysis of its purpose or scope. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll Documents and Communications" concerning "the initiation of the Audit," and as vague and ambiguous insofar as it references "the Audit," because the term "Audit" as defined does not | June 22, 2026 (Ex. 2): With respect to RFP No. 8, Defendants agreed to conduct a reasonable custodial search for, and produce, relevant, non-privileged documents from January 1, 2025 through December 31, 2025, in response to this Request. During the meet and confer, the Foundation indicated it would be willing to accept this time period limitation if Defendants confirmed in |

The Honorable P. Kevin Castel
July 28, 2026
Page 15

| | | |
|---|---|---|
| | refer to any specific audit or investigation. For purposes of this Request, Defendants interpret "the Audit" to mean the audit of the Foundation discussed in the October 23, 2025 Letter. **Defendants also object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the extent the Request is duplicative of Request 7. Defendants further object to the lack of temporal scope of this Request. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to conduct a reasonable custodial search for, and produce, relevant, non-privileged documents from January 1, 2025 through December 31, 2025, if any, in response to this Request, following the entry of a Protective Order by the Court. | writing that the audit was not initiated before 2025. Defendants reject the Foundation's proposal. Instead, Defendants will agree to search for and produce responsive, non-privileged documents from January 1, 2021 through December 31, 2025. |
| **RFP No. 9**: All Documents and Communications Concerning any asserted basis for the Audit. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, and as vague and ambiguous, particularly insofar as it requests "[a]ll Documents and Communications" concerning "any asserted basis for the Audit," and insofar as it references "the Audit," | |

The Honorable P. Kevin Castel
July 28, 2026
Page 16

| | | |
|---|---|---|
| | because the term "Audit" as defined does not refer to any specific audit or investigation. For purposes of this Request, Defendants interpret "the Audit" to mean the audit of the Foundation discussed in the October 23, 2025 Letter. Defendants also object to this Request because the burden of obtaining such documents is the same for the Foundation as it is for Defendants, as the Foundation was informed on the reasons for the Audit. **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the extent the Request is duplicative of Requests 7 and 8. Defendants further object to the lack of temporal scope of this Request. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to conduct a reasonable custodial search for, and produce, relevant, non-privileged documents, if any, in response to this Request, following the entry of a Protective Order by the Court. | |
| **RFP No. 10**: All Documents and Communications, including but not limited to, engagement agreements, statements of work, or requests for proposal, | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to | |

The Honorable P. Kevin Castel
July 28, 2026
Page 17

| | | |
|---|---|---|
| Concerning the selection, retention, or role of EY, FRA, or any other external adviser in connection with the Audit. | this Request as overly broad, particularly insofar as it requests "[a]ll Documents and Communications," and as vague and ambiguous insofar as it references "the Audit," because the term "Audit" as defined does not refer to any specific audit or investigation. For purposes of this Request, Defendants interpret "the Audit" to mean the audit of the Foundation discussed in the October 23, 2025 Letter. **Defendants also object to this Request to the extent it calls for documents protected by the attorney client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the extent the Request is duplicative of Request 7. Defendants further object to the lack of temporal scope of this Request. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to conduct a reasonable custodial search for, and produce, relevant, non-privileged documents, if any, in response to this Request, following the entry of a Protective Order by the Court. | |
| **RFP No. 11**: All Documents and Communications Concerning the replacement of EY, FRA, or any other external adviser in connection with the Audit. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it | |

The Honorable P. Kevin Castel
July 28, 2026
Page 18

| | | |
|---|---|---|
| | requests "[a]ll Documents and Communications," and as vague and ambiguous insofar as it references "the Audit," because the term "Audit" as defined does not refer to any specific audit or investigation. For purposes of this Request, Defendants interpret "the Audit" to mean the audit of the Foundation discussed in the October 23, 2025 Letter. **Defendants also object to this Request to the extent it calls for documents protected by the attorney client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the lack of temporal scope of this Request. Defendants further object to the extent the Request is duplicative of Request 10. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to conduct a reasonable custodial search for, and produce, relevant, non-privileged documents, if any, in response to this Request, following the entry of a Protective Order by the Court. | |
| **RFP No. 12**: All Documents and Communications Concerning the scope, focus, or methodology of the Audit. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll Documents and | |

The Honorable P. Kevin Castel
July 28, 2026
Page 19

| | | |
|---|---|---|
| | Communications," and as vague and ambiguous insofar as it references "the Audit," because the term "Audit" as defined does not refer to any specific audit or investigation. For purposes of this Request, Defendants interpret "the Audit" to mean the audit of the Foundation discussed in the October 23, 2025 Letter. **Defendants also object to this Request to the extent it calls for documents protected by the attorney client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the lack of temporal scope of this Request. Defendants further object to the extent the Request is duplicative of Requests 7 and 8. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to conduct a reasonable custodial search for, and produce, relevant, non-privileged documents, if any, in response to this Request, following the entry of a Protective Order by the Court. | |
| **RFP No. 13**: All Documents and Communications between Defendants and EY, FRA, the Foundation, or its trustees Concerning the Foundation, the Audit, Foundation Funding, or any issue Relating to the Foundation. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, and as vague and ambiguous, particularly insofar as it requests "[a]ll Documents and | |

The Honorable P. Kevin Castel
July 28, 2026
Page 20

| | | |
|---|---|---|
| | Communications," and insofar as it references "the Audit," because the term "Audit" as defined does not refer to any specific audit or investigation. For purposes of this Request, Defendants interpret "the Audit" to mean the audit of the Foundation discussed in the October 23, 2025 Letter. The Request is unclear if the documents and communications being sought are only those between Defendants and EY, FRA, the Foundation, or its trustees, respectively, or if the Foundation is requesting any documents and communications including Defendants and EY, FRA, the Foundation, or its trustees. For the purpose of this Request, Defendants interpret the Request to seek only those documents between Defendants and EY, FRA, the Foundation, or its trustees, respectively. Defendants further object to this Request because the burden of obtaining such documents is the same for the Foundation as it is for Defendants, especially with respect to communications with the Foundation. Defendants also object to searching for and producing documents between EY and FRA, on the one hand, and the Foundation, on the other hand, as those documents are not in Defendants' possession. **Defendants further object to** | |

The Honorable P. Kevin Castel
July 28, 2026
Page 21

| | | |
|---|---|---|
| | **this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the lack of temporal scope of this Request. Defendants further object to the extent the Request is duplicative of Request 7. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to conduct a reasonable custodial search for, and produce, relevant, non-privileged documents, if any, in response to this Request, following the entry of a Protective Order by the Court. | |
| **RFP No. 14**: All Documents and Communications exchanged between Defendants and EY, FRA, or any other external adviser relating to the Audit. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll Documents and Communications," and as vague and ambiguous insofar as it references "the Audit," because the term "Audit" as defined does not refer to any specific audit or investigation. **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or** | June 22, 2026 (Ex. 2): Defendants maintain that communications with E&Y, FRA, and other advisors concerning the Audit are privileged to the extent they reflect legal advice or work product communications. Defendants are continuing to evaluate these materials and will identify any withheld documents on an appropriate privilege log. Defendants further confirm that the October 23, 2025 letter referenced in their responses is publicly available and will be produced.<br><br>July 20, 2026: Defendants will produce the final EY |

The Honorable P. Kevin Castel
July 28, 2026
Page 22

| | | |
|---|---|---|
| | **protections.** Defendants further object to the lack of temporal scope of this Request. Defendants further object to the extent the Request is duplicative of Requests 7 and 13. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants will not produce any documents responsive to this Request. | audit report and EY's audit work papers generated in the ordinary course of the audit. The production of those materials does not waive any applicable privilege, work-product protection, or other protection with respect to any other documents or communications. Defendants are not asserting privilege over the final audit report or EY's ordinary-course audit work papers. Defendants will, however, withhold privileged communications and attorney work product relating to the audit, including communications involving counsel. Those communications occurred in the context of ongoing legal matters, including the Demerger, the related litigation, and the Business Integrity investigation, and remain protected notwithstanding production of the audit report and audit work papers. |
| **RFP No. 15**: All draft or final Audit reports, findings, summaries, or conclusions, including but not limited to all Documents or Communications Related to any initial, proposed, preliminary, or final reports, findings, or conclusions and any changes to any initial, proposed, preliminary or final reports, findings, or conclusions proposed by any Person. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll Documents and Communications," and insofar as it requests "draft or final Audit reports," where "Audit" is defined as "any audit, investigation, review, assessment, inquiry, due- | |

The Honorable P. Kevin Castel
July 28, 2026
Page 23

| | | |
|---|---|---|
| | diligence process, forensic review, integrity review, or other examination of the Foundation…" **Defendants also object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the lack of temporal scope of this Request. Defendants further object to the extent the Request is duplicative of Request 7. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to meet and confer concerning this Request. | |
| **RFP No. 16**: All Documents and Communications Related to any findings, conclusions, or recommendations resulting from the Audit, and any action taken or considered in response to such findings. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll Documents and Communications," and as vague and ambiguous insofar as it references "the Audit," because the term "Audit" as defined does not refer to any specific audit or investigation. For purposes of this Request, Defendants interpret "the Audit" to mean the audit of the Foundation discussed in the October 23, 2025 Letter. **Defendants also object to this Request to the extent it calls for documents** | |

The Honorable P. Kevin Castel
July 28, 2026
Page 24

| | | |
|---|---|---|
| | **protected by the attorney client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the lack of temporal scope of this Request. Defendants further object to the extent the Request is duplicative of Requests 7 and 15. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to conduct a reasonable custodial search for, and produce, relevant, non-privileged documents, if any, in response to this Request, following the entry of a Protective Order by the Court. | |
| **RFP No. 17**: All Documents and Communications Related to any decision not to provide the Foundation or its trustees with Audit materials, findings, or reports. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll Documents and Communications," and as vague and ambiguous insofar as it references "the Audit," because the term "Audit" as defined does not refer to any specific audit or investigation. For purposes of this Request, Defendants interpret "the Audit" to mean the audit of the Foundation discussed in the October 23, 2025 Letter. **Defendants also object to this Request to the extent it calls for documents protected by the attorney** | July 20, 2026: Defendants will produce the final EY audit report and EY's audit work papers generated in the ordinary course of the audit. The production of those materials does not waive any applicable privilege, work-product protection, or other protection with respect to any other documents or communications. Defendants are not asserting privilege over the final audit report or EY's ordinary-course audit work papers. Defendants will, however, withhold privileged communications and attorney work product relating to the audit, including communications involving counsel. Those communications occurred in the context of ongoing legal |

The Honorable P. Kevin Castel
July 28, 2026
Page 25

| | | |
|---|---|---|
| | **client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the lack of temporal scope of this Request. Defendants further object to the extent the Request is duplicative of Request 7. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to conduct a reasonable custodial search for, and produce, relevant, non-privileged documents, if any, in response to this Request, following the entry of a Protective Order by the Court. | matters, including the Demerger, the related litigation, and the Business Integrity investigation, and remain protected notwithstanding production of the audit report and audit work papers. |
| **RFP No. 19**: All Documents and Communications Related to Magnum's December 13, 2025 correspondence setting forth additional conditions on the Foundation's funding, as described in Paragraphs 113 and 123 of Plaintiffs' Fourth Amended Complaint (ECF No. 108). | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll Documents and Communications." **Defendants also object to this Request to the extent it calls for documents protected by the attorney client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the extent the Request is duplicative of Request 18. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to conduct a reasonable custodial | |

The Honorable P. Kevin Castel
July 28, 2026
Page 26

| | | |
|---|---|---|
| | search for, and produce, relevant, non-privileged documents, if any, in response to this Request, following the entry of a Protective Order by the Court. | |
| **RFP No. 20**: All Documents and Communications Related to any investigation of Chair Mittal or any other Foundation trustee. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this request as overly broad, particularly insofar as it requests "[a]ll Documents and Communications." **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the lack of temporal scope of this Request. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants will produce non-privileged documents sufficient to show that Mittal is ineligible to serve on the Board. Defendants will not produce privileged documents associated with the Business Integrity Investigation. | |
| **RFP No. 21**: All Documents and Communications Related to the Oakland Institute or any Foundation grantee Identified as a basis for the Audit. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, | July 20, 2026: RFP Nos. 21 and 22 implicate the same privilege and work-product issues described above. Defendants will produce responsive, non-privileged documents concerning |

The Honorable P. Kevin Castel
July 28, 2026
Page 27

| | | |
|---|---|---|
| | particularly to the extent it requests "[a]ll Documents and Communications" related to "any Foundation grantee," and as vague and ambiguous insofar as it references "the Audit," because the term "Audit" as defined does not refer to any specific audit or investigation. **Defendants also object to this Request to the extent it calls for documents protected by the attorney client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the lack of temporal scope of this Request. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to meet and confer concerning this Request. | Foundation grantees and any non-privileged relationship among the Audit, Foundation funding, and governance decisions. Defendants will withhold communications or materials protected by the attorney-client privilege, work-product doctrine, or other applicable protections, and will identify withheld responsive documents on an appropriate privilege log. |
| **RFP No. 22**: All Documents and Communications Related to any relationship between the Audit, Foundation Funding, and any effort to influence, pressure, or remove any Foundation trustee or Independent Board member. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll Documents and Communications." Defendants further object to the Request as vague and ambiguous as to the meaning of "any relationship between the Audit, Foundation Funding, and any effort to influence, pressure, or remove any Foundation trustee or Independent Board member," and insofar as it references | July 20, 2026: Defendants will produce the final EY audit report and EY's audit work papers generated in the ordinary course of the audit. The production of those materials does not waive any applicable privilege, work-product protection, or other protection with respect to any other documents or communications. Defendants are not asserting privilege over the final audit report or EY's ordinary-course audit work papers. Defendants will, however, withhold privileged communications and attorney work product relating to the audit, |

The Honorable P. Kevin Castel
July 28, 2026
Page 28

| | | |
|---|---|---|
| | "the Audit," because the term "Audit" as defined does not refer to any specific audit or investigation. For purposes of this Request, Defendants interpret "the Audit" to mean the audit of the Foundation discussed in the October 23, 2025 Letter. Defendants further object to the Request as not relevant to the claims or defenses of any party, and not reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it requests information about the removal of a Board member. **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the lack of temporal scope of this Request. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to meet and confer concerning this Request. | including communications involving counsel. Those communications occurred in the context of ongoing legal matters, including the Demerger, the related litigation, and the Business Integrity investigation, and remain protected notwithstanding production of the audit report and audit work papers.<br><br>RFP Nos. 21 and 22 implicate the same privilege and work-product issues described above. Defendants will produce responsive, non-privileged documents concerning Foundation grantees and any non-privileged relationship among the Audit, Foundation funding, and governance decisions. Defendants will withhold communications or materials protected by the attorney-client privilege, work-product doctrine, or other applicable protections, and will identify withheld responsive documents on an appropriate privilege log. |
| **RFP No. 25**: All Documents and Communications Related to whether the Audit was "routine," "standard," or consistent with Defendants' practices. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad and unduly burdensome, and as vague and ambiguous, particularly insofar as it requests "[a]ll Documents and Communications," and insofar | June 22, 2026 (Ex. 2): Defendants will agree to conduct a reasonable search for and produce relevant, non-privileged documents sufficient to show their policies and practices concerning audits, investigations, and oversight, including documents concerning whether the Audit was routine, standard, |

The Honorable P. Kevin Castel
July 28, 2026
Page 29

| | | |
|---|---|---|
| | as it references "the Audit," because the term "Audit" as defined does not refer to any specific audit or investigation. For purposes of this Request, Defendants interpret "the Audit" to mean the audit of the Foundation discussed in the October 23, 2025 Letter. **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the lack of temporal scope of this Request. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants will produce non-privileged documents sufficient to show that Unilever/TMICC conducted other audits in connection with the demerger of the Unilever ice cream business. | or consistent with Defendants' practices. Defendants do not believe a broader production is warranted.<br><br>July 20, 2026: Defendants clarify that Defendants' proposal with respect to RFP Nos. 23 and 25 is responsive to the Foundation's request for documents related to Defendants' policies or practices concerning audits, investigations, or oversight of charitable foundations or philanthropic entities. |
| **RFP No. 26**: For the period January 1, 2024 to the present, all Documents and Communications Relating to any public statement, Communication with media members, or investor communication Relating to the Foundation, the Audit, or Foundation Funding. | Defendants incorporate each and all of their General Objections and Objections to Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, and unduly burdensome, and as vague and ambiguous, particularly insofar as it requests "[a]ll Documents and Communications," and insofar as it references "the Audit," because the term "Audit" as defined does not refer to any | |

The Honorable P. Kevin Castel
July 28, 2026
Page 30

| | | |
|---|---|---|
| | specific audit or investigation. For purposes of this Request, Defendants interpret "the Audit" to mean the audit of the Foundation discussed in the October 23, 2025 Letter. Defendants also object to this Request as not relevant to the claims or defenses of any party, and not reasonably calculated to lead to the discovery of admissible evidence, as media and investor communications are not relevant to the Foundation's claims. Defendants further object to this Request to the extent it calls for the production of documents that are publicly available because the burden of obtaining such documents is the same for the Foundation as it is for Defendants. **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to conduct a reasonable custodial search for, and produce, relevant, non-privileged documents, if any, in response to this Request, following the entry of a Protective Order by the Court. | |
| **RFP No. 28**: All Documents and Communications Relating to Defendants' | Defendants incorporate each and all of their General Objections and Objections to | July 20, 2026: Defendants will produce the final EY |

The Honorable P. Kevin Castel
July 28, 2026
Page 31

| | | |
|---|---|---|
| strategy, plans, or objectives Relating to the Foundation, the Audit, or Foundation Funding. | Instructions and Definitions as if set forth fully herein. Defendants further object to this Request as overly broad, particularly insofar as it requests "[a]ll Documents and Communications," and as vague and ambiguous insofar as it references "the Audit," because the term "Audit" as defined does not refer to any specific audit or investigation. **Defendants further object to this Request to the extent it calls for documents protected by the attorney-client privilege, the work product doctrine, and other applicable privileges or protections.** Defendants further object to the lack of temporal scope of this Request. Defendants further object to the extent the Request is duplicative of Request 27. Subject to and without waiving the foregoing, Defendants respond as follows: Defendants agree to meet and confer concerning this Request. | audit report and EY's audit work papers generated in the ordinary course of the audit. The production of those materials does not waive any applicable privilege, work-product protection, or other protection with respect to any other documents or communications. Defendants are not asserting privilege over the final audit report or EY's ordinary-course audit work papers. Defendants will, however, withhold privileged communications and attorney work product relating to the audit, including communications involving counsel. Those communications occurred in the context of ongoing legal matters, including the Demerger, the related litigation, and the Business Integrity investigation, and remain protected notwithstanding production of the audit report and audit work papers.<br><br>Defendants will conduct a reasonable search for and produce responsive, non-privileged documents concerning inter-Defendant communications and strategy relating to the Foundation, Audit, and Foundation funding. Defendants will withhold communications or materials protected by the attorney-client privilege, work-product |

The Honorable P. Kevin Castel
July 28, 2026
Page 32

| | | doctrine, or other applicable protections, and will identify withheld responsive documents on an appropriate privilege log. |
|---|---|---|