UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
BEN & JERRY'S HOMEMADE, INC.,
CLASS I DIRECTORS OF BEN & JERRY'S
INDEPENDENT BOARD, and
THE BEN & JERRY'S FOUNDATION, INC.,

               Plaintiffs,

      -against-

UNILEVER PLC., CONOPCO, INC.,
BEN & JERRY'S HOLDCO, LLC, and
THE MAGNUM ICE CREAM
COMPANY N.V.*,*

              Defendants.
--------------------------------------------------------------------------X

**24 Civ. 8641 (PKC) (GS)**

**<u>ORDER</u>**

**GARY STEIN, United States Magistrate Judge:**

By letter dated July 28, 2026, the parties have asked the Court to resolve several disputes concerning the proposed Protective Order in this case. (Dkt. No. 142 ("Ltr."); *see also id.* Ex. 3 (redline of Protective Order showing Defendants' proposed changes compared to Plaintiffs' proposal ("Ex. 3"))). This Order resolves those disputes.

### 1. Attorneys' Eyes Only Designation

Defendants seek to add a more restrictive tier allowing certain discovery materials to be designated as "Outside Counsel/Expert Eyes' Only." (Ltr. at 4; *see* Ex. 3 ¶ 3). Under Defendants' proposal, such materials could be disclosed only to outside counsel for a party, in-house counsel (despite the title of the designation), and outside experts or consultants; they could not be shared with the party itself

absent court order or consent from the producing party.  (Ex. 3 ¶¶ 10, 15).  Plaintiffs oppose this request.  (Ltr. at 3).

While not uncommon, Defendants' requested tier, more commonly known as an "Attorneys' Eyes Only," or "AEO," designation, is not routine and requires justification rooted in the facts and circumstances of the particular case. "Accordingly, when a party seeks a limitation in a protective order designating certain documents as 'attorneys' eyes only,' it is that party's burden to establish good cause for the AEO designation." *Austin v. Fordham Univ.*, No. 23 Civ. 4696 (PAC) (GS), 2024 WL 749636, at *3 (S.D.N.Y. Feb. 23, 2024).  "Good cause is established by 'demonstrating a particular need for protection.'" *Flores v. Stanford*, No. 18 Civ. 2468 (VB) (JCM), 2021 WL 4441614, at *4 (S.D.N.Y. Sept. 28, 2021) (quoting *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010)).  Ordinarily, good cause for an AEO designation requires a party to show that "disclosure of the confidential information will result in a clearly defined and very serious injury to its business." *Form Portfolios LLC v. Food52, Inc.*, No. 24 Civ. 7690 (NCM) (CLP), 2025 WL 3120481, at *3 (E.D.N.Y. Nov. 7, 2025) (quoting *GMA Accessories Inc. v. Unit 20 Ltd.*, No. 21 Civ. 11227 (LGS) (JLC), 2022 WL 2057681, at *2 (S.D.N.Y. June 8, 2022)).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Duling*, 266 F.R.D. at 71 (citation omitted).

Defendants have not shown good cause for an AEO designation here.  Defendants assert that discovery will "involve highly sensitive, non-public

information regarding Defendants' business practices[.]" (Ltr. at 4). That circumstance provides good cause for entry of a protective order permitting Defendants to designate discovery material as "Confidential." It is not enough, however, to justify a more restrictive AEO tier. Such restrictions are typically reserved for situations where disclosure of information to the other party would itself cause competitive injury or other harm, such as where the parties are competitors. *See ABH Nature's Prods., Inc. v. Supplement Mfg. Partner, Inc.*, No. 19 Civ. 5637 (LDH), 2020 WL 13542014, at *1 (E.D.N.Y. July 20, 2020) ("[T]he designating party carries a heightened burden to justify an AEO designation, the purpose of which is to prevent injury to the designating party flowing from disclosure of its trade secrets to a competitor.").

That is not the situation here. Plaintiffs and Defendants are not competitors, and Defendants do not articulate any particularized harm that could befall them if Plaintiffs themselves were to view the materials produced during discovery. Moreover, although Defendants refer vaguely to "trade secrets" that may be disclosed in discovery (*see* Ltr. at 4), they do not describe the nature of any such trade secrets or offer a particularized justification as to why AEO treatment of such materials is necessary. *See ABH Nature's Prods.*, 2020 WL 13542014, at *1 ("Conclusory statements that the challenged AEO materials contain trade secrets is insufficient."). Descriptions of the information as "sensitive" (*see* Ltr. at 4; Ex. 3 ¶ 3) are likewise insufficient. *See Form Portfolios*, 2025 WL 3120481, at *3 ("That the information is commercially sensitive is not enough[.]").

3

Instead, Defendants principally express concern that confidential information it produces in this litigation could find its way into the hands of Ben & Jerry's co-founder Ben Cohen.  (Ltr. at 4).  But while Cohen may be allied with Plaintiffs in this litigation (*see id.* (noting that Cohen submitted an affidavit in support of Plaintiffs)), he is not one of the individual Plaintiffs in this action, nor do Defendants state that he is an authorized representative of the entity Plaintiffs.  Any information designated Confidential under the Protective Order could not be disclosed to Cohen unless he were a witness, and in that event he would have to sign a Non-Disclosure Agreement, which would prohibit him from disclosing the information or using it other than for purposes of the litigation.  (*See* Ex. 3 ¶ 10(k)).

Defendants assert that Cohen has declared his intent to buy Ben & Jerry's Homemade, Inc. ("B&J") himself, and claim there is a "risk" he would—in violation of the Protective Order—misuse confidential information as part of an effort to "sink" the stock price of Defendant The Magnum Ice Cream Company and thereby "manipulate a purchase of B&J." (*Id.*). (Ltr. at 4).  But absent a more particularized showing giving reason to believe that this will happen, the mere possibility that the terms of a Protective Order will be disobeyed is insufficient to justify an AEO designation. *See, e.g.*, *Austin*, 2024 WL 749636, at \*4 (rejecting proposed AEO designation based on fear of improper disclosure of medical records where records "would be protected by the terms of a confidentiality order to be entered by the Court" and party receiving records "would be subject to contempt

4

sanctions" if he violated order); *Deffaa v. Pivotel Am., Inc.*, No. 20 Civ. 5466 (ER), 2021 WL 4124301, at \*2 (S.D.N.Y. Sept. 9, 2021) (denying motion to designate certain records as AEO; "given that Deffaa has been warned about the importance of abiding by the protective order, Pivotel has not met its burden of showing a substantial risk of harm that would result from disclosure to her"); *HSqd, LLC v. Morinville*, Civ. No. 3:11CV1225 (WWE), 2013 WL 1149944, at \*3 (D. Conn. Mar. 19, 2013) (finding that "defendant has failed to meet the good cause standard to justify" AEO designation and stating that "[the court] trusts that the parties will abide by" provisions of the protective order).

"'[E]very litigant has a powerful interest in being able to retain and consult freely with an attorney' and 'to participate in the process whereby justice is done,' rather than 'passively . . . await[ing]' the outcome of the proceeding." *Austin*, 2024 WL 749636, at \*5 (quoting *Doe v. District of Columbia*, 697 F.2d 1115, 1119–20 (D.C. Cir. 1983)). "Consequently, courts should be 'chary of issuing protective orders that restrict the ability of counsel and client to consult with one another during trial or during the preparation therefor.'" *Id.* (quoting *Doe*, 697 F.3d at 1119). Defendants have not met their burden of showing a "particular need for protection," *Flores*, 2021 WL 4441614, at \*4 (citation omitted), sufficient to override Plaintiff's "powerful interest," *Doe*, 697 F.3d at 1119, in being able to view the discovery materials in this case and discuss them intelligently with counsel.

### 2. Confidentiality Designations by Non-Producing Parties

Next, Defendants propose that a non-producing party be able to designate discovery materials produced by the other party as Confidential, if the producing party did not do so. (Ltr. at 4). Plaintiffs object to this proposal as "non-standard" and "extraordinary." (*Id.* at 2).

Defendants argue that such a provision is necessary because those Plaintiffs who are independent Board members of B&J have received "years of B&J's most sensitive confidential information," yet "now seek to have this very information publicly disclosed" based on their contention that the information "is not confidential at all." (*Id.* at 4). Defendants state that "whether Defendants' confidential business information warrants protection is a decision that belongs to Defendants who own this information, not to the party who received it while under an obligation to maintain its confidences." (*Id.*).

The Court will assume that Defendants have identified a real and legitimate problem—*i.e.*, that Plaintiffs might improperly disclose B&J confidential information they received as directors. But Defendants' proposed modification of the Protective Order is not the right solution to that problem. As Defendant note, to the extent the B&J directors received confidential company information in their capacity as directors, they would have a preexisting "fiduciary obligation to keep this information confidential." (*Id.*). Defendants have existing legal remedies if Plaintiffs breach that obligation (or any contractual obligation of confidentiality to which Plaintiffs may be subject). Defendants cite no authority to suggest they are

6

entitled to impose an *additional* obligation of confidentiality on Plaintiffs, along with additional remedies, by unilaterally designating material produced by Plaintiffs as Confidential under the Protective Order.

Defendants may, to the extent they have not already done so, notify Plaintiffs that particular documents or categories of documents and information in Plaintiffs' possession constitute confidential B&J information and may not be publicly disclosed on the docket in this case or otherwise.  Alternatively, or in addition, Defendants may provide such notice if they believe Plaintiffs have produced such confidential information in discovery without designating it as Confidential.  Plaintiffs would act at their peril if those warnings go unheeded.  But that has nothing to do with the Protective Order.  It is not the office of a Protective Order to give a non-producing party rights to designate material already in the possession of its adversary as "Confidential," separate and apart from whatever preexisting confidentiality obligations may attach to that material.

### 3. Use of Non-Confidential Discovery Materials

Finally, Defendants propose that the Protective Order prohibit all discovery materials produced in this case—not just discovery materials marked Confidential—from being used outside the context of this litigation.  (Ltr. at 5; *see* Ex. 3 ¶ 15 ("Recipients of Discovery Material under this Protective Order may use such material solely for the prosecution and defense of this action, and specifically (and by way of example and not limitation) may not use Discovery Material for any business, commercial or competitive purpose.")).

Plaintiffs again object to Defendants' proposal as "non-standard." (Ltr. at 2). By contrast, Defendants characterize their proposal as "a typical clause included in protective orders." (*Id.* at 5). Defendants do not, however, cite any authority in support of that position. And a review of model protective orders used by judges in this district contradicts Defendants' characterization. While provisions limiting use of discovery materials in the manner set forth in Defendants' proposed Paragraph 15 are, indeed, quite common, the standard clause contains an important difference: it applies only to "*Confidential* Discovery Material." *See, e.g.*, Hon. Gary Stein, Model Stipulation and Protective Order, U.S. Dist. Court, S.D.N.Y. (Sept. 27, 2023), https://nysd.uscourts.gov/sites/default/files/practice_documents/Model%20Stipulatio n%20and%20Protective%20Order.pdf (emphasis added); *Lively v. Wayfarer Studios LLC*, No. 24 Civ. 10049 (lead case), 2025 WL 815364, at *8 (S.D.N.Y. Mar. 13, 2025); *Hildreth Real Estate Advs. LLC v. Galvis*, No. 23 Civ. 9372 (DEH), 2024 WL 2750883, at *4 (S.D.N.Y. May 29, 2024); *Chang v. Mizuho Secs. USA LLC*, No. 21 Civ. 3874 (CM), 2023 WL 8760889, at *4 (S.D.N.Y. Dec. 19, 2023).

Defendants predict that, absent a restriction along the lines they propose, Plaintiffs will use "non-confidential information" exchanged in the litigation for improper purposes, such as "to harass or intimidate Defendants' witnesses or business partners." (Ltr. at 5). They point to Plaintiffs' apparent sharing of Defendants' initial disclosures with the author of a Substack article critical of witnesses on Defendants' witness list. (*Id.*). Defendants do not, however, suggest that Plaintiffs violated any rule or court order by sharing the initial disclosures

8

with a third party.  Nor do they provide a basis to conclude that Plaintiffs had an improper purpose in doing so or even provide a copy of the Substack article.

The Court must and will be alert to attempts by any party to use social media or other means for purposes of harassment or to deprive an adversary of a fair trial.  But Defendants fall far short of showing good cause adequate to justify the kind of sweeping restriction they propose, which would bar Plaintiffs from disclosing *all* non-confidential material produced in discovery, regardless of its nature.  *See, e.g.*, *Munoz v. City of New York*, No. 11 Civ. 7402 (JMF), 2013 WL 1953180, at *1, 2 (S.D.N.Y. May 10, 2013) (denying defendant's motion for a protective order requiring plaintiff's counsel to "refrain from further dissemination of 'discovery material,'" while noting that the court "has the power to enter prophylactic orders that will protect parties' right to a fair trial"); *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 473, 481–82 (S.D.N.Y. 1982) (denying motion for protective order seeking to "prohibit disclosure of information obtained through discovery to anyone other than a party . . . and that party's authorized representatives and attorneys"; "[a]t this time, there are no exigencies that warrant such a sweeping order in this case").

Appearing to again reference confidential B&J information already in Plaintiffs' possession, Defendants also argue that a restriction on the use of such material outside this litigation is necessary because otherwise, Plaintiffs "may share confidential information in discovery" but, by not marking it Confidential, will then be able to "use Defendants' own confidential information for improper

9

purposes outside this litigation." (Ltr. at 5). This argument misses the mark because it again ignores Plaintiffs' preexisting confidentiality obligations that attach to confidential B&J information received in their fiduciary capacities. Thus, to the extent Plaintiffs already possess confidential B&J information, Defendants are protected against improper public disclosure of that information. And to the extent Defendants seek to restrict Plaintiffs from publicly disclosing information in their possession which is *not* confidential, simply because Plaintiffs provide it in the course of discovery in this case, the request is inappropriate. Protective Orders in this district routinely include a provision stating, in words or substance, that the Protective Order does not "limit or restrict the rights of any person to use or disclose information or material obtained independently from and not through or pursuant to discovery in this action." *See, e.g.*, Hon. Gary Stein, Model Stipulation and Protective Order, U.S. Dist. Court, S.D.N.Y. (Sept. 27, 2023), https://nysd.uscourts.gov/sites/default/files/practice_documents/Model%20Stipulation%20and%20Protective%20Order.pdf.

### 4. Client Representative Issue

Although not foreshadowed at the outset, Defendants make a further proposal at the end of the parties' letter: that only a party's in-house counsel be able to attend any hearing in this case where Confidential Material is discussed. (Ltr. at 5; *see* Ex. 3 ¶ 7). This proposal appears to be based, at least in part, on the assumption that the Protective Order will include an AEO tier. Because it will not,

the parties are directed to further meet and confer about this provision of the Protective Order.

Following that meet and confer, the parties are directed to promptly submit a revised Protective Order that incorporates the rulings set forth in this Order. The Clerk of Court is respectfully requested to close the motion pending at Docket Number 142.

**SO ORDERED.**

DATED:     New York, New York
           August 13, 2026

_____
The Honorable Gary Stein
United States Magistrate Judge

11