**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

*VIA ECF*

October 1, 2026

**David J. Lender**
+1 (212) 310-8153
david.lender@weil.com

The Honorable P. Kevin Castel
The Honorable Gary Stein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re:** ***Class I Directors of Ben & Jerry's Independent Board v. The Magnum Ice Cream Company N.V., et al.*****, Case No. 24-cv-8641-PKC-GS (S.D.N.Y.)**

Dear Judge Castel and Magistrate Judge Stein:

Pursuant to Rule 3(A) of Judge Castel's Individual Practices, Defendants The Magnum Ice Cream Company N.V. ("**TMICC**") and Ben & Jerry's HoldCo, LLC ("**HoldCo**") (collectively, "**Defendants**") and Counterclaim-Plaintiffs TMICC, HoldCo, and Ben & Jerry's Homemade, Inc. ("**B&J**") (collectively, "**Counterclaim-Plaintiffs**") submit this letter in opposition to Plaintiffs' pre-motion letter seeking leave to file a Fifth Amended Complaint. *See* ECF No. 177.

## I. Procedural Background

Plaintiffs first filed this case on November 14, 2024. Following two amendments, on April 10, 2026, in conjunction with the Third Amended Complaint, Plaintiffs sought a Temporary Restraining Order and Preliminary Injunction. *See* ECF Nos. 78-87. At the April 14, 2026 hearing ("**TRO Hearing**"), the Court denied Plaintiffs' requests for a restraining order and injunctive relief. *See* TRO Hearing Tr. at 38:6-43:11. The Court also set a discovery schedule and allowed time for amended pleadings. *Id.* at 45:2-18; *see also* ECF No. 100. With Defendants' consent, Plaintiffs were granted leave to file a Fourth Amended Complaint on May 4, 2026, notwithstanding that the Court had directed that the pleadings should not be further amended. ECF No. 105. The now-operative Fourth Amended Complaint was filed on May 7, 2026. ECF No. 110. Briefing on Defendants' Motion to Dismiss and Motion to Substitute also followed, *see* ECF Nos. 117-121, 133, 139, and the parties have engaged in expedited discovery over the last five months. Defendants have produced over 60,000 documents, and Plaintiffs have produced around 2,900 documents.[1] Several key witnesses have been deposed, including Ms. Bankowski (Trustee of the Ben & Jerry's Foundation), Mr. Senf (CEO of B&J), Mr. ter Kulve (CEO of TMICC), Mr. Bhattacharya (CFO of TMICC), Mr. Rozanski (President of the Americas for TMICC), and Plaintiffs Ms. Mittal and Ms. Sok.

[1] The Ben & Jerry's Foundation, now a third-party, also produced 700 documents. Document productions from third-parties Mr. Greenfield and Mr. Cohen are anticipated.

Under the Case Management Order, discovery is scheduled to close in two weeks—on October 16, 2026; pre-summary judgment letters are due at the end of the month on October 30, 2026; and expert discovery closes on January 8, 2027. ECF No. 175.

On August 21, 2026, the Court ruled on Defendants' Motion to Dismiss, dismissing seven of ten claims in this case, and four parties—leaving only claims by the former Class I Directors under the Settlement Agreement (as amended) and Section 6.14(a) of the Merger Agreement. On September 4, 2026, Defendants and Counterclaim-Plaintiffs filed an Answer and Counterclaims against former Class I Directors Anuradha Mittal, Aseel Najib, Daryn Dodson, Jennifer Henderson, Detavio Samuels, and Chivy Sok, as well as Chris Miller (together, "**Counterclaim-Defendants**"), seeking a declaratory judgment for breach of fiduciary duties. On September 25, 2026, Counterclaim-Defendants filed a pre-motion letter seeking leave to move to dismiss the Counterclaims, ECF No. 176, and on September 27, 2026, Plaintiffs filed their pre-motion letter seeking leave to file a Fifth Amended Complaint, notwithstanding the near-completion of discovery, ECF No. 177.

## II. Plaintiffs' Motion to Amend Is Untimely

The Court should deny Plaintiffs' request to file a Fifth Amended Complaint. "Where, as here, a scheduling order governs amendments to the complaint, 'the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.'" *Holmes v. Grubman,* 568 F.3d 329, 334-35 (2d Cir. 2009) (quoting *Grochowski v. Phoenix Constr*., 318 F.3d 80, 86 (2d Cir. 2003)); *see also Sacerdote v. New York University*, 9 F.4th 95, 115 (2d Cir. 2021) ("The period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted."). "Whether good cause exists turns on the 'diligence of the moving party.'" *Holmes,* 568 F.3d at 335 (quoting *Grochowski,* 318 F.3d at 86).

The deadline to amend pleadings under the Case Management Order has long passed, and Plaintiffs seek to amend the complaint for the *sixth time* since the initiation of this case. *See* ECF No. 165 ¶ 3. The Court previously advised Plaintiffs that the *Second* Amended Complaint would be Plaintiffs' "last and final amendment to the pleadings," *see* ECF No. 49, and stated the same following the Third Amended Complaint, *see* ECF No. 77 ("No further amendment or joinder shall be permitted. Rule 16(b)(3)(A)."). Plaintiffs were then permitted to amend again only after the TRO Hearing and with Defendants' consent. *See* ECF No. 105.

More importantly, while Plaintiffs claim that these new factual allegations could not have been pled prior to August 26, 2026, Plaintiffs concede that this new claim—and the relief they seek—are already "implicitly addressed by relief sought in the Fourth Amended Complaint." ECF No. 177. Indeed, Plaintiffs could have asserted this claim in their prior amendment but chose not to. As part of the TRO, Plaintiffs sought "to prevent [Defendants] from appoint[ing] or elect[ing] any Class I director to the board of Ben & Jerry's Homemade without the written request of at least a majority of Class I directors in office as of

December 1, 2025." TRO Hearing Tr. at 39:12-15. The Court denied that relief, and Plaintiffs did not add a claim regarding appointment or election of Class I Directors in the subsequently filed Fourth Amended Complaint. *See* ECF No. 110; *see also* ECF No. 104-1 (redline of the proposed Fourth Amended Complaint against the Third Amended Complaint). Yet, Plaintiffs added a notation in the factual background that on January 22, 2026, TMICC "informed *The Wall Street Journal*—in further contravention of the Merger Agreement's appointment process … that [TMICC] 'would appoint an independent chair who would then appoint new independent directors to the *new* Ben & Jerry's Board.'" ECF No. 104-1 ¶ 123. Plaintiffs also added to their Request for Injunctive Relief that TMICC be enjoined from "electing any new Class I Directors other than Chris Miller." *Id.* ¶ 198(b). Despite this knowledge and these statements in other documents filed prior to the Third and Fourth Amended Complaints, Plaintiffs did not amend any Cause of Action to assert claims regarding election of Class I Directors. *See id.* ¶¶ 125-197.

In sum, Plaintiffs had numerous opportunities to assert this "new" claim: (i) in January 2026, following *The Wall Street Journal* article; (ii) in April 2026, at the time of the Third Amended Complaint and TRO Hearing; (iii) in May 2026, when filing the Fourth Amended Complaint; or (iv) in July 2026, when the *Rolling Cone*—authored by Plaintiff and Counterclaim-Defendant Chris Miller—posted a Substack "Message to Whoever [B&J's CEO] Jochanan is Calling to Cross the Picket Line and Join the Independent Board" to discourage potential appointees from joining the Board.[2] At a minimum, on August 25, 2026, when the appointment of new Class I Directors was announced, Plaintiffs could have immediately sought leave to amend.[3] Instead, Plaintiffs sought leave to file an early motion for partial summary judgment, ECF No. 164; allowed Defendants to answer the Fourth Amended Complaint and assert Counterclaims, ECF No. 169; and waited until fact discovery was nearly complete before raising the issue. This is delay, not diligence.

Because "a finding of 'good cause' depends on the diligence of the moving party," *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir. 2000), and Plaintiffs have not acted diligently, Plaintiffs' request to amend the Fourth Amended Complaint should be denied.

## III. <u>Amendment Is Futile</u>

---

[2] *Rolling Cone Issue #31 - A Message to Whoever Jochanan is Calling to Cross the Picket Line and Join the Independent Board*, The Rolling Cone, https://benjerry1.substack.com/p/rolling-cone-issue-31-a-message-to (Jul. 14, 2026) (Warning potential B&J Board members, "we're trying to do you a favor. We thought you'd rather hear this now than to read your own name in an upcoming issue of the Rolling Cone.").

[3] Indeed, on August 27, Plaintiffs' counsel asserted a desire to move to amend for this very purpose. Counsel for the Defendants responded the same day, requesting to review the proposed amendments. Nearly three weeks later, Plaintiffs responded with a draft.

The proposed Fifth Amended Complaint is also futile. The claims have already been denied, lack merit, and do not conform to the Court's Opinion and Order on the Motion to Dismiss. Allowing amendment at this stage would prejudice Defendants by forcing them to relitigate issues already resolved at this late stage of fact discovery. Moreover, it was the Plaintiffs who objected to Defendants' requests to stay discovery given the pending motion to dismiss and confusion regarding representation of Ben & Jerry's. To now request yet another amendment—after insisting discovery move forward—would unfairly prejudice Defendants.

At the TRO Hearing, Plaintiffs sought to "prevent [Defendants] from appoint[ing] or elect[ing] any Class I director to the board of Ben & Jerry's Homemade without the written request of at least a majority of Class I directors in office as of December 1, 2025." TRO Hearing Tr. at 39:12-15. The Court denied that relief. TRO Hearing Tr. at 43:4-11. To obtain the permanent injunction Plaintiffs now seek, a plaintiff must prove irreparable harm. *See Kelen v. World Fin. Network Nat. Bank*, 763 F. Supp. 2d 391, 394 (S.D.N.Y. 2011) ("To obtain a permanent injunction, a plaintiff must succeed on the merits and 'show the absence of an adequate remedy at law and irreparable harm if the relief is not granted.'") (quoting *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006)). But there is no irreparable harm—indeed, no harm at all—to the former Class I Directors from the appointment of new Class I Directors. As of December 1, 2025, there were only six Class I Directors elected on B&J's Board. The Merger Agreement, as amended, contemplates up to nine Class I Directors. On August 25, 2026, B&J announced only three new appointments. Thus, even if the six former Class I Directors were eligible to remain on the Board (they are not) and the Court ordered their reappointment (it should not), they could serve alongside the three newly appointed Class I Directors and still constitute a majority.

Plaintiffs' proposed amendment also attempts to shoehorn their "new" claim where it does not belong—under Count II for breach of the Settlement Agreement. *See* ECF No. 177-1 at ¶ 133(j). Nowhere does the Settlement Agreement address the makeup of the B&J Board or the process for appointing, electing, or removing directors—and Plaintiffs cite none. Instead, the Fifth Amended Complaint asserts the appointment of new Class I Directors breaches Section 2(b) of the Settlement Agreement, whereby Defendants agreed to "[r]espect and acknowledge the Ben & Jerry's Independent Board's primary responsibility over Ben & Jerry's Social Mission and Essential Brand Integrity" and "work in good faith with the Independent Board to ensure that both are protected and furthered." *Id.* at ¶ 132. But these commitments tie back to the Merger Agreement: B&J's Board's "primary responsibility" over Social Mission and Essential Brand Integrity is outlined in Sections 6.14(e) and (f) of the Merger Agreement, *see* ECF No. 110-7 (the Merger Agreement), whereas Board governance, including appointment of directors, is outlined in Section 6.14(a), *id.* The only contractual provision potentially implicated by Plaintiffs' claim is Section 6.14(a) of the Merger Agreement;[4] accordingly, amending to supplement Count II is futile.

---

[4] Defendants also maintain that Defendants could appoint new Class I Directors pursuant to the bylaws, which B&J's governing documents and Vermont law unequivocally permit B&J's shareholder to amend.

Moreover, Plaintiffs' proposed amendments extend beyond the appointment of Class I Directors and conforming to the Court's Opinion and Order. For example, Plaintiffs add damages for "loss of funding to its bargained-for beneficiaries" to their breach claim under the Settlement Agreement—a theory not previously asserted and not tied to appointment of new directors. *See* ECF No. 177-1 at ¶ 138.

## IV. Amendment Is Prejudicial

Plaintiffs' untimely amendments would also substantially prejudice Defendants. *See McKethan v. New York State Dep't of Corr. Servs*., No. 10 CIV. 3826 PAE, 2012 WL 2333415, at *2 (S.D.N.Y. June 19, 2012) (denying motion to amend filed two years after the original complaint and three weeks before the close of fact discovery). The parties are now closer to the close of fact discovery and filing pre-summary judgment letters than to the event that purportedly triggered Plaintiffs' amendment.

At this late stage, and without any new facts to justify a delay, amending the complaint would necessitate Motion to Dismiss briefing for a third time in less than two years; require an Amended Answer and Counterclaims following any ruling on a Motion to Dismiss; and disrupt the expert discovery and motion for summary judgment schedule. In effect, after five months of discovery, granting Plaintiffs' request would reset this case to April—substantially prejudicing Defendants. "At some point, defendants have a right to a final disposition of this matter." *McKethan*, 2012 WL 2333415, at *2. The substantial production deadline has already passed. Depositions have occurred. The parties have just three weeks to meet and confer and raise discovery disputes with the Court. While Plaintiffs disclaim any need to extend the discovery deadline,[5] discovery goes both ways. Should Plaintiffs be permitted to amend—including adding new factual allegations and injunctive relief—Defendants must have a meaningful opportunity to seek discovery in response, including, if necessary, re-deposing already-deposed witnesses.

At the TRO Hearing, the Court stated: "What I want to do is give the plaintiffs a fair opportunity to prove their case." TRO Hearing Tr. at 43:12-13. Plaintiffs have squandered that opportunity. Their belated motion to file a Fifth Amended Complaint is the latest in a series of actions demonstrating Plaintiffs' lack of diligence and interest in resolving the merits of this case, not to mention a lack of respect for the Court's time and resources. Accordingly, for the reasons outlined above, Defendants respectfully request that the Court deny Plaintiffs' request to move to amend the complaint and file a Fifth Amended Complaint.

We thank the Court for its attention to this matter.

[5] Plaintiffs, however, have suggested that discovery related to the Counterclaims, which were timely filed three weeks before Plaintiffs' letter, may warrant an extension of discovery. Plaintiffs cannot press for additional discovery on their defenses while denying Defendants the same.

Respectfully submitted,

*/s/ David J. Lender*

David J. Lender

*Attorney for Defendants-Counterclaim Plaintiffs*
*The Magnum Ice Cream Company N.V.*
*and Ben & Jerry's HoldCo, LLC and for*
*Counterclaim-Plaintiff Ben & Jerry's Homemade, Inc.*

cc: All Counsel of Record (Via E-filing)