**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

*VIA ECF*

October 9, 2026

**David J. Lender**
+1 (212) 310-8153
david.lender@weil.com

The Honorable Gary Stein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: *Class I Directors of Ben & Jerry's Independent Board v. The Magnum Ice Cream Company N.V., et al.*, Case No. 24-cv-8641-PKC-GS (S.D.N.Y.)**

Dear Judge Stein:

Pursuant to Your Honor's Individual Practices, Defendants The Magnum Ice Cream Company N.V. ("**TMICC**") and Ben & Jerry's HoldCo, LLC ("**HoldCo**") (collectively, "**Defendants**") and Counterclaim-Plaintiffs TMICC, HoldCo, and Ben & Jerry's Homemade, Inc. ("**B&J**") (collectively, "**Counterclaim-Plaintiffs**") write in response to the Former Class I Directors' ("**Plaintiffs**") letter-motion of October 6, 2026. *See* ECF No. 184 ("Ltr."). For the reasons detailed herein, and as set forth in Defendants' July 24 response (*see* ECF No. 140), any relief Plaintiffs seek beyond a hearing with Your Honor should be denied. Further, pursuant to the Court's order, dated October 6, 2026, Defendants intend to raise additional discovery disputes with the Court by November 2, 2026. Defendants therefore request that any conference be deferred until such disputes are ripe and raised.

**A. Having rejected compromise offers, Plaintiffs cannot now discover the attorney-client privileged and work-product protected fruits of the BI Investigation.**

Plaintiffs have returned to the Court, largely on an identical record, seeking again to discover the fruits of the Business Integrity Investigation ("BI Investigation") related to Anuradha Mittal's conduct. Following the August 20 discovery hearing—at which the Court encouraged Plaintiffs to be "practical" (*see* Aug. 20, 2026 Hr'g Tr. ("Tr.") 41:14–19)—Defendants renewed their compromise efforts. *See* ECF No. 180 at 2. Subject to agreement on a limited-scope waiver, Defendants offered to provide Plaintiffs with (i) a list of witnesses interviewed during the BI Investigation (except for one individual who had explicitly only participated on the condition of confidentiality and who will not serve as a witness in this case), and (ii) a copy of the presentation regarding the BI Investigation prepared for the Board. *Id.* Plaintiffs rejected Defendants' compromise. *Id.*

Defendants will not "be relying in any way on the findings of the BI investigation." Tr. 31:7–13. Moreover, Defendants have consistently maintained that the communications and interview memos generated during the course of the BI Investigation are protected by both the attorney-client privilege and

the work product protection. *See* ECF No. 140 at 2–4. Plaintiffs do not dispute either assertion. Rather, Plaintiffs offer a new set of waiver arguments.

To start, Plaintiffs incorrectly insinuate that Gerardo Rozanski, TMICC's corporate representative, triggered a subject matter waiver over the BI Investigation at his deposition. Ltr. at 2. He did not. Plaintiffs' counsel asked Mr. Rozanski to explain "why Ms. Mittal was ineligible to continue to serve as an independent board member under 6.14," to which Defendant's counsel objected. Rozanski Final Tr. 135:10–18. Even still, "answering [Plaintiffs' counsel's] deposition questions did not put [the] investigation in issue" because "such testimony was not an attempt by [the deponent] to use protected information to influence a decision maker." *Mitre Sports Int'l Ltd. v. Home Box Off., Inc.*, 304 F.R.D. 369, 372–73 (S.D.N.Y. 2015). Where "the deponent was not before a 'decisionmaker or fact finder,'" such testimony "does not serve to waive the privilege." *In re Cnty. of Erie*, 546 F.3d 222, 230 (2d Cir. 2008).

Plaintiffs also mistakenly claim that Defendants waived privilege because the Answer "admits" that Mittal was advised on December 15 that her "misconduct rendered her immediately ineligible." Ltr. at 2. Defendants were not relying on the BI investigation in their response to Plaintiffs' allegations or to support their defense in this case. *See Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 502 (S.D.N.Y. 2019) (finding privilege not waived by defendant's Answer). Plaintiffs then argue that the December 15 letter sent to Mittal references the "findings" of the BI Investigation. Ltr. at 2. But Defendants have not asserted privilege over the December 15 letter, much less relied on it. Moreover, the Court already covered this ground, with Defendants confirming that they will not be "putting into evidence . . . the December 15 letter." Tr. 31:14–16.

Finally, on Defendants' Counterclaims, Plaintiffs point to the October 23 letter sent to former Board members Dodson, Henderson, Samuels, Sok, and Najib, but omit that *they* violated their confidentiality obligations and introduced this letter as an exhibit to their letter-motion in July. *See* ECF No. 138-1; *see also* ECF No. 140 at 4 n. 2 (noting Plaintiffs' unauthorized disclosure of confidential Board materials). In any event, neither Defendants nor Counterclaim-Plaintiffs have asserted or will assert a "good faith belief" in the contents of the letter. The letter is merely another exemplar that the other former Class I Directors were on notice of Mittal's conduct. Defendants and Counterclaim-Plaintiffs will prove Mittal's misconduct "exclusively through objective proof," *Parneros*, 332 F.R.D. at 502, enabling "the trier of fact . . . to assess whether, based on her conduct, she's eligible or not eligible to serve." Tr. 34:4–21.

### B. Rule 408 and Rule 26 preclude Rule 30(b)(6) witness testimony on the October 10, 2025 Varsellona–Mittal meeting.

Plaintiffs ask the Court to compel Rule 30(b)(6) testimony about an October 10, 2025 confidential settlement discussion between Mittal, Maria Varsellona, and counsel, conducted pursuant to Rule 408 of the Federal Rules of Evidence. Ltr. at 3. In advance of the discussion, Plaintiffs expressly "[c]onfirmed" that this settlement conference would be confidential and subject to Rule 408[1], yet publicly disclosed (albeit incorrectly) the contents of the confidential conversation and now seek to use it to prove their claims—the very purpose Rule 408 prohibits. Because Plaintiffs fail to establish the relevance of this

[1] Defendants can make this correspondence available for in camera review at the Court's direction.

testimony and the only basis they offer—to show Defendants' "bad faith"—is expressly barred by Rule 408, the Court should deny their request.

Discovery of settlement-related material is governed by Rule 26, and "[t]he burden of establishing relevance rests with the party seeking to compel discovery." *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, No. 09 Civ. 8387 (SAS), 2012 WL 3553775, at *1 (S.D.N.Y. Aug. 17, 2012). That requirement has teeth: even under the ordinary Rule 26 standard, "courts routinely refuse to afford defendants access to settlement agreements that they deem irrelevant." *Id.* (collecting cases); *see also Gen. Elec. Co. v. DR Sys., Inc.*, 2007 WL 1791677, at *2–3 (E.D.N.Y. June 20, 2007) (denying discovery where relevance was "remote at best").

Plaintiffs identify only one purpose for the testimony: to prove that "the ultimatum itself breached" Defendants' obligation under Section 2(b) of the Settlement Agreement to work in good faith with the Board. Ltr. at 3. But the alleged proposal sought to settle this very litigation, so Plaintiffs seek to use it to prove "the validity . . . of a disputed claim"—precisely what Fed. R. Evid. 408(a) prohibits. Calling their theory "bad faith" does not change that. In *Beechwood*, the plaintiffs offered the state's settlement demands not to prove the claims those demands sought to settle, but as evidence of retaliatory intent on a separate claim. *Beechwood Restorative Care Ctr. v. Leeds*, 856 F. Supp. 2d 580, 591–93 (W.D.N.Y. 2012). Rule 408 prohibits settlement evidence "as proof of liability on the claim that was the subject of the offer itself"—exactly Plaintiffs' use here. *Id.* Plaintiffs therefore cannot make the required "particularized showing of a likelihood that admissible evidence will be generated" by the requested discovery, *King Cnty.*, 2012 WL 3553775, at *1 (citation omitted), and the testimony has little "importance . . . in resolving the issues," Fed. R. Civ. P. 26(b)(1). Plaintiffs' other authorities do not help them. *Clerveaux* allowed evidence that board members misled colleagues about settlement negotiations only to show bad faith on a collateral totality-of-the-circumstances factor, not to prove the claim itself. *Clerveaux v. E. Ramapo Cent. Sch. Dist.*, 984 F.3d 213, 243–44 (2d Cir. 2021). And *Morse/Diesel* compelled settlement discovery only because the movant made a "particularized showing" identifying specific documents going "to the heart of" its damages claims. *Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md.*, 122 F.R.D. 447, 451 (S.D.N.Y. 1988). Plaintiffs make no comparable showing.

Because the only purpose Plaintiffs identify is one Rule 408 expressly prohibits, Defendants respectfully request that the Court deny Plaintiffs' request to compel Rule 30(b)(6) testimony about the confidential settlement discussions.

Respectfully submitted,

<u>*/s/ David J. Lender*</u>

David J. Lender

*Attorney for Defendants-Counterclaim-Plaintiffs*
*The Magnum Ice Cream Company N.V.*
*and Ben & Jerry's HoldCo, LLC and for*

*Counterclaim-Plaintiff Ben & Jerry's Homemade, Inc.*

cc: All Counsel of Record (Via E-filing)