**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

*VIA ECF*

October 26, 2026

**Luna N. Barrington**

+1 (212) 310-8421
Luna.barrington@weil.com

The Honorable Gary Stein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: *Class I Directors of Ben & Jerry's Independent Board v. The Magnum Ice Cream Company N.V., et al.*, Case No. 24-cv-8641-PKC-GS (S.D.N.Y.)**

Dear Judge Stein:

We represent Defendants The Magnum Ice Cream Company N.V. ("**TMICC**") and Ben & Jerry's HoldCo, LLC ("**HoldCo**") (collectively, "**Defendants**") and Counterclaim-Plaintiffs TMICC, HoldCo, and Ben & Jerry's Homemade, Inc. ("**B&J**") (collectively, "**Counterclaim-Plaintiffs**") in the above-captioned matter. We write in response to Plaintiffs' October 21, 2026 letter to the Court [ECF No. 195].

Plaintiffs seek to compel production of documents that are wholly irrelevant to Plaintiffs' breach of contract claims and to Defendants' counterclaims and defenses. This Court narrowed the issues in dispute to whether Defendants breached their obligations, if any, to the former Class I Directors under (a) the Merger Agreement with respect to the removal, eligibility, and appointment of directors and (b) the Settlement Agreement and Settlement Amendment with respect to charitable and other payments and the role of the Board in advancing social mission and essential brand integrity. The counterclaims seek equitable relief and a declaratory judgment to address whether each of the former Class I Directors and Mr. Miller are eligible to serve on the B&J board based on the plain language of the various operative agreements. None of these claims turns on B&J's market value, prospective investors or purchasers, or the business integrity investigations of unrelated individuals. Nor are Plaintiffs' requests proportional to the needs of this case, particularly as limited by this Court's decision on Defendants' Motion to Dismiss. *See Max Torgovnick v. SoulCycle, Inc.,* No. 17 CIV. 1782 (PAC), 2018 WL 5318277, at *3 (S.D.N.Y. Oct. 29, 2018). Accordingly, Defendants respectfully request that the Court deny the requested relief.

**A. RFP Nos. 98-110 (Documents Related to Investors and Purchasers of B&J)[1]**

Plaintiffs assert that "[p]ost-demerger communications with investors and prospective purchasers are direct evidence of whether measurable harm occurred and who caused it," ECF No. 195 at 1, but neither

[1] While Plaintiffs argue that RFP Nos. 98-110 are relevant to Defendants' counterclaims, Plaintiffs served these RFPs on July 7, 2026—two months before the counterclaims were filed on September 4, 2026. As such, Defendants' Responses and Objections, served on August 6, 2026, and the subsequent conferrals on August 7, 2026 and September 3, 2026 occurred before the counterclaims were filed. Plaintiffs raised these requests in the context of the counterclaims for the first time on October 19, 2026, at which time Defendants stated that they would stand on their objections because the equitable relief sought in the counterclaims did not change the scope of discovery.

Plaintiffs' claims nor the counterclaims require any finding of measurable harm or causation. Defendants' counterclaims seek only equitable relief: a declaration that each Plaintiff is ineligible to serve on B&J's board. Defendants seek no monetary damages. To the extent Plaintiffs seek any damages, they can only do so on behalf of themselves and not B&J. Accordingly, these requests—which go directly to the purported value of B&J—are neither relevant nor proportional to the needs of this case. Indeed, Plaintiffs' own cited authority supports this: in *Juice Creative Grp., LLC v. UncommonGood, Inc*., 2025 WL 2083210, at *3–4 (D. Conn. July 24, 2025), the court compelled investor and valuation discovery only because the defendant alleged at least $7 million in damages and claimed the plaintiff's conduct hindered its ability to fundraise. Defendants make no such allegations and seek only equitable relief.

Rather, it appears that Plaintiffs are attempting to use discovery to gain non-public, highly sensitive information about the purported value of B&J to aid in founder Ben Cohen's efforts to "free" B&J from Defendants. Both founders—Mr. Cohen and Mr. Greenfield—testified at their depositions that they have organized a consortium of investors to buy back B&J. *See, e.g.,* Cohen Tr. 145:21-24; Greenfield Tr. 129:18-21. Documentary evidence shows coordination between several of the former Class I Directors to aid in Mr. Cohen's efforts. Indeed, Mr. Cohen has testified that he has paid $200,000 in legal fees on behalf of Plaintiffs, and Ms. Mittal and Mr. Cohen have coordinated efforts to raise money to fund this litigation, all in an effort to pressure Defendants to sell B&J. Moreover, Mr. Cohen was—at one point—represented by Plaintiffs' counsel, and Plaintiffs have asserted a common interest over certain discovery related to Mr. Cohen. In short, Plaintiffs cannot use the discovery process as a backdoor attempt to gain non-public, highly sensitive information to aid in their coordinated effort to buy back B&J.

Even putting aside relevance, RFP Nos. 98-106 are facially overbroad: they do not define any "set of counterparties and transactions." ECF No. 195 at 2. Instead, they seek "all" documents and communications with any private equity firm, investment fund, strategic buyer, bank, advisor, broker, investor, or shareholder, and "the complete contents of every" data room. RFP Nos. 107-110 are no better: they seek "all documents and communications" regarding the "impact" of various events on investors and the Demerger. Finally, Defendants' own requests are not even remotely comparable. They seek information about Plaintiffs' own knowledge of and involvement in the efforts to purchase B&J, which bear directly on whether they breached their fiduciary duties to B&J and TMICC.

**B. RFP Nos. 112-115 (Other Business Integrity Investigations and Reports) and 117-119 (Benefits and Funds)**

Plaintiffs' requests to compel production of RFP Nos. 112-115, which concern other investigations and reports, including the standards used and the law firms retained, and Nos. 117-119, which are directed at benefits received from so-called decision-makers and accounting of funds, also should be denied as irrelevant and overbroad.[2]

[2] Plaintiffs failed to meaningfully confer on these requests at any point after Defendants served their Responses and Objections on August 12, 2026. Plaintiffs raised only RFP No. 116 on September 17, 2026 and raised RFP Nos. 112-115 and 117-119 for the first time hours before the parties were scheduled for an omnibus meet-and-confer on October 19, 2026. Plaintiffs' suggestion that Defendants consistently refused to produce responsive documents, ECF No. 195 at 2, is plainly wrong. Plaintiffs

*Investigation standards (RFP Nos. 112-113).* Plaintiffs argue that these requests are relevant because the Mittal Business Integrity Investigation was allegedly a "sham" and evidence of investigation standards is relevant to prove that claim. But, again, Plaintiffs are alleging a breach of contract claim under the Merger Agreement and Settlement Agreement. Whether Defendants breached those contracts has nothing to do with whether Defendants followed prior investigation methodology. Moreover, notably, Plaintiffs have not denied the findings of the investigation. Putting aside that fact and the fact that Defendants are not relying on the Mittal Business Integrity Investigation in this case, information regarding business integrity investigations already available to Plaintiffs. Defendants advised Plaintiffs that Unilever's Business Integrity website is public. The same is true for TMICC's Business Integrity webpage and the relevant Codes of Conduct (several of which have been produced). Ms. Vilar also testified extensively about the business integrity investigation process. *See* Vilar Rough Tr. 277:12-284:6. Similarly irrelevant to a breach of contract claim is Plaintiffs' request to identify every firm Defendants have retained for any investigation since 2020 involving any employee (RFP No. 113).

*Comparators and motive (RFP Nos. 114, 115, 117, 118).* Discovery into comparators and motives is equally irrelevant because this is not an employment discrimination case. It is a breach of contract and governance dispute. Discovery into non-parties and other employees of Unilever and TMICC has no bearing on whether Defendants breached their contractual obligations or whether the former Class I Directors and Mr. Miller breached their duties or are eligible to serve on the B&J board. Plaintiffs' breach of contract claim concerns whether Defendants removed the former Class I Directors in violation of Section 6.14(a) of the Merger Agreement. Discovery into the way in which Defendants conducted other business integrity investigations, Mr. Nelson Peltz's role at the Simon Wiesenthal Center (from which he resigned), the reasons Mr. Greenfield chose to resign, etc., have no bearing on whether Defendants in fact removed the former Class I Directors, or whether consent was required or obtained. For these same reasons, the "motive" of certain individuals is likewise irrelevant.[3]

*Foundation funds (RFP No. 119).* The Court has already held that Plaintiffs lack standing to enforce Section 6.14(h) of the Merger Agreement, which is the only provision governing funding of the Ben & Jerry's Foundation. The Settlement Agreement and Settlement Amendment do not require TMICC to donate to the Foundation. Plaintiffs cannot avoid the Court's ruling by relabeling a Section 6.14(h) claim as a breach of the Settlement Agreement for disregarding the board's "funding decisions," ECF No. 195 at 3, because the board's authority to make those decisions comes from Section 6.14(h) itself. The treatment of any Foundation funds is therefore not relevant. As to other funds, Mr. Bhattacharya, TMICC's CFO, testified that he has a provision in TMICC's books for those funds. Bhattacharya Tr. 270:10-16.

For these reasons, the Court should deny Plaintiffs' requests. Defendants and Counterclaim-Plaintiffs thank the Court for its attention to this matter and are available for a conference at the Court's convenience.

---

have issued over 200 Requests for Production and, to date, Defendants have produced over 70,000 documents as compared to Plaintiffs' 6,488.

[3] Finally, Plaintiffs' assurance that "[a]ny confidentiality concern is addressed by a protective order," ECF No. 195 at 3, rings hollow, since Plaintiffs themselves have refused to respond to discovery on confidentiality grounds despite that same protective order and continue to produce documents without confidentiality designations despite Defendants' written request.

*/s/ Luna N. Barrington*

Luna N. Barrington

*Attorney for Defendants and Counterclaim-Plaintiffs*
*The Magnum Ice Cream Company N.V.*
*and Ben & Jerry's HoldCo, LLC and for*
*Counterclaim-Plaintiff Ben & Jerry's Homemade, Inc.*

cc: All Counsel of Record (Via E-filing)