**Weil, Gotshal & Manges LLP**

*VIA ECF*

767 Fifth Avenue
New York, NY 10153-0119
Phone: +1 212 310 8000
Fax: +1 212 310 8007

October 28, 2026

**Luna Barrington**
+1 (212) 310-8421
Luna.Barrington@weil.com

The Honorable Gary Stein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: *Class I Directors of Ben & Jerry's Independent Board v. The Magnum Ice Cream Company N.V., et al.*, Case No. 24-cv-8641-PKC-GS (S.D.N.Y.)**

Dear Judge Stein:

We represent Defendants The Magnum Ice Cream Company N.V. ("**TMICC**") and Ben & Jerry's HoldCo, LLC ("**HoldCo**") (collectively, "**Defendants**") and Counterclaim-Plaintiffs TMICC, HoldCo, and Ben & Jerry's Homemade, Inc. ("**B&J**") (collectively, "**Counterclaim-Plaintiffs**") in the above-captioned matter. We write in response to Plaintiffs' October 23, 2026 letter to the Court, ECF No. 197 (the "**Letter**"), which enumerated ten issues for resolution. Defendants respond to each in turn.

*First*, as Defendants noted in their submission last week, *see* ECF No. 196 at 3, Plaintiffs did not respond to Defendants' proposals to meet and confer about several topics, including the identity of the person whom Ms. Mittal referred to as a "white bitch." Defendants are willing to continue to meet and confer with Plaintiffs on this issue, ECF No. 185.

*Second*, deposition questions about purported discussions Unilever had with "third party purchasers about the litigation" are irrelevant and clearly posed for an improper purpose. Letter at 1. None of the 42 paragraphs Plaintiffs cite from the Fourth Amended Complaint ("**FAC**") alleges that Unilever acted to "mak[e] [B&J] more palatable to a potential purchaser." *Id.* (citing ECF No. 110 ¶¶ 83-124). Plaintiffs' claims turn on whether Defendants complied with their contractual obligations under the Merger and Settlement Agreements, not on any supposed discussions with purchasers of B&J. Not only is this line of questioning wholly irrelevant to Plaintiffs' breach of contract claims, it is clearly a fishing expedition designed only to obtain non-public, highly sensitive information about the purported value of B&J to aid in B&J co-founders Ben Cohen's and Jerry Greenfield's efforts to buy back B&J from TMICC. Mr. Cohen confirmed this week with the Wall Street Journal that he and Mr. Greenfield are working with private equity investors to "generate more pressure on [TMICC] to sell" B&J.[1] Documentary evidence shows

[1] Lauren Thomas et al., *Ben & Jerry's Founders Have Been Exploring Deal to Separate Company From Magnum*, WALL ST. J. (Oct. 26, 2026 3:39 p.m.), https://www.wsj.com/business/deals/ben-jerrys-founders-have-been-exploring-deal-with-kkr-executive-8a9572de.

coordination between several of Plaintiffs to aid Mr. Cohen and Mr. Greenfield in those efforts. Plaintiffs have no basis to obtain this nonpublic, competitively sensitive information in furtherance of their breach of contract claims that are related only to the appointment, removal, and eligibility of directors and to prior settlement agreements and which are wholly unrelated to financial evaluations of TMICC or B&J.

*Third*, the two specific documents whose confidentiality designations Plaintiffs dispute contain confidential information because they include discussions about sensitive strategic and commercial decisions Unilever considered regarding its relationship with B&J. BnJSDNY_Defendants_0000044453 includes a discussion between Unilever's then-President of Ice Cream Peter ter Kulve and a senior Unilever HR executive about sensitive topics such as the compensation review of B&J board members and potential candidates for the board. BnJSDNY_Defendants_0000043671 involves a discussion between Mr. ter Kulve and Unilever CEO for Wellbeing (and former B&J CEO) Jostein Solheim to strategize a response to Ms. Mittal's demands that Unilever donate its funds to specific nonprofit organizations. Both documents thus have properly been designated as confidential because they contain non-public business information exchanged between senior executives about critical financial and personnel decisions facing Unilever. *See* ECF No. 185 ¶ 2.

*Fourth*, while Plaintiffs complain broadly about an assertion of privilege over "various communications and materials" involving Ernst & Young ("**EY**") and Forensic Risk Alliance ("**FRA**"), they point only to one document on Defendants' privilege log that, they assert, "purport[s] to provide the 'background' for the audit" of the Ben & Jerry's Foundation. Letter at 2. However, Defendant's privilege log lacks any entry for a document that discusses the "background" of the audit, rendering Defendants completely unable to assess which document Plaintiffs object to. Moreover, Defendants have produced hundreds of communications and materials shared with EY and FRA, including several communications between EY and outside counsel for Defendants over which Defendants claim no privilege. Communications with EY have been withheld or redacted only where EY provided information to aid outside counsel's business integrity investigation into Ms. Mittal, which—as Defendants have always maintained, *see* Aug. 20, 2026 Hearing Tr. at 15:14–20—is privileged because it was necessary to facilitate legal advice in connection with an investigation.

*Fifth*, the meeting that took place between Plaintiffs and Unilever (and respective outside counsel) pursuant to Rule 408 *was and should remain* confidential. "Settlement discussions are typically treated as confidential, since their disclosure may impact on the parties' interests, either in business affairs or in ongoing litigation" and because "[t]he threat of disclosure would put a serious crimp in such discussions, since candor would likely give way to extreme caution in making disclosures." *S.E.C. v. Thrasher*, 1995 WL 552719, at *1 (S.D.N.Y. Sept. 18, 1995); *see also Paravas v. Cerf*, 2022 WL 203168, at *2 (S.D.N.Y. Jan. 24, 2022) (ordering plaintiff not to publicly file "settlement-related communications" because "the substance of the [] negotiations must be kept confidential"). Defendants have appropriately treated these Rule 408 negotiations as confidential and Plaintiffs' continuing refusal to do the same violates that confidentiality and threatens to "put a serious crimp" in future settlement discussions. *Thrasher*, 1995 WL 552719, at*1.

*Sixth*, Defendants' objections to RFP No. 1 came before Your Honor granted Plaintiffs leave to

file a Fifth Amended Complaint that includes allegations related to the appointment of new Class I Directors to the B&J board, *see* ECF No. 200. In light of the Court's ruling, Defendants are willing to meet and confer with Plaintiffs about the request. However, there is no relevance to this litigation of an Israel-themed ice cream flavor sold in Israel by an unrelated third party, who acquired B&J's Hebrew- and Arabic-language intellectual property rights in 2022 and does not operate at TMICC's or B&J's direction. Mr. Zinger's operations are not at issue in this dispute.

*Seventh*, the six RFPs requesting information about business integrity investigations into Unilever in-house counsel Jeff Eglash, TMICC in-house counsel Palmina Fava, and TMICC CEO Peter ter Kulve are not relevant to the claims in this case. As Defendants have previously noted, this is not an employment discrimination case and, therefore, comparator evidence does not bear on Plaintiffs' breach of contract claims. *See* ECF No. 198 at 3. The nature and findings of business integrity investigations into other Unilever and TMICC employees—to whom the relevant provisions of the Merger Agreement and Settlement Agreement do not apply—do not help resolve whether Defendants breached their contractual duties when they deemed *Ms. Mittal* ineligible for the Board following an investigation into her misconduct.

Plaintiffs' *eighth* point again mistakes this case for an employment discrimination case. Resolving Plaintiffs' breach of contract claims *does not depend* on whether anybody complained that Mr. Eglash, Ms. Fava, Mr. ter Kulve, Unilever board member Nelson Peltz, or any other individual "engaged in the same [] conduct" as or "were treated differently than" Plaintiffs. Letter at 3. That the counterclaims "put Plaintiffs' conduct at issue" does not change this, as resolving whether *Plaintiffs* breached their fiduciary duties to Counterclaim-Plaintiffs does not depend on the conduct of any other individual. *Id.* And, as described above, documents prepared for financial firms amount to a fishing expedition for Plaintiffs' theory that Defendants have "ulterior motives," which is unfounded and disconnected from any allegation in the complaint.

*Ninth*, certain of Defendants' communications with Tiemen Bloemberg, a consultant B&J and TMICC hired in 2025 to help resolve B&J's payment obligations under the Settlement Agreement, are privileged. By the time Mr. Bloemberg was hired, Plaintiffs had already asserted claims regarding such obligations, *see, e.g.*, ECF No. 5 ¶¶ 31–36, 40, requiring Mr. Bloemberg to resolve the issue by soliciting and facilitating legal advice from in-house counsel. Therefore, communications sent to or by Mr. Bloemberg "predominately for the purpose of giving legal advice" about these contractual obligations have been properly withheld or redacted. *Ross v. UKI Ltd.*, 2004 WL 67221, at *3 (S.D.N.Y. Jan. 15, 2004). The portions of such communications that are purely business-related have not been withheld from Plaintiffs, who have received nearly three dozen communications with or materials prepared by Mr. Bloemberg.

*Tenth*, there is no issue to resolve with respect to the many corrupted documents that Defendants produced to Plaintiffs. Defendants' document review yielded approximately 10,000 documents that were corrupted, in an unreadable file format, and/or protected by inaccessible passwords and which were not themselves responsive—an impossibility, since these documents are disfigured and unreadable files—but produced because they were *attached* to documents that were responsive to search terms the parties had agreed upon. Defendants have complied with their obligations by producing all responsive non-privileged documents and all attachments thereto in the formats in which they were kept or pursuant to the terms of the parties' ESI Protocol, *see* ECF No. 158 § II.A.

We thank the Court for its attention to this matter.

*/s/ Luna N. Barrington*

Luna N. Barrington

*Attorney for Defendants and Counterclaim-Plaintiffs*
*The Magnum Ice Cream Company N.V.*
*and Ben & Jerry's HoldCo, LLC and for*
*Counterclaim-Plaintiff Ben & Jerry's Homemade, Inc.*

cc: All Counsel of Record (Via E-filing)